# EXHIBIT A

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Application of: | |
| Inventors: Friedman et al. | REQUEST FOR REEXAMINATION UNDER 35 U.S.C. §§ 311 AND 37 C.F.R. §§ 1.913, 1.915 |
| Patent No.: 7,228,383 | |
| Filed: June 1, 2001 | |
| For:  System and Method for Progressive and Hierarchical Caching | |

Mail Stop *Inter Partes* Reexamination
ATTN: Central Reexamination Unit
Commissioner for Patents
P.O.  Box 1450
Alexandria, VA 22313-1450

## REQUEST FOR *INTER PARTES*  REEXAMINATION OF U.S.  PATENT 7,228,383

## TABLE OF CONTENTS

LIST OF EXHIBITS ................................................................................................. 5

    **A.** PRIOR ART (PA) ....................................................................................... 5

    **B.** RELEVANT PATENT MATERIALS (PAT) ................................................... 6

    **C.** CLAIM CHARTS (CC) ............................................................................... 6

    **D.** OTHER DOCUMENTS (OTH) ................................................................... 7

**I.** REQUIREMENTS FOR INTER PARTES REEXAMINATION UNDER 37 C.F.R. § 1.915 ........................................................................................... 10

**II.** OVERVIEW OF THE '383 PATENT AND SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY ........................................................ 11

    A. SUMMARY OF THE DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS OF THE '383 PATENT ........................................... 11

    B. '383 PATENT APPLICATION PROSECUTION HISTORY ................................ 12

    C. RELATED CO-PENDING LITIGATION REQUIRES TREATMENT WITH SPECIAL DISPATCH AND PRIORITY OVER ALL OTHER CASES ................................ 14

    D. CLAIM CONSTRUCTION .............................................................................. 15

    E. SUMMARY OF THE PRIOR ART .................................................................... 17

        1. SHERMAN '409 PATENT .................................................................. 17

        2. BERN ............................................................................................. 19

        3. RFC 2060 ....................................................................................... 20

        4. HALAHMI ....................................................................................... 21

        5. ZERBER .......................................................................................... 23

        6. RFC 1939 ....................................................................................... 25

        7. AUSTEIN ......................................................................................... 25

        8. PCMAIL .......................................................................................... 26

        9. BOONE ........................................................................................... 27

        10. SHERMAN '214 ............................................................................... 28

**III.** STATEMENT UNDER 37 C.F.R. § 1.915(B)(3) OF EACH SUBSTANTIAL NEW QUESTION OF PATENTABILITY ...................................................... 30

**IV.** CONCISE STATEMENT OF SUBSTANTIAL NEW QUESTION OF PATENTABILITY ............................................................................... 31

**EXHIBIT A**

A.    CLAIMS 1-15 ARE ANTICIPATED BY SHERMAN '409 UNDER 35 U.S.C. § 102 ........................................................................................... 32

B.    CLAIMS 1-9 ARE ANTICIPATED BY BERN UNDER 35 U.S.C. § 102 ............ 43

C.    CLAIMS 1-3 AND 5-9 ARE ANTICIPATED BY RFC 2060 UNDER 35 U.S.C. § 102 ...................................................................................... 49

D.    CLAIMS 1-15 ARE ANTICIPATED BY HALAHMI UNDER 35 U.S.C. § 102 .... 55

E.    CLAIMS 1-15 ARE ANTICIPATED BY ZERBER UNDER 35 U.S.C. § 102 ....... 66

F.    CLAIMS 1-15 ARE ANTICIPATED BY AUSTEIN UNDER 35 U.S.C. § 102 ..... 78

G.    CLAIMS 1-15 ARE ANTICIPATED BY PCMAIL UNDER 35 U.S.C. § 102 .... 87

H.    CLAIMS 10-15 ARE RENDERED OBVIOUS BY SHERMAN '409 IN VIEW OF SHERMAN '214 UNDER 35 U.S.C. § 103 .................................................... 97

I.    CLAIMS 10-15 ARE RENDERED OBVIOUS BY RFC 2060 IN VIEW OF SHERMAN '409 AND FURTHER IN VIEW OF SHERMAN '214 UNDER 35 U.S.C. § 103  103

J.    CLAIMS 10-15 ARE RENDERED OBVIOUS BY BERN IN VIEW OF SHERMAN '409 AND FURTHER IN VIEW OF SHERMAN '214 UNDER 35 U.S.C. § 103  109

K.    CLAIMS 10-15 ARE RENDERED OBVIOUS BY HALAHMI IN VIEW OF SHERMAN '409 AND FURTHER IN VIEW OF SHERMAN '214 UNDER 35 U.S.C. § 103  116

L.    CLAIMS 10-15 ARE RENDERED OBVIOUS BY ZERBER IN VIEW OF SHERMAN '409 AND FURTHER IN VIEW OF SHERMAN '214 UNDER 35 U.S.C. § 103  123

M.    CLAIMS 10-15 ARE RENDERED OBVIOUS BY AUSTEIN IN VIEW OF SHERMAN '409 AND FURTHER IN VIEW OF SHERMAN '214 UNDER 35 U.S.C. § 103  130

N.    CLAIMS 10-15 ARE RENDERED OBVIOUS BY PCMAIL IN VIEW OF SHERMAN '409 AND FURTHER IN VIEW OF SHERMAN '214 UNDER 35 U.S.C. § 103  137

O.    CLAIMS 10-15 ARE RENDERED OBVIOUS BY SHERMAN '409 IN VIEW OF BOONE UNDER 35 U.S.C. § 103 ............................................................. 143

P.    CLAIMS 10-13 AND 15 ARE RENDERED OBVIOUS BY RFC 2060 IN VIEW OF BOONE UNDER 35 U.S.C. § 103 ............................................................. 149

Q.    CLAIMS 10-15 ARE RENDERED OBVIOUS BY BERN IN VIEW OF BOONE UNDER 35 U.S.C. § 103 .................................................................... 155

R.    CLAIMS 10-15 ARE RENDERED OBVIOUS BY HALAHMI IN VIEW OF BOONE UNDER 35 U.S.C. § 103 ......................................................... 161

S.    CLAIMS 10-15 ARE RENDERED OBVIOUS BY ZERBER IN VIEW OF BOONE UNDER 35 U.S.C. § 103 ......................................................... 167

T.    CLAIMS 10-15 ARE RENDERED OBVIOUS BY AUSTEIN IN VIEW OF BOONE UNDER 35 U.S.C. § 103 ......................................................... 174

U.    CLAIMS 10-15 ARE RENDERED OBVIOUS BY PCMAIL IN VIEW OF BOONE UNDER 35 U.S.C. § 103 ......................................................... 179

3

**EXHIBIT A**

**V.     CONCLUSION** ..................................................................................... **185**

**EXHIBIT A**

# TABLE OF EXHIBITS

## LIST OF EXHIBITS

The exhibits to the present Request are arranged in four groups: prior art ("PA"), relevant patent prosecution file history, patents, and claim dependency relationships ("PAT"), claim charts ("CC"), and other ("OTH").

## A. PRIOR ART (PA)

| | |
|---|---|
| PA-SB08A | USPTO Form SB/08A |
| PA-A | U.S. Patent No. 6,647,409 to Roman Sherman et al., "Maintaining a Sliding View of Server Based data on a Handheld Personal Computer," filed July 13, 1999. (hereinafter "Sherman '409") |
| PA-B | U.S. Patent No. 6,898,422 to Marie Bern et al., "Method and System for Providing Mobile Services," filed April 12, 2001. (hereinafter "Bern") |
| PA-C | M. Crispin, Request for Comments 2060, Internet Message Access Protocol - Version 4rev1, December 1996. (hereinafter "RFC 2060") |
| PA-D | U.S. Patent No. 6,684,088 to Erez Halahmi, "System and Method for Displaying Electronic Mail Messages on a Low Bandwidth Device," filed March 1, 2000. (hereinafter "Halahmi") |
| PA-E | U.S. Patent No 5,951,636 to Kevin Gregory Zerber, "Accessing a Post Office System from a Client Computer Using Applets," filed December 4, 1997. (hereinafter "Zerber") |
| PA-F | J. Myers and M. Rose, Request for Comments No. 1939; May 1996. (hereinafter "RFC 1939") |
| PA-G | R. Austein, "Synchronization Operations for Disconnected IMAP 4 Clients," Internet Draft: Disconnected Access; November 1994. (hereinafter "Austein") |
| PA-H | M. Lambert, "PCMAIL: A Distributed Mail System for Personal Computers," Request for Comments 1056; June 1988. (hereinafter "PCMAIL") |
| PA-I | G. Boone, "Concept Features in RE: Agent, an Intelligent Email Agent," Georgia Institute of Technology; 1998. (hereinafter "Boone") |

5

**EXHIBIT A**

PA-J              U.S.   Patent No.   6,505,214 to Roman Sherman, "Selective Information Synchronization Based on Implicit User Designation," filed September 28, 1999.  (hereinafter "Sherman '214")

## B.  RELEVANT PATENT MATERIALS (PAT)

PAT-A             U.S.  Patent No.  7,228,383 (the '383 patent)

PAT-B             File Wrapper for the '383 Patent

PAT-C             Dependency Table for '383 Patent

## C.  CLAIM CHARTS (CC)

CC-A              Claim Chart showing Sherman '409 anticipating claims 1-15 of the '383 patent

CC-B              Claim Chart showing Bern anticipating claims 1-9 of the '383 patent

CC-C              Claim Chart showing RFC 2060 anticipating claims 1-3 and 5-9 of the '383 patent

CC-D              Claim Chart showing Halahmi anticipating claims 1-15 of the '383 patent

CC-E              Claim Chart showing Zerber anticipating claims 1-15 of the '383 patent

CC-F              Claim Chart showing Austein anticipating claims 1-15 of the '383 patent

CC-G              Claim Chart showing PCMAIL anticipating claims 1-15 of the '383 patent

CC-H              Claim Chart showing Sherman '409 in view of Sherman '214 rendering obvious claims 10-15 of the '383 patent

CC-I              Claim Chart showing RFC 2060 in view of Sherman '409 and further in view of Sherman '214 rendering obvious claims 10-15 of the '383 patent

CC-J              Claim Chart showing Bern in view of Sherman '409 and further in view of Sherman '214 rendering obvious claims 10-15 of the '383 patent

CC-K              Claim Chart showing Halahmi in view of Sherman '409 and further in view of Sherman '214 rendering obvious claims 10-15 of the '383 patent

CC-L              Claim Chart showing Zerber in view of Sherman '409 and further in view of Sherman '214 rendering obvious claims 10-15 of the '383 patent

**EXHIBIT A**

CC-M        Claim Chart showing Austein in view of Sherman '409 and further in view of Sherman '214 rendering obvious claims 10-15 of the '383 patent

CC-N        Claim Chart showing PCMAIL in view of Sherman '409 and further in view of Sherman '214 rendering obvious claims 10-15 of the '383 patent

CC-O        Claim Chart showing Sherman '409 in view of Boone rendering obvious claims 10-15 of the '383 patent

CC-P        Claim Chart showing RFC 2060 in view of Boone rendering obvious claims 10-13 and 15 of the '383 patent

CC-Q        Claim Chart showing Bern in view of Boone rendering obvious claims 10-15 of the '383 patent

CC-R        Claim Chart showing Halahmi in view of Boone rendering obvious claims 10-15 of the '383 patent

CC-S        Claim Chart showing Zerber in view of Boone rendering obvious claims 10-15 of the '383 patent

CC-T        Claim Chart showing Austein in view of Boone rendering obvious claims 10-15 of the '383 patent

CC-U        Claim Chart showing PCMAIL in view of Boone rendering obvious claims 10-15 of the '383 patent


## D. OTHER DOCUMENTS (OTH)

OTH-A       Patent Owner's First Amended Answer to Complaint and Counterclaims in *Research In Motion Limited vs. Visto Corporation.,* Case No. C-07-3177 (N.D. Cal. June 15, 2007) filed Sept. 18, 2007.

OTH-B       "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No. C-07-3177 (N.D. Cal. June 15, 2007)

OTH-C       "Order Adopting With Exception Case Management And Docket Control Order" in *Research In Motion Limited vs. Visto Corporation.,* Case No. C-07-3177 (N.D. Cal. June 15, 2007)

7

**EXHIBIT A**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Application of: | |
| Inventors: Friedman et al. | REQUEST FOR REEXAMINATION UNDER 35 U.S.C. §§ 311 AND 37 C.F.R. §§ 1.913, 1.915 |
| Patent No.: 7,228,383 | |
| Filed: June 1, 2001 | |
| For:    System and Method for Progressive and Hierarchical Caching | |

Mail Stop Inter Partes Reexamination
ATTN: Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## REQUEST FOR *INTER PARTES* REEXAMINATION OF U.S. PATENT 7,228,383

Dear Sir:

Pursuant to 37 C.F.R. § 1.915(b)(8), the Real Party in Interest Research in Motion Ltd., (hereinafter "Requester") hereby respectfully requests reexamination pursuant to 35 U.S.C. §§ 311 *et seq.* and 37 C.F.R. § 1.902 *et. seq.*, , of original claims 1-15 of U.S. Patent No. 7,228,383 ("the '383 patent") filed June 1, 2001 and issued June 5, 2007 to Gregory Scott Friedman et al. (Exhibit PAT A).   Reexamination is requested in view of the substantial new questions of patentability ("SNQ") presented below.  Requester reserves all rights and defenses available including, without limitation, defenses as to invalidity and unenforceability.   By simply filing this Request in compliance with the Patent Rules, Requester does not represent, agree or concur that the '383 patent is enforceable[1] and by

---

[1] As alleged by Patent Owner in the below defined Underlying Litigation, and as required by 37 C.F.R. § 1.510(a), the '383 patent is still within its period of enforceability for reexamination purposes, to the extent that the '383 patent has not lapsed for failure to pay maintenance fees, has not been the subject of any Terminal Disclaimer, and has not yet been held unenforceable in a court of competent jurisdiction.

**EXHIBIT A**

asserting the SNQ herein, Requester specifically asserts that original claims 1-15 of the '383 patent are in fact not patentable and as such the U.S. Patent and Trademark Office (the "Office") should reexamine and find all claims unpatentable and cancel all claims of the '383 patent, rendering the '383 patent null, void and otherwise unenforceable.

Requester notes that the '383 patent, for which reexamination is requested, was asserted by Visto Corp, (hereinafter "the Patent Owner"), in the litigation *Research In Motion Limited vs. Visto Corporation.,* Case No. C-07-3177 (N.D. Cal. June 15, 2007) ("the Pending Litigation"). *See* Patent Owner's First Amended Answer to Complaint and Counterclaims filed Sept. 18, 2007 at Exhibit OTH-A. For purposes of this Request, the Requester has and will construe all claim language from the claims asserted by the patentee in the litigation in the manner proffered by Visto Corp. Such statements by the patentee may be used by the Office to interpret claim language at issue.[2] When the claims are interpreted in the manner proffered by Visto Corp., or even under a narrower, more reasonable interpretation of the claims, the claims are unpatentable in view of the prior art references presented herein.

By construing the claim language in the manner proffered by Visto Corp., and/or as otherwise set forth explicitly or implicitly herein, the Requester is not admitting and/or acquiescing as to the correctness and/or reasonableness of Visto Corp.'s proffered claim construction in the litigation and/or as otherwise set forth herein. In fact, the Requester expressly challenges, and will continue to vigorously challenge, Visto Corp.'s proffered claim construction, in whole or part, as the litigation continues.

The interpretation and/or construction of claims presented either implicitly or explicitly herein should not be viewed as constituting, in whole or in part, the Requester's own interpretation and/or construction of such unasserted claims, but instead, should be viewed as constituting an interpretation and/or construction of such claims that is consistent with Visto Corp.'s claim construction positions in the litigation. In fact, the Requester expressly reserves the right to present its own interpretation of these claims at a later time, which interpretation may differ, in whole or in part, from that presented herein.

---

[2] *See* 37 C.F.R.  § 1.104(c)(3): "In rejecting claims the examiner may rely upon admissions by the applicant, or the patent owner in a reexamination proceeding, as to any matter affecting patentability[.]"

**EXHIBIT A**

## I.  REQUIREMENTS FOR INTER PARTES REEXAMINATION UNDER 37 C.F.R. § 1.915

The Real Party in Interest is Research In Motion Ltd.  (referred to herein as "Requester") satisfies each requirement for *Inter Partes* reexamination of the '383 patent. A full copy of the '383 patent is submitted herein at Exhibit PAT-A in accordance with 37 C.F.R. § 1.915(b)(5).

Pursuant to 37 C.F.R. § 1.915(b)(7), Requester certifies that the estoppel provisions of 37 C.F.R. § 1.907 do not prohibit the filing of this *Inter Partes* reexamination.

 Pursuant to 37 C.F.R. §1.915(b)(4) a copy of every patent or printed publication relied upon to present an SNQ is submitted herein at Exhibits PA-A through Exhibits PA-J.  A citation of which may be found on the accompanying Form PTO-SB/08A at Exhibit PTO-SB/08A in accordance with 37 C.F.R. § 1.915(b)(2).  All of these cited prior art publications constitute effective prior art as to the claims of the '383 patent under 35 U.S.C. § 102 and 35 U.S.C. § 103.

A statement pointing out each substantial new question of patentability based on the cited patents and printed publication, and a detailed explanation of the pertinency and manner of applying the patents and printed publications to claims 1-15 of the '383 patent is presented below in accordance with 37 C.F.R. § 1.915 (b)(3).

A copy of this request has been served in its entirety on the patent owner in accordance with 37 C.F.R. § 1.915(b)(6) at the following address:

> OBLON, SPIVAK, MCCLELLAND MAIER & NEUSTADT, P.C.
>
> 1940 DUKE STREET
> ALEXANDRIA VA 22314

In accordance with 37 C.F.R. § 1.915(a), a credit card authorization to cover the Fee for reexamination of $8,800.00 is attached.  If this authorization is missing or defective please charge the Fee to the Novak Druce Deposit Account No.  14-1437.

10

**EXHIBIT A**

## II. OVERVIEW OF THE '383 PATENT AND SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY

> **Please see attached Exhibit PAT-C for a table presenting dependency chart for the dependent claims.**

### A. SUMMARY OF THE DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS OF THE '383 PATENT

The preferred embodiment of the '383 patent is directed to a system and method for allowing a user to update their portable electronic mail account to correspond to the contents of the user's regular electronic mail account. Col. 2, lines 27-31. Referring to Figure 1 of the '383 patent below; when a user at a Computer System (101) attempts to retrieve their electronic mail from the user's regular electronic mail account at Remote Computer (127), the system and method will conduct a retrieval and caching operation.



**Figure 1 of the '383 patent**

In the detailed description of the alleged invention in the '383 patent, the Patent Owner discloses a method for using a read-through cache to monitor the Computer System's status for determining if the local mail status is current as compared to the Remote Computer's mail status. Col. 4, lines 15-20 & 45-50. If the Computer System's

**EXHIBIT A**

(101) cache does not accurately reflect the mail status of Remote Computer, the retrieval and caching operation will update the contents of the Computer System's cache for future access by the user. Col. 4, lines 45-58.

The '383 patent allegedly discloses a method for more efficiently retrieving and updating the contents of the Computer System's data cache by retrieving, from the remote computer, discrete categories of data according to a hierarchical order. Col. 2, lines 23-26 & Col. 4, lines 59-64. As presented in the specification of the '383, exemplar embodiments of this system and method are directed to retrieving, in discrete categories, electronic mail data according to a hierarchical order. *See e.g.,* Specifically, during the highest hierarchical retrieval, the Computer System's local cache will update only the unique identifiers corresponding to the user's messages. Col. 5, lines 1-16. The second level of information for an electronic mail message is the metadata (e.g., title, subject, author, etc.) which may be retrieved and cached separately from the unique identifiers. Col. 5, lines 51-62. Following the metadata is the third level of information which would correspond to the entire text of the message. Col. 5, line 63 to Col. 4, line 6. Thus, during a third retrieval, the text could be updated. Col. 5, line 63 to Col. 4, line 6. Further, during a third retrieval operation, the forth category of information, corresponding to an attachment may be retrieved and stored in the Computer System's cache for each of the user's messages. Col. 6, lines 7-18.

### B. '383 PATENT APPLICATION PROSECUTION HISTORY

During the prosecution of the '383 patent, the Examiner repeatedly rejected original claims 1-7, 9-10, and 14-15 under 35 USC § 102 over M.C. Chan et al. "Application of Compaction Technique to Optimizing Wireless Email Transfer" IEEE Wireless Communications and Networking Conference 1999, p. 1535 Section A ("Chan"). *See* Exhibit PAT-B at Non-Final Office action dated March, 14, 2003; Non-Final Office action dated October 17, 2003; Final Office Action dated May 20, 2004; Final Office Action dated January 26, 2005. Original claims 8, and 11-13 were also repeatedly rejected under 35 USC § 103 as being obvious over Chan in view of U.S. Patent No. 6,052,735 to Ulrich et al. ("Ulrich"). *See* Exhibit PAT-B at Non-Final Office action dated March, 14, 2003; Non-Final Office action dated October 17, 2003; Final Office Action dated May 20, 2004; Final Office Action dated January 26, 2005.

**EXHIBIT A**

Specifically, with respect to claim 1, the examiner pointed to Chan as disclosing the following:

> in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items on page 1534 Section III 3rd paragraph lines 9-12; and

> in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items page 1534 Section III 3rd paragraph lines 10-12. [3]

To overcome the examiner's rejections, the Patent Owner made the following amendments to original claim 1:

> 1.  A method of caching information relating to a set of data items, comprising:

>> providing a first memory storing a set of data items; wherein information of each of the data items is categorized into hierarchical levels;

>> in a first retrieval operation, retrieving from the first memory and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items, wherein the first hierarchical level of information comprises at least one identifier for uniquely identifying each of the at least one of the data items; and

>> in a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information corresponding to the at least one of the data items,

---

[3] Page 1534 Section III 3rd paragraph of Chan discloses:

> In the server-to-client direction, a client receives notification of new email messages by receiving concise descriptions of these messages from the server. These descriptions contain the *sender name, date, message length* and *subject.* The client selectively retrieves emails by sending the name of the requested email and the set of reference messages to the server. The reference messages are chosen by the selection algorithm given the set of messages cached locally. From the implementation point of view, all reference to emails will be via unique integers generated by the server (e.g., the unique identifier or UID in IMAP4 can be used). On receiving the request, the server performs encoding using the set of reference objects and sent this encoded object to the client. Finally, the client receives and decodes the encoded object using locally cached reference objects.

**EXHIBIT A**

<u>wherein the second hierarchical level of information comprises
metadata for the at least one of the data items.</u>[4]

See Exhibit PAT-B at Response to Final Office Action (37 CFR §1.116) and Request for
Continued Examination (37 CFR §1.114) filed July 26, 2005 pg. 2.  Subsequently, in the
stated reason for allowance over Chan, the examiner pointed out that "Chan, the closest
available art of record, combines the unique identifier and metadata into a single
hierarchical level of information.  For this reason claim 1 is found allowable of the prior
art of record."[5] See Exhibit PAT-B at Non-Final Office Action dated October 3, 2005 pg.
4.

### C.  RELATED CO-PENDING LITIGATION REQUIRES TREATMENT WITH SPECIAL DISPATCH AND PRIORITY OVER ALL OTHER CASES

The '383 patent is presently the subject of litigation including *Research In Motion
Limited vs. Visto Corporation.,* Case No. C-07-3177 (N.D. Cal. June 15, 2007) ("the
Pending Litigation").  *See* Patent Owner's First Amended Answer to Complaint and
Counterclaims filed Sept. 18, 2007 at Exhibit OTH-A.  Additionally, please find attached
at Exhibit OTH-C, the scheduling order for the Pending Litigation.  *See* "Order Adopting
With Exception Case Management And Docket Control Order" in Research In Motion
Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007) at Exhibit
OTH-C.

---

[4] A patentee's decision to narrow his claims through amendment may be presumed to be a general
disclaimer of the territory between the original claim and the amended claim.  *Exhibit Supply Co. v. Ace
Patents Corp.*, 315 U.S.  126, 136-137 (1942) ("By the amendment [the patentee] recognized and
emphasized the difference between the two phrases and proclaimed his abandonment of all that is embraced
in that difference").  *Festo Corp.  v.  Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S.  722, 740
(2002).

[5] In litigation, Patent Owner has taken a different position with respect to unique identifiers being in a
separate hierarchical level.  Specifically, in "Visto's Disclosure of Asserted Claims and Infringement
Contentions under Patent Local Rule 3-1" the Patent Owner stated that an infringing device would carry
out a "first retrieval operation by retrieving only a **first hierarchical level** of information (including at least
a **unique message identifier and perhaps also e.g., message headers, message subject, or a specific
limited number of bytes of a message**)..." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims
and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto
Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) (emphasis added).  Thus, contrary to the
stated reason for allowance in prosecution, the Patent Owner is now arguing that in a first retrieval
operation, a unique identifier and metadata may be within the same hierarchical level.  In spite of Visto's
two inconsistent interpretations, the prior art submitted herein anticipates all claims of the '383.

**EXHIBIT A**

Pursuant to 35 U.S.C. § 314, it is respectfully urged that this Request be granted and reexamination conducted not only with "**special dispatch**," but also with "**priority over all other cases**" in accordance with MPEP § 2661, due to the ongoing nature of the underlying litigation.

Further, pursuant to the recently announced policy of the Office concerning revised reexamination procedures to provide for a scheduling-type order of expected substantive action dates in Requests ordered after the Office's 2005 fiscal year, Requester respectfully seeks such a scheduling order upon the granting of this Request

### D.  CLAIM CONSTRUCTION

Requester notes that the '383 patent, for which reexamination is requested, was asserted by Visto Corp, (hereinafter "the Patent Owner"), in the litigation *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007) ("the Pending Litigation").  *See* Patent Owner's First Amended Answer to Complaint and Counterclaims filed Sept. 18, 2007 at Exhibit OTH-A.  For purposes of this Request, the Requester has and will construe all claim language from the claims asserted by the patentee in the litigation in the manner proffered by Visto Corp.  Such statements by the patentee may be used by the Office to interpret claim language at issue.[6]  When the claims are interpreted in the manner proffered by Visto Corp., or even under a narrower, more reasonable interpretation of the claims, the claims are unpatentable in view of the prior art references presented herein.

By construing the claim language in the manner proffered by Visto Corp., and/or as otherwise set forth explicitly or implicitly herein, the Requester is not admitting and/or acquiescing as to the correctness and/or reasonableness of Visto Corp.'s proffered claim construction in the litigation and/or as otherwise set forth herein.  In fact, the Requester expressly challenges, and will continue to vigorously challenge, Visto Corp.'s proffered claim construction, in whole or part, as the litigation continues.

The interpretation and/or construction of such claims presented either implicitly or explicitly herein should not be viewed as constituting, in whole or in part, the Requester's

---

[6] *See* 37 C.F.R.  § 1.104(c)(3): "In rejecting claims the examiner may rely upon admissions by the applicant, or the patent owner in a reexamination proceeding, as to any matter affecting patentability[.]"

**EXHIBIT A**

own interpretation and/or construction of such unasserted claims, but instead, should be viewed as constituting an interpretation and/or construction of the claims that is consistent with Visto Corp.'s claim construction positions in the litigation. In fact, the Requester expressly reserves the right to present its own interpretation of these claims at a later time, which interpretation may differ, in whole or in part, from that presented herein.

This Request reflects a construction of applicable claim language from the Patent Owner's infringement contentions in the concurrent litigation. *See* OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No. C-07-3177 (N.D. Cal. June 15, 2007). In one example from the infringement contentions, the Patent Owner alleges that an infringing product would carry out a first retrieval operation by:

> retrieving only a first hierarchical level of information (including at least a **unique message identifier and perhaps also e.g., message headers, message subject, or a specific limited number of bytes of a message**) of PIM data or emails based on unique identifiers in a database using the unique identifiers to map the corresponding record to a Blackberry Smartphone or device.

Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No. C-07-3177 (N.D. Cal. June 15, 2007) (emphasis added). Contrary to the stated reason for allowance in prosecution (e.g., where the unique identifiers and metadata were in separate hierarchical levels), now the Patent Owner is arguing that a unique identifier and metadata may be within the same hierarchical level of information retrieved during a first retrieval operation. *See* Exhibit PAT-B at Non-Final Office Action dated October 3, 2005 pg. 4; *See also* Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No. C-07-3177 (N.D. Cal. June 15, 2007). In spite of Visto's two inconsistent interpretations, the prior art submitted herein anticipates all claims of the '383 under either interpretation.

In a second example from the infringement contentions, the Patent Owner alleges that a second retrieval operation, separate from the first retrieval operation, would be conducted by "retriev[ing] a second hierarchical level of information (including e.g.,

**further message headers, additional bytes of a message, or one or more attachments to the message**).” Exhibit OTH-B, “Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1” in *Research In Motion Limited vs. Visto Corporation.,* Case No. C-07-3177 (N.D. Cal. June 15, 2007) (emphasis added).

In a third example from the infringement contentions, the Patent Owner alleges that a predictive indicator could be an email “filter.”

> For example, a user can set preferences or ‘filters’ to specify for sending a first or second hierarchical level of information for the data items. A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance. These **filters are predictive indicators** which result in triggers for retrieving information.

Exhibit OTH-B, “Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1” in *Research In Motion Limited vs. Visto Corporation.,* Case No. C-07-3177 (N.D. Cal. June 15, 2007) (emphasis added).

When the claims are interpreted in the manner proffered by Visto Corp., or even under a narrower, more reasonable interpretation of the claims, the claims are unpatentable in view of the prior art references presented herein.

### E.    SUMMARY OF THE PRIOR ART

#### 1.    SHERMAN ‘409 PATENT

The Sherman ‘409 patent issued November 11, 2003 from application No. 09/352,279, filed July 13, 1999. The Sherman ‘409 patent constitutes effective prior art under 35 U.S.C. § 102.

The Sherman ‘409 patent discloses all of the limitations in the claims of the ‘383 patent including the limitations the Patent Owner added for allowance. Specifically, as can be seen from Figure 1 below, the Sherman ‘409 patent discloses a first memory (e.g., “server”) storing data items (e.g., “electronic items such as electronic mail messages”) in hierarchical levels. Sherman ‘409 at Fig. 1; Col. 3 line 65 through Col. 4, line 7.



**Figure 1 of Sherman '409**

Further, Sherman '409 discloses a first retrieval operation, retrieving from the first memory and storing into a second memory (e.g., "client computer system 22 is preferably a handheld personal computer") only a first hierarchical level of information corresponding to at least one of the data items. Sherman '409 at Col. 7, lines 31-50. Specifically, a user will request only a first hierarchical level of information comprising at least one identifier (e.g., "identification numbers") for uniquely identifying each of the at least one of the data items. Sherman '409 at Col. 7, lines 40-44. ("As an example, a request may be made for a list of only identification numbers (ID) related to each item on the email server that belongs to the user of the client H/PC.").

Further still, Sherman '409 discloses a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information (e.g., "header") corresponding to the at least one of the data items. Sherman '409 at Abstract. Specifically, Sherman '409 discloses that the second hierarchical level of information comprises metadata for the at least one of the data items. Sherman '409 at Col. 6, lines 54-57 ("header 113 has information about the email message 27 such as originator, addressee, time created and the subject of the email message 27. The header 113 may include other fields.")

18

The Sherman '409 patent was not before the Examiner during the prosecution of the '383 patent and has not been considered by the Office with regards to the '383 patent. The Sherman '409 patent anticipates claims 1-15 of the '383 patent. In the alternative, the Sherman '409 patent renders obvious, claims 10-15 of the '383 patent when viewed in light of the Sherman '214 patent. Also in the alternative, the Sherman '409 patent renders obvious, claim 10-15 of the '383 patent when viewed in light of the Boone reference.

## 2. BERN

Bern issued on May 24, 2005 from application No. 09/834,222, filed on April 12, 2001. Bern constitutes effective art under 35 USC §102.

Bern discloses all of the limitations in claims 1-9 of the '383 patent including the limitations the Patent Owner added for allowance. Specifically, Bern discloses a first memory (e.g., e-mail server based on an ICSA platform) for storing data items (e-mail) in hierarchical levels. Bern at Abstract; Col. 5, lines 1-7.

Further, Bern discloses a first retrieval operation, retrieving from the first memory and storing into a second memory (e.g., mail client on a mobile communications station) only a first hierarchical level of information corresponding to at least one of the data items. Bern at Col. 4, lines 1-19; Col. 6, lines 23-54; Col. 7, line 57 – Col. 8, line 2.

Specifically, a user will request only a first hierarchical level of information comprising at least one identifier (e.g., SMS notification with job identifier) for uniquely identifying each of the at least one of the data items. Bern at Col. 4, lines 1-19; Col. 6, lines 23-54; Col. 7, line 57 – Col. 8, line 2; *see also* Col. 3, lines 1-3 ("Thus, if an end-user wishes to identify and retrieve a particular e-mail from a mail server host he has to list all the UIDs of the e-mails in the mail box.").

Further still, Bern discloses a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information (retrieving header information only, retrieving first or second parts of an e-mail body, or any other possible manipulation of e-mail.) Bern at Col. 5, lines 1-7. Specifically, Bern discloses that the second hierarchical level of information comprises metadata for the at least one of the data items (e.g., header

**EXHIBIT A**

information.)  Bern at Col. 5, lines 1-7.  ("It should be understood that the expression to access an e-mail includes a number of possible operations with respect to the e-mail, such as retrieving the e-mail deleting it, forwarding it, reading its header information only, reading a first or a second part of the e-mail information body, or in any other way manipulating with, or retrieving information from, the e-mail.")

Bern was not before the Examiner during the prosecution of the '383 patent and has not been considered by the Office with regards to the '383 patent.  The Bern patent anticipates claims 1-9 of the '383 patent.  The Bern patent also renders obvious claims 10-15 of the '383 patent when viewed in light of the Sherman '409 patent, Sherman '214 patent and the Boone reference.

### 3.  RFC 2060

RFC 2060 was published in December 1996 as Request for Comments 2060. RFC 2060 constitutes effective prior art under 35 U.S.C. § 102.

RFC 2060 discloses all of the limitations in claims 1-3 and 5-9 of the '383 patent including the limitations the Patent Owner added for allowance.  Specifically, RFC 2060 discloses a first memory (e.g., "server") storing data items (e.g., "electronic mail messages") in hierarchical levels.  RFC 2060 at 1 ("IMAP4rev1 includes operations for . . . selective fetching of message attributes, texts, and portions thereof.").

Further, RFC 2060 discloses a first retrieval operation, retrieving from the first memory and storing into a second memory (e.g., "client") only a first hierarchical level of information corresponding to at least one of the data items.  RFC 2060 at 1 and 41-44. Specifically, a user will request only a first hierarchical level of information comprising at least one identifier (e.g., "Unique Identifier") for uniquely identifying each of the at least one of the data items.  RFC 2060 at 7-8 ("2.3.1.1. Unique Identifier (UID) Message Attribute—A 32-bit value assigned to each message, which when used with the unique identifier validity value (see below) forms a 64-bit value that is permanently guaranteed not to refer to any other message in the mailbox.").

Further still, RFC 2060 discloses a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information (e.g., "message attributes")

corresponding to the at least one of the data items.  *See e.g.,* RFC 2060 at 1.  Specifically, RFC 2060 discloses that the second hierarchical level of information comprises metadata for the at least one of the data items.  *See e.g.,* RFC 2060 at 7 ("In addition to message text, each message has several attributes associated with it.  These attributes may be retrieved individually or in conjunction with other attributes or message texts.")

Although RFC 2060 was before the Office with respect to the '383 patent, it was only submitted with respect to Section 2.3.1.1 and was never fully considered by the Examiner.  As presented herein, RFC 2060 anticipates claims 1-3 and 5-9 of the '383 patent.  In the alternative, RFC 2060 renders obvious claims 10-15 of the '383 patent when viewed in light of the Sherman '409 patent and further in view of the Sherman '214 patent.  Also in the alternative, the RFC 2060 reference renders obvious claim 10-13 and 15 of the '383 patent when viewed in light of the Boone reference.

### 4.  HALAHMI

Halahmi issued on January 27, 2004 from application No. 09/516,118, filed March 1, 2000.  Halahmi constitutes effective art under 35 USC §102.

Halahmi discloses all of the limitations in the claims of the '383 patent including the limitations the Patent Owner added for allowance.  Specifically, Halahmi discloses a first memory (e.g., e-mail server) storing data items (e.g., electronic mail messages) in hierarchical levels.  Halahmi at Col. 5, lines 40-52; Halahmi at Col. 6, lines 55-65.

Further, as can be seen from Figure 1 below, Halahmi discloses a first retrieval operation, retrieving from the first memory and storing into a second memory (e.g., "e-mail portion server") only a first hierarchical level of information corresponding to at least one of the data items.  Halahmi at Col. 5, lines 40-52; Halahmi at Col. 8, lines 1-39.  Specifically, a user will request only a first hierarchical level of information comprising at least one identifier (e.g., "The received list includes the message identification numbers.") for uniquely identifying each of the at least one of the data items.  Halahmi at Col. 8, lines 1-39.

**EXHIBIT A**



Fig. 1

**Halahmi at Figure 1.**

Further still, Halahmi discloses a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information (e.g., "header information") corresponding to the at least one of the data items. *See e.g.,* Halahmi at Col. 8, lines 16-20. Specifically, Halahmi discloses that the second hierarchical level of information comprises metadata for the at least one of the data items. *See e.g.,* Halahmi at Col. 8, lines 16-20. ("For example, the user could request to see only the identity of the sender and the subject of the e-mail message").

Halahmi was not before the Examiner during the prosecution of the '383 patent and has not been considered by the Office with regards to the '383 patent. As presented herein, the Halahmi patent anticipates claims 1-15 of the '383 patent. In the alternative, Halahmi renders obvious claims 10-15 of the '383 patent when viewed in light of the Sherman '409 patent and further in view of the Sherman '214 patent. Also in the alternative, the Halahmi patent renders obvious claim 10-15 of the '383 patent when viewed in light of the Boone reference.

EXHIBIT A

### 5.  ZERBER

Zerber issued on September 14, 1999 from application No. 08/984,750, filed on December 4, 1997.  Zerber constitutes effective art under 35 USC §102.

Zerber discloses all of the limitations in the claims of the '383 patent including the limitations the Patent Owner added for allowance.  Specifically, Zerber discloses a first memory (e.g., personal computers, workstations, minicomputers or mainframes) storing data items (e.g., e-mail) in hierarchical levels.  Zerber at Abstract; Col. 3, line 66 to Col. 4, line 5.

Further, as can be seen from Figure 3 below, Zerber discloses a first retrieval operation, retrieving from the first memory (e.g., personal computers, workstations, minicomputers or mainframes) and storing into a second memory (e.g., personal computers, laptops, palmtops or workstations) only a first hierarchical level of information corresponding to at least one of the data items.  Zerber at Abstract; Col. 3, line 66 to Col. 4, line 5.  Specifically, a user will request only a first hierarchical level of information comprising at least one identifier (e.g., URL information) for uniquely identifying each of the at least one of the data items.  Zerber at Abstract; Col. 3, line 66 to Col. 4, line 5.

**EXHIBIT A**



**Figure 3 of Zerber**

Further still, Zerber discloses a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information (e.g., message headers). *See e.g.,* Zerber at Abstract. Specifically, Zerber discloses that the second hierarchical level of information comprises metadata for the at least one of the data items. *See e.g.,* Zerber at Abstract. ("The client computer communicates a command to the mail server to parse messages in the folder to obtain message headers. The message headers are then downloaded to the client computer.").

Zerber was not before the Examiner during the prosecution of the '383 patent and has not been considered by the Office with regards to the '383 patent. As presented herein, the Zerber patent, which incorporates by reference RFC 1939, anticipates claims 1-15 of the '383 patent. In the alternative, Zerber renders obvious claims 10-15 of the '383 patent when viewed in light of the Sherman '409 patent and further in view of the

Sherman '214 patent.  Also in the alternative, the Zerber patent renders obvious claim 10-15 of the '383 patent when viewed in light of the Boone reference.

### 6. RFC 1939

RFC 1939 was published in May 1996 in Request for Comments 1939.  RFC 1939 constitutes effective art under 35 USC §102.

RFC 1939 is a publication directed to the POP3 protocol used for mail delivery from a remote server to a client.  RFC 1939 at 3.  RFC 1939 is incorporated by reference into the Zerber patent.  Zerber at Col. 10, lines 49-57.  RFC 1939 provides that the POP3 protocol is used for parsing messages at a remote POP3 server based on a unique identifier (e.g., "Unique-ID").  RFC 1939 at 12 ("The unique-id of a message is an arbitrary server-determined string, consisting of one to 70 characters in the range 0x21 to 0x7E, which uniquely identifies a message within a maildrop and which persists across sessions.").  More specifically, a user is able to receive data items (e.g., emails) in a first memory (e.g., server) and download them to a second memory (e.g., workstation) when a connection to the server is available.  RFC 1939 at 3.

RFC 1939 provides that may receive only a first hierarchical level of information comprising at least one identifier (e.g., UIDL) for uniquely identifying each of the at least one of the data items.  RFC 1939 at 12-13.

RFC 1939 was not before the Examiner during the prosecution of the '383 patent and has not been considered by the Office with regards to the '383 patent.  As presented herein, RFC 1939, as incorporated into the Zerber patent, anticipates claims 1-15 of the '383 patent.  Also in the alternative, RFC 1939, as incorporated by into the Zerber patent, renders obvious claim 10-15 of the '383 patent when viewed in light of the Boone reference.

### 7. AUSTEIN

Austein was published in November 1994 in Internet Draft: Disconnected Access.  Austein constitutes effective art under 35 USC §102.

Austein discloses all of the limitations in the claims of the '383 patent including the limitations the Patent Owner added for allowance.  Specifically, Austein discloses a

first memory (e.g., "server") storing data items (e.g., e-mail messages) in hierarchical levels.  Austein at 2.

Further, Austein discloses a first retrieval operation, retrieving from the first memory and storing into a second memory (e.g., "client") only a first hierarchical level of information corresponding to at least one of the data items.  Austein at 2, 4, 6. Specifically, a user will request only a first hierarchical level of information comprising at least one identifier (e.g., at a minimum, a message's "UID" and "FLAG" information) for uniquely identifying each of the at least one of the data items.  Austein at 2, 4, 6 ("At a minimum, the descriptor contains the message's UID and FLAGS.").

Further still, Austein discloses a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information (e.g., "interesting" messages or body parts) corresponding to the at least one of the data items.  *See e.g.,* Austein at 5. Specifically, Austein discloses that the second hierarchical level of information comprises metadata for the at least one of the data items.  *See e.g.,* Austein at 4 (e.g., Austein discloses that metadata can include, for example, author information, subject information, content information and message size information).

Austein was not before the Examiner during the prosecution of the '383 patent and has not been considered by the Office with regards to the '383 patent.  As presented herein, the Austein reference anticipates claims 1-15 of the '383 patent.   In the alternative, Austein renders obvious claims 10-15 of the '383 patent when viewed in light of the Sherman '409 patent and further in view of the Sherman '214 patent.  Also in the alternative, the Austein reference renders obvious claim 10-15 of the '383 patent when viewed in light of the Boone reference.

## 8.  PCMAIL

PCMAIL published in June 1988 from application in RFC 1056.   PCMAIL constitutes effective art under 35 USC §102.

PCMAIL discloses all of the limitations in the claims of the '383 patent including the limitations the Patent Owner added for allowance.  Specifically, PCMAIL discloses a

**EXHIBIT A**

first memory (e.g., a repository with a large amount of disk storage) storing data items (e.g., electronic mail messages) in hierarchical levels. PCMAIL at 2-3.

Further, PCMAIL discloses a first retrieval operation, retrieving from the first memory and storing into a second memory (e.g., workstation) only a first hierarchical level of information corresponding to at least one of the data items. PCMAIL at 16. Specifically, a user will request only a first hierarchical level of information comprising at least one identifier (e.g., fetch descriptors operation would result in a series of unique identifiers, representing the lower and upper bounds of the list) for uniquely identifying each of the at least one of the data items. PCMAIL at 16 ("The series is identified by a pair of message [Unique Identifiers] UIDs, representing the lower and upper bounds of the list.").

Further still, PCMAIL discloses a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information (e.g., message) corresponding to the at least one of the data items. *See e.g.,* PCMAIL at 17. Specifically, PCMAIL discloses that the second hierarchical level of information comprises metadata for the at least one of the data items. *See e.g.,* PCMAIL at 19-20. ("Fetch-changed descriptors").

PCMAIL was not before the Examiner during the prosecution of the '383 patent and has not been considered by the Office with regards to the '383 patent. As presented herein, PCMAIL anticipates claims 1-15 of the '383 patent. In the alternative, PCMAIL renders obvious claims 10-15 of the '383 patent when viewed in light of the Sherman '409 patent and further in view of the Sherman '214 patent. Also in the alternative, the PCMAIL reference renders obvious claim 10-15 of the '383 patent when viewed in light of the Boone reference.

### 9. BOONE

The Boone reference was published in 1998. The Boone reference constitutes effective prior art under 35 U.S.C. §103(a).

The Boone reference is directed to an intelligent email agent that is useful for downloading email from a first memory (e.g., a mail server) to a second memory (e.g., a palmtop computer utilizing the features of the Boone reference). Boone at 141.

**EXHIBIT A**

Specifically, the Boone reference provides for a machine learning technique such that information can be intelligently downloaded to the second memory using triggers, wherein at least one trigger is a predictive indicator predicting a user's preference for retrieving information (e.g., using a feature extraction approach).  Boone at 141-143.

The Boone reference was not before the Examiner during the prosecution of the '383 patent and has not been considered by the Office with regards to the '383 patent.  As presented herein, the Boone reference in combination Sherman '409 patent, the Bern patent, RFC 2060, the Halahmi patent, the Zerber patent which incorporates RFC 1939, the Austein reference and/or the PCMAIL reference renders obvious claims 10-15 of the '383 patent.  Furthermore, the combination of Boone with the prior art presented herein would have yielded the predictable result.  As outlined in *KSR*, the United States Supreme Court emphasized that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  127 S.Ct. at 1739, 82 USPQ2d at 1395 (citing *Graham v. John Deere Co.,* 383 U.S. 1, 12 (1966).  The Court provided further instruction stating that "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious."  *Id.* at 1740 (quoting *Sakraida* at 273.)  *See also Ex parte Catan,* Appeal 2007-0820 (BPAI July 3, 2007); *Ex Parte Kubin,* 2007-0819 (BPAI May 31, 2007)*; Ex Parte Smith,* Appeal 2007-1925 (BPAI June 25, 2007).

### 10. SHERMAN '214

The Sherman '214 patent issued January 7, 2003 from application No. 09/407,543, filed September 28, 1999.  The Sherman '214 patent constitutes effective prior under 35 U.S.C. §103(a).

As can be seen from Figure 1 below, the Sherman '214 patent discloses a first memory (e.g., "server") storing data items (e.g., "electronic items such as electronic mail messages") in hierarchical levels.  Sherman '214 at Fig. 1; Col. 6 line 20-41.



**Figure 1 of Sherman '214**

The Sherman '214 patent discloses a trigger may be a predictive indicator predicting a user's preference for retrieving information from the set of data items (e.g., "based on implicit perception of a user's desire to synchronize such information and without the need for explicit designation by the user"). Sherman '214 at Abstract, Col. 2, lines 22-36.

The Sherman '214 patent was not before the Examiner during the prosecution of the '383 patent and has not been considered by the Office with regards to the '383 patent. As presented herein, the Sherman '214 patent in combination with the Sherman '409 patent, the Bern patent, RFC 2060, the Halahmi patent, the Zerber patent which incorporates RFC 1939, the Austein reference and the PCMAIL reference renders obvious claims 10-15 of the '383 patent. Furthermore, the combination of Sherman '214 patent with the prior art presented herein would have yielded the predictable result. As outlined in *KSR*, the United States Supreme Court emphasized that "[t]he combination of

29

**EXHIBIT A**

familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." 127 S.Ct. at 1739, 82 USPQ2d at 1395 (citing *Graham v. John Deere Co.,* 383 U.S. 1, 12 (1966). The Court provided further instruction stating that "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *Id.* at 1740 (quoting *Sakraida* at 273.) *See also Ex parte Catan,* Appeal 2007-0820 (BPAI July 3, 2007); *Ex Parte Kubin,* 2007-0819 (BPAI May 31, 2007)*; Ex Parte Smith,* Appeal 2007-1925 (BPAI June 25, 2007).

### III. STATEMENT UNDER 37 C.F.R. § 1.915(b)(3) OF EACH SUBSTANTIAL NEW QUESTION OF PATENTABILITY

This Request is based on the cited prior art documents listed above and on the accompanying Form PTO-SB/08A. Exhibit PA-SB/08A. All of these cited prior art publications constitute effective prior art as to the claims of the '383 patent under 35 U.S.C. § 102 and 35 U.S.C. § 103.

1. Sherman '409 anticipates claims 1-15 of the '383 patent

2. Bern anticipates claims 1-9 of the '383 patent

3. RFC 2060 anticipates claims 1-3 and 5-9 of the '383 patent

4. Halahmi anticipates claims 1-15 of the '383 patent

5. Zerber, which incorporates by reference RFC 1939, anticipates claims 1-15 of the '383 patent

6. Austein anticipates claims 1-15 of the '383 patent

7. PCMAIL anticipates claims 1-15 of the '383 patent

8. Sherman '409 in view of Sherman '214 renders obvious claims 10-15 of the '383 patent

9. RFC 2060 in view of Sherman '409 and further in view of Sherman '214 renders obvious claims 10-15 of the '383 patent

10. Bern in view of Sherman '409 and further in view of Sherman '214 renders obvious claims 10-15 of the '383 patent

11. Halahmi in view of Sherman '409 and further in view of Sherman '214 rendering obvious claims 10-15 of the '383 patent

12. Zerber in view of Sherman '409 and further in view of Sherman '214 rendering obvious claims 10-15 of the '383 patent

13.        Austein in view of Sherman '409 and further in view of Sherman '214 rendering obvious claims 10-15 of the '383 patent

14.        PCMAIL in view of Sherman '409 and further in view of Sherman '214 rendering obvious claims 10-15 of the '383 patent

15.        Sherman '409 in view of Boone rendering obvious claims 10-15 of the '383 patent

16.        RFC 2060 in view of Boone rendering obvious claims 10-13 and 15 of the '383 patent

17.        Bern in view of Boone rendering obvious claims 10-15 of the '383 patent

18.        Halahmi in view of Boone rendering obvious claims 10-15 of the '383 patent

19.        Zerber in view of Boone rendering obvious claims 10-15 of the '383 patent

20.        Austein in view of Boone rendering obvious claims 10-15 of the '383 patent

21.        PCMAIL in view of Boone rendering obvious claims 10-15 of the '383 patent

## IV. CONCISE STATEMENT OF SUBSTANTIAL NEW QUESTION OF PATENTABILITY

Claims 1-15 of the '383 patent are fully anticipated under 35 U.S.C. § 102 by, and/or are unpatentable under 35 U.S.C. § 103 in view of, the several different prior art references cited herein, which were not previously considered by the Examiner during the examination of the '383 patent application or are discussed in a new light from the original prosecution of the '383 patent application.  Claims 1-15 of the '383 patent are set forth in detail in the attached claim charts (Exhibit CC-A through CC-U) that compare the limitations of the claims of the '383 patent to the pertinent prior art references.  As the claim charts demonstrate, claims 1-15 are unpatentable under 35 U.S.C.  § 102 and/or 35 U.S.C. § 103 in view of the prior art references under any reasonable interpretation of the claims, and especially when the claims are interpreted in the manner proffered by Visto Corp. in the above-referenced litigation.

### A. Claims 1-15 are Anticipated by Sherman '409 Under 35 U.S.C. § 102

> **Please see attached Exhibit CC-A presenting claim charts for comparison of the Sherman '409 patent with the claims of the '383 patent.**

1. CLAIM 1

Requester respectfully submits that claims 1-15 of the '383 patent are anticipated by Sherman '409 under 35 U.S.C. § 102 under either of the inconsistent claim interpretation positions taken by Visto Corp. in prosecution and litigation.[7] A claim chart applying Sherman '409 to these claims is submitted herewith as Exhibit CC-A.

1. Claim 1 of the '383 Patent

Claim 1 of the '383 patent reads as follows:

1. A method of caching information relating to a set of data items, comprising: providing a first memory storing a set of data items;

wherein information of each of the data items is categorized into hierarchical levels;

in a first retrieval operation, retrieving from the first memory and storing into a second memory only a first hierarchical level of information corresponding to at least one of the data items, wherein the first hierarchical level of information comprises at least one identifier for uniquely identifying each of the at least one of the data items;

and in a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information corresponding to

---

[7] In litigation, Patent Owner has taken a different position with respect to unique identifiers being in a separate hierarchical level. Specifically, in "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" the Patent Owner stated that an infringing device would carry out a "first retrieval operation by retrieving only a **first hierarchical level** of information (including at least a **unique message identifier and perhaps also e.g., message headers, message subject, or a specific limited number of bytes of a message**)..." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No. C-07-3177 (N.D. Cal. June 15, 2007) (emphasis added). Thus, contrary to the stated reason for allowance in prosecution, the Patent Owner is now arguing that in a first retrieval operation, a unique identifier and metadata may be within the same hierarchical level. In spite of Visto's two inconsistent interpretations, Sherman anticipates all claims of the '383 under either interpretation.

the at least one of the data items, wherein the second hierarchical level of information comprises metadata for the at least one of the data items.

Each of the elements in claim 1 is disclosed in Sherman '409. Sherman '409 discloses a method of caching information relating to a set of data items. Sherman '409 at Abstract. Specifically, Sherman '409 discloses a handheld client computing system would selectively retrieve data items from a server in a hierarchical order. Sherman '409 at Abstract.

The first element of claim 1 is "providing a first memory storing a set of data items; wherein information of each of the data items is categorized into hierarchical levels." Sherman '409 discloses a first memory storing a set of data items. Sherman '409 at Fig. 1; Col. 3, lines 54-56; Col. 3, line 65 through Col. 4, line 7. Specifically, Figure 1 of Sherman '409 shows an "Internet server or an Intranet server" as a first memory store, which sends and receives data items such as electronic mail messages. Sherman '409 at Col. 3, line 65 through Col. 4, line 7.

Further, Sherman '409 discloses that the data items are categorized into hierarchical levels. Sherman '409 at Abstract. Specifically, Sherman '409 discloses that the data items, which are categorized into hierarchical levels, may be retrieved by a handheld client in parts. Sherman '409 at Abstract; Col. 6, lines 47-60.

The second element of claim 1 is "in a first retrieval operation, retrieving from the first memory and storing into a second memory only a first hierarchical level of information[8] corresponding to at least one of the data items, wherein the first hierarchical level of information comprises at least one identifier for uniquely identifying each of the at least one of the data items." As can be seen from Figure 1 below, Sherman '409 discloses that during a first retrieval operation, only a first hierarchical level of

---

[8] In litigation, Patent Owner has taken a different position with respect to unique identifiers being in a separate hierarchical level. Specifically, in "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" the Patent Owner stated that an infringing device would carry out a "first retrieval operation by retrieving only a **first hierarchical level** of information (including at least a **unique message identifier and perhaps also e.g., message headers, message subject, or a specific limited number of bytes of a message**). ..." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No. C-07-3177 (N.D. Cal. June 15, 2007) (emphasis added). Thus, contrary to the stated reason for allowance in prosecution, the Patent Owner is now arguing that in a first retrieval operation, a unique identifier and metadata may be within the same hierarchical level. In spite of Visto's two inconsistent interpretations, the prior art submitted herein anticipates all claims of the '383.

**EXHIBIT A**

information is downloaded from the first memory and stored into a second memory. Sherman '409 at Fig. 1; Abstract; Col. 3, lines 54-56; Col. 3, lines 59-62; Col. 4, line 49 to Col. 5, line 18. Specifically, Sherman '409 provides that the second memory (e.g., "handheld personal computer") downloads a first hierarchical level of information (e.g., item identification information) from the first memory (e.g., server on the client/server network."). Sherman '409 at Abstract; Col. 7, lines 31-50; Col. 6, lines 50-53; Col. 7, lines 40-44.



**Figure 1 of Sherman '409**

Furthermore, Sherman '409 discloses that the first hierarchical level of information comprises at least one identifier for uniquely identifying the data items. Sherman at Col. 6, lines 50-53. Specifically, Sherman '409 provides that "The ID 111 is used internally by the H/PC 22 or the server 24 to identify the file and may be simple as

EXHIBIT A

an integer or more complex as a file name or other ID string." Sherman at Col. 6, lines 50-53.

The third element of claim 1 is "and in a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the second hierarchical level of information comprises metadata for the at least one of the data items." Sherman '409 discloses a second retrieval operation that is separate from the first retrieval operation. Sherman '409 at Abstract; Col. 7, lines 50-54; Col. 10, lines 7-17. Specifically, Sherman '409 provides that after the second memory (e.g., a "handheld client computing system") downloads identification information from the server, the second memory will download a second hierarchical level of information (e.g., "header information"). Sherman '409 at Abstract; Col. 7, lines 50-54; Col. 10, lines 7-17.

2.    Claim 2 of the '383 Patent

Claim 2 of the '383 patent reads as follows:

2.  The method of caching information recited in claim 1, wherein the data items are electronic data files.

Sherman '409 discloses that data items are electronic data files. Sherman '409 at Col. 6, lines 57-59. Specifically, Sherman provides that data items may be email messages, text, graphics, other files or attachments. Sherman '409 at Col. 6, lines 57-59.

3.    Claim 3 of the '383 Patent

Claim 3 of the '383 patent reads as follows:

3.  The method of caching information recited in claim 2, wherein the electronic data files are electronic mail message data files.

Sherman '409 discloses that data items are electronic mail messages. Sherman '409 at Col. 6, lines 57-59. Specifically, Sherman provides that data items may be email messages. Sherman '409 at Col. 6, lines 57-59.

4.    Claim 4 of the '383 Patent

Claim 4 of the '383 patent reads as follows:

4.  The method of caching information recited in claim 1, wherein the at least one identifier for uniquely identifying each of the at least one of the data items is selected to comprise Unique Identification Listing (UIDL) identifier.

Sherman '409 discloses that at least one identifier for uniquely identifying each of the data items is a Unique Identification Listing (UIDL) identifier.  Sherman '409 at Col. 6, lines 47-60; Col. 7, lines 31-50.  Specifically, Sherman '409 provides that the server will respond to a request operation by a sending to the handheld personal computer a list of only identification numbers relating to the email on the server that belongs to the client.  Sherman '409 at Col. 6, lines 47-60; Col. 7, lines 31-50.

5.    Claim 5 of the '383 Patent

Claim 5 of the '383 patent reads as follows:

5.  The method of caching information recited in claim 1, wherein the metadata includes one or more data selected from the group consisting of: a title of the at least one of the data items, a subject of the at least one of the data items, an author of the at least one of the data items, and a size of the at least one of the data items.

Sherman '409 discloses that the metadata includes more data selected from the group consisting of a title of the at least one of the data items, a subject of the at least one of the data items, an author of the at least one of the data items, and a size of the at least one of the data items.  Sherman '409 at Col. 6, lines 54-67.  Specifically, Sherman '409 provides that "header 113 has information about the email message 27 such as originator, addressee, time created and the subject of the email message 27.  The header 113 may include other fields." Sherman '409 at Col. 6, lines 54-57.

6.    Claim 6 of the '383 Patent

Claim 6 of the '383 patent reads as follows:

6.  The method of caching information recited in claim 1, wherein the first memory corresponds to a user's regular electronic mail account, and the second memory corresponds to a user's portable electronic mail account.[9]

---

[9] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Blackberry Server) while the user's portable electronic mail account is on the second memory (e.g., Blackberry smartphone or device.)  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.*

**EXHIBIT A**

Sherman discloses that a first memory may correspond to a user's regular electronic mail account while the second memory corresponds to the user's portable electronic mail account. Sherman '409 at Abstract. Specifically, Sherman discloses that a second memory (e.g., handheld personal computer) may be used to selectively download from the users regular mail account on a first memory (e.g., server). Sherman '409 at Abstract.

       7.    <u>Claim 7 of the '383 Patent</u>

Claim 7 of the '383 patent reads as follows:

> 7. The method of caching information recited in claim 1, wherein the data items are electronic mail messages, and further comprising: in a third retrieval operation separate from the first and second retrieval operations, retrieving and storing into the memory only a third hierarchical level of information corresponding to the at least one of the electronic mail messages.[10]

Sherman '409 discloses a third retrieval operation, separate from the first and second retrieval operations, for retrieving a third hierarchical level of information corresponding to an electronic mail messages. Sherman '409 at Abstract; Col. 10, lines 25-43. Specifically, after an items header information is downloaded, control shifts to download body information from the server to the handheld personal computer. Sherman '409 at Col. 10, lines 25-43.

       8.    <u>Claim 8 of the '383 Patent</u>

Claim 8 of the '383 patent reads as follows:

> 8. The method of caching information recited in claim 7, wherein the third level of hierarchical information is an attachment to the at least one of the electronic mail messages.

---

*Visto Corporation.,* Case No. C-07-3177 (N.D. Cal. June 15, 2007) ("The first memory may correspond to a BlackBerry server and the second memory may correspond to a BlackBerry Smartphone or device.")

[10] In litigation, Patent Owner has taken the position that a third hierarchical level of information could include "further message headers, additional bytes of a message, or one or more attachments to the message." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

Sherman '409 discloses that the third hierarchical level of information is an attachment to the at least one electronic mail messages.  Sherman at Col. 6, lines 47-60; Col. 13, lines 41-47.  Specifically, Sherman '409 provides that "the body 115 ...  may include text, graphics, other files or attachments."  Sherman '409 at Col. 6, lines 47-60.  Further, Sherman '409 provides that a user may choose between downloading the header, a complete message, a specific number of lines, or whether to download attachments.  Sherman '409 at Col. 13, lines 41-47.

9.    Claim 9 of the '383 Patent

Claim 9 of the '383 patent reads as follows:

9.   The method of caching information recited in claim 7, wherein the third level of hierarchical information is text content of the body of the at least one of the electronic mail messages.

Sherman '409 discloses that the third hierarchical level of information is text content of the body to the at least one electronic mail messages.  Sherman at Col. 6, lines 47-60; Col. 13, lines 41-47.  Specifically, Sherman '409 provides that "the body 115 ... may include text, graphics, other files or attachments."  Sherman '409 at Col. 6, lines 47-60.  Further, Sherman '409 provides that a user may choose between downloading the header, a complete message, a specific number of lines, or whether to download attachments.  Sherman '409 at Col. 13, lines 41-47.

10.    Claim 10 of the '383 Patent

Claim 10 of the '383 patent reads as follows:

10.   A method of caching information relating to a set of data items, comprising:

in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items;

and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger;

and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items.

Each of the elements in claim 10 is disclosed in Sherman '409. Sherman '409 discloses a method of caching information relating to a set of data items. Sherman '409 at Abstract. Specifically, Sherman '409 discloses a handheld client computing system would selectively retrieve data items from a server in a hierarchical order. Sherman '409 at Abstract.

The first element of claim 10 is "in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items." Sherman '409 discloses that during a first retrieval operation, only a first hierarchical level of information is downloaded from the first memory and stored into a second memory. Sherman '409 at Fig. 1; Abstract; Col. 3, lines 54-56; Col. 3, lines 59-62; Col. 4, line 49 to Col. 5, line 18. Specifically, Sherman '409 provides that "initially, the H/PC (handheld personal computer) downloads item identification information from the server on the client/server network." Sherman '409 at Abstract; Col. 7, lines 31-50; Col. 6, lines 50-53; Col. 7, lines 40-44.

The second element of claim 10 is "and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger."[11] Sherman '409 discloses a second retrieval operation that is separate from the first retrieval operation. Sherman '409 at Abstract; Col. 7, lines 50-54; Col. 10, lines 7-17. Specifically, Sherman '409 provides that after the handheld client computing system downloads identification information from the server, the

---

[11] In litigation, Patent Owner has taken the position that triggers are defined in the specification in "very broad terms" and "may include a variety of input or operations that specific [sic] the caching of different hierarchical levels of information (e.g., based on user preferences, which set the triggers to filter messages, a trigger to view additional content of an email, or to retrieve attachments). The patent also discusses 'notifications' to update the data cache as potential triggers." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No. C-07-3177 (N.D. Cal. June 15, 2007).

handheld client computing system will download header information.  Sherman '409 at Abstract; Col. 7, lines 50-54; Col. 10, lines 7-17.

Further, Sherman '409 provides for a first retrieval operation initiated by a first trigger, and a second retrieval operation initiated by a second trigger.  Sherman '409 at Abstract; Col. 7, lines 50-54; Col. 10, lines 7-17.  Specifically, the handheld client computing system selectively retrieves items based on multiple triggers (e.g., request operations).  Sherman '409 at Abstract; Col. 7, lines 50-54; Col. 10, lines 7-17.

The third element of claim 10 is "and wherein at least one of the first trigger and the second trigger is a predictive indicator[12] predicting a user's preferences for retrieving information from the set of data items."  Sherman '409 provides that the first or second trigger is a predictive indicator for retrieving data items based on a user's preference. Sherman '409 at Col. 8, lines 50-62; Col. 11, lines 57-67; Col. 12, lines 39-46. Specifically, Sherman '409 provides that an IMAP server has filtering capabilities and decides to issue a download operation based on a determination of whether the data items fall within a specific filter criterion.  Sherman '409 at Col. 8, lines 50-62; Col. 11, lines 57-67; Col. 12, lines 39-46.

11.    Claim 11 of the '383 Patent

Claim 11 of the '383 patent reads as follows:

11.  The method of caching information recited in claim 10, wherein the set of data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.[13]

---

[12] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items.  A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance.  These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007) (emphasis added).

[13] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Exchange/Domino Servers) while the user's portable electronic mail account is on the second memory (e.g., BES, BlackBerry Infrastructure or BlackBerry client device.)  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007) ("The

Sherman '409 discloses that a first memory may correspond to a user's regular electronic mail account while the second memory corresponds to the user's portable electronic mail account.  Sherman '409 at Abstract.  Specifically, Sherman discloses that a handheld personal computer may be used to selectively download from the users regular mail account on a server.  Sherman '409 at Abstract.

12.    Claim 12 of the '383 Patent

Claim 12 of the '383 patent reads as follows:

12.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.[14]

Sherman '409 provides that a user's preference for retrieving electronic mail messages is based on whether the message is authored by a particular person.  Sherman '409 at Col. 8, lines 50-62.  Specifically, Sherman '409 provides that an IMAP server has filtering capabilities that only returns items that satisfy the filter criterion.  Sherman '409 at Col. 8, lines 50-62.

13.    Claim 13 of the '383 Patent

Claim 13 of the '383 patent reads as follows:

13.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on a number of unopened electronic mail messages.[15]

Sherman '409 provides that a user's preference for retrieving electronic mail messages is based on whether the number of unopened electronic mail messages.

---

first memory may correspond to the Exchange/Domino Servers and the second memory may correspond to the BES, BlackBerry Infrastructure or the BlackBerry client device.")

[14] In litigation, Patent Owner has taken the position that a system that uses filters to implement a user's preference for retrieving email would infringe claim 12.  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

[15] In litigation, Patent Owner has taken the position that a system preference that allows for "filtering only new electronic mail messages which enables a user preference for retrieving information based on a number (e.g., one) of unopened (e.g., new) electronic mail messages." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

**EXHIBIT A**

Sherman '409 at Col. 8, lines 50-62.  Specifically, Sherman '409 provides that an IMAP server has filtering capabilities that only returns items that satisfy the filter criteria. Sherman '409 at Col. 8, lines 50-62.

### 14.    Claim 14 of the '383 Patent

Claim 14 of the '383 patent reads as follows:

14.  The method of caching information recited in claim 10, wherein the data items are file directory information.[16]

Sherman '409 discloses that data items are file directory information.  Sherman '409 at Col. 6, lines 57-59; Col. 7, lines 31-50.  Specifically, Sherman '409 discloses downloading "preliminary information wherein each element in the list relates to a particular item on the server.  Importantly, the list of preliminary information received from the server does not consume substantial memory space on the H/PC 22." Sherman '409 at Col. 7, lines 31-50.  Accordingly, Sherman '409 provides file directory information (e.g., a list of items on the server) reflects the "changes that you make to the email message folder on your computer.  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) (receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network").

### 15.    Claim 15 of the '383 Patent

Claim 15 of the '383 patent reads as follows:

15.  The method of caching information recited in claim 10, wherein the data items are electronic mail message data files.

Sherman '409 discloses that data items are mail message data files.  Sherman '409 at Col. 6, lines 46-47.  Specifically, Sherman '409 discloses that the subject of the request for data items is email messages.  Sherman '409 at Col. 6, lines 46-47.

---

[16] In litigation, Patent Owner has taken the position that receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

## B.  Claims 1-9 are Anticipated by Bern Under 35 U.S.C. § 102

> **Please see attached Exhibit CC-B presenting claim charts for comparison of the Bern patent with the claims of the '383 patent.**

### 1.    CLAIM 1

Requester respectfully submits that claims 1-9 of the '383 patent are anticipated by Bern under 35 U.S.C. § 102 under either of the inconsistent positions taken by Visto Corp. in prosecution and litigation.[17]   A claim chart applying Bern to these claims is submitted herewith as Exhibit CC-B.

### 1.    Claim 1 of the '383 Patent

Claim 1 of the '383 patent reads as follows:

1.    A method of caching information relating to a set of data items, comprising: providing a first memory storing a set of data items;

wherein information of each of the data items is categorized into hierarchical levels;

in a first retrieval operation, retrieving from the first memory and storing into a second memory only a first hierarchical level of information corresponding to at least one of the data items, wherein the first hierarchical level of information comprises at least one identifier for uniquely identifying each of the at least one of the data items;

and in a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information corresponding to

---

[17] In litigation, Patent Owner has taken a different position with respect to unique identifiers being in a separate hierarchical level.  Specifically, in "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" the Patent Owner stated that an infringing device would carry out a "first retrieval operation by retrieving only a **first hierarchical level** of information (including at least a **unique message identifier and perhaps also e.g., message headers, message subject, or a specific limited number of bytes of a message**)..." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) (emphasis added).  Thus, contrary to the stated reason for allowance in prosecution, the Patent Owner is now arguing that in a first retrieval operation, a unique identifier and metadata may be within the same hierarchical level.  In spite of Visto's two inconsistent interpretations, Bern anticipates all claims of the '383 under either interpretation.

**EXHIBIT A**

the at least one of the data items, wherein the second hierarchical level of information comprises metadata for the at least one of the data items.

Each of the elements in claim 1 is disclosed in Bern. Bern discloses caching information relating to a set of data items. Bern at Col. 2, lines 20-36. Specifically, Bern discloses that POP3 and IMAP4 can be used to allow multiple computers (e.g., "a stationary computer at the office and a portable computer during travel...") to access e-mail either on-line or off-line. Bern at Col. 2, lines 20-36.

The first element of claim 1 is "providing a first memory storing a set of data items; wherein information of each of the data items is categorized into hierarchical levels." Bern discloses Bern discloses a first memory storing a set of data items. Bern at Col. 6, lines 41-54. Specifically, Bern provides that a mail server is based on an ICSA platform that stores e-mails, SMS messages, subscriber information etc. Bern at Col. 6, lines 41-54.

Further, Bern discloses that information of each of the data items is categorized into hierarchical levels. Bern at Abstract; Col. 5, lines 1-7. Specifically, Bern provides that with IMAP or POP3 protocol, e-mail is categorized into levels (e.g., UID, header, body, etc.) Bern at Col. 5, lines 1-7.

The second element of claim 1 is "in a first retrieval operation, retrieving from the first memory and storing into a second memory only a first hierarchical level of information[18] corresponding to at least one of the data items, wherein the first hierarchical level of information comprises at least one identifier for uniquely identifying each of the at least one of the data items." Bern discloses a first retrieval operation, retrieving from the first memory and storing into a second memory only a first hierarchical level of information corresponding to at least one of the data items. Bern at

---

[18] In litigation, Patent Owner has taken a different position with respect to unique identifiers being in a separate hierarchical level. Specifically, in "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" the Patent Owner stated that an infringing device would carry out a "first retrieval operation by retrieving only a **first hierarchical level** of information (including at least a **unique message identifier and perhaps also e.g., message headers, message subject, or a specific limited number of bytes of a message**). . ." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007) (emphasis added). Thus, contrary to the stated reason for allowance in prosecution, the Patent Owner is now arguing that in a first retrieval operation, a unique identifier and metadata may be within the same hierarchical level. In spite of Visto's two inconsistent interpretations, the prior art submitted herein anticipates all claims of the '383.

**EXHIBIT A**

Col. 4, lines 1-19; Col. 6, lines 23-54; Col. 7, line 57 – Col. 8, line 2. Specifically, Bern provides that a second memory (e.g., mail client on a mobile communications station) retrieves from a first memory (e.g., "mail server site") a first hierarchical level of information (e.g., "SMS short message which includes the job identifier of the received and stored e-mail message"). Bern at Col. 4, lines 1-19; Col. 6, lines 23-54; Col. 7, line 57 – Col. 8, line 2.

With respect to a second memory, Bern provides that "it is to be understood that what is meant by the expression mobile communication station in this document is either a stand-alone RF (Radio Frequency) transceiver having processing capabilities and displaying means, such as a mobile telephone or a hand-held PDA (Personal Digital Assistant), or, a RF transceiver together with any kind of portable or stationary equipment having processing capabilities, such as a portable laptop computer or a stationary personal computer, wherein the RF transceiver is arranged in communication with the portable or stationary equipment." Bern at Col. 5, lines 8-17.

Further, Bern discloses that a first hierarchical level of information comprises at least one identifier for uniquely identifying each of the at least one of the data items. Bern at Col. 6, lines 23-54. Specifically, Bern provides that a unique identifier (e.g., "SMS notification") is sent to a second memory (e.g., mail client on a mobile communication station) over a GSM network such that the user of the mobile communication station can retrieve the e-mail stored at the first memory. Bern at Col. 6, lines 23-54.

The third element of claim 1 is "a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the second hierarchical level of information comprises metadata for the at least one of the data items." Bern discloses a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information corresponding to the at least one of the data items. Bern at Col. 5, lines 1-7; Col. 6, lines 33-40. Specifically, Bern provides that in a second retrieval operation, a user at a second

**EXHIBIT A**

memory (e.g., "mobile communication station") uses the unique identifier (e.g., "SMS notification") to access a second hierarchical level of information.  Bern at Col. 6, lines 33-40.  Bern describes that accessing a second hierarchical level of information should be understood to mean a number of possible operations, e.g., retrieving header information only, retrieving first or second parts of an e-mail body, or any other possible manipulation of e-mail.  Bern at Col. 5, lines 1-7.

Further, Bern provides that the second hierarchical level of information comprises metadata for the at least one of the data items.  Bern at Col. 5, lines 1-7.  Specifically, Bern provides for the retrieval of header information only.  Bern at Col. 5, lines 1-7.

> 2.     Claim 2 of the '383 Patent

Claim 2 of the '383 patent reads as follows:

> 2.  The method of caching information recited in claim 1, wherein the data items are electronic data files.

Bern discloses that the data items are electronic data files.  Bern at Abstract. Specifically, Bern provides that data items are electronic data files (e.g., e-mail).  Bern at Abstract.

> 3.     Claim 3 of the '383 Patent

Claim 3 of the '383 patent reads as follows:

> 3.  The method of caching information recited in claim 2, wherein the electronic data files are electronic mail message data files.

Bern discloses that the electronic data files are electronic mail message data files. Bern at Abstract.  Specifically, Bern provides that the data files are electronic mail message data files (e.g., e-mail).  Bern at Abstract.

> 4.     Claim 4 of the '383 Patent

Claim 4 of the '383 patent reads as follows:

> 4.  The method of caching information recited in claim 1, wherein the at least one identifier for uniquely identifying each of the at least one of the data items is selected to comprise Unique Identification Listing (UIDL) identifier.

Bern discloses that at least one identifier for uniquely identifying each of the at least one of the data items is selected to comprise Unique Identification Listing (UIDL)

**EXHIBIT A**

identifier.  Bern at Col. 2, line 48 – Col. 3, lines 20.  Specifically, Bern provides that "UIDs can be listed with a UIDL command which returns UIDs for each e-mail in the mail box."  Bern at Col. 2, line 57-59.

        5.      Claim 5 of the '383 Patent

Claim 5 of the '383 patent reads as follows:

> 5.  The method of caching information recited in claim 1, wherein the metadata includes one or more data selected from the group consisting of: a title of the at least one of the data items, a subject of the at least one of the data items, an author of the at least one of the data items, and a size of the at least one of the data items.

Bern discloses that metadata includes one or more data selected from the group consisting of: a title of the at least one of the data items, a subject of the at least one of the data items, an author of the at least one of the data items, and a size of the at least one of the data items.  Bern at Col. 5, lines 1-7.  Specifically, Bern provides that metadata includes header information of an e-mail.  Bern at Col. 5, lines 1-7.

        6.      Claim 6 of the '383 Patent

Claim 6 of the '383 patent reads as follows:

> 6.  The method of caching information recited in claim 1, wherein the first memory corresponds to a user's regular electronic mail account, and the second memory corresponds to a user's portable electronic mail account.[19]

Bern discloses that the first memory corresponds to a user's regular electronic mail account, and the second memory corresponds to a user's portable electronic mail account.  Bern at Col. 2, lines 29-38.  Specifically, Bern provides that a first memory (e.g., e-mail server) stores the users regular electronic mail account while the second memory (e.g., mail client on a portable computer) stores the user's portable electronic mail account.  Bern at Col. 2, lines 29-38.

---

[19] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Blackberry Server) while the user's portable electronic mail account is on the second memory (e.g., Blackberry smartphone or device.)  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) ("The first memory may correspond to a BlackBerry server and the second memory may correspond to a BlackBerry Smartphone or device.")

**EXHIBIT A**

7.    Claim 7 of the '383 Patent

Claim 7 of the '383 patent reads as follows:

7.  The method of caching information recited in claim 1, wherein the data items are electronic mail messages, and further comprising: in a third retrieval operation separate from the first and second retrieval operations, retrieving and storing into the memory only a third hierarchical level of information corresponding to the at least one of the electronic mail messages.[20]

Bern discloses a third retrieval operation separate from the first and second retrieval operations, retrieving and storing into the memory only a third hierarchical level of information corresponding to the at least one of the electronic mail messages.  Bern at Col. 6, lines 33-40; Col. 5, lines 1-7.  Specifically, Bern provides that after a user receives the first hierarchical level of information (e.g., "SMS notification") he can use the identifier to access e-mail at the first memory (e.g., e-mail server).  Bern at Col. 6, lines 33-40.  In the third retrieval operation, the user would access either a part or all of the e-mail body information.  Bern at Col. 5, lines 1-7.

8.    Claim 8 of the '383 Patent

Claim 8 of the '383 patent reads as follows:

8.  The method of caching information recited in claim 7, wherein the third level of hierarchical information is an attachment to the at least one of the electronic mail messages.

Bern discloses that the third level of hierarchical information is an attachment to the at least one of the electronic mail messages.  Bern at Col. 6, lines 33-40; Col. 5, lines 1-7.  Specifically, Bern provides that after a user receives the first hierarchical level of information (e.g., "SMS notification") he can use the identifier to access e-mail at the first memory (e.g., e-mail server).  Bern at Col. 6, lines 33-40.  In the third retrieval operation, the user would access either a part or all of the e-mail body information "or in

---

[20] In litigation, Patent Owner has taken the position that a third hierarchical level of information could include "further message headers, additional bytes of a message, or one or more attachments to the message."  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

any other way manipulating with, or retrieving information from, the e-mail."  Bern at Col. 5, lines 1-7.

          9.    Claim 9 of the '383 Patent

Claim 9 of the '383 patent reads as follows:

9.  The method of caching information recited in claim 7, wherein the third level of hierarchical information is text content of the body of the at least one of the electronic mail messages.

Bern discloses that the third level of hierarchical information is text content of the body of the at least one of the electronic mail messages.  Bern at Col. 6, lines 33-40; Col. 5, lines 1-7.  Specifically, Bern provides that after a user receives the first hierarchical level of information (e.g., "SMS notification") he can use the identifier to access e-mail at the first memory (e.g., e-mail server).  Bern at Col. 6, lines 33-40.  In the third retrieval operation, the user would access either a part or all of the e-mail body information "or in any other way manipulating with, or retrieving information from, the e-mail."  Bern at Col. 5, lines 1-7.

**C.  Claims 1-3 and 5-9 are Anticipated by RFC 2060 Under 35 U.S.C.  § 102**

> **Please see attached Exhibit CC-C presenting claim charts for comparison of the RFC 2060 reference with the claims of the '383 patent.**

          1.    CLAIM 1

Requester respectfully submits that claims 1-3 and 5-10 of the '383 patent are anticipated by RFC 2060 under 35 U.S.C.  § 102 under either of the inconsistent claim interpretation positions taken by Visto Corp. in prosecution and litigation.[21]  A claim chart applying RFC 2060 to these claims is submitted herewith as Exhibit CC-C.

---

[21] In litigation, Patent Owner has taken a different position with respect to unique identifiers being in a separate hierarchical level.  Specifically, in "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" the Patent Owner stated that an infringing device would carry out a "first retrieval operation by retrieving only a **first hierarchical level** of information (including at least a **unique message identifier and perhaps also e.g., message headers, message subject, or a specific**

1.     Claim 1 of the '383 Patent

Claim 1 of the '383 patent reads as follows:

1.     A method of caching information relating to a set of data items, comprising: providing a first memory storing a set of data items;

wherein information of each of the data items is categorized into hierarchical levels;

in a first retrieval operation, retrieving from the first memory and storing into a second memory only a first hierarchical level of information corresponding to at least one of the data items, wherein the first hierarchical level of information comprises at least one identifier for uniquely identifying each of the at least one of the data items;

and in a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the second hierarchical level of information comprises metadata for the at least one of the data items.

Each of the elements in claim 1 is disclosed in RFC 2060. RFC 2060 discloses a method of caching information relating to a set of data items. RFC 2060 at 1. Specifically, RFC 2060 provides that a client accesses, fetches and manipulates electronic mail stored on a remote server. RFC 2060 at 1.

The first element of claim 1 is "providing a first memory storing a set of data items; wherein information of each of the data items is categorized into hierarchical levels." RFC 2060 discloses a first memory storing a set of data items. RFC 2060 at 1. Specifically, RFC 2060 provides that electronic messages are stored on a server. RFC 2060 at 1.

Further, RFC 2060 discloses that the data items are categorized into hierarchical levels. RFC 2060 at 1; 41. Specifically, RFC 2060 discloses that the data items, which are categorized into hierarchical levels at the server, may be fetched in portions. RFC 2060 at 1; 41.

---

limited number of bytes of a message)..." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) (emphasis added).  Thus, contrary to the stated reason for allowance in prosecution, the Patent Owner is now arguing that in a first retrieval operation, a unique identifier and metadata may be within the same hierarchical level.  In spite of Visto's two inconsistent interpretations, RFC 2060 anticipates all claims of the '383 under either interpretation.

The second element of claim 1 is "a first retrieval operation, retrieving from the first memory and storing into a second memory only a first hierarchical level of information[22] corresponding to at least one of the data items, wherein the first hierarchical level of information comprises at least one identifier for uniquely identifying each of the at least one of the data items." RFC 2060 discloses that during a first retrieval operation, only a first hierarchical level of information is downloaded from the first memory and stored into a second memory. RFC 2060 at 41-44. Specifically, RFC 2060 provides that a "FETCH command retrieves data associated with a message in the mailbox" from the server and stores the information at a second memory (e.g., a client). Furthermore, RFC 2060 discloses that only a first hierarchical level of information is retrieved which comprises an identifier for uniquely identifying the data items. RFC 2060 at 7–8; RFC 2060 at 41–44. Specifically, RFC 2060 provides that a FETCH command may be issued whereas "the currently defined data items that can be fetched are: ...UID    The unique identifier for the message." RFC 2060 at 7–8; 41–44.

The third element of claim 1 is "and in a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the second hierarchical level of information comprises metadata for the at least one of the data items." RFC 2060 discloses a second retrieval operation that is separate from the first retrieval operation. RFC 2060 at 1; 7; 9-11; 17; 41-44. Specifically, RFC 2060 provides that after client computing system downloads identification information from the server, the client may issue a second command that will download header information (e.g., message attributes). RFC 2060 at 1; 7; 9-11; 17; 41-44. Furthermore, RFC 2060 provides that the second hierarchical level of information

---

[22] In litigation, Patent Owner has taken a different position with respect to unique identifiers being in a separate hierarchical level. Specifically, in "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" the Patent Owner stated that an infringing device would carry out a "first retrieval operation by retrieving only a **first hierarchical level** of information (including at least a **unique message identifier and perhaps also e.g., message headers, message subject, or a specific limited number of bytes of a message**). ..." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) (emphasis added).  Thus, contrary to the stated reason for allowance in prosecution, the Patent Owner is now arguing that in a first retrieval operation, a unique identifier and metadata may be within the same hierarchical level.  In spite of Visto's two inconsistent interpretations, the prior art submitted herein anticipates all claims of the '383.

**EXHIBIT A**

comprises metadata (e.g., message attributes) for at least one of the data items.  RFC 2060 at 7; 9-11.

2.    Claim 2 of the '383 Patent

Claim 2 of the '383 patent reads as follows:

2.  The method of caching information recited in claim 1, wherein the data items are electronic data files.

RFC 2060 discloses that data items of claim 1 are electronic data files.  RFC 2060 at 1.  Specifically, RFC 2060 provides that data items are electronic mail messages on a server.  RFC 2060 at 1.

3.    Claim 3 of the '383 Patent

Claim 3 of the '383 patent reads as follows:

3.  The method of caching information recited in claim 2, wherein the electronic data files are electronic mail message data files.

RFC 2060 discloses that data items of claim 1 are electronic data files.  RFC 2060 at 1.  Specifically, RFC 2060 provides that data items are electronic mail messages on a server.  RFC 2060 at 1.

5.    Claim 5 of the '383 Patent

Claim 5 of the '383 patent reads as follows:

5.  The method of caching information recited in claim 1, wherein the metadata includes one or more data selected from the group consisting of: a title of the at least one of the data items, a subject of the at least one of the data items, an author of the at least one of the data items, and a size of the at least one of the data items.

RFC 2060 discloses that the metadata includes more data selected from the group consisting of a title of the at least one of the data items, a subject of the at least one of the data items, an author of the at least one of the data items, and a size of the at least one of the data items.  RFC 2060 at 1; 7; 11; 38-44; 62.  Specifically, RFC 2060 provides that header information (e.g., message attributes) may include message size, message subject, flags, sender information etc.  RFC 2060 at 1; 7; 11; 38-44; 62.

6.    Claim 6 of the '383 Patent

EXHIBIT A

Claim 6 of the '383 patent reads as follows:

> 6. The method of caching information recited in claim 1, wherein the first memory corresponds to a user's regular electronic mail account, and the second memory corresponds to a user's portable electronic mail account.[23]

RFC 2060 discloses that a first memory may correspond to a user's regular electronic mail account while the second memory corresponds to the user's portable electronic mail account. RFC 2060 at 1; 4-5. Specifically, RFC 2060 discloses a client server model where a client is permitted to selectively retrieve messages and manipulate folders such that they are functionally equivalent to local mailboxes. RFC 2060 at 1; 4-5.

7.    Claim 7 of the '383 Patent

Claim 7 of the '383 patent reads as follows:

> 7. The method of caching information recited in claim 1, wherein the data items are electronic mail messages, and further comprising: in a third retrieval operation separate from the first and second retrieval operations, retrieving and storing into the memory only a third hierarchical level of information corresponding to the at least one of the electronic mail messages.[24]

RFC 2060 discloses a third retrieval operation, separate from the first and second retrieval operations, for retrieving a third hierarchical level of information corresponding to an electronic mail message. RFC 2060 at 41-44. Specifically, RFC 2060 provides that a FETCH command may be issued to retrieve ALL, BODY, FULL, RFC822.TEXT. RFC 2060 at 41-44.

8.    Claim 8 of the '383 Patent

Claim 8 of the '383 patent reads as follows:

---

[23] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Blackberry Server) while the user's portable electronic mail account is on the second memory (e.g., Blackberry smartphone or device.) See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007) ("The first memory may correspond to a BlackBerry server and the second memory may correspond to a BlackBerry Smartphone or device.")

[24] In litigation, Patent Owner has taken the position that a third hierarchical level of information could include "further message headers, additional bytes of a message, or one or more attachments to the message." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

> 8.   The method of caching information recited in claim 7, wherein the third level of hierarchical information is an attachment to the at least one of the electronic mail messages.

RFC 2060 discloses a third retrieval operation, separate from the first and second retrieval operations, for retrieving a third hierarchical level of information corresponding to an attachment to the at least one electronic mail message.   RFC 2060 at 41-44. Specifically, RFC 2060 provides that a FETCH command may be issued to retrieve ALL, BODY, FULL, RFC822.TEXT.   RFC 2060 at 41-44.

> 9.    Claim 9 of the '383 Patent

Claim 9 of the '383 patent reads as follows:

> 9.   The method of caching information recited in claim 7, wherein the third level of hierarchical information is text content of the body of the at least one of the electronic mail messages.

RFC 2060 discloses a third retrieval operation, separate from the first and second retrieval operations, for retrieving a third hierarchical level of information corresponding to text content of the body of at least one electronic mail message.   RFC 2060 at 41-44. Specifically, RFC 2060 provides that a FETCH command may be issued to retrieve ALL, BODY, FULL, RFC822.TEXT.   RFC 2060 at 41-44.

### D.  Claims 1-15 are Anticipated by Halahmi Under 35 U.S.C.  § 102

> **Please see attached Exhibit CC-D presenting claim charts for comparison of the Halahmi patent with the claims of the '383 patent.**

    1.     Claim 1

Requester respectfully submits that claims 1-15 of the '383 patent are anticipated by Halahmi under 35 U.S.C. § 102 under either of the inconsistent claim interpretation positions taken by Visto Corp. in prosecution and litigation.[25]  A claim chart applying Halahmi to these claims is submitted herewith as Exhibit CC-D.

    1.    Claim 1 of the '383 Patent

Claim 1 of the '383 patent reads as follows:

1.    A method of caching information relating to a set of data items, comprising: providing a first memory storing a set of data items;

wherein information of each of the data items is categorized into hierarchical levels;

in a first retrieval operation, retrieving from the first memory and storing into a second memory only a first hierarchical level of information corresponding to at least one of the data items, wherein the first hierarchical level of information comprises at least one identifier for uniquely identifying each of the at least one of the data items;

and in a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information corresponding to

---

[25] In litigation, Patent Owner has taken a different position with respect to unique identifiers being in a separate hierarchical level.  Specifically, in "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" the Patent Owner stated that an infringing device would carry out a "first retrieval operation by retrieving only a **first hierarchical level** of information (including at least a **unique message identifier and perhaps also e.g., message headers, message subject, or a specific limited number of bytes of a message**)..." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) (emphasis added).  Thus, contrary to the stated reason for allowance in prosecution, the Patent Owner is now arguing that in a first retrieval operation, a unique identifier and metadata may be within the same hierarchical level.  In spite of Visto's two inconsistent interpretations, Halahmi anticipates all claims of the '383 under either interpretation.

**EXHIBIT A**

the at least one of the data items, wherein the second hierarchical level of information comprises metadata for the at least one of the data items.

Each of the elements in claim 1 are disclosed in Halahmi. Halahmi discloses a method for caching information relating to data items. Halahmi at Col. 3, lines 11-22. Specifically, Halahmi discloses dividing e-mail messages into a plurality of portions for transmission and display on a device. Halahmi at Col. 3, lines 11-22.

The first element of claim 1 is "providing a first memory storing a set of data items; wherein information of each of the data items is categorized into hierarchical levels." Halahmi discloses a first memory storing data items categorized into hierarchical levels. Halahmi at Col. 5, lines 40-52; Halahmi at Col. 6, lines 55-65. Specifically, Halahmi discloses a first memory (e.g., e-mail server) sends and receives e-mail messages according to standard e-mail protocols. Halahmi at Col. 5, lines 40-52. Further, Halahmi provides a method for displaying e-mails wherein an e-mail message may be divided into a plurality of portions. Halahmi at Col. 3, lines 40-52.

The second element of claim 1 is "in a first retrieval operation, retrieving from the first memory and storing into a second memory only a first hierarchical level of information[26] corresponding to at least one of the data items, wherein the first hierarchical level of information comprises at least one identifier for uniquely identifying each of the at least one of the data items." As can be seen from Figure 1 below, Halahmi discloses a first retrieval operation for retrieving from the first memory and storing into a second memory a first hierarchical level of information corresponding to a data item. Halahmi at Col. 5, lines 40-52; Halahmi at Col. 8, lines 1-39.

---

[26] In litigation, Patent Owner has taken a different position with respect to unique identifiers being in a separate hierarchical level. Specifically, in "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" the Patent Owner stated that an infringing device would carry out a "first retrieval operation by retrieving only a **first hierarchical level** of information (including at least a **unique message identifier and perhaps also e.g., message headers, message subject, or a specific limited number of bytes of a message**). ..." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007) (emphasis added). Thus, contrary to the stated reason for allowance in prosecution, the Patent Owner is now arguing that in a first retrieval operation, a unique identifier and metadata may be within the same hierarchical level. In spite of Visto's two inconsistent interpretations, the prior art submitted herein anticipates all claims of the '383.

**EXHIBIT A**



Fig. 1

**Halahmi at Figure 1.**

Specifically, Halahmi discloses that the second memory (e-mail portion server) sends a "STAT" command and a "List" command to the first memory (e-mail server); in response the first memory sends a list of total message size and a list of all messages. Halahmi at Col. 8, lines 1-39. Halahmi also provides that the list of total message size and list of total messages includes the message identifier numbers. Halahmi at Col. 8, lines 1-39.

The third element of claim 1 is "a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the second hierarchical level of information comprises metadata for the at least one of the data items." Halahmi discloses that a second retrieval operation is separate from the first retrieval operation. Halahmi at Col. 8, lines 1-11. Specifically, Halahmi provides that a second memory (e-mail portion server) sends a command to the first memory (e-mail server) to parse all of the headers of the e-mail messages that are in the inbox. Halahmi at Col. 8, lines 1-11. Further, Halahmi provides that the second hierarchical level (e.g., header information) is metadata. Halahmi at Col.

**EXHIBIT A**

8, lines 16-20. "For example, the user could request to see only the identity of the sender and the subject of the e-mail message." Halahmi at Col. 8, lines 16-20.

        2.    Claim 2 of the '383 Patent

Claim 2 of the '383 patent reads as follows:

    2.  The method of caching information recited in claim 1, wherein the data items are electronic data files.

Halahmi discloses that data items are electronic data files. Halahmi at Col. 6, lines 10-17. Specifically, Halahmi discloses that data items (e.g., e-mail messages that may be converted into a suitable format for wireless communication devices) are received from the e-mail server. Halahmi at Col. 6, lines 10-17.

        3.    Claim 3 of the '383 Patent

Claim 3 of the '383 patent reads as follows:

    3.  The method of caching information recited in claim 2, wherein the electronic data files are electronic mail message data files.

Halahmi discloses that data items are electronic data files. Halahmi at Col. 6, lines 10-17. Specifically, Halahmi discloses that data files (e.g., e-mail messages) are received from the e-mail server. Halahmi at Col. 6, lines 10-17.

        4.    Claim 4 of the '383 Patent

Claim 4 of the '383 patent reads as follows:

    4.  The method of caching information recited in claim 1, wherein the at least one identifier for uniquely identifying each of the at least one of the data items is selected to comprise Unique Identification Listing (UIDL) identifier.

Halahmi discloses that at least one identifier for uniquely identifying is a Unique Identification Listing (UIDL). Halahmi at Col. 8, lines 1-7. Specifically, Halahmi provides that the e-mail portion server sends a "STAT" command and a "LIST" command to the e-mail server such that the e-mail server returns the total size and list of all e-mail messages currently on the e-mail server. Halahmi at Col. 8, lines 1-7.

        5.    Claim 5 of the '383 Patent

Claim 5 of the '383 patent reads as follows:

5.  The method of caching information recited in claim 1, wherein the metadata includes one or more data selected from the group consisting of: a title of the at least one of the data items, a subject of the at least one of the data items, an author of the at least one of the data items, and a size of the at least one of the data items.

Halahmi discloses that metadata includes one or more data selected from the group consisting of: a title for the at least one of the data items, a subject of the at least one of the data items, an author of the at least one of the data items, and size of the at least one of the data items.  Halahmi at Col. 8, lines 16-20.  Halahmi discloses that metadata can include, for example, author information, subject information, content information and message size information.  Halahmi at Col. 8, lines 16-37.

6.    Claim 6 of the '383 Patent

Claim 6 of the '383 patent reads as follows:

6.  The method of caching information recited in claim 1, wherein the first memory corresponds to a user's regular electronic mail account, and the second memory corresponds to a user's portable electronic mail account.[27]

Halahmi discloses that the first memory corresponds to a user's regular electronic mail account.  Halahmi at Col. 5, line 49-56.  Specifically, Halahmi provides that the e-mail server sends and receives e-mails according to standard protocol such as SMTP, POP3 and IMAP4.  Halahmi at Col. 5, lines 49-56.  Further, Halahmi provides that the second memory corresponds to a user's portable electronic mail account.  Halahmi at Col. 5, line 39 – Col. 6, line 26.  Specifically, Halahmi provides that e-mail is sent from the e-mail server to the e-mail proxy server, which compresses, converts and forward for display to a user at a wireless communication device.  Halahmi at Col. 5, line 39 – Col. 6, line 26.

---

[27] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Blackberry Server) while the user's portable electronic mail account is on the second memory (e.g., Blackberry smartphone or device.)  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) ("The first memory may correspond to a BlackBerry server and the second memory may correspond to a BlackBerry Smartphone or device.")

**EXHIBIT A**

7.     Claim 7 of the '383 Patent

Claim 7 of the '383 patent reads as follows:

7.  The method of caching information recited in claim 1, wherein the data items are electronic mail messages, and further comprising: in a third retrieval operation separate from the first and second retrieval operations, retrieving and storing into the memory only a third hierarchical level of information corresponding to the at least one of the electronic mail messages.[28]

Halahmi discloses a third retrieval operation separate from the first and second retrieval operations, wherein a third hierarchical level of information from an electronic mail message is retrieved and stored into memory.  Halahmi at Col. 8, line 66 – Col. 9, line 49.  Specifically, Halahmi provides that in Step 11, the e-mail message is selected and sent from the e-mail server to the e-mail portion server.  Col. 8, lines 66-67.  Further, that the e-mail message could include part of the text of a message or optionally at least part of an attachment.  Halahmi at Col. 9, lines 1-13.

8.     Claim 8 of the '383 Patent

Claim 8 of the '383 patent reads as follows:

8.  The method of caching information recited in claim 7, wherein the third level of hierarchical information is an attachment to the at least one of the electronic mail messages.

Halahmi discloses a third retrieval operation separate from the first and second retrieval operations, wherein a third hierarchical level of information from an electronic mail message is retrieved and stored into memory.  Halahmi at Col. 8, line 66 – Col. 9, line 49.  Specifically, Halahmi provides that in Step 11, the e-mail message is selected and sent from the e-mail server to the e-mail portion server.  Col. 8, lines 66-67.  Further, Halahmi discloses that the e-mail message could include part of the text of a message or optionally at least part of an attachment.  Halahmi at Col. 9, lines 1-13.

---

[28] In litigation, Patent Owner has taken the position that a third hierarchical level of information could include "further message headers, additional bytes of a message, or one or more attachments to the message." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

9.     Claim 9 of the '383 Patent

Claim 9 of the '383 patent reads as follows:

9.  The method of caching information recited in claim 7, wherein the third level of hierarchical information is text content of the body of the at least one of the electronic mail messages.

Halahmi discloses a third retrieval operation separate from the first and second retrieval operations, wherein a third hierarchical level of information from an electronic mail message is retrieved and stored into memory.  Halahmi at Col. 8, line 66 – Col. 9, line 49.  Specifically, Halahmi provides that in Step 11, the e-mail message is selected and sent from the e-mail server to the e-mail portion server.  Col. 8, lines 66-67.  Further, Halahmi discloses that the e-mail message could include part of the text of a message or optionally at least part of an attachment.  Halahmi at Col. 9, lines 1-13.

10.     Claim 10 of the '383 Patent

Claim 10 of the '383 patent reads as follows:

10.  A method of caching information relating to a set of data items, comprising:

in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items;

and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger;

and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items.

Each of the elements in claim 10 is disclosed in Halahmi.  Halahmi discloses a method for caching information relating to data items.  Halahmi at Col. 3, lines 11-22.  Specifically, Halahmi discloses dividing e-mail messages into a plurality of portions for transmission and display on a device.  Halahmi at Col. 3, lines 11-22.

The first element of claim 10 is "in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at

least one of the data items." Halahmi discloses a first retrieval operation for retrieving from the first memory and storing into a second memory a first hierarchical level of information corresponding to a data item. Halahmi at Col. 5, lines 40-52; Halahmi at Col. 8, lines 1-39. Specifically, Halahmi discloses that the second memory (e-mail portion server) sends a "STAT" command and a "List" command to the first memory (e-mail server); in response the first memory sends a list of total message size and a list of all messages. Halahmi at Col. 8, lines 1-39. Halahmi also provides that the list of total message size and list of total messages includes the message identifier numbers. Halahmi at Col. 8, lines 1-39.

The second element of claim 10 is "and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger."[29] Halahmi discloses that a second retrieval operation is separate from the first retrieval operation. Halahmi at Col. 8, lines 1-11. Specifically, Halahmi discloses that the second memory (e-mail portion server) sends a "STAT" and "List" command (first trigger) to the first memory (e-mail server); in response the first memory sends a list of total message size and a list of all messages. Halahmi at Col. 8, lines 1-39. Halahmi also provides that the list of total message size and list of total messages includes the message identifier numbers. Halahmi at Col. 8, lines 1-39. Further, Halahmi provides that a second memory (e-mail portion server) sends a command (second trigger) to the first memory (e-mail server) to parse all of the headers of the e-mail messages that are in the inbox. Halahmi at Col. 8, lines 1-11.

---

[29] In litigation, Patent Owner has taken the position that triggers are defined in the specification in "very broad terms" and "may include a variety of input or operations that specific [sic] the caching of different hierarchical levels of information (e.g., based on user preferences, which set the triggers to filter messages, a trigger to view additional content of an email, or to retrieve attachments). The patent also discusses 'notifications' to update the data cache as potential triggers." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

The third element of claim 10 is "and wherein at least one of the first trigger and the second trigger is a predictive indicator[30] predicting a user's preferences for retrieving information from the set of data items." Halahmi discloses that at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preference for retrieving information.  Halahmi at Col. 7, lines 24-27.  Specifically, Halahmi provides that "e-mail message(s) could be retrieved automatically without regard to the user request[.]"  Halahmi at Col. 7, lines 24-27.  Further still, e-mail messages could be selected for automatic retrieval based on user preferences.  Halahmi at Col. 8, lines 55-60.

           11.     Claim 11 of the '383 Patent

Claim 11 of the '383 patent reads as follows:

> 11.  The method of caching information recited in claim 10, wherein the set of data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.[31]

Halahmi discloses that the first memory corresponds to a user's regular electronic mail account.  Halahmi at Col. 5, line 49-56.  Specifically, Halahmi provides that the e-mail server sends and receives e-mails according to standard protocol such as SMTP, POP3 and IMAP4.  Halahmi at Col. 5, lines 49-56.  Further, Halahmi provides that the second memory corresponds to a user's portable electronic mail account.  Halahmi at Col. 5, line 39 – Col. 6, line 26.  Specifically, Halahmi provides that e-mail is sent from the e-mail server to the e-mail proxy server, which compresses, converts and forward for

---

[30] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items.  A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance.  These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

[31] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Exchange/Domino Servers) while the user's portable electronic mail account is on the second memory (e.g., BES, BlackBerry Infrastructure or BlackBerry client device.)  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) ("The first memory may correspond to the Exchange/Domino Servers and the second memory may correspond to the BES, BlackBerry Infrastructure or the BlackBerry client device.")

**EXHIBIT A**

display to a user at a wireless communication device.  Halahmi at Col. 5, line 39 – Col. 6, line 26.

12.    Claim 12 of the '383 Patent

Claim 12 of the '383 patent reads as follows:

12.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.[32]

Halahmi discloses that at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preference for retrieving information.  Halahmi at Col. 7, lines 24-27.   Specifically, Halahmi provides that "e-mail message(s) could be retrieved automatically without regard to the user request[.]"  Halahmi at Col. 7, lines 24-27.  Further still, e-mail messages could be selected for automatic retrieval based on user preferences (e.g., e-mail messages with preferred header information)   Halahmi at Col. 8, lines 55-60; Col. 8, lines 16-37.

13.    Claim 13 of the '383 Patent

Claim 13 of the '383 patent reads as follows:

13.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on a number of unopened electronic mail messages.[33]

Halahmi discloses that at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preference for retrieving information.  Halahmi at Col. 7, lines 24-27.   Specifically, Halahmi provides that "e-mail message(s) could be retrieved automatically without regard to the user request[.]"  Halahmi at Col. 7, lines 24-

---

[32] In litigation, Patent Owner has taken the position that a system that uses filters to implement a user's preference for retrieving email would infringe claim 12.  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

[33] In litigation, Patent Owner has taken the position that a system preference that allows for "filtering only new electronic mail messages which enables a user preference for retrieving information based on a number (e.g., one) of unopened (e.g., new) electronic mail messages." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

**EXHIBIT A**

27.  Further still, e-mail messages could be selected for automatic retrieval based on user preferences (e.g., upon arrival of new mail).  Halahmi at Col. 8, lines 55-60.

### 14.    Claim 14 of the '383 Patent

Claim 14 of the '383 patent reads as follows:

14.  The method of caching information recited in claim 10, wherein the data items are file directory information.[34]

Halahmi discloses data items are file directory information.  Halahmi at Col. 9, lines 4-13; Col. 8, lines 1-7.  Specifically, Halahmi discloses that data items include information about the user's inbox at the e-mail server, e.g., mailbox total size and a listing of e-mail messages.  Halahmi at Col. 8, lines 1-7.

### 15.    Claim 15 of the '383 Patent

Claim 15 of the '383 patent reads as follows:

15.  The method of caching information recited in claim 10, wherein the data items are electronic mail message data files.

Halahmi discloses that data items are electronic mail message data files.  Halahmi at Col. 7, lines 26-29.  Specifically, Halahmi provides that the e-mail portion server receives e-mail messages from the e-mail server.  Halahmi at Col. 6, lines 26-29.

---

[34] In litigation, Patent Owner has taken the position that receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

### E.  CLAIMS 1-15 ARE ANTICIPATED BY ZERBER UNDER 35 U.S.C. § 102

> **Please see attached Exhibit CC-E
> presenting claim charts for
> comparison of the Zerber patent with
> the claims of the '383 patent.**

#### 1.    CLAIM 1

Requester respectfully submits that claims 1-15 of the '383 patent are anticipated by Zerber under 35 U.S.C. § 102 under either of the inconsistent claim interpretation position taken by Visto Corp. in prosecution and litigation.[35]   A claim chart applying Zerber to these claims is submitted herewith as Exhibit CC-E.

#### 1.    Claim 1 of the '383 Patent

Claim 1 of the '383 patent reads as follows:

1.    A method of caching information relating to a set of data items, comprising: providing a first memory storing a set of data items;

wherein information of each of the data items is categorized into hierarchical levels;

in a first retrieval operation, retrieving from the first memory and storing into a second memory only a first hierarchical level of information corresponding to at least one of the data items, wherein the first hierarchical level of information comprises at least one identifier for uniquely identifying each of the at least one of the data items;

and in a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the second hierarchical level of information comprises metadata for the at least one of the data items.

---

[35] In litigation, Patent Owner has taken a different position with respect to unique identifiers being in a separate hierarchical level.  Specifically, in "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" the Patent Owner stated that an infringing device would carry out a "first retrieval operation by retrieving only a **first hierarchical level** of information (including at least a **unique message identifier and perhaps also e.g., message headers, message subject, or a specific limited number of bytes of a message**)..." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007) (emphasis added).  Thus, contrary to the stated reason for allowance in prosecution, the Patent Owner is now arguing that in a first retrieval operation, a unique identifier and metadata may be within the same hierarchical level.  In spite of Visto's two inconsistent interpretations, Zerber anticipates all claims of the '383 under either interpretation.

Each of the elements in claim 1 is disclosed in Zerber.  Zerber discloses a method of caching information relating to a set of data items.  Zerber at Col. 5, lines 14-26.  Specifically, Zerber provides that a client computer communicates with a mail server running POP3 or IMAP4.  Zerber at Col. 5, lines 14-26.

The first element of claim 1 is "providing a first memory storing a set of data items; wherein information of each of the data items is categorized into hierarchical levels." Zerber discloses a first memory storing a set of data items.  Zerber at Col. 5, lines 14-26.  Specifically, Zerber provides "a mail server 62 which may be a mainframe, minicomputer, workstation or personal computer.  The mail server 62 runs a mail protocol 64 (e.g., POP3, IMAP4, SMTP, LDAP, etc.) and a post office system 66 (e.g., Lotus cc:Mail, Lotus Notes, Lotus Domino, Novell's GroupWise, etc.)" Zerber at Col. 5, lines 14-19.  Further, Zerber provides that each of the data items is categorized into hierarchical levels.  Zerber at Col. 7, lines 52-57.  Specifically, Zerber provides that a "message includes four separate component files, HEADER, ATTACHMENTS, BODY, and CONTROLS.  These four separate components of the selected message (863822044.000) were downloaded to the post office cache..."  Zerber at Col. 7, lines 52-56.

The second element of claim 1 is "in a first retrieval operation, retrieving from the first memory and storing into a second memory only a first hierarchical level of information[36] corresponding to at least one of the data items, wherein the first hierarchical level of information comprises at least one identifier for uniquely identifying each of the at least one of the data items." As can be seen from Figure 3 below, Zerber discloses a first retrieval operation, retrieving from the first memory and storing into a

---

[36] In litigation, Patent Owner has taken a different position with respect to unique identifiers being in a separate hierarchical level.  Specifically, in "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" the Patent Owner stated that an infringing device would carry out a "first retrieval operation by retrieving only a **first hierarchical level** of information (including at least a **unique message identifier and perhaps also e.g., message headers, message subject, or a specific limited number of bytes of a message**).  ..." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) (emphasis added).  Thus, contrary to the stated reason for allowance in prosecution, the Patent Owner is now arguing that in a first retrieval operation, a unique identifier and metadata may be within the same hierarchical level.  In spite of Visto's two inconsistent interpretations, the prior art submitted herein anticipates all claims of the '383.

**EXHIBIT A**

second memory only a first hierarchical level of information.  Zerber at Abstract; Col. 3, line 66 to Col. 4, line 5.  Specifically, Zerber provides that a first memory (e.g., personal computers, workstations, minicomputers or mainframes) connect over LANs, WANs, SNA networks and the Internet to a second memory (e.g., personal computers, laptops, palmtops or workstations) to download a first hierarchical level of information (e.g., URL information).  Zerber at Abstract; Col. 3, line 66 to Col. 4, line 5.  In Zerber, a second memory establishes a connection with the first memory (e.g., a mail server including the folder of messages over a network.) to download a mail applet.  Zerber at Col. 7, line 52 through Col. 7, line 14.  The mail applet causes the web browser to open a view page including selected files having a URL in the local http server in the view applet.  Zerber at Figure 4B.  Zerber provides that data items are identified by a URL in the HTTP server.  Zerber at Col. 7, line 52 through Col. 7, line 14.



**Figure 3 of Zerber**

The third element of claim 1 is "and in a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second

EXHIBIT A

memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the second hierarchical level of information comprises metadata for the at least one of the data items." Zerber discloses a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information. Zerber at Abstract. Specifically, Zerber provides that "a client computer establishes a first connection with a mail server including the folder of messages over a network. The client computer communicates a command to the mail server to parse messages in the folder to obtain message headers. The message headers are then downloaded to the client computer." Zerber at Abstract.

Alternatively, if downloading message headers is viewed as a first retrieval, Zerber provides that a second retrieval would download body information. Zerber at Abstract. Specifically, "after downloading the message headers, the first connection between the client computer and the mail server is terminated. The client computer may then be used to select at least one displayed header. After message headers are selected, a second connection is established between the client computer and the mail server. The client computer communicates a command to the mail server to retrieve a body for each message whose header was selected. The selected message bodies are then downloaded to the client computer." Zerber at Abstract.

2.      Claim 2 of the '383 Patent

Claim 2 of the '383 patent reads as follows:

2. The method of caching information recited in claim 1, wherein the data items are electronic data files.

Zerber discloses that data items are electronic data files. Zerber at Abstract. Specifically, Zerber provides that data items are e-mail messages. Zerber at Abstract.

3.      Claim 3 of the '383 Patent

Claim 3 of the '383 patent reads as follows:

3. The method of caching information recited in claim 2, wherein the electronic data files are electronic mail message data files.

Zerber discloses that data files are electronic mail message data files. Zerber at Abstract. Specifically, Zerber provides that data files are e-mail messages. Zerber at Abstract.

4.    Claim 4 of the '383 Patent

Claim 4 of the '383 patent reads as follows:

> 4. The method of caching information recited in claim 1, wherein the at least one identifier for uniquely identifying each of the at least one of the data items is selected to comprise Unique Identification Listing (UIDL) identifier.

RFC 1939 is incorporated by reference into Zerber and provides that at least one identifier for uniquely identifying each of the at least one of the data items is selected to comprise Unique Identification Listing (UIDL) identifier. RFC 1939 at 12-13. Specifically, "After the initial +OK, for each message in the maildrop, the POP3 server responds with a line containing information for that message. This line is called a 'unique-id listing' for that message. In order to simplify parsing, all POP3 servers are required to use a certain format for unique-id listings. A unique-id listing consists of the message-number of the message, followed by a single space and the unique-id of the message." RFC 1939 at 12-13.

5.    Claim 5 of the '383 Patent

Claim 5 of the '383 patent reads as follows:

> 5. The method of caching information recited in claim 1, wherein the metadata includes one or more data selected from the group consisting of: a title of the at least one of the data items, a subject of the at least one of the data items, an author of the at least one of the data items, and a size of the at least one of the data items.

Zerber discloses metadata includes one or more data selected from the group consisting of: a title of the at least one of the data items, a subject of the at least one of the data items, an author of the at least one of the data items, and a size of the at least one of the data items. Zerber at Col. 7, lines 61-63. Specifically, "The 'HEADER' is a plain text document that includes message information, such as the author, recipients and subject of the message." Zerber at Col. 7, lines 61-63.

6.    Claim 6 of the '383 Patent

**EXHIBIT A**

Claim 6 of the '383 patent reads as follows:

> 6.  The method of caching information recited in claim 1, wherein the first memory corresponds to a user's regular electronic mail account, and the second memory corresponds to a user's portable electronic mail account.[37]

Zerber discloses that a first memory corresponds to a user's regular electronic mail account, and the second memory corresponds to a user's portable electronic mail account.  Zerber at Col. 2, lines 4-14.  Specifically, Zerber provides for either IMAP4 or POP3 configuration where a first memory (e.g., mail server) maintains a user's regular electronic mail account and a second memory (e.g., client computer) maintains the user's portable electronic mail account.  Zerber at Col. 2, lines 4-14.

> 7.    Claim 7 of the '383 Patent

Claim 7 of the '383 patent reads as follows:

> 7.  The method of caching information recited in claim 1, wherein the data items are electronic mail messages, and further comprising: in a third retrieval operation separate from the first and second retrieval operations, retrieving and storing into the memory only a third hierarchical level of information corresponding to the at least one of the electronic mail messages.[38]

Zerber discloses a third retrieval operation separate from the first and second retrieval operations, retrieving and storing into the memory only a third hierarchical level of information corresponding to the at least one of the electronic mail messages.  Zerber at Abstract.  Specifically, Zerber provides that "the client computer communicates a command to the mail server to retrieve a body for each message whose header was

---

[37] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Blackberry Server) while the user's portable electronic mail account is on the second memory (e.g., Blackberry smartphone or device.)  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) ("The first memory may correspond to a BlackBerry server and the second memory may correspond to a BlackBerry Smartphone or device.")

[38] In litigation, Patent Owner has taken the position that a third hierarchical level of information could include "further message headers, additional bytes of a message, or one or more attachments to the message." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

**EXHIBIT A**

selected.  The selected message bodies are then downloaded to the client computer.  After downloading message bodies, the client computer communicates a command to the mail server to delete the selected messages from the folder in the mail server."  Zerber at Abstract.

        8.      <u>Claim 8 of the '383 Patent</u>

Claim 8 of the '383 patent reads as follows:

8.  The method of caching information recited in claim 7, wherein the third level of hierarchical information is an attachment to the at least one of the electronic mail messages.

Zerber discloses that the third level of hierarchical information is an attachment to the at least one of the electronic mail messages.  Zerber at Col. 7, line 52 through Col. 7, line 14.  Specifically, Zerber provides that an attachment html document that contains a list of URL links to the actual attachments is sent to the second memory such that the actual attachment may be downloaded.  Zerber at Col. 7, line 52 – Col. 7, line 14.

        9.      <u>Claim 9 of the '383 Patent</u>

Claim 9 of the '383 patent reads as follows:

9.  The method of caching information recited in claim 7, wherein the third level of hierarchical information is text content of the body of the at least one of the electronic mail messages.

Zerber discloses a third level of hierarchical information is text content of the body of the at least one of the electronic mail messages.  Zerber at Abstract; Zerber at Col. 8, lines 12-13.  Specifically, Zerber provides that the body comprises the main text of a message and it is downloaded to the second memory (e.g., client computer) from the first memory (e.g., mail server).  Zerber at Abstract.

      10.      <u>Claim 10 of the '383 Patent</u>

Claim 10 of the '383 patent reads as follows:

10.  A method of caching information relating to a set of data items, comprising:

in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items;

and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger;

and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items.

Each of the elements in claim 10 are disclosed in Zerber. Zerber discloses a method of caching information relating to a set of data items. Zerber at Col. 5, lines 14-26. Specifically, Zerber provides that a client computer communicates with a mail server running POP3 or IMAP4. Zerber at Col. 5, lines 14-26.

The first element of claim 10 is "in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items." Zerber discloses a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information. Zerber at Abstract; Col. 3, line 66 to Col. 4, line 5. Specifically, Zerber provides that a first memory (e.g., personal computers, workstations, minicomputers or mainframes) connect over LANs, WANs, SNA networks and the Internet to a second memory (e.g., personal computers, laptops, palmtops or workstations) to download a first hierarchical level of information (e.g., URL information). Zerber at Abstract; Col. 3, line 66 to Col. 4, line 5. In Zerber, a second memory establishes a connection with the first memory (e.g., a mail server including the folder of messages over a network.) to download a mail applet. Zerber at Col. 7, line 52 through Col. 7, line 14. The mail applet causes the web browser to open a view page including selected files having a URL in the local http server in the view applet. Zerber at Figure 4B. Zerber provides that data items are identified by a URL in the HTTP server. Zerber at Col. 7, line 52 through Col. 7, line 14.

Alternatively, Zerber provides that a first retrieval would download header information. Zerber at Abstract. Specifically, Zerber provides that "a client computer establishes a first connection with a mail server including the folder of messages over a network. The client computer communicates a command to the mail server to parse

73

**EXHIBIT A**

messages in the folder to obtain message headers. The message headers are then downloaded to the client computer." Zerber at Abstract.

The second element of claim 10 is "and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger."[39] Zerber discloses a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items. Zerber at Abstract. Specifically, Zerber provides that "a client computer establishes a first connection with a mail server including the folder of messages over a network. The client computer communicates a command to the mail server to parse messages in the folder to obtain message headers. The message headers are then downloaded to the client computer." Zerber at Abstract.

Alternatively, if downloading message headers is viewed as a first retrieval, Zerber provides that a second retrieval would download body information. Zerber at Abstract. Specifically, "after downloading the message headers, the first connection between the client computer and the mail server is terminated. The client computer may then be used to select at least one displayed header. After message headers are selected, a second connection is established between the client computer and the mail server. The client computer communicates a command to the mail server to retrieve a body for each message whose header was selected. The selected message bodies are then downloaded to the client computer." Zerber at Abstract.

---

[39] In litigation, Patent Owner has taken the position that triggers are defined in the specification in "very broad terms" and "may include a variety of input or operations that specific [sic] the caching of different hierarchical levels of information (e.g., based on user preferences, which set the triggers to filter messages, a trigger to view additional content of an email, or to retrieve attachments). The patent also discusses 'notifications' to update the data cache as potential triggers." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

Further, Zerber provides that the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger. Zerber at Col. 2, lines 30-40. Specifically, Zerber provides that the second memory (e.g., client computer) sends a first trigger (e.g., command) to download message headers. Zerber at Col. 2, lines 30-40. Secondly, once the headers are downloaded, the second memory issues a second trigger wherein "the client computer communicates a command to the mail server to retrieve a body for each message whose header was selected. The selected message bodies are then downloaded to the client computer." Zerber at Abstract.

The third element of claim 10 is "and wherein at least one of the first trigger and the second trigger is a predictive indicator[40] predicting a user's preferences for retrieving information from the set of data items." Zerber provides that at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items. Zerber at Col. 2, lines 17-20. Specifically, Zerber uses IMAP4 which permits selective downloading of "desired messages." Zerber at Col. 2, lines 17-20.

11.    Claim 11 of the '383 Patent

Claim 11 of the '383 patent reads as follows:

11. The method of caching information recited in claim 10, wherein the set of data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.[41]

---

[40] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items. A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance. These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

[41] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Exchange/Domino Servers) while the user's portable electronic mail account is on the second memory (e.g., BES, BlackBerry Infrastructure or BlackBerry client device.) See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007) ("The

Zerber discloses a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account. Zerber at Col. 2, lines 4-14. Specifically, Zerber provides for either IMAP4 or POP3 configuration where a first memory (e.g., mail server) maintains a user's regular electronic mail account and a second memory (e.g., client computer) maintains the user's portable electronic mail account. Zerber at Col. 2, lines 4-14.

           12.     Claim 12 of the '383 Patent

Claim 12 of the '383 patent reads as follows:

> 12. The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.[42]

Zerber discloses that retrieving information is based on retrieving electronic mail messages authored by a particular person. Zerber at Col. 2, lines 17-20. Specifically, Zerber uses IMAP4 which permits selective downloading of "desired messages." Zerber at Col. 2, lines 17-20.

           13.     Claim 13 of the '383 Patent

Claim 13 of the '383 patent reads as follows:

> 13. The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on a number of unopened electronic mail messages.[43]

---

[42] In litigation, Patent Owner has taken the position that a system that uses filters to implement a user's preference for retrieving email would infringe claim 12. See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

first memory may correspond to the Exchange/Domino Servers and the second memory may correspond to the BES, BlackBerry Infrastructure or the BlackBerry client device.")

[43] In litigation, Patent Owner has taken the position that a system preference that allows for "filtering only new electronic mail messages which enables a user preference for retrieving information based on a number (e.g., one) of unopened (e.g., new) electronic mail messages." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

Zerber discloses that retrieving information is based on a number of unopened electronic mail messages. Zerber at Col. 2, lines 17-20. Specifically, Zerber uses IMAP4 which permits selective downloading of "desired messages." Zerber at Col. 2, lines 17-20.

14.     Claim 14 of the '383 Patent

Claim 14 of the '383 patent reads as follows:

14. The method of caching information recited in claim 10, wherein the data items are file directory information.[44]

Zerber discloses that data items are file directory information. Zerber at Col. 2, lines 4-14. Specifically, Zerber uses IMAP4 and POP3 for "online" and "offline" manipulation of mail messages and folders in a post office system. Zerber at Col. 2, lines 4-14.

15.     Claim 15 of the '383 Patent

Claim 15 of the '383 patent reads as follows:

15. The method of caching information recited in claim 10, wherein the data items are electronic mail message data files.

Zerber discloses that data items are electronic mail message data files. Zerber at Abstract. Specifically, Zerber provides that data files are e-mail messages. Zerber at Abstract.

---

[44] In litigation, Patent Owner has taken the position that receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

**F.  Claims 1-15 are Anticipated by Austein Under 35 U.S.C.  § 102**

> **Please see attached Exhibit CC-F
> presenting claim charts for
> comparison of the Austein reference
> with the claims of the '383 patent.**

1.     CLAIM 1

Requester respectfully submits that claims 1-15 of the '383 patent are anticipated by Austein under 35 U.S.C.  § 102 under either of the inconsistent claim interpretation positions taken by Visto Corp. in prosecution and litigation.[45]  A claim chart applying Austein to these claims is submitted herewith as Exhibit CC-F.

Claim 1 of the '383 patent reads as follows:

1.     A method of caching information relating to a set of data items, comprising: providing a first memory storing a set of data items;

wherein information of each of the data items is categorized into hierarchical levels;

in a first retrieval operation, retrieving from the first memory and storing into a second memory only a first hierarchical level of information corresponding to at least one of the data items, wherein the first hierarchical level of information comprises at least one identifier for uniquely identifying each of the at least one of the data items;

and in a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the second hierarchical level of information comprises metadata for the at least one of the data items.

---

[45] In litigation, Patent Owner has taken a different position with respect to unique identifiers being in a separate hierarchical level.  Specifically, in "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" the Patent Owner stated that an infringing device would carry out a "first retrieval operation by retrieving only a **first hierarchical level** of information (including at least a **unique message identifier and perhaps also e.g., message headers, message subject, or a specific limited number of bytes of a message**)..." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) (emphasis added).  Thus, contrary to the stated reason for allowance in prosecution, the Patent Owner is now arguing that in a first retrieval operation, a unique identifier and metadata may be within the same hierarchical level.  In spite of Visto's two inconsistent interpretations, Austein anticipates all claims of the '383 under either interpretation.

Each of the elements in claim 1 is disclosed in Austein. Austein discloses a method for caching information relating to data items. Austein at 2. Specifically, Austein discloses caching email on a disconnected client while keeping the master mail state on the server. Austein at 2.

The first element of claim 1 is "providing a first memory storing a set of data items; wherein information of each of the data items is categorized into hierarchical levels." Austein discloses a first memory storing data items categorized into hierarchical levels. Austein at 2-5. Specifically, Austein discloses a first memory (e.g., a server) sends and receives e-mail messages. Austein at 3-4. Further, Austein provides that emails are categorized into hierarchical levels (e.g., UID's, descriptors, bodies, etc.) Austein at 3-5.

The second element of claim 1 is "in a first retrieval operation, retrieving from the first memory and storing into a second memory only a first hierarchical level of information[46] corresponding to at least one of the data items, wherein the first hierarchical level of information comprises at least one identifier for uniquely identifying each of the at least one of the data items." Austein discloses a first retrieval operation for retrieving from the first memory and storing into a second memory a first hierarchical level of information corresponding to a data item. Austein at 2; 4; 6. Specifically, Austein discloses that the second memory (e.g., client) sends a fetch command to the first memory (e.g., server); in response the first memory sends descriptors. Austein at 6. Austein provides that descriptors may include at a minimum, a messages "UID" and "FLAG" information. Austein at 6.

---

[46] In litigation, Patent Owner has taken a different position with respect to unique identifiers being in a separate hierarchical level. Specifically, in "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" the Patent Owner stated that an infringing device would carry out a "first retrieval operation by retrieving only a **first hierarchical level** of information (including at least a **unique message identifier and perhaps also e.g., message headers, message subject, or a specific limited number of bytes of a message**). ..." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007) (emphasis added). Thus, contrary to the stated reason for allowance in prosecution, the Patent Owner is now arguing that in a first retrieval operation, a unique identifier and metadata may be within the same hierarchical level. In spite of Visto's two inconsistent interpretations, the prior art submitted herein anticipates all claims of the '383.

**EXHIBIT A**

The third element of claim 1 is "and in a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the second hierarchical level of information comprises metadata for the at least one of the data items." Austein discloses that a second retrieval operation is separate from the first retrieval operation. Austein at 4-6. Specifically, Austein provides that a second memory (e.g., client) sends a command to the first memory (e.g., server) to fetch a second hierarchical level of information (e.g., "interesting" messages or body parts). Austein at 5.

Furthermore, and in the alternative, Austein provides that a second memory (e.g., client) sends a second command to fetch a second hierarchical level of information (e.g., "the client can issue the following two commands: tag1 UID FETCH <lastseen+1>:* <descriptors> tag2 UID FETCH 1:<lastseen> FLAGS"). Austein at 5.

    2.     <u>Claim 2 of the '383 Patent</u>

Claim 2 of the '383 patent reads as follows:

2. The method of caching information recited in claim 1, wherein the data items are electronic data files.

Austein discloses that data items are electronic data files. Austein at 2. Specifically, Austein discloses that data items (e.g., e-mail messages) are received from the e-mail server. Austein at 2.

    3.     <u>Claim 3 of the '383 Patent</u>

Claim 3 of the '383 patent reads as follows:

3. The method of caching information recited in claim 2, wherein the electronic data files are electronic mail message data files.

Austein discloses that data items are electronic data files. Austein at 2. Specifically, Austein discloses that data items (e.g., e-mail messages) are received from the e-mail server. Austein at 2.

    4.     <u>Claim 4 of the '383 Patent</u>

Claim 4 of the '383 patent reads as follows:

4.  The method of caching information recited in claim 1, wherein the at least one identifier for uniquely identifying each of the at least one of the data items is selected to comprise Unique Identification Listing (UIDL) identifier.

Austein discloses that at least one identifier for uniquely identifying is a Unique Identification Listing (UIDL).  Austein at 5.  Specifically, Austein provides that the "the client can issue the following two commands: tag1 UID FETCH <lastseen+1>:* <descriptors> tag2 UID FETCH 1:<lastseen> FLAGS").  Austein at 5.  This command fetches a list of message descriptors that the client has not seen yet.  Austein at 5.

     5.    <u>Claim 5 of the '383 Patent</u>

Claim 5 of the '383 patent reads as follows:

5.  The method of caching information recited in claim 1, wherein the metadata includes one or more data selected from the group consisting of: a title of the at least one of the data items, a subject of the at least one of the data items, an author of the at least one of the data items, and a size of the at least one of the data items.

Austein discloses that metadata includes one or more data selected from the group consisting of: a title for the at least one of the data items, a subject of the at least one of the data items, an author of the at least one of the data items, and size of the at least one of the data items.  Austein at 4.  Austein discloses that metadata can include, for example, author information, subject information, content information and message size information.  Austein at 4.

     6.    <u>Claim 6 of the '383 Patent</u>

Claim 6 of the '383 patent reads as follows:

6.  The method of caching information recited in claim 1, wherein the first memory corresponds to a user's regular electronic mail account, and the second memory corresponds to a user's portable electronic mail account.[47]

---

[47] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Blackberry Server) while the user's portable electronic mail account is on the second memory (e.g., Blackberry smartphone or device).  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) ("The first memory may correspond to a BlackBerry server and the second memory may correspond to a BlackBerry Smartphone or device.")

Austein discloses that the first memory corresponds to a user's regular electronic mail account. Austein at 2. Specifically, Austein provides that the first memory (e.g., server) maintains the "master" state of the e-mail. Austein at 2. Further, that a second memory (e.g., disconnected client) would view e-mail in a cached state. Austein at 2.

       7.     <u>Claim 7 of the '383 Patent</u>

Claim 7 of the '383 patent reads as follows:

> 7. The method of caching information recited in claim 1, wherein the data items are electronic mail messages, and further comprising: in a third retrieval operation separate from the first and second retrieval operations, retrieving and storing into the memory only a third hierarchical level of information corresponding to the at least one of the electronic mail messages.[48]

Austein discloses a third retrieval operation separate from the first and second retrieval operations, wherein a third hierarchical level of information from an electronic mail message is retrieved and stored into memory. Austein at 5-6. Specifically, Austein provides that, once descriptors start arriving, the client can issue FETCH commands for messages or message body parts. Austein at 5-6.

       8.     <u>Claim 8 of the '383 Patent</u>

Claim 8 of the '383 patent reads as follows:

> 8. The method of caching information recited in claim 7, wherein the third level of hierarchical information is an attachment to the at least one of the electronic mail messages.

Austein discloses a third level of hierarchical information is an attachment to the at least one of the electronic mail messages. Austein at 5-6. Specifically, Austein provides that, once descriptors start arriving, the client can issue FETCH commands message body parts. Austein at 5-6.

       9.     <u>Claim 9 of the '383 Patent</u>

---

[48] In litigation, Patent Owner has taken the position that a third hierarchical level of information could include "further message headers, additional bytes of a message, or one or more attachments to the message." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

Claim 9 of the '383 patent reads as follows:

9. The method of caching information recited in claim 7, wherein the third level of hierarchical information is text content of the body of the at least one of the electronic mail messages.

Austein discloses a third level of hierarchical information is text content of the body of the at least one of the electronic mail messages. Austein at 5-6. Specifically, Austein provides that, once descriptors start arriving, the client can issue FETCH commands message body parts. Austein at 5-6.

          10.      <u>Claim 10 of the '383 Patent</u>

Claim 10 of the '383 patent reads as follows:

10. A method of caching information relating to a set of data items, comprising:

     in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items;

     and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger;

     and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items.

Each of the elements in claim 10 are disclosed in Austein. Austein discloses a method for caching information relating to data items. Austein at 2. Specifically, Austein discloses caching email on a disconnected client while keeping the master mail state on the server. Austein at 2.

The first element of claim 10 is "in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items." Austein discloses a first retrieval operation for retrieving from the first memory and storing into a second memory a first hierarchical level of information corresponding to a data item. Austein at 2; 4; 6. Specifically, Austein discloses that the second memory (e.g., client) sends a fetch command to the first

**EXHIBIT A**

memory (e.g., server); in response the first memory sends descriptors.  Austein at 6.
Austein provides that descriptors may include at a minimum, a messages "UID" and
"FLAG" information.  Austein at 6.

The second element of claim 10 is "and in a second retrieval operation separate
from the first retrieval operation, retrieving and storing into the memory only a second
hierarchical level of information corresponding to the at least one of the data items,
wherein the first retrieval operation is initiated in response to receiving a first trigger, and
the second retrieval operation is initiated in response to receiving a second trigger
different from the first trigger."[49] Austein discloses that a second retrieval operation is
separate from the first retrieval operation.  Austein at 4-6.  Specifically, Austein discloses
that the second memory (e.g., client) sends a fetch command (first trigger) to a first
memory (e.g., server) to retrieve descriptors and/or descriptors-only.   Austein at 4-6.
Further, Austein provides that a second memory (e.g., client) sends another fetch
command (second trigger) to the first memory (server) to begin sending additional body
parts (e.g., more descriptors, "interesting" messages or body parts, etc.)  Austein at 4-6.

The third element of claim 10 is "and wherein at least one of the first trigger and
the second trigger is a predictive indicator[50] predicting a user's preferences for retrieving
information from the set of data items."  Austein discloses that at least one of the first
trigger and the second trigger is a predictive indicator predicting a user's preference for
retrieving information.  Austein at 2; 4-6.  Specifically, Austein provides that a client will
download "interesting" messages that the synchronization program thinks the human

---

[49] In litigation, Patent Owner has taken the position that triggers are defined in the specification in "very
broad terms" and "may include a variety of input or operations that specific [sic] the caching of different
hierarchical levels of information (e.g., based on user preferences, which set the triggers to filter messages,
a trigger to view additional content of an email, or to retrieve attachments).  The patent also discusses
'notifications' to update the data cache as potential triggers."  See Exhibit OTH-B at "Visto's Disclosure of
Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion
Limited vs. Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

[50] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a
first or second hierarchical level of information for the data items.  A user may set a filter to send headers
only which will trigger the delivery of email headers to the device, or also set filters to send message of
high importance.  These filters are predictive indicators which result in triggers for retrieving information."
Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent
Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15,
2007).

**EXHIBIT A**

might want.   Austein at 4.   Further, the synchronization program is based on a configuration file that may be automated to support naïve humans.  Austein at 2; 4.

11.    Claim 11 of the '383 Patent

Claim 11 of the '383 patent reads as follows:

11.  The method of caching information recited in claim 10, wherein the set of data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.[51]

Austein discloses that the first memory corresponds to a user's regular electronic mail account.  Austein at 2.  Specifically, Austein provides that the first memory (e.g., server) maintains the "master" state of the e-mail.  Austein at 2.  Further, a second memory (e.g., disconnected client) views e-mail in a cached state.  Austein at 2.

12.    Claim 12 of the '383 Patent

Claim 12 of the '383 patent reads as follows:

12.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.[52]

Austein discloses that the user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.  Austein at 2; 4-6.  Specifically, Austein provides that a client will download "interesting" messages that the synchronization program thinks the human might want.  Austein at 4.  Austein provides that the decision of what constitutes an "interesting" message is up to the client software and the human to decide and implement.  Austein at 5-6.

---

[51] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Exchange/Domino Servers) while the user's portable electronic mail account is on the second memory (e.g., BES, BlackBerry Infrastructure or BlackBerry client device.)  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) ("The first memory may correspond to the Exchange/Domino Servers and the second memory may correspond to the BES, BlackBerry Infrastructure or the BlackBerry client device.")

[52] In litigation, Patent Owner has taken the position that a system that uses filters to implement a user's preference for retrieving email would infringe claim 12.  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

**EXHIBIT A**

13.    Claim 13 of the '383 Patent

Claim 13 of the '383 patent reads as follows:

13. The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on a number of unopened electronic mail messages.[53]

Austein discloses that the user's preference for retrieving information is based on the number of unopened electronic mail messages. Austein at 2; 4-6. Specifically, Austein provides that a client will download "interesting" messages that the synchronization program thinks the human might want. Austein at 4. Austein provides that the decision of what constitutes an "interesting" message is up to the client software and the human to decide and implement. Austein at 5-6.

14.    Claim 14 of the '383 Patent

Claim 14 of the '383 patent reads as follows:

14. The method of caching information recited in claim 10, wherein the data items are file directory information.[54]

Austein discloses data items are file directory information. Austein at 2-5. Specifically, Austein discloses that file directory (e.g., mailboxes) may be manipulated by a client. Austein at 2-3. Further, Austein provides that a client can pull from the server a list of all messages which describes content of the directory. Austein at 5.

15.    Claim 15 of the '383 Patent

Claim 15 of the '383 patent reads as follows:

15. The method of caching information recited in claim 10, wherein the data items are electronic mail message data files.

---

[53] In litigation, Patent Owner has taken the position that a system preference that allows for "filtering only new electronic mail messages which enables a user preference for retrieving information based on a number (e.g., one) of unopened (e.g., new) electronic mail messages." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

[54] In litigation, Patent Owner has taken the position that receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

Austein discloses that data items are electronic mail message data files.  Austein at 2.  Specifically, Austein provides that the client receives e-mail messages from the server.  Austein at 2.

### G.  Claims 1-15 are Anticipated by PCMAIL Under 35 U.S.C.  § 102

> **Please see attached Exhibit CC-G presenting claim charts for comparison of the PCMAIL reference with the claims of the '383 patent.**

1.     CLAIM 1

Requester respectfully submits that claims 1-15 of the '383 patent are anticipated by PCMAIL under 35 U.S.C.  § 102 under either of the inconsistent claim interpretation positions taken by Visto Corp. in prosecution and litigation.[55]   A claim chart applying PCMAIL to these claims is submitted herewith as Exhibit CC-G.

1.     Claim 1 of the '383 Patent

Claim 1 of the '383 patent reads as follows:

1.     A method of caching information relating to a set of data items, comprising: providing a first memory storing a set of data items;

wherein information of each of the data items is categorized into hierarchical levels;

in a first retrieval operation, retrieving from the first memory and storing into a second memory only a first hierarchical level of information corresponding  to  at  least  one  of  the  data  items,  wherein  the  first

---

[55] In litigation, Patent Owner has taken a different position with respect to unique identifiers being in a separate hierarchical level.  Specifically, in "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" the Patent Owner stated that an infringing device would carry out a "first retrieval operation by retrieving only a **first hierarchical level** of information (including at least a **unique message identifier and perhaps also e.g., message headers, message subject, or a specific limited number of bytes of a message**)..." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal. June 15, 2007) (emphasis added).  Thus, contrary to the stated reason for allowance in prosecution, the Patent Owner is now arguing that in a first retrieval operation, a unique identifier and metadata may be within the same hierarchical level.  In spite of Visto's two inconsistent interpretations, Sherman anticipates all claims of the '383 under either interpretation.

hierarchical level of information comprises at least one identifier for uniquely identifying each of the at least one of the data items;

and in a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the second hierarchical level of information comprises metadata for the at least one of the data items.

Each of the elements in claim 1 are disclosed in PCMAIL. PCMAIL discloses a method for caching information relating to data items. PCMAIL at 2. Specifically, PCMAIL discloses a mail service system that permits resource limited machines to access and cache mail data. PCMAIL at 2.

The first element of claim 1 is "providing a first memory storing a set of data items; wherein information of each of the data items is categorized into hierarchical levels." PCMAIL discloses a first memory storing data items categorized into hierarchical levels. PCMAIL at 2-3. Specifically, PCMAIL discloses that a first memory (e.g., a repository with a large amount of disk storage) sends and receives e-mail messages. PCMAIL at 2-3. Further, PCMAIL provides that emails are categorized into hierarchical levels (e.g., descriptors, headers, message text, etc.)

The second element of claim 1 is "a first retrieval operation, retrieving from the first memory and storing into a second memory only a first hierarchical level of information[56] corresponding to at least one of the data items, wherein the first hierarchical level of information comprises at least one identifier for uniquely identifying each of the at least one of the data items." PCMAIL discloses a first retrieval operation for retrieving from the first memory and storing into a second memory a first hierarchical level of information corresponding to a data item. PCMAIL at 3. Specifically, PCMAIL

---

[56] In litigation, Patent Owner has taken a different position with respect to unique identifiers being in a separate hierarchical level. Specifically, in "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" the Patent Owner stated that an infringing device would carry out a "first retrieval operation by retrieving only a **first hierarchical level** of information (including at least a **unique message identifier and perhaps also e.g., message headers, message subject, or a specific limited number of bytes of a message**). ..." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007) (emphasis added). Thus, contrary to the stated reason for allowance in prosecution, the Patent Owner is now arguing that in a first retrieval operation, a unique identifier and metadata may be within the same hierarchical level. In spite of Visto's two inconsistent interpretations, the prior art submitted herein anticipates all claims of the '383.

discloses that the second memory (e.g., workstation) sends a request (e.g., fetch descriptors) to the first memory (e.g., repository); in response the first memory sends descriptors to the second memory.  PCMAIL at 16.  Further, PCMAIL provides that a fetch descriptors operation would result in a series of unique identifiers, representing the lower and upper bounds of the list.  PCMAIL at 16.

The third element of claim 1 is "a second retrieval operation separate from the first retrieval operation, retrieving from the first memory and storing into the second memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the second hierarchical level of information comprises metadata for the at least one of the data items."  PCMAIL discloses that a second retrieval operation is separate from the first retrieval operation.  PCMAIL at 17.  Specifically, PCMAIL provides that a second memory (e.g., workstation) sends a command (e.g., fetch message) to the first memory (e.g., repository) to fetch a second hierarchical level of information (e.g., message).  PCMAIL at 17.

Furthermore, and in the alternative, PCMAIL provides that a second memory (e.g., workstation) sends a second command to fetch a second hierarchical level of information (e.g., "fetch-changed descriptors").  PCMAIL at 17.

> 2.      Claim 2 of the '383 Patent

Claim 2 of the '383 patent reads as follows:

> 2.  The method of caching information recited in claim 1, wherein the data items are electronic data files.

PCMAIL discloses that data items are electronic data files.  PCMAIL at 2.  Specifically, PCMAIL discloses that electronic data files (e.g., e-mail messages)) are received, by the client, from the repository.  PCMAIL at 2.

> 3.      Claim 3 of the '383 Patent

Claim 3 of the '383 patent reads as follows:

> 3.  The method of caching information recited in claim 2, wherein the electronic data files are electronic mail message data files.

PCMAIL discloses that electronic data files are electronic mail message data files. PCMAIL at 2. Specifically, PCMAIL discloses that electronic data files (e.g., e-mail messages)) are received, by the client, from the repository. PCMAIL at 2.

4.    Claim 4 of the '383 Patent

Claim 4 of the '383 patent reads as follows:

4. The method of caching information recited in claim 1, wherein the at least one identifier for uniquely identifying each of the at least one of the data items is selected to comprise Unique Identification Listing (UIDL) identifier.

PCMAIL discloses that at least one identifier for uniquely identifying is a Unique Identification Listing (UIDL). PCMAIL at 16. Specifically, PCMAIL discloses that a user can "fetch-descriptors" which will returns a listing of the upper and lower bounds of message unique identifiers. PCMAIL at 16.

5.    Claim 5 of the '383 Patent

Claim 5 of the '383 patent reads as follows:

5. The method of caching information recited in claim 1, wherein the metadata includes one or more data selected from the group consisting of: a title of the at least one of the data items, a subject of the at least one of the data items, an author of the at least one of the data items, and a size of the at least one of the data items.

PCMAIL discloses that metadata includes one or more data selected from the group consisting of: a title for the at least one of the data items, a subject of the at least one of the data items, an author of the at least one of the data items, and size of the at least one of the data items. PCMAIL at 19-20. PCMAIL provides that metadata includes the "from", "to", "date", and "subject" fields. PCMAIL at 19-20.

6.    Claim 6 of the '383 Patent

Claim 6 of the '383 patent reads as follows:

6. The method of caching information recited in claim 1, wherein the first memory corresponds to a user's regular electronic mail account, and the second memory corresponds to a user's portable electronic mail account.[57]

---

[57] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Blackberry Server) while the user's portable electronic mail account is on the second

**EXHIBIT A**

PCMAIL discloses that the first memory corresponds to a user's regular electronic mail account.  PCMAIL at 2.  Specifically, PCMAIL provides that the first memory (e.g., repository) maintains the stable copy of a user's global mail state while a second memory (e.g., workstation) is used to maintain local copies of the user's global mail state.  PCMAIL at 2-3.  A second memory is portable as it is located on resource limited machines like IBM PCs.  PCMAIL at 2.

### 7.    Claim 7 of the '383 Patent

Claim 7 of the '383 patent reads as follows:

> 7.  The method of caching information recited in claim 1, wherein the data items are electronic mail messages, and further comprising: in a third retrieval operation separate from the first and second retrieval operations, retrieving and storing into the memory only a third hierarchical level of information corresponding to the at least one of the electronic mail messages.[58]

PCMAIL discloses a third retrieval operation separate from the first and second retrieval operations, wherein a third hierarchical level of information from an electronic mail message is retrieved and stored into memory.  PCMAIL at 17.  Specifically, PCMAIL provides that, once descriptors (or changed-descriptors) start arriving, the client can issue FETCH commands for messages or message body parts.  PCMAIL at 17.

### 8.    Claim 8 of the '383 Patent

Claim 8 of the '383 patent reads as follows:

> 8.  The method of caching information recited in claim 7, wherein the third level of hierarchical information is an attachment to the at least one of the electronic mail messages.

---

memory (e.g., Blackberry smartphone or device.)  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) ("The first memory may correspond to a BlackBerry server and the second memory may correspond to a BlackBerry Smartphone or device.")

[58] In litigation, Patent Owner has taken the position that a third hierarchical level of information could include "further message headers, additional bytes of a message, or one or more attachments to the message." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

PCMAIL discloses a third retrieval operation separate from the first and second retrieval operations, wherein a third hierarchical level of information is an attachment. PCMAIL at 17. Specifically, PCMAIL provides that, once descriptors (or changed-descriptors) start arriving, the client can issue FETCH commands for message body parts. PCMAIL at 17.

9.    Claim 9 of the '383 Patent

Claim 9 of the '383 patent reads as follows:

9.  The method of caching information recited in claim 7, wherein the third level of hierarchical information is text content of the body of the at least one of the electronic mail messages.

PCMAIL discloses a third retrieval operation separate from the first and second retrieval operations, wherein a third hierarchical level of information is text content of the body. PCMAIL at 4. Specifically, PCMAIL provides that the body, which can be retrieved in parts, is the actual message text. PCMAIL at 4.

10.    Claim 10 of the '383 Patent

Claim 10 of the '383 patent reads as follows:

10.  A method of caching information relating to a set of data items, comprising:

in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items;

and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger;

and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items.

Each of the elements in claim 10 are disclosed in PCMAIL. PCMAIL discloses a method for caching information relating to data items. PCMAIL at 2. Specifically, PCMAIL discloses a mail service system that permits resource limited machines to access and cache mail data. PCMAIL at 2.

92

**EXHIBIT A**

The first element of claim 10 is "in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items." PCMAIL discloses a first retrieval operation for retrieving from the first memory and storing into a second memory a first hierarchical level of information corresponding to a data item. PCMAIL at 3. Specifically, PCMAIL discloses that the second memory (e.g., workstation) sends a request (e.g., fetch descriptors) to the first memory (e.g., repository); in response the first memory sends descriptors to the second memory. PCMAIL at 16.

The second element of claim 10 is "and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger."[59] PCMAIL discloses that a second retrieval operation is separate from the first retrieval operation. PCMAIL at 17. PCMAIL provides that a first trigger (e.g., fetch descriptors) retrieves a first hierarchical level of information from the first memory (e.g., repository). PCMAIL at 17. PCMAIL provides that a second memory (e.g., workstation) sends a second trigger (e.g., fetch message) to the first memory (e.g., repository) to fetch a second hierarchical level of information (e.g., message). PCMAIL at 17.

Furthermore, and in the alternative, PCMAIL provides that a second memory (e.g., workstation) sends a second trigger to fetch a second hierarchical level of information (e.g., "fetch-changed descriptors"). PCMAIL at 17.

The third element of claim 10 is "and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving

---

[59] In litigation, Patent Owner has taken the position that triggers are defined in the specification in "very broad terms" and "may include a variety of input or operations that specific [sic] the caching of different hierarchical levels of information (e.g., based on user preferences, which set the triggers to filter messages, a trigger to view additional content of an email, or to retrieve attachments). The patent also discusses 'notifications' to update the data cache as potential triggers." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

information from the set of data items."  PCMAIL discloses that at least one of the first trigger and the second trigger is a predictive indicator[60] predicting a user's preference for retrieving information.  PCMAIL at 20.  Specifically, PCMAIL provides that a synchronization process can be automated in the interactive mode.  PCMAIL at 20.

        11.     Claim 11 of the '383 Patent

Claim 11 of the '383 patent reads as follows:

> 11.  The method of caching information recited in claim 10, wherein the set of data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.[61]

PCMAIL discloses that the first memory corresponds to a user's regular electronic mail account.  PCMAIL at 2.  Specifically, PCMAIL provides that the first memory (e.g., repository) maintains the stable copy of a user's global mail state while a second memory (e.g., workstation) is used to maintain local copies of the user's global mail state.  PCMAIL at 2-3.  A second memory is portable as it is located on resource limited machines like IBM PCs.  PCMAIL at 2.

        12.     Claim 12 of the '383 Patent

Claim 12 of the '383 patent reads as follows:

---

[60] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items.  A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance.  These filters are predictive indicators which result in triggers for retrieving information."  Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

[61] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Exchange/Domino Servers) while the user's portable electronic mail account is on the second memory (e.g., BES, BlackBerry Infrastructure or BlackBerry client device.)  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007) ("The first memory may correspond to the Exchange/Domino Servers and the second memory may correspond to the BES, BlackBerry Infrastructure or the BlackBerry client device.")

**EXHIBIT A**

12.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.[62]

PCMAIL discloses that the user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.  PCMAIL at 20.  Specifically, PCMAIL provides that a synchronization process can be automated in the interactive mode.  PCMAIL at 20.

13.    Claim 13 of the '383 Patent

Claim 13 of the '383 patent reads as follows:

13.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on a number of unopened electronic mail messages.[63]

PCMAIL discloses that the user's preference for retrieving information is based on the number of unopened electronic mail messages.  PCMAIL at 22.  Specifically, PCMAIL provides that a mail reader determines if new mail arrives and will automatically update the client store during the connection with the repository.  PCMAIL at 22.

14.    Claim 14 of the '383 Patent

Claim 14 of the '383 patent reads as follows:

14.  The method of caching information recited in claim 10, wherein the data items are file directory information.[64]

---

[62] In litigation, Patent Owner has taken the position that a system that uses filters to implement a user's preference for retrieving email would infringe claim 12.  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

[63] In litigation, Patent Owner has taken the position that a system preference that allows for "filtering only new electronic mail messages which enables a user preference for retrieving information based on a number (e.g., one) of unopened (e.g., new) electronic mail messages." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

[64] In litigation, Patent Owner has taken the position that receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

**EXHIBIT A**

PCMAIL discloses data items are file directory information. PCMAIL at 16. Specifically, PCMAIL provides that a user may request a list of all descriptors on that client's update list. PCMAIL at 16. This listing of the upper and lower bounds of the unique identifiers describes the mailbox directory of the user. PCMAIL at 16.

     15.    <u>Claim 15 of the '383 Patent</u>

Claim 15 of the '383 patent reads as follows:

15. The method of caching information recited in claim 10, wherein the data items are electronic mail message data files.

PCMAIL discloses that data items are electronic mail message data files. PCMAIL at 2. Specifically, PCMAIL discloses that data items are e-mail messages. PCMAIL at 2.

**EXHIBIT A**

### H.  Claims 10-15 are rendered obvious by Sherman '409 in view of Sherman '214 Under 35 U.S.C.  § 103

> **Please see attached Exhibit CC-H presenting claim charts for comparison of the Sherman '409 patent in view of the Sherman '214 patent with the claims of the '383**

Requester respectfully submits that claims 10-15 of the '383 patent are rendered obvious by Sherman '409 in view of Sherman '214 under 35 U.S.C.  § 103.  A claim chart applying Sherman '409 in view of Sherman '214 to these claims is submitted herewith as Exhibit CC-H.

**Motivation to Combine**

One of ordinary skill in the art would have reason to combine Sherman '409 and Sherman '214.

Sherman '409 teaches a method of selectively retrieving data items at a client device based on predetermined criteria, such as date, size or keyword information. Sherman '409 at Col. 2, lines 51-56.  More specifically, Sherman '409 operates under either of the IMAP or POP transport protocols to download selective e-mail portions to a portable handheld device.  Sherman '409 at Col. 2, lines 56-66.

Sherman '214 teaches that the selective retrieval of e-mail information does not require the explicit designation by a user.  Sherman '214 at Col. 2, lines 22-30.  "Rather, the information to be synchronized is ascertained through actions of the user that implicitly indicate the user's interest in that information, thereby allowing for the intuitive 'assumption' that the user would want that information synchronized."  Sherman '214 at Col. 2, lines 30-34.

One of ordinary skill in the art would have been motivated to combine Sherman '409 and Sherman '214 to gain increased functionality and efficiency in the realm of e-mail delivery to a portable handheld client.  Both patents disclose increasing functionality and efficiency by using selective retrieval of e-mail information.  Furthermore, the combination of Sherman '409 and Sherman '214 would have yielded the predictable

**EXHIBIT A**

result of predictive indicator predicting a user's preferences for retrieving electronic mail messages.[65]   The selective retrievals disclosed by both patents function the same way together as they do apart.

10.    Claim 10 of the '383 Patent

Claim 10 of the '383 patent reads as follows:

10.    A method of caching information relating to a set of data items, comprising:

in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items;

and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger;

and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items.

Each of the elements in claim 10 is disclosed in Sherman '409 and Sherman '214. Sherman '409 discloses a method of caching information relating to a set of data items. Sherman '409 at Abstract.    Specifically, Sherman '409 discloses a handheld client computing system would selectively retrieve data items from a server in a hierarchical order.  Sherman '409 at Abstract.

The first element of claim 10 is "in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items." Sherman '409 discloses that during a first retrieval operation, only a first hierarchical level of information is downloaded from the first memory and stored into a second memory.  Sherman '409 at Fig. 1; Abstract; Col. 3, lines 54-56; Col.

---

[65] In *KSR* , the United States Supreme Court emphasized that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." The Court provided further instruction stating that "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *Id.*  at 1740 (quoting *Sakraida* at 273.)  *See also Ex parte Catan,* Appeal 2007-0820 (BPAI July 3, 2007); *Ex Parte Kubin,* 2007-0819 (BPAI May 31, 2007)*; Ex Parte Smith,* Appeal 2007-1925 (BPAI June 25, 2007).

3, lines 59-62; Col. 4, line 49 to Col. 5, line 18. Specifically, Sherman '409 provides that "initially, the H/PC (handheld personal computer) downloads item identification information from the server on the client/server network." Sherman '409 at Abstract; Col. 7, lines 31-50; Col. 6, lines 50-53; Col. 7, lines 40-44.

The second element of claim 10 is "and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger."[66] Sherman '409 discloses a second retrieval operation that is separate from the first retrieval operation. Sherman '409 at Abstract; Col. 7, lines 50-54; Sherman '409 at Col. 10, lines 7-17. Specifically, Sherman '409 provides that after the handheld client computing system downloads identification information from the server, the handheld client computing system will download header information. Sherman '409 at Abstract; Col. 7, lines 50-54; Sherman '409 at Col. 10, lines 7-17.

Further, Sherman '409 provides for a first retrieval operation initiated by a first trigger, and a second retrieval operation initiated by a second trigger. Sherman '409 at Abstract; Col. 7, lines 50-54; Col. 10, lines 7-17. Specifically, the handheld client computing system selectively retrieves items based on multiple request operations. Sherman '409 at Abstract; Col. 7, lines 50-54; Col. 10, lines 7-17.

The third element of claim 10 is "and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items." Sherman '409 provides that the first or second

---

[66] In litigation, Patent Owner has taken the position that triggers are defined in the specification in "very broad terms" and "may include a variety of input or operations that specific [sic] the caching of different hierarchical levels of information (e.g., based on user preferences, which set the triggers to filter messages, a trigger to view additional content of an email, or to retrieve attachments). The patent also discusses 'notifications' to update the data cache as potential triggers." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

trigger is a predictive indicator[67] for retrieving data items based on a user's preference. Sherman '409 at Col. 8, lines 50-62; Col. 11, lines 57-67; Col. 12, lines 39-46. Specifically, Sherman '409 provides that an IMAP server has filtering capabilities and decides to issue a download operation based on a determination of whether the data items fall within a specific filter criterion. Sherman '409 at Col. 8, lines 50-62; Col. 11, lines 57-67; Col. 12, lines 39-46.

Alternatively, Sherman '214 provides that data items may be downloaded "based on implicit perception of a user's desire to synchronize such information and without the need for explicit designation by the user." Sherman '214 at Abstract.

11.    Claim 11 of the '383 Patent

Claim 11 of the '383 patent reads as follows:

11. The method of caching information recited in claim 10, wherein the set of data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.[68]

Sherman '409 discloses that a first memory may correspond to a user's regular electronic mail account while the second memory corresponds to the user's portable electronic mail account. Sherman '409 at Abstract. Specifically, Sherman discloses that a handheld personal computer may be used to selectively download from the users regular mail account on a server. Sherman '409 at Abstract.

---

[67] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items. A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance. These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

[68] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Exchange/Domino Servers) while the user's portable electronic mail account is on the second memory (e.g., BES, BlackBerry Infrastructure or BlackBerry client device.) See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007) ("The first memory may correspond to the Exchange/Domino Servers and the second memory may correspond to the BES, BlackBerry Infrastructure or the BlackBerry client device.")

**EXHIBIT A**

12.    Claim 12 of the '383 Patent

Claim 12 of the '383 patent reads as follows:

12.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.[69]

Sherman '409 provides that a user's preference for retrieving electronic mail messages is based on whether the message is authored by a particular person.  Sherman '409 at Col. 8, lines 50-62.  Specifically, Sherman '409 provides that an IMAP server has filtering capabilities that only returns items that satisfy the filter criteria.  Sherman '409 at Col. 8, lines 50-62.

13.    Claim 13 of the '383 Patent

Claim 13 of the '383 patent reads as follows:

13.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on a number of unopened electronic mail messages.[70]

Sherman '409 provides that a user's preference for retrieving electronic mail messages is based on whether the number of unopened electronic mail messages. Sherman '409 at Col. 8, lines 50-62.  Specifically, Sherman '409 provides that an IMAP server has filtering capabilities that only returns items that satisfy the filter criteria. Sherman '409 at Col. 8, lines 50-62.

---

[69] In litigation, Patent Owner has taken the position that a system that uses filters to implement a user's preference for retrieving email would infringe claim 12.  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

[70] In litigation, Patent Owner has taken the position that a system preference that allows for "filtering only new electronic mail messages which enables a user preference for retrieving information based on a number (e.g., one) of unopened (e.g., new) electronic mail messages." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

**EXHIBIT A**

14.    Claim 14 of the '383 Patent

Claim 14 of the '383 patent reads as follows:

14.  The method of caching information recited in claim 10, wherein the data items are file directory information.[71]

Sherman '409 discloses that data items are file directory information.  Sherman '409 at Col. 6, lines 57-59; Sherman '409 at Col. 7, lines 31-50.  Specifically, Sherman '409 discloses downloading "preliminary information wherein each element in the list relates to a particular item on the server.  Importantly, the list of preliminary information received from the server does not consume substantial memory space on the H/PC 22."  Sherman '409 at Col. 7, lines 31-50.  Accordingly, Sherman '409 provides file directory information (e.g., a list of items on the server) reflects the "changes that you make to the email message folder on your computer.  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) (receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network").

15.    Claim 15 of the '383 Patent

Claim 15 of the '383 patent reads as follows:

15.  The method of caching information recited in claim 10, wherein the data items are electronic mail message data files.

Sherman '409 discloses that data items are mail message data files.  Sherman '409 at Col. 6, lines 46-47.  Specifically, Sherman '409 discloses that the subject of the request for data items is email messages.  Sherman '409 at Col. 6, lines 46-47.

---

[71] In litigation, Patent Owner has taken the position that receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network."  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

**EXHIBIT A**

## I. Claims 10-15 are rendered obvious by RFC 2060 in view of Sherman '409 and further in view of Sherman '214 Under 35 U.S.C. § 103

> **Please see attached Exhibit CC-I presenting claim charts for comparison of the RFC 2060 reference in view of the Sherman '409 and further in view of Sherman '214 with the claims of the '383 patent.**

Requester respectfully submits that claims 10-15 of the '383 patent are rendered obvious by RFC 2060 in view of Sherman '409 and further in view of Sherman '214 under 35 U.S.C. § 103. A claim chart applying RFC 2060 in view of Sherman '409 and further in view of Sherman '214 to these claims is submitted herewith as Exhibit CC-I.

**Motivation to Combine**

One of ordinary skill in the art would have reason to combine RFC 2060, Sherman '409 and Sherman '214.

RFC 2060 teaches a method of selectively retrieving portions of an e-mail based on the IMAP protocol. RFC 2060 at 41-44. More specifically, RFC 2060 outlines the basic functionalities of the IMAP protocol including the specific types of e-mail fetch commands that may be issued from a client device. RFC 2060 at 41-44.

Sherman '409 teaches a method of selectively retrieving data items at a client device based on predetermined criteria, such as date, size or keyword information. Sherman '409 at Col. 2, lines 51-56. More specifically, Sherman '409 operates under either of the IMAP or POP transport protocols to download selective e-mail portions to a portable handheld device. Sherman '409 at Col. 2, lines 56-66. The object of the selective retrieval in Sherman '409 is to increase the functionality and efficiency of a mail delivery system. Sherman '409 Col. 2, line 61-Col. 3, line 24.

Sherman '214 teaches that the selective retrieval of e-mail information does not require the explicit designation by a user. Sherman '214 at Col. 2, lines 22-30. "Rather, the information to be synchronized is ascertained through actions of the user that implicitly indicate the user's interest in that information, thereby allowing for the intuitive 'assumption' that the user would want that information synchronized." Sherman

**EXHIBIT A**

'214 at Col. 2, lines 30-34. The object of the selective retrieval in Sherman '214 is to increase the functionality and efficiency of a mail delivery system. Sherman '214 at Col. 1, lines 7-13.

One of ordinary skill in the art would have been motivated to combine RFC 2060, Sherman '409 and Sherman '214 to gain increased functionality and efficiency in the realm of e-mail delivery to a portable handheld client. Furthermore, the combination of RFC 2060, Sherman '409, and Sherman '214 would have yielded the predictable result of predictive indicator predicting a user's preferences for retrieving electronic mail messages.[72] The Sherman patents are designed to function the same way with different email delivery systems, including the IMAP system disclosed in RFC 2060. Sherman '409 at Col. 2, lines 51-55.

### 10.    Claim 10 of the '383 Patent

Claim 10 of the '383 patent reads as follows:

10.   A method of caching information relating to a set of data items, comprising:

in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items;

and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger;

and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items.

Each of the elements in claim 10 are disclosed in RFC 2060 and Sherman '409. RFC 2060 discloses caching information relating to a set of data items. RFC 2060 at 1.

---

[72] In *KSR*, the United States Supreme Court emphasized that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." The Court provided further instruction stating that "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *Id.* at 1740 (quoting *Sakraida* at 273.) *See also Ex parte Catan,* Appeal 2007-0820 (BPAI July 3, 2007); *Ex Parte Kubin,* 2007-0819 (BPAI May 31, 2007)*; Ex Parte Smith,* Appeal 2007-1925 (BPAI June 25, 2007).

**EXHIBIT A**

Specifically, RFC 2060 provides that a client accesses, fetches and manipulates electronic mail stored on a remote server.  RFC 2060 at 1.

The first element of claim 10 is "in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items."  RFC 2060 discloses a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items.  RFC 2060 at 41-44.  Specifically, RFC 2060 provides that a "FETCH command retrieves data associated with a message in the mailbox" from the server and stores the information at a second memory (e.g., a client).  Furthermore, RFC 2060 discloses that only a first hierarchical level of information is retrieved which comprises an identifier for uniquely identifying the data items.  RFC 2060 at 7–8; RFC 2060 at 41–44.  Specifically, RFC 2060 provides that a FETCH command may be issued whereas "the currently defined data items that can be fetched are: ...UID - The unique identifier for the message."  RFC 2060 at 7–8; 41–44.

The second element of claim 1 is "and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger."[73]  RFC 2060 discloses a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items.  RFC 2060 at 1; 7; 9-11; 17; 41-44.  Specifically, RFC 2060 provides that after the client computing system downloads identification information from the server, the client

---

[73] In litigation, Patent Owner has taken the position that triggers are defined in the specification in "very broad terms" and "may include a variety of input or operations that specific [sic] the caching of different hierarchical levels of information (e.g., based on user preferences, which set the triggers to filter messages, a trigger to view additional content of an email, or to retrieve attachments).  The patent also discusses 'notifications' to update the data cache as potential triggers."  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

**EXHIBIT A**

may issue a second command that will download header information (e.g., message attributes). RFC 2060 at 1; 7; 9-11; 17; 41-44.

Further, RFC 2060 provides that a first retrieval operation is initiated in a response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger. RFC 2060 at 41–44. Specifically, RFC 2060 provides that each hierarchical level of information is retrieved based on fetch commands. RFC 2060 at 41-44.

The third element of claim 10 is "and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items." Sherman '409 provides that the first or second trigger is a predictive indicator[74] for retrieving data items based on a user's preference. Sherman '409 at Col. 8, lines 50-62; Col. 11, lines 57-67; Col. 12, lines 39-46. Specifically, Sherman '409 provides that an IMAP server has filtering capabilities and decides to issue a download operation based on a determination of whether the data items fall within a specific filter criterion. Sherman '409 at Col. 8, lines 50-62; Col. 11, lines 57-67; Col. 12, lines 39-46.

Alternatively, Sherman '214 provides that data items may be downloaded "based on implicit perception of a user's desire to synchronize such information and without the need for explicit designation by the user." Sherman '214 at Abstract.

     11.   Claim 11 of the '383 Patent

Claim 11 of the '383 patent reads as follows:

11. The method of caching information recited in claim 10, wherein the set of data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations

---

[74] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items. A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance. These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.[75]

RFC 2060 discloses that a set of data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.  RFC 2060 at 1; 4-5.  Specifically, RFC 2060 discloses a client server model where a client is permitted to selectively retrieve messages and manipulate folders such that they are functionally equivalent to local mailboxes.  RFC 2060 at 1; 4-5.

12.    Claim 12 of the '383 Patent

Claim 12 of the '383 patent reads as follows:

12.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.[76]

Sherman '409 provides that a user's preference for retrieving electronic mail messages is based on whether the message is authored by a particular person.  Sherman '409 at Col. 8, lines 50-62.  Specifically, Sherman '409 provides that an IMAP server has filtering capabilities that only returns items that satisfy the filter criteria.  Sherman '409 at Col. 8, lines 50-62.

13.    Claim 13 of the '383 Patent

Claim 13 of the '383 patent reads as follows:

13.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on a number of unopened electronic mail messages.[77]

---

[75] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Exchange/Domino Servers) while the user's portable electronic mail account is on the second memory (e.g., BES, BlackBerry Infrastructure or BlackBerry client device.)  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) ("The first memory may correspond to the Exchange/Domino Servers and the second memory may correspond to the BES, BlackBerry Infrastructure or the BlackBerry client device.")

[76] In litigation, Patent Owner has taken the position that a system that uses filters to implement a user's preference for retrieving email would infringe claim 12.  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

**EXHIBIT A**

Sherman '409 provides that a user's preference for retrieving electronic mail messages is based on whether the number of unopened electronic mail messages. Sherman '409 at Col. 8, lines 50-62. Specifically, Sherman '409 provides that an IMAP server has filtering capabilities that only returns items that satisfy the filter criteria. Sherman '409 at Col. 8, lines 50-62.

14.    Claim 14 of the '383 Patent

Claim 14 of the '383 patent reads as follows:

14. The method of caching information recited in claim 10, wherein the data items are file directory information.[78]

Sherman '409 discloses that data items are file directory information. Sherman '409 at Col. 6, lines 57-59; Sherman '409 at Col. 7, lines 31-50. Specifically, Sherman '409 discloses downloading "preliminary information wherein each element in the list relates to a particular item on the server. Importantly, the list of preliminary information received from the server does not consume substantial memory space on the H/PC 22." Sherman '409 at Col. 7, lines 31-50. Accordingly, Sherman '409 provides file directory information (e.g., a list of items on the server) reflects the "changes that you make to the email message folder on your computer. See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007) (receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network").

15.    Claim 15 of the '383 Patent

Claim 15 of the '383 patent reads as follows:

---

[77] In litigation, Patent Owner has taken the position that a system preference that allows for "filtering only new electronic mail messages which enables a user preference for retrieving information based on a number (e.g., one) of unopened (e.g., new) electronic mail messages." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

[78] In litigation, Patent Owner has taken the position that receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

15.  The method of caching information recited in claim 10, wherein the data items are electronic mail message data files.

RFC 2060 discloses that data items are electronic mail message data files.  RFC 2060 at 1.  Specifically, RFC 2060 provides that data items are electronic mail messages on a server.  RFC 2060 at 1.

### J.  Claims 10-15 are rendered obvious by Bern in view of Sherman '409 and further in view of Sherman '214 Under 35 U.S.C. § 103

> **Please see attached Exhibit CC-J presenting claim charts for comparison of the Bern patent in view of Sherman '409 and further in view of Sherman '409 with the claims of the '383 patent.**

Requester respectfully submits that claims 10-15 of the '383 patent are rendered obvious by Bern in view of Sherman '409 and further in view of Sherman '214 under 35 U.S.C. § 103.  A claim chart applying Bern in view of Sherman '409 and further in view of Sherman '214 to these claims is submitted herewith as Exhibit CC-J.

**Motivation to Combine**

One of ordinary skill in the art would have reason to combine Bern and Sherman '409 and further in view of Sherman '214.

Bern teaches a method of delivering e-mail from a POP3 or IMAP4 server to a portable client.  Bern at Col. 3, lines 31-35.  The object of the Bern patent is to increase the functionality and efficiency of a mail delivery system by methodically downloading specific parts of e-mail information from the POP3 or IMAP4 server.  Bern at Col. 3, lines 20-39.  Furthermore, Bern provides that "any person skilled in the art that the present invention is applicable in connection with any mail delivery protocol which handles unique identifiers in the same, or similar, way as the POP3 or IMAP4 mail delivery protocols[.]"  Bern at Col. 3, lines 61-65.

Sherman '409 teaches a method of selectively retrieving data items at a client device based on predetermined criteria, such as date, size or keyword information.  Sherman '409 at Col. 2, lines 51-56.  More specifically, Sherman '409 operates under

either of the IMAP or POP transport protocols to download selective e-mail portions to a portable handheld device.  Sherman '409 at Col. 2, lines 56-66.  The object of the selective retrieval in Sherman '409 is to increase the functionality and efficiency of a mail delivery system.  Sherman '409 at Col. 2, line 61-Col. 3, line 24.

Sherman '214 teaches that the selective retrieval of e-mail information does not require the explicit designation by a user.  Sherman '214 at Col. 2, lines 22-30.  "Rather, the information to be synchronized is ascertained through actions of the user that implicitly indicate the user's interest in that information, thereby allowing for the intuitive 'assumption' that the user would want that information synchronized."  Sherman '214 at Col. 2, lines 30-34.  The object of the selective retrieval in Sherman '214 is to increase the functionality and efficiency of a mail delivery system.  Sherman '214 at Col. 1, lines 7-13.

One of ordinary skill in the art would have been motivated to combine Bern, Sherman '409 and Sherman '214 to gain increased functionality and efficiency in the realm of e-mail delivery to a portable handheld client.  Furthermore, the combination of Bern and Sherman '409 and Sherman '214 would have yielded the predictable result of predictive indicator predicting a user's preferences for retrieving electronic mail messages.[79]  Bern's unique identifiers and the selective retrieval of the Sherman patents function the same way together as they do apart.  Bern and the Sherman patents are all are designed to function the same way with different email delivery systems, including IMAP.

10.    Claim 10 of the '383 Patent

10.  A method of caching information relating to a set of data items, comprising:

---

[79] In *KSR* , the United States Supreme Court emphasized that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." The Court provided further instruction stating that "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *Id*.  at 1740 (quoting *Sakraida* at 273.)  *See also Ex parte Catan,* Appeal 2007-0820 (BPAI July 3, 2007); *Ex Parte Kubin,* 2007-0819 (BPAI May 31, 2007)*; Ex Parte Smith,* Appeal 2007-1925 (BPAI June 25, 2007).

**EXHIBIT A**

in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items;

and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger;

and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items.

Each of the elements in claim 10 are disclosed in Bern in view of Sherman '409 and further in view of Sherman '214. Bern discloses caching information relating to a set of data items. Bern at Col. 2, lines 20-36. Specifically, Bern discloses that POP3 and IMAP4 can be used to allow multiple computers (e.g., "a stationary computer at the office and a portable computer during travel...") to access e-mail either on-line or off-line. Bern at Col. 2, lines 20-36.

The first element of claim 10 is "in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items." Bern discloses a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items. Bern at Col. 4, lines 1-19; Col. 6, lines 23-54; Col. 7, line 57 – Col. 8, line 2. Specifically, Bern provides that a second memory (e.g., mail client on a mobile communications station) retrieves from a first memory (e.g., "mail server site") a first hierarchical level of information (e.g., "SMS short message which includes the job identifier of the received and stored e-mail message"). Bern at Col. 4, lines 1-19; Col. 6, lines 23-54; Col. 7, line 57 – Col. 8, line 2.

With respect to a second memory, Bern provides that "it is to be understood that what is meant by the expression mobile communication station in this document is either a stand-alone RF (Radio Frequency) transceiver having processing capabilities and displaying means, such as a mobile telephone or a hand-held PDA (Personal Digital Assistant), or, a RF transceiver together with any kind of portable or stationary equipment having processing capabilities, such as a portable laptop computer or a

stationary personal computer, wherein the RF transceiver is arranged in communication with the portable or stationary equipment."  Bern at Col. 5, lines 8-17.

The second element of claim 10 is "and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger."[80] Bern discloses a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items.  Bern at Col. 5, lines 1-7; Col. 6, lines 33-40.  Specifically Bern provides that in a second retrieval operation, a user at a second memory (e.g., "mobile communication station") uses the unique identifier (e.g., "SMS notification") to access a second hierarchical level of information (e.g., "header information").  Bern at Col. 6, lines 33-40.  Bern describes that accessing a second hierarchical level of information should be understood to mean a number of possible operations like, retrieving header information only, retrieving first or second parts of an e-mail body, or any other possible manipulation of e-mail.  Bern at Col. 5, lines 1-7.

Further, Bern discloses that a first retrieval operation is initiated in response to receiving a first trigger.  Bern at Col. 7, line 57 – Col. 8, line 2; Col. 6, lines 33-40.  Specifically, Bern provides that upon receiving a new message arriving a first memory (e.g., e-mail server), a notification is generated and sent to the second memory (e.g., mail client on a mobile communications station).  Bern at Col. 7, line 57 – Col. 6, line 2.

Further, Bern discloses a second retrieval operation is initiated in response to receiving a second trigger different from the first trigger.  Bern at Col. 6, lines 33-40.

---

[80] In litigation, Patent Owner has taken the position that triggers are defined in the specification in "very broad terms" and "may include a variety of input or operations that specific [sic] the caching of different hierarchical levels of information (e.g., based on user preferences, which set the triggers to filter messages, a trigger to view additional content of an email, or to retrieve attachments).  The patent also discusses 'notifications' to update the data cache as potential triggers."  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

Specifically, Bern provides that upon receiving a first hierarchical level of information (e.g., "SMS notification"), a user at the second memory (e.g., mail client on a mobile communications station) may retrieve the email stored in the first memory (e.g., mail server). Bern at Col. 6, lines 33-40. To retrieve the second hierarchical level of information, the user at a second memory will initiate a second trigger (e.g., a retrieve command). Bern at Col. 8, lines 15-24; Col. 9, lines 1-12.

The third element of claim 10 is "and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items." Sherman '409 provides that the first or second trigger is a predictive indicator for retrieving data items based on a user's preference. Sherman '409 at Col. 8, lines 50-62; Col. 11, lines 57-67; Col. 12, lines 39-46. Specifically, Sherman '409 provides that an IMAP server has filtering capabilities and decides to issue a download operation based on a determination of whether the data items fall within a specific filter criterion. Sherman '409 at Col. 8, lines 50-62; Col. 11, lines 57-67; Col. 12, lines 39-46.

Alternatively, Sherman '214 provides that data items may be downloaded "based on implicit perception of a user's desire to synchronize such information and without the need for explicit designation by the user." Sherman '214 at Abstract.

           11.    Claim 11 of the '383 Patent

Claim 11 of the '383 patent reads as follows:

11. The method of caching information recited in claim 10, wherein the set of data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.[81]

---

[81] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Exchange/Domino Servers) while the user's portable electronic mail account is on the second memory (e.g., BES, BlackBerry Infrastructure or BlackBerry client device.) See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007) ("The first memory may correspond to the Exchange/Domino Servers and the second memory may correspond to the BES, BlackBerry Infrastructure or the BlackBerry client device.")

**EXHIBIT A**

Bern discloses that data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account. Bern at Col. 2, lines 29-38. Specifically, Bern provides that a first memory (e.g., e-mail server) stores the users regular electronic mail account while the second memory (e.g., mail client on a portable computer) stores the user's portable electronic mail account. Bern at Col. 2, lines 29-38.

>    12.    Claim 12 of the '383 Patent

Claim 12 of the '383 patent reads as follows:

> 12. The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.[82]

Sherman '409 provides that a user's preference for retrieving electronic mail messages is based on whether the message is authored by a particular person. Sherman '409 at Col. 8, lines 50-62. Specifically, Sherman '409 provides that an IMAP server has filtering capabilities that only returns items that satisfy the filter criteria. Sherman '409 at Col. 8, lines 50-62.

>    13.    Claim 13 of the '383 Patent

Claim 13 of the '383 patent reads as follows:

> 13. The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on a number of unopened electronic mail messages.[83]

Sherman '409 provides that a user's preference for retrieving electronic mail messages is based on whether the number of unopened electronic mail messages. Sherman '409 at Col. 8, lines 50-62. Specifically, Sherman '409 provides that an IMAP

---

[82] In litigation, Patent Owner has taken the position that a system that uses filters to implement a user's preference for retrieving email would infringe claim 12. See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

[83] In litigation, Patent Owner has taken the position that a system preference that allows for "filtering only new electronic mail messages which enables a user preference for retrieving information based on a number (e.g., one) of unopened (e.g., new) electronic mail messages." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

server has filtering capabilities that only returns items that satisfy the filter criteria. Sherman '409 at Col. 8, lines 50-62.

         14.     Claim 14 of the '383 Patent

Claim 14 of the '383 patent reads as follows:

14.  The method of caching information recited in claim 10, wherein the data items are file directory information.[84]

Bern discloses that data items are file directory information.  Bern at Col. 2, line 48 – Col. 3, line 20.  Specifically, Bern provides that a user may retrieve directory information (e.g., a UIDL which describes overall the contents of a user's mailbox on the server).  Bern at Col. 2, line 48 – Col. 3, line 20.

         15.     Claim 15 of the '383 Patent

Claim 15 of the '383 patent reads as follows:

15.  The method of caching information recited in claim 10, wherein the data items are electronic mail message data files.

Bern discloses that the data items are electronic mail message data files.  Bern at Abstract.  Specifically, Bern provides that the data files are electronic mail message data files (e.g., e-mail).  Bern at Abstract.

---

[84] In litigation, Patent Owner has taken the position that receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

**EXHIBIT A**

### K.  Claims 10-15 are rendered obvious by Halahmi in view of Sherman '409 and further in view of Sherman '214 Under 35 U.S.C. § 103

> **Please see attached Exhibit CC-K presenting claim charts for comparison of the Halahmi reference in view of the Sherman '409 and further in view of Sherman '214 with the claims of the '383 patent.**

Requester respectfully submits that claims 10-15 are anticipated by the Halahmi reference under 35 U.S.C. § 102 as discussed in Section D above.  However, in the alternative, Requester also submits that claims 10-15 of the '383 patent are rendered obvious by Halahmi in view of Sherman '409 and further in view of Sherman '214 under 35 U.S.C. § 103.  A claim chart applying Halahmi in view of Sherman '409 and further in view of Sherman '214 to these claims is submitted herewith as Exhibit CC-K.

**Motivation to Combine**

One of ordinary skill in the art would have reason to combine Halahmi, Sherman '409 and Sherman '214.

Halahmi teaches the use of automated e-mail filtering to download messages from a first memory (e.g., server) to a second memory (e.g., a client) without regard to a user's request.  Halahmi at Col. 7, lines 24-27.

Sherman '409 teaches a method of selectively retrieving data items at a client device based on predetermined criteria, such as date, size or keyword information.  Sherman '409 at Col. 2, lines 51-56.  More specifically, Sherman '409 operates under either of the IMAP or POP transport protocols to download selective e-mail portions to a portable handheld device.  Sherman '409 at Col. 2, lines 56-66.  The object of the selective retrieval in Sherman '409 is to increase the functionality and efficiency of a mail delivery system.  Sherman '409 Col. 2, line 61-Col. 3, line 24.

Sherman '214 teaches that the selective retrieval of e-mail information does not require the explicit designation by a user.  Sherman '214 at Col. 2, lines 22-30.  "Rather, the information to be synchronized is ascertained through actions of the user that implicitly indicate the user's interest in that information, thereby allowing for the

116

intuitive 'assumption' that the user would want that information synchronized." Sherman '214 at Col. 2, lines 30-34. The object of the selective retrieval in Sherman '214 is to increase the functionality and efficiency of a mail delivery system. Sherman '214 at Col. 1, lines 7-13.

One of ordinary skill in the art would have been motivated to combine Halahmi, Sherman '409 and Sherman '214 to gain increased functionality and efficiency in the realm of e-mail delivery to a portable handheld client. Furthermore, the combination of Halahmi, Sherman '409, and Sherman '214 would have yielded the predictable result of predictive indicator predicting a user's preferences for retrieving electronic mail messages.[85] The Sherman patents are designed to function the same way with different email delivery systems, including the IMAP system disclosed in Halahmi. Sherman '409 at Col. 2, lines 51-55.

          10.   Claim 10 of the '383 Patent

Claim 10 of the '383 patent reads as follows:

10. A method of caching information relating to a set of data items, comprising:

    in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items;

    and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger;

---

[85] In *KSR* , the United States Supreme Court emphasized that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." 127 S.Ct. at 1739, 82 USPQ2d at 1395 (citing *Graham v. John Deere Co.,* 383 U.S. 1, 12 (1966). The Court provided further instruction stating that "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *Id.* at 1740 (quoting *Sakraida* at 273.) *See also Ex parte Catan,* Appeal 2007-0820 (BPAI July 3, 2007); *Ex Parte Kubin,* 2007-0819 (BPAI May 31, 2007)*; Ex Parte Smith,* Appeal 2007-1925 (BPAI June 25, 2007).

**EXHIBIT A**

and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items.

Each of the elements in claim 10 are disclosed in Halahmi, Sherman '409 and Sherman '214. Specifically, Halahmi discloses dividing e-mail messages into a plurality of portions for transmission and display on a device. Halahmi at Col. 3, lines 11-22.

The first element of claim 10 is "in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items." Halahmi discloses a first retrieval operation for retrieving from the first memory and storing into a second memory a first hierarchical level of information corresponding to a data item. Halahmi at Col. 5, lines 40-52; Halahmi at Col. 8, lines 1-39. Specifically, Halahmi discloses that the second memory (e-mail portion server) sends a "STAT" command and a "List" command to the first memory (e-mail server); in response the first memory sends a list of total message size and a list of all messages. Halahmi at Col. 8, lines 1-39. Halahmi also provides that the list of total message size and list of total messages includes the message identifier numbers. Halahmi at Col. 8, lines 1-39.

The second element of claim 10 is "and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger."[86] Halahmi discloses that a second retrieval operation is separate from the first retrieval operation. Halahmi at Col. 8, lines 1-11. Specifically, Halahmi discloses that the second memory (e-mail portion server) sends a "STAT" and

---

[86] In litigation, Patent Owner has taken the position that triggers are defined in the specification in "very broad terms" and "may include a variety of input or operations that specific [sic] the caching of different hierarchical levels of information (e.g., based on user preferences, which set the triggers to filter messages, a trigger to view additional content of an email, or to retrieve attachments). The patent also discusses 'notifications' to update the data cache as potential triggers." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

"List" command (first trigger) to the first memory (e-mail server); in response the first memory sends a list of total message size and a list of all messages. Halahmi at Col. 8, lines 1-39. Halahmi also provides that the list of total message size and list of total messages includes the message identifier numbers. Halahmi at Col. 8, lines 1-39. Further, Halahmi provides that a second memory (e-mail portion server) sends a command (second trigger) to the first memory (e-mail server) to parse all of the headers of the e-mail messages that are in the inbox. Halahmi at Col. 8, lines 1-11.

The third element of claim 10 is "and wherein at least one of the first trigger and the second trigger is a predictive indicator[87] predicting a user's preferences for retrieving information from the set of data items." Halahmi discloses that at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preference for retrieving information. Halahmi at Col. 7, lines 24-27. Specifically, Halahmi provides that "e-mail message(s) could be retrieved automatically without regard to the user request[.]" Halahmi at Col. 7, lines 24-27. Further still, e-mail messages could be selected for automatic retrieval based on user preferences. Halahmi at Col. 8, lines 55-60.

In the alternative, Sherman '409 provides that the first or second trigger is a predictive indicator[88] for retrieving data items based on a user's preference. Sherman '409 at Col. 8, lines 50-62; Col. 11, lines 57-67; Col. 12, lines 39-46. Specifically, Sherman '409 provides that an IMAP server has filtering capabilities and decides to issue a download operation based on a determination of whether the data items fall within a

---

[87] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items. A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance. These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

[88] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items. A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance. These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

specific filter criterion.  Sherman '409 at Col. 8, lines 50-62; Col. 11, lines 57-67; Col. 12, lines 39-46.

Further in the alternative, Sherman '214 provides that data items may be downloaded "based on implicit perception of a user's desire to synchronize such information and without the need for explicit designation by the user."  Sherman '214 at Abstract.

11.    Claim 11 of the '383 Patent

Claim 11 of the '383 patent reads as follows:

11. The method of caching information recited in claim 10, wherein the set of data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.[89]

Halahmi discloses that the first memory corresponds to a user's regular electronic mail account.  Halahmi at Col. 5, line 49-56.  Specifically, Halahmi provides that the e-mail server sends and receives e-mails according to standard protocol such as SMTP, POP3 and IMAP4.  Halahmi at Col. 5, lines 49-56.  Further, Halahmi provides that the second memory corresponds to a user's portable electronic mail account.  Halahmi at Col. 5, line 39 – Col. 6, line 26.  Specifically, Halahmi provides that e-mail is sent from the e-mail server to the e-mail proxy server, which compresses, converts and forward for display to a user at a wireless communication device.  Halahmi at Col. 5, line 39 – Col. 6, line 26.

---

[89] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Exchange/Domino Servers) while the user's portable electronic mail account is on the second memory (e.g., BES, BlackBerry Infrastructure or BlackBerry client device.)  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) ("The first memory may correspond to the Exchange/Domino Servers and the second memory may correspond to the BES, BlackBerry Infrastructure or the BlackBerry client device.")

**EXHIBIT A**

12.    Claim 12 of the '383 Patent

Claim 12 of the '383 patent reads as follows:

12.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.[90]

Halahmi anticipates claim 12 as discussed in Section D above.  However, in the Alternative, Halahmi renders obvious claim 12 in view of Sherman '409.  Sherman '409 provides that a user's preference for retrieving electronic mail messages is based on whether the message is authored by a particular person.  Sherman '409 at Col. 8, lines 50-62.  Specifically, Sherman '409 provides that an IMAP server has filtering capabilities that only returns items that satisfy the filter criteria (e.g., items from a particular author).  Sherman '409 at Col. 8, lines 50-62.

13.    Claim 13 of the '383 Patent

Claim 13 of the '383 patent reads as follows:

13.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on a number of unopened electronic mail messages.[91]

Halahmi anticipates claim 13 as discussed in Section D above.  However, in the Alternative, Halahmi renders obvious claim 13 in view of Sherman '409.Sherman '409 provides that a user's preference for retrieving electronic mail messages is based on whether the number of unopened electronic mail messages.  Sherman '409 at Col. 8, lines 50-62.  Specifically, Sherman '409 provides that an IMAP server has filtering capabilities

---

[90] In litigation, Patent Owner has taken the position that a system that uses filters to implement a user's preference for retrieving email would infringe claim 12.  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

[91] In litigation, Patent Owner has taken the position that a system preference that allows for "filtering only new electronic mail messages which enables a user preference for retrieving information based on a number (e.g., one) of unopened (e.g., new) electronic mail messages." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

**EXHIBIT A**

that only returns items that satisfy the filter criteria (e.g., new e-mails). Sherman '409 at Col. 8, lines 50-62.

14.    Claim 14 of the '383 Patent

Claim 14 of the '383 patent reads as follows:

14. The method of caching information recited in claim 10, wherein the data items are file directory information.[92]

Halahmi discloses data items are file directory information. Halahmi at Col. 9, lines 4-13; Col. 8, lines 1-7. Specifically, Halahmi discloses that data items include information about the user's inbox at the e-mail server, e.g., mailbox total size and a listing of e-mail messages. Halahmi at Col. 8, lines 1-7.

15.    Claim 15 of the '383 Patent

Claim 15 of the '383 patent reads as follows:

15. The method of caching information recited in claim 10, wherein the data items are electronic mail message data files.

Halahmi discloses that data items are electronic mail message data files. Halahmi at Col. 7, lines 26-29. Specifically, Halahmi provides that the e-mail portion server receives e-mail messages from the e-mail server. Halahmi at Col. 6, lines 26-29.

---

[92] In litigation, Patent Owner has taken the position that receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

### L.  Claims 10-15 are rendered obvious by Zerber in view of Sherman '409 and further in view of Sherman '214 Under 35 U.S.C. § 103

> **Please see attached Exhibit CC-L presenting claim charts for comparison of the Zerber reference in view of the Sherman '409 and further in view of Sherman '214 with the claims of the '383 patent.**

Requester respectfully submits that claims 10-15 are anticipated by the Zerber patent under 35 U.S.C. § 102 as discussed in Section E above.  However, in the alternative, Requester also submits that claims 10-15 of the '383 patent are rendered obvious by Zerber in view of Sherman '409 and further in view of Sherman '214 under 35 U.S.C. § 103.  A claim chart applying Zerber in view of Sherman '409 and further in view of Sherman '214 to these claims is submitted herewith as Exhibit CC-L.

**Motivation to Combine**

One of ordinary skill in the art would have reason to combine Zerber, Sherman '409 and Sherman '214.

Zerber teaches the use of the IMAP or POP3 protocol for selectively downloading e-mail messages from a first memory (e.g., post office system) to a second memory (e.g., remote client).  Zerber at Col. 2, lines 17-20.

Sherman '409 teaches a method of selectively retrieving data items at a client device based on predetermined criteria, such as date, size or keyword information.  Sherman '409 at Col. 2, lines 51-56.  More specifically, Sherman '409 operates under either of the IMAP or POP transport protocols to download selective e-mail portions to a portable handheld device.  Sherman '409 at Col. 2, lines 56-66.  The object of the selective retrieval in Sherman '409 is to increase the functionality and efficiency of a mail delivery system.  Sherman '409 Col. 2, line 61-Col. 3, line 24.

Sherman '214 teaches that the selective retrieval of e-mail information does not require the explicit designation by a user.  Sherman '214 at Col. 2, lines 22-30.  "Rather, the information to be synchronized is ascertained through actions of the user that implicitly indicate the user's interest in that information, thereby allowing for the

**EXHIBIT A**

intuitive 'assumption' that the user would want that information synchronized." Sherman '214 at Col. 2, lines 30-34. The object of the selective retrieval in Sherman '214 is to increase the functionality and efficiency of a mail delivery system. Sherman '214 at Col. 1, lines 7-13.

One of ordinary skill in the art would have been motivated to combine Zerber, Sherman '409 and Sherman '214 to gain increased functionality and efficiency in the realm of e-mail delivery to a portable handheld client. Furthermore, the combination of Zerber, Sherman '409, and Sherman '214 would have yielded the predictable result of predictive indicator predicting a user's preferences for retrieving electronic mail messages.[93] The Sherman patents are designed to function the same way with different email delivery systems, including the IMAP system disclosed in Zerber. Sherman '409 at Col. 2, lines 51-55.

          10.    <u>Claim 10 of the '383 Patent</u>

Claim 10 of the '383 patent reads as follows:

10. A method of caching information relating to a set of data items, comprising:

     in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items;

     and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger;

---

[93] In *KSR* , the United States Supreme Court emphasized that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." 127 S.Ct. at 1739, 82 USPQ2d at 1395 (citing *Graham v. John Deere Co.,* 383 U.S. 1, 12 (1966). The Court provided further instruction stating that "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *Id.* at 1740 (quoting *Sakraida* at 273.) *See also Ex parte Catan,* Appeal 2007-0820 (BPAI July 3, 2007); *Ex Parte Kubin,* 2007-0819 (BPAI May 31, 2007)*; Ex Parte Smith,* Appeal 2007-1925 (BPAI June 25, 2007).

**EXHIBIT A**

and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items.

Each of the elements in claim 10 are disclosed in Zerber, Sherman '409 and Sherman '214. Zerber at Col. 5, lines 14-26. Specifically, Zerber provides that a client computer communicates with a mail server running POP3 or IMAP4. Zerber at Col. 5, lines 14-26.

The first element of claim 10 is "in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items." Zerber discloses a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information. Zerber at Abstract; Col. 3, line 66 to Col. 4, line 5. Specifically, Zerber provides that a first memory (e.g., personal computers, workstations, minicomputers or mainframes) connect over LANs, WANs, SNA networks and the Internet to a second memory (e.g., personal computers, laptops, palmtops or workstations) to download a first hierarchical level of information (e.g., URL information). Zerber at Abstract; Col. 3, line 66 to Col. 4, line 5. In Zerber, a second memory establishes a connection with the first memory (e.g., a mail server including the folder of messages over a network.) to download a mail applet. Zerber at Col. 7, line 52 through Col. 7, line 14. The mail applet causes the web browser to open a view page including selected files having a URL in the local http server in the view applet. Zerber at Figure 4B. Zerber provides that data items are identified by a URL in the HTTP server. Zerber at Col. 7, line 52 through Col. 7, line 14.

Alternatively, Zerber provides that a first retrieval would download header information. Zerber at Abstract. Specifically, Zerber provides that "a client computer establishes a first connection with a mail server including the folder of messages over a network. The client computer communicates a command to the mail server to parse messages in the folder to obtain message headers. The message headers are then downloaded to the client computer." Zerber at Abstract.

The second element of claim 10 is "and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second

**EXHIBIT A**

hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger."[94] Zerber discloses a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items. Zerber at Abstract.  Specifically, Zerber provides that "a client computer establishes a first connection with a mail server including the folder of messages over a network.  The client computer communicates a command to the mail server to parse messages in the folder to obtain message headers.  The message headers are then downloaded to the client computer."  Zerber at Abstract.

Alternatively, if downloading message headers is viewed as a first retrieval, Zerber provides that a second retrieval would download body information.  Zerber at Abstract.  Specifically, "after downloading the message headers, the first connection between the client computer and the mail server is terminated.  The client computer may then be used to select at least one displayed header.  After message headers are selected, a second connection is established between the client computer and the mail server.  The client computer communicates a command to the mail server to retrieve a body for each message whose header was selected.  The selected message bodies are then downloaded to the client computer."  Zerber at Abstract.

Further, Zerber provides that the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger.  Zerber at Col. 2, lines 30-40.  Specifically, Zerber provides that the second memory (e.g., client computer) sends a first

---

[94] In litigation, Patent Owner has taken the position that triggers are defined in the specification in "very broad terms" and "may include a variety of input or operations that specific [sic] the caching of different hierarchical levels of information (e.g., based on user preferences, which set the triggers to filter messages, a trigger to view additional content of an email, or to retrieve attachments).  The patent also discusses 'notifications' to update the data cache as potential triggers."  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

**EXHIBIT A**

trigger (e.g., command) to download message headers. Zerber at Col. 2, lines 30-40. Secondly, once the headers are downloaded, the second memory issues a second trigger wherein "the client computer communicates a command to the mail server to retrieve a body for each message whose header was selected. The selected message bodies are then downloaded to the client computer." Zerber at Abstract.

The third element of claim 10 is "and wherein at least one of the first trigger and the second trigger is a predictive indicator[95] predicting a user's preferences for retrieving information from the set of data items." Zerber provides that at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items. Zerber at Col. 2, lines 17-20. Specifically, Zerber uses IMAP4 which permits selective downloading of "desired messages." Zerber at Col. 2, lines 17-20.

In the alternative, Sherman '409 provides that the first or second trigger is a predictive indicator[96] for retrieving data items based on a user's preference. Sherman '409 at Col. 8, lines 50-62; Col. 11, lines 57-67; Col. 12, lines 39-46. Specifically, Sherman '409 provides that an IMAP server has filtering capabilities and decides to issue a download operation based on a determination of whether the data items fall within a specific filter criterion. Sherman '409 at Col. 8, lines 50-62; Col. 11, lines 57-67; Col. 12, lines 39-46.

---

[95] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items. A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance. These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

[96] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items. A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance. These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

Further in the alternative, Sherman '214 provides that data items may be downloaded "based on implicit perception of a user's desire to synchronize such information and without the need for explicit designation by the user."  Sherman '214 at Abstract.

     11.    Claim 11 of the '383 Patent

Claim 11 of the '383 patent reads as follows:

> 11.  The method of caching information recited in claim 10, wherein the set of data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.[97]

As discussed in Section E above, Zerber discloses a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.  Zerber at Col. 2, lines 4-14. Specifically, Zerber provides for either IMAP4 or POP3 configuration where a first memory (e.g., mail server) maintains a user's regular electronic mail account and a second memory (e.g., client computer) maintains the user's portable electronic mail account.  Zerber at Col. 2, lines 4-14.

     12.    Claim 12 of the '383 Patent

Claim 12 of the '383 patent reads as follows:

> 12.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.[98]

---

[97] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Exchange/Domino Servers) while the user's portable electronic mail account is on the second memory (e.g., BES, BlackBerry Infrastructure or BlackBerry client device.)  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) ("The first memory may correspond to the Exchange/Domino Servers and the second memory may correspond to the BES, BlackBerry Infrastructure or the BlackBerry client device.")

[98] In litigation, Patent Owner has taken the position that a system that uses filters to implement a user's preference for retrieving email would infringe claim 12.  See Exhibit OTH-B at "Visto's Disclosure of

Zerber anticipates claim 12 as discussed in Section E above.  However, in the Alternative, Zerber renders obvious claim 12 in view of Sherman '409.  Sherman '409 provides that a user's preference for retrieving electronic mail messages is based on whether the message is authored by a particular person.  Sherman '409 at Col. 8, lines 50-62.  Specifically, Sherman '409 provides that an IMAP server has filtering capabilities that only returns items that satisfy the filter criteria (e.g., items from a particular author).  Sherman '409 at Col. 8, lines 50-62.

13.    Claim 13 of the '383 Patent

Claim 13 of the '383 patent reads as follows:

13.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on a number of unopened electronic mail messages.[99]

Zerber anticipates claim 13 as discussed in Section E above.  However, in the Alternative, Zerber renders obvious claim 13 in view of Sherman '409.Sherman '409 provides that a user's preference for retrieving electronic mail messages is based on whether the number of unopened electronic mail messages.  Sherman '409 at Col. 8, lines 50-62.  Specifically, Sherman '409 provides that an IMAP server has filtering capabilities that only returns items that satisfy the filter criteria (e.g., new e-mails).  Sherman '409 at Col. 8, lines 50-62.

14.    Claim 14 of the '383 Patent

Claim 14 of the '383 patent reads as follows:

---

Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

[99] In litigation, Patent Owner has taken the position that a system preference that allows for "filtering only new electronic mail messages which enables a user preference for retrieving information based on a number (e.g., one) of unopened (e.g., new) electronic mail messages." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

**EXHIBIT A**

14. The method of caching information recited in claim 10, wherein the data items are file directory information.[100]

Zerber discloses that data items are file directory information. Zerber at Col. 2, lines 4-14. Specifically, Zerber uses IMAP4 and POP3 for "online" and "offline" manipulation of mail messages and folders in a post office system. Zerber at Col. 2, lines 4-14.

15.    Claim 15 of the '383 Patent

Claim 15 of the '383 patent reads as follows:

15. The method of caching information recited in claim 10, wherein the data items are electronic mail message data files.

Zerber discloses that data items are electronic mail message data files. Zerber at Abstract. Specifically, Zerber provides that data files are e-mail messages. Zerber at Abstract.

**M. Claims 10-15 are rendered obvious by Austein in view of Sherman '409 and further in view of Sherman '214 Under 35 U.S.C. § 103**

> **Please see attached Exhibit CC-M presenting claim charts for comparison of the Austein reference in view of the Sherman '409 and further in view of Sherman '214 with the claims of the '383**

Requester respectfully submits that claims 10-15 are anticipated by the Austein reference under 35 U.S.C. § 102 as discussed in Section F above. However, in the alternative, Requester also submits that claims 10-15 of the '383 patent are rendered obvious by Austein in view of Sherman '409 and further in view of Sherman '214 under 35 U.S.C. § 103. A claim chart applying Austein in view of Sherman '409 and further in view of Sherman '214 to these claims is submitted herewith as Exhibit CC-M

---

[100] In litigation, Patent Owner has taken the position that receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**Motivation to Combine**

One of ordinary skill in the art would have reason to combine Austein, Sherman '409 and Sherman '214.

Austein teaches the use of automated e-mail filtering to download only "interesting" messages from a first memory (e.g., server) to a second memory (e.g., a client). Austein at 2; 4.

Sherman '409 teaches a method of selectively retrieving data items at a client device based on predetermined criteria, such as date, size or keyword information. Sherman '409 at Col. 2, lines 51-56. More specifically, Sherman '409 operates under either of the IMAP or POP transport protocols to download selective e-mail portions to a portable handheld device. Sherman '409 at Col. 2, lines 56-66. The object of the selective retrieval in Sherman '409 is to increase the functionality and efficiency of a mail delivery system. Sherman '409 Col. 2, line 61-Col. 3, line 24.

Sherman '214 teaches that the selective retrieval of e-mail information does not require the explicit designation by a user. Sherman '214 at Col. 2, lines 22-30. "Rather, the information to be synchronized is ascertained through actions of the user that implicitly indicate the user's interest in that information, thereby allowing for the intuitive 'assumption' that the user would want that information synchronized." Sherman '214 at Col. 2, lines 30-34. The object of the selective retrieval in Sherman '214 is to increase the functionality and efficiency of a mail delivery system. Sherman '214 at Col. 1, lines 7-13.

One of ordinary skill in the art would have been motivated to combine Austein, Sherman '409 and Sherman '214 to gain increased functionality and efficiency in the realm of e-mail delivery to a portable handheld client. Furthermore, the combination of Austein, Sherman '409, and Sherman '214 would have yielded the predictable result of predictive indicator predicting a user's preferences for retrieving electronic mail messages.[101]  The Sherman patents are designed to function the same way with different

---

[101] In *KSR* , the United States Supreme Court emphasized that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." 127 S.Ct. at 1739, 82 USPQ2d at 1395 (citing *Graham v. John Deere Co.*, 383 U.S. 1, 12 (1966). The Court provided further instruction stating that "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect

**EXHIBIT A**

email delivery systems, including the IMAP system disclosed in Austein.  Sherman '409 at Col. 2, lines 51-55.

          10.      <u>Claim 10 of the '383 Patent</u>

Claim 10 of the '383 patent reads as follows:

10.   A method of caching information relating to a set of data items, comprising:

      in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items;

      and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger;

      and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items.

Each of the elements in claim 10 are disclosed in Austein, Sherman '409 and Sherman '214.  Specifically, Austein discloses caching email on a disconnected client while keeping the master mail state on the server.  Austein at 2.

The first element of claim 10 is "in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items." Austein discloses a first retrieval operation for retrieving from the first memory and storing into a second memory a first hierarchical level of information corresponding to a data item.  Austein at 2; 4; 6.  Specifically, Austein discloses that the second memory (e.g., client) sends a fetch command to the first memory (e.g., server); in response the first memory sends descriptors.  Austein at 6.

---

from such an arrangement, the combination is obvious." *Id.* at 1740 (quoting *Sakraida* at 273.)  *See also Ex parte Catan,* Appeal 2007-0820 (BPAI July 3, 2007); *Ex Parte Kubin,* 2007-0819 (BPAI May 31, 2007)*; Ex Parte Smith,* Appeal 2007-1925 (BPAI June 25, 2007).

Austein provides that descriptors may include at a minimum, a messages "UID" and "FLAG" information.  Austein at 6.

The second element of claim 10 is "and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger."[102] Austein discloses that a second retrieval operation is separate from the first retrieval operation.  Austein at 4-6.  Specifically, Austein discloses that the second memory (e.g., client) sends a fetch command (first trigger) to a first memory (e.g., server) to retrieve descriptors and/or descriptors-only.   Austein at 4-6. Further, Austein provides that a second memory (e.g., client) sends another fetch command (second trigger) to the first memory (server) to begin sending additional body parts (e.g., more descriptors, "interesting" messages or body parts, etc.)  Austein at 4-6.

The third element of claim 10 is "and wherein at least one of the first trigger and the second trigger is a predictive indicator[103] predicting a user's preferences for retrieving information from the set of data items."  Austein discloses that at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preference for retrieving information.  Austein at 2; 4-6.  Specifically, Austein provides that a client will

---

[102] In litigation, Patent Owner has taken the position that triggers are defined in the specification in "very broad terms" and "may include a variety of input or operations that specific [sic] the caching of different hierarchical levels of information (e.g., based on user preferences, which set the triggers to filter messages, a trigger to view additional content of an email, or to retrieve attachments).  The patent also discusses 'notifications' to update the data cache as potential triggers."  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).


[103] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items.  A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance.  These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

download "interesting" messages that the synchronization program thinks the human might want. Austein at 4. Further, the synchronization program is based on a configuration file that may be automated to support naïve humans. Austein at 2; 4.

In the alternative, Sherman '409 provides that the first or second trigger is a predictive indicator[104] for retrieving data items based on a user's preference. Sherman '409 at Col. 8, lines 50-62; Col. 11, lines 57-67; Col. 12, lines 39-46. Specifically, Sherman '409 provides that an IMAP server has filtering capabilities and decides to issue a download operation based on a determination of whether the data items fall within a specific filter criterion. Sherman '409 at Col. 8, lines 50-62; Col. 11, lines 57-67; Col. 12, lines 39-46.

Further in the alternative, Sherman '214 provides that data items may be downloaded "based on implicit perception of a user's desire to synchronize such information and without the need for explicit designation by the user." Sherman '214 at Abstract.

### 11.    Claim 11 of the '383 Patent

Claim 11 of the '383 patent reads as follows:

11. The method of caching information recited in claim 10, wherein the set of data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.[105]

---

[104] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items. A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance. These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

[105] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Exchange/Domino Servers) while the user's portable electronic mail account is on the second memory (e.g., BES, BlackBerry Infrastructure or BlackBerry client device.) See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007) ("The

**EXHIBIT A**

Austein discloses that the first memory corresponds to a user's regular electronic mail account. Austein at 2. Specifically, Austein provides that the first memory (e.g., server) maintains the "master" state of the e-mail. Austein at 2. Further, a second memory (e.g., disconnected client) views e-mail in a cached state. Austein at 2.

### 12.   Claim 12 of the '383 Patent

Claim 12 of the '383 patent reads as follows:

12. The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.[106]

Austein anticipates claim 12 as discussed in Section F above. However, in the Alternative, Austein renders obvious claim 12 in view of Sherman '409. Sherman '409 provides that a user's preference for retrieving electronic mail messages is based on whether the message is authored by a particular person. Sherman '409 at Col. 8, lines 50-62. Specifically, Sherman '409 provides that an IMAP server has filtering capabilities that only returns items that satisfy the filter criteria (e.g., items from a particular author). Sherman '409 at Col. 8, lines 50-62.

### 13.   Claim 13 of the '383 Patent

Claim 13 of the '383 patent reads as follows:

13. The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on a number of unopened electronic mail messages.[107]

---

first memory may correspond to the Exchange/Domino Servers and the second memory may correspond to the BES, BlackBerry Infrastructure or the BlackBerry client device.")

[106] In litigation, Patent Owner has taken the position that a system that uses filters to implement a user's preference for retrieving email would infringe claim 12. See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

[107] In litigation, Patent Owner has taken the position that a system preference that allows for "filtering only new electronic mail messages which enables a user preference for retrieving information based on a number (e.g., one) of unopened (e.g., new) electronic mail messages." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

Austein anticipates claim 13 as discussed in Section F above.  However, in the Alternative, Austein renders obvious claim 13 in view of Sherman '409.Sherman '409 provides that a user's preference for retrieving electronic mail messages is based on whether the number of unopened electronic mail messages.  Sherman '409 at Col. 8, lines 50-62.  Specifically, Sherman '409 provides that an IMAP server has filtering capabilities that only returns items that satisfy the filter criteria (e.g., new e-mails).  Sherman '409 at Col. 8, lines 50-62.

14.    Claim 14 of the '383 Patent

Claim 14 of the '383 patent reads as follows:

14.  The method of caching information recited in claim 10, wherein the data items are file directory information.[108]

Austein discloses data items are file directory information.  Austein at 2-5. Specifically, Austein discloses that file directory (e.g., mailboxes) may be manipulated by a client.  Austein at 2-3.  Further, Austein provides that a client can pull from the server a list of all messages which describes content of the directory.  Austein at 5.

15.    Claim 15 of the '383 Patent

Claim 15 of the '383 patent reads as follows:

15.  The method of caching information recited in claim 10, wherein the data items are electronic mail message data files.

Austein discloses that data items are electronic mail message data files.  Austein at 2.  Specifically, Austein provides that the client receives e-mail messages from the server.  Austein at 2.

---

[108] In litigation, Patent Owner has taken the position that receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

**EXHIBIT A**

**N.  Claims 10-15 are rendered obvious by PCMAIL in view of Sherman
'409 and further in view of Sherman '214 Under 35 U.S.C.  § 103**

> **Please see attached Exhibit CC-N presenting
> claim charts for comparison of the PCMAIL
> reference in view of the Sherman '409 and
> further in view of Sherman '214 with the
> claims of the '383 patent.**

Requester respectfully submits that claims 10-15 are anticipated by the PCMAIL reference under 35 U.S.C. § 102 as discussed in Section G above.  However, in the alternative, Requester also submits that claims 10-15 of the '383 patent are rendered obvious by PCMAIL in view of Sherman '409 and further in view of Sherman '214 under 35 U.S.C. § 103.  A claim chart applying PCMAIL in view of Sherman '409 and further in view of Sherman '214 to these claims is submitted herewith as Exhibit CC-N.

**Motivation to Combine**

One of ordinary skill in the art would have reason to combine PCMAIL, Sherman '409 and Sherman '214.

PCMAIL teaches the use of automated e-mail filtering to download messages from a first memory (e.g., server) to a second memory (e.g., a client).  PCMAIL at 20.

Sherman '409 teaches a method of selectively retrieving data items at a client device based on predetermined criteria, such as date, size or keyword information.  Sherman '409 at Col. 2, lines 51-56.  More specifically, Sherman '409 operates under either of the IMAP or POP transport protocols to download selective e-mail portions to a portable handheld device.  Sherman '409 at Col. 2, lines 56-66.  The object of the selective retrieval in Sherman '409 is to increase the functionality and efficiency of a mail delivery system.  Sherman '409 Col. 2, line 61-Col. 3, line 24.

Sherman '214 teaches that the selective retrieval of e-mail information does not require the explicit designation by a user.  Sherman '214 at Col. 2, lines 22-30.  "Rather, the information to be synchronized is ascertained through actions of the user that implicitly indicate the user's interest in that information, thereby allowing for the intuitive 'assumption' that the user would want that information synchronized."  Sherman

'214 at Col. 2, lines 30-34. The object of the selective retrieval in Sherman '214 is to increase the functionality and efficiency of a mail delivery system. Sherman '214 at Col. 1, lines 7-13.

One of ordinary skill in the art would have been motivated to combine PCMAIL, Sherman '409 and Sherman '214 to gain increased functionality and efficiency in the realm of e-mail delivery to a portable handheld client. Furthermore, the combination of PCMAIL, Sherman '409, and Sherman '214 would have yielded the predictable result of predictive indicator predicting a user's preferences for retrieving electronic mail messages.[109] The Sherman patents are designed to function the same way with different email delivery systems, including the IMAP system disclosed in PCMAIL. Sherman '409 at Col. 2, lines 51-55.

        10.    Claim 10 of the '383 Patent

Claim 10 of the '383 patent reads as follows:

10.    A method of caching information relating to a set of data items, comprising:

        in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items;

        and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger;

        and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items.

---

[109] In *KSR* , the United States Supreme Court emphasized that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." 127 S.Ct. at 1739, 82 USPQ2d at 1395 (citing *Graham v. John Deere Co.,* 383 U.S. 1, 12 (1966). The Court provided further instruction stating that "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *Id.* at 1740 (quoting *Sakraida* at 273.) *See also Ex parte Catan,* Appeal 2007-0820 (BPAI July 3, 2007); *Ex Parte Kubin,* 2007-0819 (BPAI May 31, 2007)*; Ex Parte Smith,* Appeal 2007-1925 (BPAI June 25, 2007).

**EXHIBIT A**

Each of the elements in claim 10 are disclosed in PCMAIL, Sherman '409 and Sherman '214. PCMAIL at 2. Specifically, PCMAIL discloses a mail service system that permits resource limited machines to access and cache mail data. PCMAIL at 2.

The first element of claim 10 is "in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items." PCMAIL discloses a first retrieval operation for retrieving from the first memory and storing into a second memory a first hierarchical level of information corresponding to a data item. PCMAIL at 3. Specifically, PCMAIL discloses that the second memory (e.g., workstation) sends a request (e.g., fetch descriptors) to the first memory (e.g., repository); in response the first memory sends descriptors to the second memory. PCMAIL at 16.

The second element of claim 10 is "and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger."[110] PCMAIL discloses that a second retrieval operation is separate from the first retrieval operation. PCMAIL at 17. PCMAIL provides that a first trigger (e.g., fetch descriptors) retrieves a first hierarchical level of information from the first memory (e.g., repository). PCMAIL at 17. PCMAIL provides that a second memory (e.g., workstation) sends a second trigger (e.g., fetch message) to the first memory (e.g., repository) to fetch a second hierarchical level of information (e.g., message). PCMAIL at 17.

---

[110] In litigation, Patent Owner has taken the position that triggers are defined in the specification in "very broad terms" and "may include a variety of input or operations that specific [sic] the caching of different hierarchical levels of information (e.g., based on user preferences, which set the triggers to filter messages, a trigger to view additional content of an email, or to retrieve attachments). The patent also discusses 'notifications' to update the data cache as potential triggers." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

Furthermore, and in the alternative, PCMAIL provides that a second memory (e.g., workstation) sends a second trigger to fetch a second hierarchical level of information (e.g., "fetch-changed descriptors").  PCMAIL at 17.

The third element of claim 10 is "and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items."  PCMAIL discloses that at least one of the first trigger and the second trigger is a predictive indicator[111] predicting a user's preference for retrieving information.  PCMAIL at 20.  Specifically, PCMAIL provides that a synchronization process can be automated in the interactive mode.  PCMAIL at 20.

In the alternative, Sherman '409 provides that the first or second trigger is a predictive indicator[112] for retrieving data items based on a user's preference.  Sherman '409 at Col. 8, lines 50-62; Col. 11, lines 57-67; Col. 12, lines 39-46.  Specifically, Sherman '409 provides that an IMAP server has filtering capabilities and decides to issue a download operation based on a determination of whether the data items fall within a specific filter criterion.  Sherman '409 at Col. 8, lines 50-62; Col. 11, lines 57-67; Col. 12, lines 39-46.

Further in the alternative, Sherman '214 provides that data items may be downloaded "based on implicit perception of a user's desire to synchronize such information and without the need for explicit designation by the user."  Sherman '214 at Abstract.

---

[111] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items.  A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance.  These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

[112] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items.  A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance.  These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

11.    Claim 11 of the '383 Patent

Claim 11 of the '383 patent reads as follows:

11.  The method of caching information recited in claim 10, wherein the set of data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.[113]

PCMAIL discloses that the first memory corresponds to a user's regular electronic mail account.  PCMAIL at 2.  Specifically, PCMAIL provides that the first memory (e.g., repository) maintains the stable copy of a user's global mail state while a second memory (e.g., workstation) is used to maintain local copies of the user's global mail state.  PCMAIL at 2-3.  A second memory is portable as it is located on resource limited machines like IBM PCs.  PCMAIL at 2.

12.    Claim 12 of the '383 Patent

Claim 12 of the '383 patent reads as follows:

12.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.[114]

PCMAIL anticipates claim 12 as discussed in Section G above.  However, in the Alternative, PCMAIL renders obvious claim 12 in view of Sherman '409.  Sherman '409 provides that a user's preference for retrieving electronic mail messages is based on whether the message is authored by a particular person.  Sherman '409 at Col. 8, lines 50-62.  Specifically, Sherman '409 provides that an IMAP server has filtering capabilities

---

[113] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Exchange/Domino Servers) while the user's portable electronic mail account is on the second memory (e.g., BES, BlackBerry Infrastructure or BlackBerry client device.)  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) ("The first memory may correspond to the Exchange/Domino Servers and the second memory may correspond to the BES, BlackBerry Infrastructure or the BlackBerry client device.")

[114] In litigation, Patent Owner has taken the position that a system that uses filters to implement a user's preference for retrieving email would infringe claim 12.  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

**EXHIBIT A**

that only returns items that satisfy the filter criteria (e.g., items from a particular author). Sherman '409 at Col. 8, lines 50-62.

      13.    Claim 13 of the '383 Patent

Claim 13 of the '383 patent reads as follows:

13. The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on a number of unopened electronic mail messages.[115]

PCMAIL anticipates claim 13 as discussed in Section G above. However, in the Alternative, PCMAIL renders obvious claim 13 in view of Sherman '409. Sherman '409 provides that a user's preference for retrieving electronic mail messages is based on whether the number of unopened electronic mail messages. Sherman '409 at Col. 8, lines 50-62. Specifically, Sherman '409 provides that an IMAP server has filtering capabilities that only returns items that satisfy the filter criteria (e.g., new e-mails). Sherman '409 at Col. 8, lines 50-62.

      14.    Claim 14 of the '383 Patent

Claim 14 of the '383 patent reads as follows:

14. The method of caching information recited in claim 10, wherein the data items are file directory information.[116]

PCMAIL discloses data items are file directory information. PCMAIL at 16. Specifically, PCMAIL provides that a user may request a list of all descriptors on that

---

[115] In litigation, Patent Owner has taken the position that a system preference that allows for "filtering only new electronic mail messages which enables a user preference for retrieving information based on a number (e.g., one) of unopened (e.g., new) electronic mail messages." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

[116] In litigation, Patent Owner has taken the position that receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

client's update list. PCMAIL at 16. This listing of the upper and lower bounds of the unique identifiers describes the mailbox directory of the user. PCMAIL at 16.

      15.    <u>Claim 15 of the '383 Patent</u>

Claim 15 of the '383 patent reads as follows:

      15.  The method of caching information recited in claim 10, wherein the data items are electronic mail message data files.

PCMAIL discloses that data items are electronic mail message data files. PCMAIL at 2. Specifically, PCMAIL discloses that data items are e-mail messages. PCMAIL at 2.

**O. Claims 10-15 are rendered obvious by Sherman '409 in view of Boone Under 35 U.S.C. § 103**

> **Please see attached Exhibit CC-O presenting claim charts for comparison of the Sherman '409 patent in view of the Boone reference with the claims of the '383 patent.**

Requester respectfully submits that claims 10-15 of the '383 patent are rendered obvious by Sherman '409 in view of Boone under 35 U.S.C. § 103. A claim chart applying Sherman '409 in view of Boone to these claims is submitted herewith as Exhibit CC-O.

**Motivation to Combine**

One of ordinary skill in the art would have reason to combine Sherman '409 and Boone.

Sherman '409 teaches a method of selectively retrieving data items at a client device based on predetermined criteria, such as date, size or keyword information. Sherman '409 at Col. 2, lines 51-56. More specifically, Sherman '409 operates under either of the IMAP or POP transport protocols to download selective e-mail portions to a portable handheld device. Sherman '409 at Col. 2, lines 56-66.

Boone teaches the use of an intelligent e-mail agent to learn actions such as e-mail filtering, prioritizing, downloading to palmtops and forwarding email to voicemail using automatic feature extraction.  Boone at 142.  Specifically, the intelligent e-mail agent of Boone provides a filtering based on a conceptual view of the e-mail content rather than the statistical view more commonly used.  Boone at 142-143, 147.  The object of Boone's filtering process is to increase the functionality and efficiency of a mail delivery system. Boone at 141.

One of ordinary skill in the art would have been motivated to combine Sherman '409 and Boone to gain increased functionality and efficiency in the realm of e-mail delivery to a portable handheld client.  Furthermore, the combination of Sherman '409 and Boone would have yielded the predictable result of predictive indicator predicting a user's preferences for retrieving electronic mail messages.[117]  Since Sherman's unique identifiers and Boone's intelligent filtering work independently, each functions the same way together as it does apart.

10.    Claim 10 of the '383 Patent

Claim 10 of the '383 patent reads as follows:

10.    A method of caching information relating to a set of data items, comprising:

in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items;

and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger;

---

[117] In *KSR* , the United States Supreme Court emphasized that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." The Court provided further instruction stating that "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious."  *Id*.  at 1740 (quoting *Sakraida* at 273.)  *See also Ex parte Catan,* Appeal 2007-0820 (BPAI July 3, 2007); *Ex Parte Kubin,* 2007-0819 (BPAI May 31, 2007)*; Ex Parte Smith,* Appeal 2007-1925 (BPAI June 25, 2007).

and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items.

Each of the elements in claim 10 are disclosed in Sherman '409 in view of Boone. Specifically, Sherman '409 discloses that a handheld client computing system would selectively retrieve data items from a server in a hierarchical order. Sherman '409 at Abstract.

The first element of claim 10 is "in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items." Sherman '409 discloses that during a first retrieval operation, only a first hierarchical level of information is downloaded from the first memory and stored into a second memory. Sherman '409 at Fig. 1; Abstract; Col. 3, lines 54-56; Col. 3, lines 59-62; Col. 4, line 49 to Col. 5, line 18. Specifically, Sherman '409 provides that "initially, the H/PC (handheld personal computer) downloads item identification information from the server on the client/server network." Sherman '409 at Abstract; Col. 7, lines 31-50; Col. 6, lines 50-53; Col. 7, lines 40-44.

The second element of claim 10 is "and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger."[118] Sherman '409 discloses a second retrieval operation that is separate from the first retrieval operation. Sherman '409 at Abstract; Col. 7, lines 50-54; Sherman '409 at Col. 10, lines 7-17. Specifically, Sherman '409 provides that after the handheld client computing system downloads identification information from

---

[118] In litigation, Patent Owner has taken the position that triggers are defined in the specification in "very broad terms" and "may include a variety of input or operations that specific [sic] the caching of different hierarchical levels of information (e.g., based on user preferences, which set the triggers to filter messages, a trigger to view additional content of an email, or to retrieve attachments). The patent also discusses 'notifications' to update the data cache as potential triggers." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

the server, the handheld client computing system will download header information. Sherman '409 at Abstract; Col. 7, lines 50-54; Sherman '409 at Col. 10, lines 7-17.

Further, Sherman '409 provides for a first retrieval operation initiated by a first trigger, and a second retrieval operation initiated by a second trigger. Sherman '409 at Abstract; Col. 7, lines 50-54; Col. 10, lines 7-17. Specifically, the handheld client computing system selectively retrieves items based on multiple request operations. Sherman '409 at Abstract; Col. 7, lines 50-54; Col. 10, lines 7-17.

The third element of claim 10 is "and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items." Sherman '409 provides that the first or second trigger is a predictive indicator[119] for retrieving data items based on a user's preference. Sherman '409 at Col. 8, lines 50-62; Col. 11, lines 57-67; Col. 12, lines 39-46. Specifically, Sherman '409 provides that an IMAP server has filtering capabilities and decides to issue a download operation based on a determination of whether the data items fall within a specific filter criterion. Sherman '409 at Col. 8, lines 50-62; Col. 11, lines 57-67; Col. 12, lines 39-46.

In the alternative, Boone discloses that at least one of the first trigger and the second trigger is a predictive indicator[120] predicting a user's preferences for retrieving information from the set of data items. Boone at 141-143. Specifically, Boone provides a method of e-mail filtering for palmtop computers based on automatic feature extraction. Boone at 141. Further, Boone provides for the use of a machine learning technique

---

[119] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items. A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance. These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

[120] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items. A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance. These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

wherein e-mail data structure is analyzed with respect to user interaction, such that e-mail is retrieved automatically based on perceived user preferences.  Boone at 141-143.

### 11.    Claim 11 of the '383 Patent

Claim 11 of the '383 patent reads as follows:

> 11.  The method of caching information recited in claim 10, wherein the set of data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.[121]

Sherman '409 discloses that a first memory may correspond to a user's regular electronic mail account while the second memory corresponds to the user's portable electronic mail account.  Sherman '409 at Abstract.  Specifically, Sherman discloses that a handheld personal computer may be used to selectively download from the users regular mail account on a server.  Sherman '409 at Abstract.

### 12.    Claim 12 of the '383 Patent

Claim 12 of the '383 patent reads as follows:

> 12.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.[122]

Sherman '409 anticipates claim 12 as discussed in Section A above.  However, in the alternative, Sherman '409 renders obvious claim 12 in view of Boone.  Boone discloses that a user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.  Boone at 143.  Specifically,

---

[121] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Exchange/Domino Servers) while the user's portable electronic mail account is on the second memory (e.g., BES, BlackBerry Infrastructure or BlackBerry client device.)  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) ("The first memory may correspond to the Exchange/Domino Servers and the second memory may correspond to the BES, BlackBerry Infrastructure or the BlackBerry client device.")

[122] In litigation, Patent Owner has taken the position that a system that uses filters to implement a user's preference for retrieving email would infringe claim 12.  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

**EXHIBIT A**

Boone provides for automatic feature extraction based on sorting mail from a particular person (e.g., "sort all new mail from gboone into from gary folder").  Boone at 143.

        13.      Claim 13 of the '383 Patent

Claim 13 of the '383 patent reads as follows:

> 13.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on a number of unopened electronic mail messages.[123]

Sherman '409 anticipates claim 13 as discussed in Section A above.  However, in the alternative, Sherman '409 renders obvious claim 13 in view of Boone.  Boone discloses that a user's preference for retrieving information is based on a number of unopened electronic mail messages.  Boone at 141-143.  Specifically, Boone provides a method of e-mail filtering for palmtop computers based on automatic feature extraction.  Boone at 141.  Further, Boone provides for the use of a machine learning technique wherein e-mail data structure is analyzed with respect to user interaction, such that e-mail is retrieved automatically based on perceived user preferences.  Boone at 141-143.

        14.      Claim 14 of the '383 Patent

Claim 14 of the '383 patent reads as follows:

> 14.  The method of caching information recited in claim 10, wherein the data items are file directory information.[124]

Sherman '409 discloses that data items are file directory information.  Sherman '409 at Col. 6, lines 57-59; Sherman '409 at Col. 7, lines 31-50.  Specifically, Sherman '409 discloses downloading "preliminary information wherein each element in the list relates to a particular item on the server.  Importantly, the list of preliminary information received from the server does not consume substantial memory space on the H/PC 22."

---

[123] In litigation, Patent Owner has taken the position that a system preference that allows for "filtering only new electronic mail messages which enables a user preference for retrieving information based on a number (e.g., one) of unopened (e.g., new) electronic mail messages." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No. C-07-3177 (N.D. Cal. June 15, 2007).

[124] In litigation, Patent Owner has taken the position that receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

Sherman '409 at Col. 7, lines 31-50.  Accordingly, Sherman '409 provides file directory information (e.g., a list of items on the server) reflects the "changes that you make to the email message folder on your computer.  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) (receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network").

15.    Claim 15 of the '383 Patent

Claim 15 of the '383 patent reads as follows:

15.  The method of caching information recited in claim 10, wherein the data items are electronic mail message data files.

Sherman '409 discloses that data items are mail message data files.  Sherman '409 at Col. 6, lines 46-47.  Specifically, Sherman '409 discloses that the subject of the request for data items is email messages.  Sherman '409 at Col. 6, lines 46-47.

**P.  Claims 10-13 and 15 are rendered obvious by RFC 2060 in view of Boone Under 35 U.S.C.  § 103**

> **Please see attached Exhibit CC-P presenting claim charts for comparison of the RFC 2060 reference in view of the Boone reference with the claims of the '383 patent.**

Requester respectfully submits that claims 10-13 and 15 of the '383 patent are rendered obvious by RFC 2060 in view of Boone under 35 U.S.C.  § 103.  A claim chart applying RFC 2060 in view of Boone to these claims is submitted herewith as Exhibit CC-P.

**Motivation to Combine**

One of ordinary skill in the art would have reason to combine RFC 2060 and Boone.

RFC 2060 teaches a method of selectively retrieving portions of an e-mail based on the IMAP protocol.  RFC 2060 at Col. 2, lines 51-56.  More specifically, RFC 2060

outlines the basic functionalities of the IMAP protocol including the specific types of e-mail fetch commands that may be issued from a client device.  RFC 2060 at 41-44.

Boone teaches the use of an intelligent e-mail agent to learn actions such as e-mail filtering, prioritizing, downloading to palmtops and forwarding email to voicemail using automatic feature extraction.  Boone at 142.  Specifically, the intelligent e-mail agent of Boone provides a filtering based on a conceptual view of the e-mail content rather than the statistical view more commonly used.  Boone at 142-143, 147.  The object of Boone's filtering process is to increase the functionality and efficiency of a mail delivery system. Boone at 141.

One of ordinary skill in the art would have been motivated to combine RFC 2060 and Boone to gain increased functionality and efficiency in the realm of e-mail delivery to a portable handheld client.  Furthermore, the combination of RFC 2060 and Boone would have yielded the predictable result of predictive indicator predicting a user's preferences for retrieving electronic mail messages.[125]  Since RFC 2060's unique identifiers and Boone's intelligent filtering work independently, each functions the same way together as it does apart.

        10.    Claim 10 of the '383 Patent

Claim 10 of the '383 patent reads as follows:

10.   A method of caching information relating to a set of data items, comprising:

        in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items;

        and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to

---

[125] In *KSR* , the United States Supreme Court emphasized that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." The Court provided further instruction stating that "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious."  *Id.*  at 1740 (quoting *Sakraida* at 273.)  *See also Ex parte Catan,* Appeal 2007-0820 (BPAI July 3, 2007); *Ex Parte Kubin,* 2007-0819 (BPAI May 31, 2007)*; Ex Parte Smith,* Appeal 2007-1925 (BPAI June 25, 2007).

receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger;

and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items.

Each of the elements in claim 10 are disclosed in RFC 2060 and Boone. RFC 2060 discloses caching information relating to a set of data items. RFC 2060 at 1. Specifically, RFC 2060 provides that a client accesses, fetches and manipulates electronic mail stored on a remote server. RFC 2060 at 1.

The first element of claim 10 is "in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items." RFC 2060 discloses a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items. RFC 2060 at 41-44. Specifically, RFC 2060 provides that a "FETCH command retrieves data associated with a message in the mailbox" from the server and stores the information at a second memory (e.g., a client). Furthermore, RFC 2060 discloses that only a first hierarchical level of information is retrieved which comprises an identifier for uniquely identifying the data items. RFC 2060 at 7–8; RFC 2060 at 41–44. Specifically, RFC 2060 provides that a FETCH command may be issued whereas "the currently defined data items that can be fetched are: ...UID - The unique identifier for the message." RFC 2060 at 7–8; 41–44.

The second element of claim 1 is "and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger."[126] RFC 2060 discloses a second retrieval operation

---

[126] In litigation, Patent Owner has taken the position that triggers are defined in the specification in "very broad terms" and "may include a variety of input or operations that specific [sic] the caching of different hierarchical levels of information (e.g., based on user preferences, which set the triggers to filter messages, a trigger to view additional content of an email, or to retrieve attachments). The patent also discusses 'notifications' to update the data cache as potential triggers." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items. RFC 2060 at 1; 7; 9-11; 17; 41-44. Specifically, RFC 2060 provides that after the client computing system downloads identification information from the server, the client may issue a second command that will download header information (e.g., message attributes). RFC 2060 at 1; 7; 9-11; 17; 41-44.

Further, RFC 2060 provides that a first retrieval operation is initiated in a response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger. RFC 2060 at 41–44. Specifically, RFC 2060 provides that each hierarchical level of information is retrieved based on fetch commands. RFC 2060 at 41-44.

The third element of claim 10 is "and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items." Boone at 141-143. Boone discloses that at least one of the first trigger and the second trigger is a predictive indicator[127] predicting a user's preferences for retrieving information from the set of data items. Boone at 141-143. Specifically, Boone provides a method of e-mail filtering for palmtop computers based on automatic feature extraction. Boone at 141. Further, Boone provides for the use of a machine learning technique wherein e-mail data structure is analyzed with respect to user interaction, such that e-mail is retrieved automatically based on perceived user preferences. Boone at 141-143.

11.    Claim 11 of the '383 Patent

Claim 11 of the '383 patent reads as follows:

---

[127] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items. A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance. These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

11.  The method of caching information recited in claim 10, wherein the set of data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.[128]

RFC 2060 discloses that a set of data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.  RFC 2060 at 1; 4-5.  Specifically, RFC 2060 discloses a client server model where a client is permitted to selectively retrieve messages and manipulate folders such that they are functionally equivalent to local mailboxes.  RFC 2060 at 1; 4-5.

12.    Claim 12 of the '383 Patent

Claim 12 of the '383 patent reads as follows:

12.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.[129]

Boone discloses that a user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.  Boone at 143.  Specifically, Boone provides for automatic feature extraction based on sorting mail from a particular person (e.g., "sort all new mail from gboone into from gary folder").  Boone at 143.

13.    Claim 13 of the '383 Patent

Claim 13 of the '383 patent reads as follows:

---

[128] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Exchange/Domino Servers) while the user's portable electronic mail account is on the second memory (e.g., BES, BlackBerry Infrastructure or BlackBerry client device.)  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) ("The first memory may correspond to the Exchange/Domino Servers and the second memory may correspond to the BES, BlackBerry Infrastructure or the BlackBerry client device.")

[129] In litigation, Patent Owner has taken the position that a system that uses filters to implement a user's preference for retrieving email would infringe claim 12.  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

**EXHIBIT A**

13. The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on a number of unopened electronic mail messages.[130]

Boone discloses that a user's preference for retrieving information is based on a number of unopened electronic mail messages. Boone at 141-143. Specifically, Boone provides a method of e-mail filtering for palmtop computers based on automatic feature extraction. Boone at 141. Further, Boone provides for the use of a machine learning technique wherein e-mail data structure is analyzed with respect to user interaction, such that e-mail is retrieved automatically based on perceived user preferences. Boone at 141-143.

15.     Claim 15 of the '383 Patent

Claim 15 of the '383 patent reads as follows:

15. The method of caching information recited in claim 10, wherein the data items are electronic mail message data files.

RFC 2060 discloses that data items are electronic mail message data files. RFC 2060 at 1. Specifically, RFC 2060 provides that data items are electronic mail messages on a server. RFC 2060 at 1.

---

[130] In litigation, Patent Owner has taken the position that a system preference that allows for "filtering only new electronic mail messages which enables a user preference for retrieving information based on a number (e.g., one) of unopened (e.g., new) electronic mail messages." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

### Q. Claims 10-15 are rendered obvious by Bern in view of Boone Under 35 U.S.C. § 103

> **Please see attached Exhibit CC-Q presenting claim charts for comparison of the Bern patent in view of the Boone reference with the claims of the '383 patent.**

Requester respectfully submits that claims 10-15 of the '383 patent are rendered obvious by Bern in view of Boone under 35 U.S.C. § 103. A claim chart applying Bern in view of Boone to these claims is submitted herewith as Exhibit CC-Q.

**Motivation to Combine**

One of ordinary skill in the art would have reason to combine Bern and Boone.

Bern teaches a method of delivering e-mail from a POP3 or IMAP4 server to a portable client. Bern at Col. 3, lines 31-35. The object of the Bern patent is to increase the functionality and efficiency of a mail delivery system by methodically downloading specific parts of e-mail information from the POP3 or IMAP4 server. Bern at Col. 3, lines 20-39. Furthermore, Bern provides that "the present invention is applicable in connection with any mail delivery protocol which handles unique identifiers in the same, or similar, way as the POP3 or IMAP4 mail delivery protocols[.]" Bern at Col. 3, lines 61-65.

Boone teaches the use of an intelligent e-mail agent to learn actions such as e-mail filtering, prioritizing, downloading to palmtops and forwarding email to voicemail using automatic feature extraction. Boone at 142. Specifically, the intelligent e-mail agent of Boone provides a filtering based on a conceptual view of the e-mail content rather than the statistical view more commonly used. Boone at 142-143, 147. The object of Boone's filtering process is to increase the functionality and efficiency of a mail delivery system. Boone at 141.

One of ordinary skill in the art would have been motivated to combine Bern and Boone to gain increased functionality and efficiency in the realm of e-mail delivery to a portable handheld client. Furthermore, the combination of Bern and Boone would have

yielded the predictable result of predictive indicator predicting a user's preferences for retrieving electronic mail messages.[131]  Since Bern's unique identifiers and Boone's intelligent filtering work independently, each functions the same way together as it does apart.

10.    <u>Claim 10 of the '383 Patent</u>

Claim 10 of the '383 patent reads as follows:

10.  A method of caching information relating to a set of data items, comprising:

> in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items;

> and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger;

> and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items.

Each of the elements in claim 10 is disclosed in Bern in view of Boone.  Bern discloses caching information relating to a set of data items.  Bern at Col. 2, lines 20-36. Specifically, Bern discloses that POP3 and IMAP4 can be used to allow multiple computers (e.g., "a stationary computer at the office and a portable computer during travel...") to access e-mail either on-line or off-line.  Bern at Col. 2, lines 20-36.

The first element of claim 10 is "in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items." Bern discloses a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at

---

[131] In *KSR* , the United States Supreme Court emphasized that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." The Court provided further instruction stating that "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *Id*. at 1740 (quoting *Sakraida* at 273.)  *See also Ex parte Catan*, Appeal 2007-0820 (BPAI July 3, 2007); *Ex Parte Kubin*, 2007-0819 (BPAI May 31, 2007)*; Ex Parte Smith*, Appeal 2007-1925 (BPAI June 25, 2007).

156

**EXHIBIT A**

least one of the data items.  Bern at Col. 4, lines 1-19; Col. 6, lines 23-54; Col. 7, line 57 – Col. 8, line 2.  Specifically, Bern provides that a second memory (e.g., mail client on a mobile communications station) retrieves from a first memory (e.g., "mail server site") a first hierarchical level of information (e.g., "SMS short message which includes the job identifier of the received and stored e-mail message").  Bern at Col. 4, lines 1-19; Col. 6, lines 23-54; Col. 7, line 57 – Col. 8, line 2.

With respect to a second memory, Bern provides that "it is to be understood that what is meant by the expression mobile communication station in this document is either a stand-alone RF (Radio Frequency) transceiver having processing capabilities and displaying means, such as a mobile telephone or a hand-held PDA (Personal Digital Assistant), or, a RF transceiver together with any kind of portable or stationary equipment having processing capabilities, such as a portable laptop computer or a stationary personal computer, wherein the RF transceiver is arranged in communication with the portable or stationary equipment."  Bern at Col. 5, lines 8-17.

The second element of claim 10 is "and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger."[132] Bern discloses a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items.  Bern at Col. 5, lines 1-7; Col. 6, lines 33-40.  Specifically Bern provides that in a second retrieval operation, a user at a second memory (e.g., "mobile communication station") uses the unique identifier (e.g., "SMS notification") to access a second hierarchical level

---

[132] In litigation, Patent Owner has taken the position that triggers are defined in the specification in "very broad terms" and "may include a variety of input or operations that specific [sic] the caching of different hierarchical levels of information (e.g., based on user preferences, which set the triggers to filter messages, a trigger to view additional content of an email, or to retrieve attachments).  The patent also discusses 'notifications' to update the data cache as potential triggers."  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

of information (e.g., "header information"). Bern at Col. 6, lines 33-40. Bern describes that accessing a second hierarchical level of information should be understood to mean a number of possible operations like, retrieving header information only, retrieving first or second parts of an e-mail body, or any other possible manipulation of e-mail. Bern at Col. 5, lines 1-7.

Further, Bern discloses that a first retrieval operation is initiated in response to receiving a first trigger. Bern at Col. 7, line 57 – Col. 8, line 2; Col. 6, lines 33-40. Specifically, Bern provides that upon receiving a new message arriving a first memory (e.g., e-mail server), a notification is generated and sent to the second memory (e.g., mail client on a mobile communications station). Bern at Col. 7, line 57 – Col. 6, line 2.

Further, Bern discloses a second retrieval operation is initiated in response to receiving a second trigger different from the first trigger. Bern at Col. 6, lines 33-40. Specifically, Bern provides that upon receiving a first hierarchical level of information (e.g., "SMS notification"), a user at the second memory (e.g., mail client on a mobile communications station) may retrieve the email stored in the first memory (e.g., mail server). Bern at Col. 6, lines 33-40. To retrieve the second hierarchical level of information, the user at a second memory will initiate a second trigger (e.g., a retrieve command). Bern at Col. 8, lines 15-24; Col. 9, lines 1-12.

The third element of claim 10 is "and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items." Boone discloses that at least one of the first trigger and the second trigger is a predictive indicator[133] predicting a user's preferences for retrieving information from the set of data items. Boone at 141-143. Specifically, Boone provides a method of e-mail filtering for palmtop computers based on automatic feature extraction. Boone at 141. Further, Boone provides for the use of a machine

---

[133] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items. A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance. These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

learning technique wherein e-mail data structure is analyzed with respect to user interaction, such that e-mail is retrieved automatically based on perceived user preferences.  Boone at 141-143.

11.    Claim 11 of the '383 Patent

Claim 11 of the '383 patent reads as follows:

11.  The method of caching information recited in claim 10, wherein the set of data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.[134]

Bern discloses that data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.  Bern at Col. 2, lines 29-38.  Specifically, Bern provides that a first memory (e.g., e-mail server) stores the users regular electronic mail account while the second memory (e.g., mail client on a portable computer) stores the user's portable electronic mail account.  Bern at Col. 2, lines 29-38.

12.    Claim 12 of the '383 Patent

Claim 12 of the '383 patent reads as follows:

12.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.[135]

Boone discloses that a user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.  Boone at 143.

---

[134] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Exchange/Domino Servers) while the user's portable electronic mail account is on the second memory (e.g., BES, BlackBerry Infrastructure or BlackBerry client device.)  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007) ("The first memory may correspond to the Exchange/Domino Servers and the second memory may correspond to the BES, BlackBerry Infrastructure or the BlackBerry client device.")

[135] In litigation, Patent Owner has taken the position that a system that uses filters to implement a user's preference for retrieving email would infringe claim 12.  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

Specifically, Boone provides for automatic feature extraction based on sorting mail from a particular person (e.g., "sort all new mail from gboone into from gary folder").  Boone at 143.

13.    Claim 13 of the '383 Patent

Claim 13 of the '383 patent reads as follows:

13.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on a number of unopened electronic mail messages.[136]

Boone discloses that a user's preference for retrieving information is based on a number of unopened electronic mail messages.  Boone at 141-143.  Specifically, Boone provides a method of e-mail filtering for palmtop computers based on automatic feature extraction.  Boone at 141.  Further, Boone provides for the use of a machine learning technique wherein e-mail data structure is analyzed with respect to user interaction, such that e-mail is retrieved automatically based on perceived user preferences.  Boone at 141-143.

14.    Claim 14 of the '383 Patent

Claim 14 of the '383 patent reads as follows:

14.  The method of caching information recited in claim 10, wherein the data items are file directory information.[137]

Bern discloses that data items are file directory information.  Bern at Col. 2, line 48 – Col. 3, line 20.  Specifically, Bern provides that a user may retrieve directory information (e.g., a UIDL which describes overall the contents of a users mailbox on the server).  Bern at Col. 2, line 48 – Col. 3, line 20.

---

[136] In litigation, Patent Owner has taken the position that a system preference that allows for "filtering only new electronic mail messages which enables a user preference for retrieving information based on a number (e.g., one) of unopened (e.g., new) electronic mail messages." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

[137] In litigation, Patent Owner has taken the position that receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

**EXHIBIT A**

15.    Claim 15 of the '383 Patent

Claim 15 of the '383 patent reads as follows:

15.  The method of caching information recited in claim 10, wherein the
data items are electronic mail message data files.

Bern discloses that the data items are electronic mail message data files.  Bern at
Abstract.  Specifically, Bern provides that the data files are electronic mail message data
files (e.g., e-mail).  Bern at Abstract.

**R.  Claims 10-15 are rendered obvious by Halahmi in view of Boone Under
35 U.S.C.  § 103**

> **Please see attached Exhibit CC-R
> presenting claim charts for
> comparison of the Halahmi patent in
> view of the Boone reference with the
> claims of the '383 patent.**

Requester respectfully submits that claims 10-15 are anticipated by the Halahmi
reference under 35 U.S.C. § 102 as discussed in Section D above.  However, in the
alternative, Requester also submits that claims 10-15 of the '383 patent are rendered
obvious by Halahmi in view of Boone under 35 U.S.C.  § 103.  A claim chart applying
Halahmi in view of Boone to these claims is submitted herewith as Exhibit CC-R.

**Motivation to Combine**

One of ordinary skill in the art would have reason to combine Halahmi and
Boone.

Halahmi teaches the use of automated e-mail filtering to download messages from
a first memory (e.g., server) to a second memory (e.g., a client) without regard to a user's
request.  Halahmi at Col. 7, lines 24-27.

Boone teaches the use of an intelligent e-mail agent to learn actions such as e-mail
filtering, prioritizing, downloading to palmtops and forwarding email to voicemail using
automatic feature extraction.  Boone at 142.  Specifically, the intelligent e-mail agent of
Boone provides a filtering based on a conceptual view of the e-mail content rather than
the statistical view more commonly used.  Boone at 142-143, 147.  The object of Boone's

**EXHIBIT A**

filtering process is to increase the functionality and efficiency of a mail delivery system. Boone at 141.

One of ordinary skill in the art would have been motivated to combine Halahmi and Boone to gain increased functionality and efficiency in the realm of e-mail delivery to a portable handheld client. Furthermore, the combination of Halahmi and Boone would have yielded the predictable result of predictive indicator predicting a user's preferences for retrieving electronic mail messages.[138]  Since Halahmi's unique identifiers and Boone's intelligent filtering work independently, each functions the same way together as it does apart.

> 10.   Claim 10 of the '383 Patent

Claim 10 of the '383 patent reads as follows:

> 10.   A method of caching information relating to a set of data items, comprising:
>
>> in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items;
>>
>> and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger;
>>
>> and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items.

Each of the elements in claim 10 are disclosed in Halahmi and Boone. Halahmi at Col. 3, lines 11-22. Specifically, Halahmi discloses dividing e-mail messages into a plurality of portions for transmission and display on a device. Halahmi at Col. 3, lines 11-22.

---

[138] In *KSR* , the United States Supreme Court emphasized that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." The Court provided further instruction stating that "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *Id.* at 1740 (quoting *Sakraida* at 273.) *See also Ex parte Catan,* Appeal 2007-0820 (BPAI July 3, 2007); *Ex Parte Kubin,* 2007-0819 (BPAI May 31, 2007)*; Ex Parte Smith,* Appeal 2007-1925 (BPAI June 25, 2007).

The first element of claim 10 is "in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items." Halahmi discloses a first retrieval operation for retrieving from the first memory and storing into a second memory a first hierarchical level of information corresponding to a data item. Halahmi at Col. 5, lines 40-52; Halahmi at Col. 8, lines 1-39. Specifically, Halahmi discloses that the second memory (e-mail portion server) sends a "STAT" command and a "List" command to the first memory (e-mail server); in response the first memory sends a list of total message size and a list of all messages. Halahmi at Col. 8, lines 1-39. Halahmi also provides that the list of total message size and list of total messages includes the message identifier numbers. Halahmi at Col. 8, lines 1-39.

The second element of claim 10 is "and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger."[139] Halahmi discloses that a second retrieval operation is separate from the first retrieval operation. Halahmi at Col. 8, lines 1-11. Specifically, Halahmi discloses that the second memory (e-mail portion server) sends a "STAT" and "List" command (first trigger) to the first memory (e-mail server); in response the first memory sends a list of total message size and a list of all messages. Halahmi at Col. 8, lines 1-39. Halahmi also provides that the list of total message size and list of total messages includes the message identifier numbers. Halahmi at Col. 8, lines 1-39. Further, Halahmi provides that a second memory (e-mail portion server) sends a

---

[139] In litigation, Patent Owner has taken the position that triggers are defined in the specification in "very broad terms" and "may include a variety of input or operations that specific [sic] the caching of different hierarchical levels of information (e.g., based on user preferences, which set the triggers to filter messages, a trigger to view additional content of an email, or to retrieve attachments). The patent also discusses 'notifications' to update the data cache as potential triggers." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

command (second trigger) to the first memory (e-mail server) to parse all of the headers of the e-mail messages that are in the inbox. Halahmi at Col. 8, lines 1-11.

The third element of claim 10 is "and wherein at least one of the first trigger and the second trigger is a predictive indicator[140] predicting a user's preferences for retrieving information from the set of data items." Halahmi discloses that at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preference for retrieving information. Halahmi at Col. 7, lines 24-27. Specifically, Halahmi provides that "e-mail message(s) could be retrieved automatically without regard to the user request[.]" Halahmi at Col. 7, lines 24-27. Further still, e-mail messages could be selected for automatic retrieval based on user preferences. Halahmi at Col. 8, lines 55-60.

In the alternative, Boone discloses that at least one of the first trigger and the second trigger is a predictive indicator[141] predicting a user's preferences for retrieving information from the set of data items. Boone at 141-143. Specifically, Boone provides a method of e-mail filtering for palmtop computers based on automatic feature extraction. Boone at 141. Further, Boone provides for the use of a machine learning technique wherein e-mail data structure is analyzed with respect to user interaction, such that e-mail is retrieved automatically based on perceived user preferences. Boone at 141-143.

---

[140] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items. A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance. These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

[141] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items. A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance. These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

11.    Claim 11 of the '383 Patent

Claim 11 of the '383 patent reads as follows:

11.  The method of caching information recited in claim 10, wherein the
set of data items are stored in a memory associated with a user's regular
electronic mail account, and the first and second retrieval operations
comprise storing the first and second hierarchical levels of information in
a memory associated with a user's portable electronic mail account.[142]

Halahmi discloses that the first memory corresponds to a user's regular electronic
mail account.  Halahmi at Col. 5, line 49-56.  Specifically, Halahmi provides that the e-
mail server sends and receives e-mails according to standard protocol such as SMTP,
POP3 and IMAP4.  Halahmi at Col. 5, lines 49-56.  Further, Halahmi provides that the
second memory corresponds to a user's portable electronic mail account.  Halahmi at
Col. 5, line 39 – Col. 6, line 26.  Specifically, Halahmi provides that e-mail is sent from
the e-mail server to the e-mail proxy server, which compresses, converts and forward for
display to a user at a wireless communication device.  Halahmi at Col. 5, line 39 – Col. 6,
line 26.

12.    Claim 12 of the '383 Patent

Claim 12 of the '383 patent reads as follows:

12.  The method of caching information recited in claim 10, wherein the
user's preference for retrieving information is based on retrieving
electronic mail messages authored by a particular person.[143]

Halahmi anticipates claim 12 as discussed in Section D above.  However, in the
alternative, Halahmi renders obvious claim 12 in view of Boone.  Boone discloses that a
user's preference for retrieving information is based on retrieving electronic mail

---

[142] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a
first memory (e.g., Exchange/Domino Servers) while the user's portable electronic mail account is on the
second memory (e.g., BES, BlackBerry Infrastructure or BlackBerry client device.)  See Exhibit OTH-B at
"Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in
*Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007) ("The
first memory may correspond to the Exchange/Domino Servers and the second memory may correspond to
the BES, BlackBerry Infrastructure or the BlackBerry client device.")

[143] In litigation, Patent Owner has taken the position that a system that uses filters to implement a user's
preference for retrieving email would infringe claim 12.  See Exhibit OTH-B at "Visto's Disclosure of
Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion
Limited vs.  Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

**EXHIBIT A**

messages authored by a particular person.  Boone at 143.  Specifically, Boone provides for automatic feature extraction based on sorting mail from a particular person (e.g., "sort all new mail from gboone into from gary folder").  Boone at 143.

13.    Claim 13 of the '383 Patent

Claim 13 of the '383 patent reads as follows:

13.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on a number of unopened electronic mail messages.[144]

Halahmi anticipates claim 13 as discussed in Section D above.  However, in the alternative, Halahmi renders obvious claim 13 in view of Boone.  Boone discloses that a user's preference for retrieving information is based on a number of unopened electronic mail messages.  Boone at 141-143.  Specifically, Boone provides a method of e-mail filtering for palmtop computers based on automatic feature extraction.  Boone at 141.  Further, Boone provides for the use of a machine learning technique wherein e-mail data structure is analyzed with respect to user interaction, such that e-mail is retrieved automatically based on perceived user preferences.  Boone at 141-143.

14.    Claim 14 of the '383 Patent

Claim 14 of the '383 patent reads as follows:

14.  The method of caching information recited in claim 10, wherein the data items are file directory information.[145]

Halahmi discloses data items are file directory information.  Halahmi at Col. 9, lines 4-13; Col. 8, lines 1-7.  Specifically, Halahmi discloses that data items include information about the user's inbox at the e-mail server, e.g., mailbox total size and a listing of e-mail messages.  Halahmi at Col. 8, lines 1-7.

---

[144] In litigation, Patent Owner has taken the position that a system preference that allows for "filtering only new electronic mail messages which enables a user preference for retrieving information based on a number (e.g., one) of unopened (e.g., new) electronic mail messages." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

[145] In litigation, Patent Owner has taken the position that receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

15.    Claim 15 of the '383 Patent

Claim 15 of the '383 patent reads as follows:

15. The method of caching information recited in claim 10, wherein the data items are electronic mail message data files.

Halahmi discloses that data items are electronic mail message data files. Halahmi at Col. 7, lines 26-29. Specifically, Halahmi provides that the e-mail portion server receives e-mail messages from the e-mail server. Halahmi at Col. 6, lines 26-29.

**S. Claims 10-15 are rendered obvious by Zerber in view of Boone Under 35 U.S.C. § 103**

> **Please see attached Exhibit CC-S presenting claim charts for comparison of the Zerber patent in view of the Boone reference with the claims of the '383 patent.**

Requester respectfully submits that claims 10-15 are anticipated by the Zerber reference under 35 U.S.C. § 102 as discussed in Section E above. However, in the alternative, Requester also submits that claims 10-15 of the '383 patent are rendered obvious by Zerber in view of Boone under 35 U.S.C. § 103. A claim chart applying Zerber in view of Boone to these claims is submitted herewith as Exhibit CC-S.

**Motivation to Combine**

One of ordinary skill in the art would have reason to combine Zerber and Boone.

Zerber teaches the use of the IMAP or POP3 protocol for selectively downloading e-mail messages from a first memory (e.g., post office system) to a second memory (e.g., remote client). Zerber at Col. 2, lines 17-20.

Boone teaches the use of an intelligent e-mail agent to learn actions such as e-mail filtering, prioritizing, downloading to palmtops and forwarding email to voicemail using automatic feature extraction. Boone at 142. Specifically, the intelligent e-mail agent of Boone provides a filtering based on a conceptual view of the e-mail content rather than the statistical view more commonly used. Boone at 142-143, 147. The object of Boone's

**EXHIBIT A**

filtering process is to increase the functionality and efficiency of a mail delivery system. Boone at 141.

One of ordinary skill in the art would have been motivated to combine Zerber and Boone to gain increased functionality and efficiency in the realm of e-mail delivery to a portable handheld client. Furthermore, the combination of Zerber and Boone would have yielded the predictable result of predictive indicator predicting a user's preferences for retrieving electronic mail messages.[146] Since Zerber's unique identifiers and Boone's intelligent filtering work independently, each functions the same way together as it does apart.

> 10.    Claim 10 of the '383 Patent

Claim 10 of the '383 patent reads as follows:

10.    A method of caching information relating to a set of data items, comprising:

> in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items;

> and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger;

> and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items.

Each of the elements in claim 10 are disclosed in Zerber and Boone. Zerber at Col. 5, lines 14-26. Specifically, Zerber provides that a client computer communicates with a mail server running POP3 or IMAP4. Zerber at Col. 5, lines 14-26.

---

[146] In *KSR* , the United States Supreme Court emphasized that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." The Court provided further instruction stating that "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *Id.* at 1740 (quoting *Sakraida* at 273.) *See also Ex parte Catan,* Appeal 2007-0820 (BPAI July 3, 2007); *Ex Parte Kubin,* 2007-0819 (BPAI May 31, 2007)*; Ex Parte Smith,* Appeal 2007-1925 (BPAI June 25, 2007).

**EXHIBIT A**

The first element of claim 10 is "in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items." Zerber discloses a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information. Zerber at Abstract; Col. 3, line 66 to Col. 4, line 5. Specifically, Zerber provides that a first memory (e.g., personal computers, workstations, minicomputers or mainframes) connect over LANs, WANs, SNA networks and the Internet to a second memory (e.g., personal computers, laptops, palmtops or workstations) to download a first hierarchical level of information (e.g., URL information). Zerber at Abstract; Col. 3, line 66 to Col. 4, line 5. In Zerber, a second memory establishes a connection with the first memory (e.g., a mail server including the folder of messages over a network.) to download a mail applet. Zerber at Col. 7, line 52 through Col. 7, line 14. The mail applet causes the web browser to open a view page including selected files having a URL in the local http server in the view applet. Zerber at Figure 4B. Zerber provides that data items are identified by a URL in the HTTP server. Zerber at Col. 7, line 52 through Col. 7, line 14.

Alternatively, Zerber provides that a first retrieval would download header information. Zerber at Abstract. Specifically, Zerber provides that "a client computer establishes a first connection with a mail server including the folder of messages over a network. The client computer communicates a command to the mail server to parse messages in the folder to obtain message headers. The message headers are then downloaded to the client computer." Zerber at Abstract.

The second element of claim 10 is "and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger."[147] Zerber discloses a second retrieval operation separate

---

[147] In litigation, Patent Owner has taken the position that triggers are defined in the specification in "very broad terms" and "may include a variety of input or operations that specific [sic] the caching of different hierarchical levels of information (e.g., based on user preferences, which set the triggers to filter messages, a trigger to view additional content of an email, or to retrieve attachments). The patent also discusses

**EXHIBIT A**

from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items. Zerber at Abstract. Specifically, Zerber provides that "a client computer establishes a first connection with a mail server including the folder of messages over a network. The client computer communicates a command to the mail server to parse messages in the folder to obtain message headers. The message headers are then downloaded to the client computer." Zerber at Abstract.

Alternatively, if downloading message headers is viewed as a first retrieval, Zerber provides that a second retrieval would download body information. Zerber at Abstract. Specifically, "after downloading the message headers, the first connection between the client computer and the mail server is terminated. The client computer may then be used to select at least one displayed header. After message headers are selected, a second connection is established between the client computer and the mail server. The client computer communicates a command to the mail server to retrieve a body for each message whose header was selected. The selected message bodies are then downloaded to the client computer." Zerber at Abstract.

Further, Zerber provides that the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger. Zerber at Col. 2, lines 30-40. Specifically, Zerber provides that the second memory (e.g., client computer) sends a first trigger (e.g., command) to download message headers. Zerber at Col. 2, lines 30-40. Secondly, once the headers are downloaded, the second memory issues a second trigger wherein "the client computer communicates a command to the mail server to retrieve a body for each message whose header was selected. The selected message bodies are then downloaded to the client computer." Zerber at Abstract.

---

'notifications' to update the data cache as potential triggers." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

The third element of claim 10 is "and wherein at least one of the first trigger and the second trigger is a predictive indicator[148] predicting a user's preferences for retrieving information from the set of data items." Zerber provides that at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items.   Zerber at Col. 2, lines 17-20. Specifically, Zerber uses IMAP4 which permits selective downloading of "desired messages." Zerber at Col. 2, lines 17-20.

In the alternative, Boone discloses that at least one of the first trigger and the second trigger is a predictive indicator[149] predicting a user's preferences for retrieving information from the set of data items.  Boone at 141-143.  Specifically, Boone provides a method of e-mail filtering for palmtop computers based on automatic feature extraction. Boone at 141.   Further, Boone provides for the use of a machine learning technique wherein e-mail data structure is analyzed with respect to user interaction, such that e-mail is retrieved automatically based on perceived user preferences.  Boone at 141-143.

11.    Claim 11 of the '383 Patent

Claim 11 of the '383 patent reads as follows:

11.  The method of caching information recited in claim 10, wherein the set of data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations

---

[148] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items.  A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance.  These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

[149] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items.  A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance.  These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.[150]

Zerber discloses a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account. Zerber at Col. 2, lines 4-14. Specifically, Zerber provides for either IMAP4 or POP3 configuration where a first memory (e.g., mail server) maintains a user's regular electronic mail account and a second memory (e.g., client computer) maintains the user's portable electronic mail account. Zerber at Col. 2, lines 4-14.

> 12.    Claim 12 of the '383 Patent

Claim 12 of the '383 patent reads as follows:

> 12. The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.[151]

Zerber anticipates claim 12 as discussed in Section E above. However, in the alternative, Zerber renders obvious claim 12 in view of Boone. Boone discloses that a user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person. Boone at 143. Specifically, Boone provides for automatic feature extraction based on sorting mail from a particular person (e.g., "sort all new mail from gboone into from gary folder"). Boone at 143.

> 13.    Claim 13 of the '383 Patent

Claim 13 of the '383 patent reads as follows:

---

[150] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Exchange/Domino Servers) while the user's portable electronic mail account is on the second memory (e.g., BES, BlackBerry Infrastructure or BlackBerry client device.) See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007) ("The first memory may correspond to the Exchange/Domino Servers and the second memory may correspond to the BES, BlackBerry Infrastructure or the BlackBerry client device.")

[151] In litigation, Patent Owner has taken the position that a system that uses filters to implement a user's preference for retrieving email would infringe claim 12. See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

13.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on a number of unopened electronic mail messages.[152]

Zerber anticipates claim 13 as discussed in Section E above.  However, in the alternative, Zerber renders obvious claim 13 in view of Boone.  Boone discloses that a user's preference for retrieving information is based on a number of unopened electronic mail messages.  Boone at 141-143.  Specifically, Boone provides a method of e-mail filtering for palmtop computers based on automatic feature extraction.  Boone at 141. Further, Boone provides for the use of a machine learning technique wherein e-mail data structure is analyzed with respect to user interaction, such that e-mail is retrieved automatically based on perceived user preferences.  Boone at 141-143.

14.    Claim 14 of the '383 Patent

Claim 14 of the '383 patent reads as follows:

14.  The method of caching information recited in claim 10, wherein the data items are file directory information.[153]

Zerber discloses that data items are file directory information.  Zerber at Col. 2, lines 4-14.  Specifically, Zerber uses IMAP4 and POP3 for "online" and "offline" manipulation of mail messages and folders in a post office system.  Zerber at Col. 2, lines 4-14.

15.    Claim 15 of the '383 Patent

Claim 15 of the '383 patent reads as follows:

15.  The method of caching information recited in claim 10, wherein the data items are electronic mail message data files.

---

[152] In litigation, Patent Owner has taken the position that a system preference that allows for "filtering only new electronic mail messages which enables a user preference for retrieving information based on a number (e.g., one) of unopened (e.g., new) electronic mail messages." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No. C-07-3177 (N.D. Cal. June 15, 2007).

[153] In litigation, Patent Owner has taken the position that receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

Zerber discloses that data items are electronic mail message data files. Zerber at Abstract. Specifically, Zerber provides that data files are e-mail messages. Zerber at Abstract.

### T.  Claims 10-15 are rendered obvious by Austein in view of Boone Under 35 U.S.C. § 103

> **Please see attached Exhibit CC-T presenting claim charts for comparison of the Austein patent in view of the Boone reference with the claims of the '383 patent.**

Requester respectfully submits that claims 10-15 are anticipated by the Austein reference under 35 U.S.C. § 102 as discussed in Section F above. However, in the alternative, Requester also submits that claims 10-15 of the '383 patent are rendered obvious by Austein in view of Boone under 35 U.S.C. § 103. A claim chart applying Austein in view of Boone to these claims is submitted herewith as Exhibit CC-T.

**Motivation to Combine**

One of ordinary skill in the art would have reason to combine Austein and Boone.

Austein teaches the use of automated e-mail filtering to download only "interesting" messages from a first memory (e.g., server) to a second memory (e.g., a client). Austein at 2; 4.

Boone teaches the use of an intelligent e-mail agent to learn actions such as e-mail filtering, prioritizing, downloading to palmtops and forwarding email to voicemail using automatic feature extraction. Boone at 142. Specifically, the intelligent e-mail agent of Boone provides a filtering based on a conceptual view of the e-mail content rather than the statistical view more commonly used. Boone at 142-143, 147. The object of Boone's filtering process is to increase the functionality and efficiency of a mail delivery system. Boone at 141.

One of ordinary skill in the art would have been motivated to combine Austein and Boone to gain increased functionality and efficiency in the realm of e-mail delivery to a portable handheld client. Furthermore, the combination of Austein and Boone would

**EXHIBIT A**

have yielded the predictable result of predictive indicator predicting a user's preferences for retrieving electronic mail messages.[154]   Since Austein's unique identifiers and Boone's intelligent filtering work independently, each functions the same way together as it does apart.

          10.    Claim 10 of the '383 Patent

Claim 10 of the '383 patent reads as follows:

10.  A method of caching information relating to a set of data items, comprising:

      in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items;

      and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger;

      and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items.

Each of the elements in claim 10 are disclosed in Austein and Boone.  Austein at 2.  Specifically, Austein discloses caching email on a disconnected client while keeping the master mail state on the server.  Austein at 2.

The first element of claim 10 is "in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items." Austein discloses a first retrieval operation for retrieving from the first memory and storing into a second memory a first hierarchical level of information corresponding to a data item.  Austein at 2; 4; 6.  Specifically, Austein

---

[154] In *KSR* , the United States Supreme Court emphasized that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." The Court provided further instruction stating that "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *Id.*  at 1740 (quoting *Sakraida* at 273.)  *See also Ex parte Catan,* Appeal 2007-0820 (BPAI July 3, 2007); *Ex Parte Kubin,* 2007-0819 (BPAI May 31, 2007)*; Ex Parte Smith,* Appeal 2007-1925 (BPAI June 25, 2007).

discloses that the second memory (e.g., client) sends a fetch command to the first memory (e.g., server); in response the first memory sends descriptors.  Austein at 6.  Austein provides that descriptors may include at a minimum, a messages "UID" and "FLAG" information.  Austein at 6.

The second element of claim 10 is "and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger."[155] Austein discloses that a second retrieval operation is separate from the first retrieval operation.  Austein at 4-6.  Specifically, Austein discloses that the second memory (e.g., client) sends a fetch command (first trigger) to a first memory (e.g., server) to retrieve descriptors and/or descriptors-only.  Austein at 4-6.  Further, Austein provides that a second memory (e.g., client) sends another fetch command (second trigger) to the first memory (server) to begin sending additional body parts (e.g., more descriptors, "interesting" messages or body parts, etc.)  Austein at 4-6.

The third element of claim 10 is "and wherein at least one of the first trigger and the second trigger is a predictive indicator[156] predicting a user's preferences for retrieving information from the set of data items."  Austein discloses that at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preference for

---

[155] In litigation, Patent Owner has taken the position that triggers are defined in the specification in "very broad terms" and "may include a variety of input or operations that specific [sic] the caching of different hierarchical levels of information (e.g., based on user preferences, which set the triggers to filter messages, a trigger to view additional content of an email, or to retrieve attachments).  The patent also discusses 'notifications' to update the data cache as potential triggers."  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

[156] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items.  A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance.  These filters are predictive indicators which result in triggers for retrieving information."  Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

retrieving information.  Austein at 2; 4-6.  Specifically, Austein provides that a client will download "interesting" messages that the synchronization program thinks the human might want.  Austein at 4.  Further, the synchronization program is based on a configuration file that may be automated to support naïve humans.  Austein at 2; 4.

In the alternative, Boone discloses that at least one of the first trigger and the second trigger is a predictive indicator[157] predicting a user's preferences for retrieving information from the set of data items.  Boone at 141-143.  Specifically, Boone provides a method of e-mail filtering for palmtop computers based on automatic feature extraction. Boone at 141.  Further, Boone provides for the use of a machine learning technique wherein e-mail data structure is analyzed with respect to user interaction, such that e-mail is retrieved automatically based on perceived user preferences.  Boone at 141-143.

11.    Claim 11 of the '383 Patent

Claim 11 of the '383 patent reads as follows:

11.  The method of caching information recited in claim 10, wherein the set of data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.[158]

Austein discloses that the first memory corresponds to a user's regular electronic mail account.  Austein at 2.  Specifically, Austein provides that the first memory (e.g., server) maintains the "master" state of the e-mail.  Austein at 2.  Further, a second memory (e.g., disconnected client) views e-mail in a cached state.  Austein at 2.

---

[157] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items.  A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance.  These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

[158] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Exchange/Domino Servers) while the user's portable electronic mail account is on the second memory (e.g., BES, BlackBerry Infrastructure or BlackBerry client device.)  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007) ("The first memory may correspond to the Exchange/Domino Servers and the second memory may correspond to the BES, BlackBerry Infrastructure or the BlackBerry client device.")

**EXHIBIT A**

12.     Claim 12 of the '383 Patent

Claim 12 of the '383 patent reads as follows:

12. The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.[159]

Austein anticipates claim 12 as discussed in Section F above.  However, in the alternative, Austein renders obvious claim 12 in view of Boone.  Boone discloses that a user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.  Boone at 143.  Specifically, Boone provides for automatic feature extraction based on sorting mail from a particular person (e.g., "sort all new mail from gboone into from gary folder").  Boone at 143.

13.     Claim 13 of the '383 Patent

Claim 13 of the '383 patent reads as follows:

13. The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on a number of unopened electronic mail messages.[160]

Austein anticipates claim 13 as discussed in Section F above.  However, in the alternative, Austein renders obvious claim 13 in view of Boone.  Boone discloses that a user's preference for retrieving information is based on a number of unopened electronic mail messages.  Boone at 141-143.  Specifically, Boone provides a method of e-mail filtering for palmtop computers based on automatic feature extraction.  Boone at 141. Further, Boone provides for the use of a machine learning technique wherein e-mail data structure is analyzed with respect to user interaction, such that e-mail is retrieved automatically based on perceived user preferences.  Boone at 141-143.

---

[159] In litigation, Patent Owner has taken the position that a system that uses filters to implement a user's preference for retrieving email would infringe claim 12.  See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

[160] In litigation, Patent Owner has taken the position that a system preference that allows for "filtering only new electronic mail messages which enables a user preference for retrieving information based on a number (e.g., one) of unopened (e.g., new) electronic mail messages." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs.  Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

**EXHIBIT A**

14.    Claim 14 of the '383 Patent

Claim 14 of the '383 patent reads as follows:

14.  The method of caching information recited in claim 10, wherein the data items are file directory information.[161]

Austein discloses data items are file directory information.    Austein at 2-5. Specifically, Austein discloses that file directory (e.g., mailboxes) may be manipulated by a client.  Austein at 2-3.  Further, Austein provides that a client can pull from the server a list of all messages which describes content of the directory.  Austein at 5.

15.    Claim 15 of the '383 Patent

Claim 15 of the '383 patent reads as follows:

15.  The method of caching information recited in claim 10, wherein the data items are electronic mail message data files.

Austein discloses that data items are electronic mail message data files.  Austein at 2.  Specifically, Austein provides that the client receives e-mail messages from the server.  Austein at 2.

**U.  Claims 10-15 are rendered obvious by PCMAIL in view of Boone Under 35 U.S.C. § 103**

> **Please see attached Exhibit CC-U presenting claim charts for comparison of the PCMAIL reference in view of the Boone reference with the claims of the '383 patent.**

Requester respectfully submits that claims 10-15 are anticipated by the PCMAIL reference under 35 U.S.C. § 102 as discussed in Section G above.  However, in the alternative, Requester also submits that claims 10-15 of the '383 patent are rendered

---

[161] In litigation, Patent Owner has taken the position that receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

obvious by PCMAIL in view of Boone under 35 U.S.C. § 103. A claim chart applying PCMAIL in view of Boone to these claims is submitted herewith as Exhibit CC-U.

**Motivation to Combine**

One of ordinary skill in the art would have reason to combine PCMAIL and Boone.

PCMAIL teaches the use of automated e-mail filtering to download messages from a first memory (e.g., server) to a second memory (e.g., a client). PCMAIL at 20.

Boone teaches the use of an intelligent e-mail agent to learn actions such as e-mail filtering, prioritizing, downloading to palmtops and forwarding email to voicemail using automatic feature extraction. Boone at 142. Specifically, the intelligent e-mail agent of Boone provides a filtering based on a conceptual view of the e-mail content rather than the statistical view more commonly used. Boone at 142-143, 147. The object of Boone's filtering process is to increase the functionality and efficiency of a mail delivery system. Boone at 141.

One of ordinary skill in the art would have been motivated to combine PCMAIL and Boone to gain increased functionality and efficiency in the realm of e-mail delivery to a portable handheld client. Furthermore, the combination of PCMAIL and Boone would have yielded the predictable result of predictive indicator predicting a user's preferences for retrieving electronic mail messages.[162] Since PCMAIL's unique identifiers and Boone's intelligent filtering work independently, each functions the same way together as it does apart.

10.    Claim 10 of the '383 Patent

Claim 10 of the '383 patent reads as follows:

10.    A method of caching information relating to a set of data items, comprising:

---

[162] In *KSR* , the United States Supreme Court emphasized that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." The Court provided further instruction stating that "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *Id*. at 1740 (quoting *Sakraida* at 273.) *See also Ex parte Catan,* Appeal 2007-0820 (BPAI July 3, 2007); *Ex Parte Kubin,* 2007-0819 (BPAI May 31, 2007)*; Ex Parte Smith,* Appeal 2007-1925 (BPAI June 25, 2007).

in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items;

and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger;

and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items.

Each of the elements in claim 10 are disclosed in PCMAIL and Boone. PCMAIL at 2. Specifically, PCMAIL discloses a mail service system that permits resource limited machines to access and cache mail data. PCMAIL at 2.

The first element of claim 10 is "in a first retrieval operation, retrieving and storing into a memory only a first hierarchical level of information corresponding to at least one of the data items." PCMAIL discloses a first retrieval operation for retrieving from the first memory and storing into a second memory a first hierarchical level of information corresponding to a data item. PCMAIL at 3. Specifically, PCMAIL discloses that the second memory (e.g., workstation) sends a request (e.g., fetch descriptors) to the first memory (e.g., repository); in response the first memory sends descriptors to the second memory. PCMAIL at 16.

The second element of claim 10 is "and in a second retrieval operation separate from the first retrieval operation, retrieving and storing into the memory only a second hierarchical level of information corresponding to the at least one of the data items, wherein the first retrieval operation is initiated in response to receiving a first trigger, and the second retrieval operation is initiated in response to receiving a second trigger different from the first trigger."[163] PCMAIL discloses that a second retrieval operation is

---

[163] In litigation, Patent Owner has taken the position that triggers are defined in the specification in "very broad terms" and "may include a variety of input or operations that specific [sic] the caching of different hierarchical levels of information (e.g., based on user preferences, which set the triggers to filter messages, a trigger to view additional content of an email, or to retrieve attachments). The patent also discusses 'notifications' to update the data cache as potential triggers." See Exhibit OTH-B at "Visto's Disclosure of

181

**EXHIBIT A**

separate from the first retrieval operation.  PCMAIL at 17.  PCMAIL provides that a first trigger (e.g., fetch descriptors) retrieves a first hierarchical level of information from the first memory (e.g., repository).  PCMAIL at 17.  PCMAIL provides that a second memory (e.g., workstation) sends a second trigger (e.g., fetch message) to the first memory (e.g., repository) to fetch a second hierarchical level of information (e.g., message).  PCMAIL at 17.

Furthermore, and in the alternative, PCMAIL provides that a second memory (e.g., workstation) sends a second trigger to fetch a second hierarchical level of information (e.g., "fetch-changed descriptors").  PCMAIL at 17.

The third element of claim 10 is "and wherein at least one of the first trigger and the second trigger is a predictive indicator predicting a user's preferences for retrieving information from the set of data items."  PCMAIL discloses that at least one of the first trigger and the second trigger is a predictive indicator[164] predicting a user's preference for retrieving information.  PCMAIL at 20.  Specifically, PCMAIL provides that a synchronization process can be automated in the interactive mode.  PCMAIL at 20.

In the alternative, Boone discloses that at least one of the first trigger and the second trigger is a predictive indicator[165] predicting a user's preferences for retrieving information from the set of data items.  Boone at 141-143.  Specifically, Boone provides a method of e-mail filtering for palmtop computers based on automatic feature extraction.

---

Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

[164] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items.  A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance.  These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

[165] Patent Owner alleges that "For example, a user can set preferences or 'filters' to specify for sending a first or second hierarchical level of information for the data items.  A user may set a filter to send headers only which will trigger the delivery of email headers to the device, or also set filters to send message of high importance.  These filters are predictive indicators which result in triggers for retrieving information." Exhibit OTH-B, "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in Research In Motion Limited vs. Visto Corporation., Case No. C-07-3177 (N.D. Cal. June 15, 2007).

Boone at 141. Further, Boone provides for the use of a machine learning technique wherein e-mail data structure is analyzed with respect to user interaction, such that e-mail is retrieved automatically based on perceived user preferences. Boone at 141-143.

11.    Claim 11 of the '383 Patent

Claim 11 of the '383 patent reads as follows:

11. The method of caching information recited in claim 10, wherein the set of data items are stored in a memory associated with a user's regular electronic mail account, and the first and second retrieval operations comprise storing the first and second hierarchical levels of information in a memory associated with a user's portable electronic mail account.[166]

PCMAIL discloses that the first memory corresponds to a user's regular electronic mail account. PCMAIL at 2. Specifically, PCMAIL provides that the first memory (e.g., repository) maintains the stable copy of a user's global mail state while a second memory (e.g., workstation) is used to maintain local copies of the user's global mail state. PCMAIL at 2-3. A second memory is portable as it is located on resource limited machines like IBM PCs. PCMAIL at 2.

12.    Claim 12 of the '383 Patent

Claim 12 of the '383 patent reads as follows:

12. The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on retrieving electronic mail messages authored by a particular person.[167]

PCMAIL anticipates claim 12 as discussed in Section G above. However, in the alternative, PCMAIL renders obvious claim 12 in view of Boone. Boone discloses that a user's preference for retrieving information is based on retrieving electronic mail

---

[166] In litigation, Patent Owner has taken the position that a user's regular electronic mail account is on a first memory (e.g., Exchange/Domino Servers) while the user's portable electronic mail account is on the second memory (e.g., BES, BlackBerry Infrastructure or BlackBerry client device.) See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007) ("The first memory may correspond to the Exchange/Domino Servers and the second memory may correspond to the BES, BlackBerry Infrastructure or the BlackBerry client device.")

[167] In litigation, Patent Owner has taken the position that a system that uses filters to implement a user's preference for retrieving email would infringe claim 12. See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.*, Case No. C-07-3177 (N.D. Cal. June 15, 2007).

**EXHIBIT A**

messages authored by a particular person.  Boone at 143.  Specifically, Boone provides for automatic feature extraction based on sorting mail from a particular person (e.g., "sort all new mail from gboone into from gary folder").  Boone at 143.

13.    Claim 13 of the '383 Patent

Claim 13 of the '383 patent reads as follows:

13.  The method of caching information recited in claim 10, wherein the user's preference for retrieving information is based on a number of unopened electronic mail messages.[168]

PCMAIL anticipates claim 13 as discussed in Section G above.  However, in the alternative, PCMIAL renders obvious claim 13 in view of Boone.  Boone discloses that a user's preference for retrieving information is based on a number of unopened electronic mail messages.  Boone at 141-143.  Specifically, Boone provides a method of e-mail filtering for palmtop computers based on automatic feature extraction.  Boone at 141.  Further, Boone provides for the use of a machine learning technique wherein e-mail data structure is analyzed with respect to user interaction, such that e-mail is retrieved automatically based on perceived user preferences.  Boone at 141-143.

14.    Claim 14 of the '383 Patent

Claim 14 of the '383 patent reads as follows:

14.  The method of caching information recited in claim 10, wherein the data items are file directory information.[169]

PCMAIL discloses data items are file directory information.  PCMAIL at 16. Specifically, PCMAIL provides that a user may request a list of all descriptors on that client's update list.  PCMAIL at 16.  This listing of the upper and lower bounds of the unique identifiers describes the mailbox directory of the user.  PCMAIL at 16.

---

[168] In litigation, Patent Owner has taken the position that a system preference that allows for "filtering only new electronic mail messages which enables a user preference for retrieving information based on a number (e.g., one) of unopened (e.g., new) electronic mail messages." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

[169] In litigation, Patent Owner has taken the position that receiving file directory information could include "receiv[ing] changes that you make to the email message folder on your computer over the wireless network." See Exhibit OTH-B at "Visto's Disclosure of Asserted Claims and Infringement Contentions under Patent Local Rule 3-1" in *Research In Motion Limited vs. Visto Corporation.,* Case No.  C-07-3177 (N.D. Cal.  June 15, 2007).

**EXHIBIT A**

15.    Claim 15 of the '383 Patent

Claim 15 of the '383 patent reads as follows:

15.  The method of caching information recited in claim 10, wherein the data items are electronic mail message data files.

PCMAIL discloses that data items are electronic mail message data files. PCMAIL at 2.  Specifically, PCMAIL discloses that data items are e-mail messages. PCMAIL at 2.

## V.  CONCLUSION

The prior art documents presented in the above Request were either not previously considered by the Office or are now being presented in a new light pursuant to MPEP § 2642(II)(A).  The claims of the '383 patent are not patentable over the prior art documents cited herein.  The prior art documents teach the subject matter of the '383 patent in a manner such that substantial new questions of patentability for all claims are raised by this Request.

In view of the foregoing, it is respectfully submitted that a substantial new question of patentability of claims 1-15 of Patent No. 7,228,383 has been raised by this Request.  Accordingly, the Office is requested to grant this Request and to initiate reexamination with special dispatch.

As an aid to the application of the presented prior art to claims of the '383 patent, corresponding claim charts are provided at Exhibit CC-A through CC-U attached hereto.

Enclosed is a credit card authorization to cover the Fee for reexamination.  If this authorization is missing or defective please charge the Fee to the Novak Druce Deposit Account No.  14-1437.

**EXHIBIT A**

Date: January 8, 2008

Respectfully submitted,

Novak Druce & Quigg, LLP
Donald J. Quigg
Reg. No. 16,030
Tracy W. Druce
Reg. No. 35,493
James P. Murphy
Reg. No. 55,474
Attorneys for Third Party Requester
Research in Motion. Ltd.

NOVAK DRUCE & QUIGG, LLP
1000 Louisiana Ave.
53rd Floor
Houston, Texas 77002
P: 713-571-1500
F: 713-456-2836

186

**EXHIBIT A**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of this Request for *Inter Partes* Reexamination, together with all exhibits and attachments and supporting documentation, has been served via priority mail on the 8th day of January, 2007, upon the following:

> SCOTT MCKEOWN
>
> OBLON, SPIVAK, MCCLELLAND, MAIER & NEUSTADT, P.C.
>
> 1940 DUKE STREET
> ALEXANDRIA VA 22314

Scott Kelly

**EXHIBIT A**