Robert G. Krupka, P.C. (Bar No. 196,625)
Email: bkrupka@kirkland.com
Marc H. Cohen (Bar No. 168,773)
Email: mcohen@kirkland.com
Philip T. Chen (Bar No. 211,777)
Email: pchen@kirkland.com
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, California 90017
Telephone:     (213) 680-8400
Facsimile:     (213) 680-8500

Attorneys for Plaintiff
RESEARCH IN MOTION LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RESEARCH IN MOTION LIMITED, | Case No. C-07-3177 (MMC) |
| Plaintiff, | **RESEARCH IN MOTION LIMITED'S OPENING CLAIM CONSTRUCTION BRIEF** |
| v. | |
| VISTO CORPORATION, | Date:        June 16, 2008 |
| Defendant. | Time:        9:00 a.m. |
| | Before:     Hon. Maxine M. Chesney |
| AND RELATED COUNTERCLAIMS | |

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND ...................................................................................................2

      A.   History of the Litigation..........................................................................2

      B.   The '839 Patent .......................................................................................2

      C.   The Accused Products..............................................................................4

III.  LEGAL PRINCIPLES OF CLAIM CONSTRUCTION ...................................6

IV.   THE PROPER CONSTRUCTION OF THE DISPUTED CLAIM TERMS.............8

      A.   "Recognizing a Cellular Telephone, the Recognizing Using a Registration
           Number of a Cellular Telephone, the Registration Number Identifying a User" ....8

           1.   Visto's Attempt to Limit the Method to a "Cellular Telephone System"....9

           2.   Visto's Attempt to Limit the Method to Using a "Hardware
                Registration Identification Number".........................................................10

           3.   Visto's Attempt to Add the Step "Checking to Confirm That a Valid
                User Account is Associated with the Telephone" to the Method .............11

      B.   "Checking for Awaiting Messages in the Mailboxes"...........................................12

           1.   Visto's Attempt to Limit the Method to a "Wireless Carrier"...................13

           2.   Visto's Attempt to Change the Step from "Checking" to "Monitoring"...13

           3.   Visto's Attempt to Limit the Method to Voice Mail .................................14

           4.   Visto's Attempt to Limit the Method to Checking for
                "Mailboxes Belonging to the Identified Registered User
                Associated Associated with the Cellular Telephone's Hardware
                Registration Identification Number".........................................................15

      C.   Mailbox(es)...........................................................................................16

           1.   Visto's Attempt to Require "Mailbox(es)" to be Provided by a
                "Cellular Telephone System" ....................................................................17

           2.   Visto's Attempt to Limit the Claimed Invention to Voice Mailboxes.......18

           3.   Visto's Attempt to Require "Mailbox(es)" to be Associated with a
                Valid Account ...........................................................................................18

V.    CONCLUSION ...................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

CCS Fitness, Inc. v. Brunswick Corp.,
 288 F.3d 1359 (Fed. Cir. 2002)......................................................................... 6

Markman v. Westview Instruments, Inc.,
 52 F.3d 967 (Fed. Cir. 1995)............................................................................. 6

Moba, B.V. v. Diamond Automation, Inc.,
 325 F.3d 1306 (Fed. Cir. 2003)..................................................................... 9, 13

N. Telecom Ltd. v. Samsung Elecs. Co.,
 No. C-95-449 MHP, 1996 WL 532122 (N.D. Cal. Sept. 16, 1996) .................. 9, 13

O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,
 Nos. 2007-1302, 2007, 1303, 2007-1304, 2008 WL 878924 (Fed. Cir. Apr. 3, 2008) ........... 2

Phillips v. AWH Corp.,
 415 F.3d 1303 (Fed. Cir. 2005)............................................. 1, 6, 7, 8, 9, 12, 13, 14, 15, 17, 19

Saunders Group, Inc. v. Comfortrac, Inc.,
 492 F.3d 1326 (Fed. Cir. 2007)......................................................................... 13

Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,
 242 F.3d 1337 (Fed. Cir. 2001)..................................................................... 9, 13

SunRace Roots Enters. Co. v. SRAM Corp.,
 336 F.3d 1298 (Fed. Cir. 2003)..................................................................... 7, 14

Vitronics Corp. v. Conceptronic, Inc.,
 90 F.3d 1576 (Fed. Cir. 1996)........................................................................... 6

Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.,
 442 F.3d 1322 (Fed. Cir. 2006)......................................................................... 7

York Prods., Inc. v. Cent. Tractor Farm & Family Ctr.,
 99 F.3d 1568 (Fed. Cir. 1996)........................................................................... 7

## I.      INTRODUCTION

Pursuant to Patent Local Rule 4-5(a) and the Court's Case Management and Docket Control Order (Docket No. 22), Research In Motion Limited ("RIM") hereby presents the factual and legal support for its constructions of the three terms from U.S. Patent No. 5,889,839 ("the '839 Patent") that Visto Corporation ("Visto") contends require construction.

These three terms should take their ordinary meaning and do not require construction. The asserted claims of the '839 Patent are straightforward and easily-understood. In particular, the terms Visto has placed at issue use simple language whose ordinary meaning to one of skill in the art is readily apparent. Should the Court decide that these terms require additional construction, RIM proposes definitions that reflect the ordinary meaning of the terms that one of ordinary skill in the art would assign them in light of the intrinsic record. See Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). RIM's proposed constructions are supported by, and make sense in light of, the claims, the specification, and the prosecution history, and they simplify the claim language to the extent possible.

On the other hand, Visto's proposed constructions are lengthy and convoluted. They are an effort to create non-infringement arguments, and will make the claims more confusing for the fact finder. Visto's proposed constructions are also inconsistent with the intrinsic record and the maxims of claim construction. Most notably, Visto's proposed constructions commit one of the "cardinal sins" of claim construction by adding limitations from specific embodiments into the claims. See Phillips, 415 F.3d at 1320.

For example, RIM has asserted claims 9-13 of the '839 Patent that go to "[a] **method** for automatically notifying a user of an awaiting message." The asserted claims do not go to a **system** for implementing the invention. Cf. '839 Patent at claim 1 ("A system for automatically notifying a user of an awaiting message."). But, for each of the three terms at issue, Visto attempts to transform RIM's asserted method claims into system claims by requiring the claim term or step be performed by specific structures: a wireless carrier or cellular telephone system—the latter of which is not a term used in the patent.

The Court should find that the terms at issue do not require construction because the intrinsic record shows that they take their ordinary meaning.[1]  If the Court decides that these terms require construction, it should reject Visto's convoluted proposals, which impermissibly seek to narrow the claims, and adopt RIM's straightforward constructions, which follow the Federal Circuit's precedent for claim construction.

## II.      BACKGROUND

### A.      History of the Litigation

RIM filed this patent infringement lawsuit on June 15, 2007 to stop Visto's infringement of the '839 Patent.  On September 18, 2007, Visto filed a patent infringement counterclaim.  On February 26, 2008, the Court stayed Visto's patent counterclaim pending reexamination of Visto's patents by the U.S. Patent and Trademark Office.  The present Markman proceedings concern three terms from RIM's '839 Patent that Visto contends require construction.

### B.      The '839 Patent

The '839 Patent provides a convenient and inexpensive way for people who have mailboxes in multiple messaging systems to receive wireless notification of new messages.  In 1996, it was becoming common for people to have several different message mailboxes.  '839 Patent at 1:14-17.  For example, a user might have email and voicemail at work, voicemail at home, and personal email with an Internet Service Provider, such as Compuserve or AOL.  At the time, a user had to check each of these mailboxes throughout the day for new messages.  Id. at 1:18-24.  If the user failed to check every mailbox, an important message might be missed.  Id. at 1:31-33.  Repeated checking of multiple mailboxes wasted time and, when using a wireless device, wasted money in airtime charges.  Id. at 1:46-50.

---

[1]      If the Court agrees that the terms at issue do not need to be construed, RIM asks the Court to expressly hold that Visto's proposed added limitations are not incorporated into the terms and to instruct the jury accordingly.  See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Nos. 2007-1302, 2007, 1303, 2007-1304, 2008 WL 878924, at *9 (Fed. Cir. Apr. 3, 2008) (reversing a district court finding that the term "only if" needed no construction when the parties disputed whether there could be exceptions to the condition, which resulted in the parties submitting the legal issue of claim construction to the jury).

1    The invention of the '839 Patent solved these problems by providing both a system and a

2  method for automatically checking all of a user's mailboxes and notifying the user of new messages

3  via a cellular telephone.  '839 Patent at 1:59-64.  As a result, the user no longer needed to check each

4  mailbox for new messages.  In some embodiments of the invention, new messages could also be

5  automatically collected and presented on the user's cellular telephone.  Id. at 3:26-32.



Figure 1

20   Figure 1 from the '839 Patent shows an apparatus for checking multiple voice mailboxes

21  according to one embodiment of the invention.  '839 Patent at 1:66-67.  In this embodiment, a

22  wireless communications system implements the claimed invention.  When the user's cellular

23  telephone is in range of a radio tower (22), the wireless communications system (30) recognizes the

24  cellular telephone using a "registration identification number," which identifies the telephone and its

25  user.  Id. at 2:25-28.  In this embodiment, the wireless communications system recognizes the

26  cellular telephone and user using standard registration techniques.  Id. at 3:15-16.

27   Once the wireless communication system recognizes the cellular telephone, the system

28  checks the mailbox registration table (32) to identify the mailboxes associated with the user.  '839

Patent at 2:31-34.  In the embodiment of Figure 1, the user has an office mailbox (42), a home mailbox (52), and a wireless mailbox (34).  Id. at 2:44-50.  After the system identifies the user's mailboxes, it checks them for new messages.  Id. at 2:51-54.  If the system finds any new messages, it notifies the user.  Id. at 2:54-55.  This can be done by displaying information about the new messages on the user's cellular telephone or by calling the telephone and providing a voice notification.  Id. at 2:56-61 and 3:36-41.  According to another embodiment, the wireless network can continue to check for new messages as long as the user is within range of the wireless network.  Id. at 2:61-66.

The '839 Patent specification provides detailed descriptions of various embodiments of the invention using a wireless communications system for checking multiple voice mailboxes and notifying the user of new messages on a cellular telephone.  '839 Patent at 2:10-12.  Although the detailed description is limited to voicemail, the specification clearly states that the invention applies to any type of multimedia message, including "voice message[s], e-mail message[s], video message[s], facsimile message[s], etc."  Id. at 2:8-12.

**C.     The Accused Products**

Visto sells a product and service called Visto Mobile that allows a user to receive email from multiple mailboxes on a wireless device.  Visto Mobile can retrieve email from mailboxes on corporate email servers, such as Lotus Notes or Microsoft Exchange, and mailboxes provided by Internet email services, such as Gmail and MSN Hotmail.  (Christofferson Decl. Ex. A ("VMEE Data Sheet") at 1.)  There are three editions of Visto Mobile:  The Enterprise Edition and Personal Edition check both Internet and corporate mailboxes, while the Internet Edition checks only Internet mailboxes.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



The figure above, taken from Visto's website, shows the parts of the Visto Mobile system and how they work together.  See http://www.visto.com/products/VMEE_diagram.asp.  The user's smartphone or PDA is shown on the right.  (Christofferson Decl. Ex. B ("Visto White Paper") at 3.)  The email servers that store the user's mailboxes are shown on the left.  These include the "ISP / POP3" ("Internet") email servers, such as Gmail and MSN Hotmail, as well as the Corporate Email Server.  The Corporate Email Server is protected from unauthorized users by a firewall.

The Network Operations Center sits between the smartphones and the email servers.  The Network Operations Center is connected to the smartphones through the wireless network (depicted by the radio tower) and to the email servers through the Internet (depicted by the cloud).  The Network Operations Center allows the system to function by directing traffic between the smartphones and the email servers.  (Visto White Paper at 3.)  The Network Operations Center is also directly responsible for checking the Internet mailboxes for new messages.  (Id.)

The Visto Mobile Enterprise Server is shown on the left side of the figure alongside the Corporate Email Server.[2]  Because the firewall prevents the Network Operations Center from checking mailboxes on the Corporate Email Server, the Enterprise Server is installed behind the firewall to check the user's corporate mailbox and notify the user of new messages.  (Visto White Paper at 2.)

---

[2]      In the Personal Edition, a program called the Desktop Access Connector replaces the Enterprise Server.  In other respects, the two programs work similarly.

1    When a smartphone is turned on or enters the range of the wireless network, the Network

2    Operations Center authenticates the smartphone using its Mobile Subscriber Integrated Services

3    Digital Network ("MSISDN") Number and a password.  (Visto White Paper at 20.)  Once it has

4    authenticated the smartphone, the Network Operations Center identifies the corporate and Internet

5    mailboxes associated with the smartphone's user.  (Id. at 29.)  The Network Operations Center and

6    the Visto Enterprise Server then periodically check the user's Internet and corporate mailboxes

7    respectively for new messages.  When the user receives a message, the Network Operations Center

8    or Enterprise Server collects it and delivers it to the user's smartphone.  (Id. at 19.)

9    **III.    LEGAL PRINCIPLES OF CLAIM CONSTRUCTION**

10   Claim construction is one of the most important phases of a patent infringement lawsuit.  See

11   Phillips, 415 F.3d at 1312.  The claims of the patent define the scope of the invention and the

12   patentee's right to exclude.  Markman v. Westview Instruments, Inc., 52 F.3d 967, 990 (Fed. Cir.

13   1995), aff'd, 517 U.S. 370 (1996).  During claim construction, the district court has "the power and

14   obligation to construe as a matter of law the meaning of language used in the patent claim."  Id. at

15   979.

16   Words of a claim are generally given their "ordinary and customary meaning . . . to a person

17   of ordinary skill in the art."  Phillips, 415 F.3d at 1313.  There is a "heavy presumption" that claims

18   carry their ordinary and customary meaning.  CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359,

19   1366 (Fed. Cir. 2002).  "In some cases, the ordinary meaning of claim language as understood by a

20   person of skill in the art may be readily apparent even to lay judges, and claim construction in such

21   cases involves little more than the application of the widely accepted meaning of commonly

22   understood words."  Phillips, 415 F.3d at 1314.

23   The ordinary meaning to one skilled in the art should be informed by, and cannot be

24   inconsistent with, the intrinsic record, namely the claims, the specification, and the prosecution

25   history.  Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). ("It is well-

26   settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of

27   record, i.e., the patent itself, including the claims, the specification and, if in evidence, the

28   prosecution history.").  The Federal Circuit, however, has warned courts against committing one of

the "cardinal sins" of claim construction: "reading a limitation from the written description into the claims." Phillips, 415 F.3d at 1320, 1323 ("For instance, although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.").

The prosecution history is "the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." Phillips, 415 F.3d at 1317. Statements made during prosecution by the patentee may shed light on the meaning of claim terms. Id. The Federal Circuit has limited the importance of the prosecution history, as compared to the specification: "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." Id. at 1317. Furthermore, the prosecution history should only limit the scope of the claims when there has been a clear disavowal of claim scope by the patentee. SunRace Roots Enters. Co. v. SRAM Corp., 336 F.3d 1298, 1306 (Fed. Cir. 2003); see also York Prods., Inc. v. Cent. Tractor Farm & Family Ctr., 99 F.3d 1568, 1575 (Fed. Cir. 1996) ("a patent applicant only limits claims during prosecution by clearly disavowing claim coverage").

Extrinsic evidence, such as expert testimony and dictionaries, may be relevant to the claim construction inquiry. Phillips, 415 F.3d at 1318. The Federal Circuit, however, has cautioned against using extrinsic evidence to construe a claim in a way that is inconsistent with the intrinsic record. Id.

The accused products are also relevant to the claim construction process. Wilson Sporting Goods Co. v. Hillerich & Bradsby Co., 442 F.3d 1322, 1331 (Fed. Cir. 2006). The claims may be read in the context of the accused products. Id. Although a court cannot use the accused products to "bias[] the claim construction process to exclude or include specific features of the accused product[s]," a court may use the accused products "to supply the parameters and scope of the infringement analysis, including its claim construction component." Id.

## IV.     THE PROPER CONSTRUCTION OF THE DISPUTED CLAIM TERMS

### A.     "Recognizing a Cellular Telephone, the Recognizing Using a Registration Number of a Cellular Telephone, the Registration Number Identifying a User"

| Claim Term | RIM's Proposed Construction | Visto's Proposed Construction |
|---|---|---|
| recognizing a cellular telephone, the recognizing using a registration number of the cellular telephone, the registration number identifying a user<br><br>(claim 9) | ordinary meaning; or, if construed:<br><br>recognizing a cellular telephone using a registration number that identifies a user | In a <u>cellular telephone system</u>, identifying a cellular telephone by obtaining its <u>hardware registration identification number</u> and <u>checking to confirm that a valid user account is associated with the telephone</u>. |

RIM does not believe this claim term needs to be construed.  If the Court decides to construe this term, RIM proposes the following construction: "recognizing a cellular telephone using a registration number that identifies a user."

This claim term, appearing only in claim 9, comprises the first step in the claimed method for "automatically notifying a user of an awaiting message."  Because the automatic notification is sent to a cellular telephone, the first step is to recognize a cellular telephone to be notified and identify its user.  The user's identity is used in the next step of the method to identify the user's mailboxes so that they can be checked for new messages.

The ordinary meaning of this claim language is "readily apparent," and its construction should "involve[] little more than the application of the widely accepted meaning of commonly understood words."  <u>Phillips</u>, 415 F.3d at 1314.  RIM's construction is consistent with this ordinary meaning, which simply requires recognizing the cellular telephone with a registration number that can identify the telephone's user.  '839 Patent at claim 9.  Consistent with the claim language, RIM's construction specifies no apparatus for performing this step.  RIM's construction is supported by the specification, which teaches that "[a]t step 102, the system recognizes the user's cellular telephone."  <u>Id.</u> at 3:14-15.  The prosecution history does not address this step of the method.

Visto's proposed construction improperly imports three limitations from the specification.  None of these limitations are based on the claim language, and they should all be rejected.

1      **1.      Visto's Attempt to Limit the Method to a "Cellular Telephone System"**

2      The first limitation Visto imports from the specification is a requirement that the

3  "recognizing" step be performed by a "cellular telephone system."  Visto's proposed limitation is

4  inappropriate because (1) it is an improper structural restriction on a method claim; and (2) it

5  impermissibly narrows the described invention.

6      First, Visto's proposed limitation has no support in the claim language.  This Court has

7  recognized that it is inappropriate to restrict method claims to a particular apparatus.  <u>N. Telecom</u>

8  <u>Ltd. v. Samsung Elecs. Co.</u>, No. C-95-449 MHP, 1996 WL 532122, at *13 (N.D. Cal. Sept. 16,

9  1996) ("The Ingrey patent is a process patent, not a patent on a particular apparatus.  In a process

10  patent, apparatus distinctions that are not specifically claimed are not controlling in determining the

11  scope of the claims."); <u>see also</u> <u>Moba, B.V. v. Diamond Automation, Inc.</u>, 325 F.3d 1306, 1314

12  (Fed. Cir. 2003) ("This court has discredited an infringement analysis for method claims that

13  examines distinctions between implementing apparatuses.").

14      Claim 9 is a method claim that sets forth steps for performing the claimed invention—it does

15  not state what apparatus performs those steps.  In contrast, the applicants claimed a system for

16  carrying out the invention in claims 1 through 8.  In claim 1, the applicants expressly require the

17  "identification means" for performing the step of  "identifying a registered user" to be located in a

18  "wireless communications system."  The fact that claim 9 does not expressly require any structural

19  limitation demonstrates that the applicants did not intend to limit the method claim to a specific

20  apparatus.

21      More specifically, the "recognizing" step in claim 9 does not require a "cellular telephone

22  system."  Although Visto may contend that a "cellular telephone system" is described in the

23  specification, embodiments from the specification cannot be read into the claims.  <u>Phillips</u>, 415 F.3d

24  at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention,

25  we have repeatedly warned against confining the claims to those embodiments.").  The specification

26  describes the general nature of the invention, but does not "expressly limit[] ***all*** embodiments of the

27  claimed invention" to operate within any particular system.  <u>Scimed Life Sys., Inc. v. Advanced</u>

28  <u>Cardiovascular Sys., Inc.</u>, 242 F.3d 1337, 1339 (Fed. Cir. 2001).

Second, to the extent Visto attempts to restrict the apparatus for performing the method (which the claim does not require), the term "cellular telephone system" is unduly restrictive. "Cellular telephone system" does not appear in the claims, the specification, or the prosecution history to describe the claimed invention. The specification uses the terms "wireless communications system" and "wireless communications environment" in describing embodiments for performing the "recognizing step." The '839 Patent explains that the wireless communications system and environment of the invention apply to any type of multimedia message:

> The present invention provides for automatically notifying a user of an awaiting message and for playing that message for the user in a wireless communication environment. This invention applies to any type of multimedia message (e.g., voice message, e-mail message, facsimile message, etc.).

'839 Patent at 2:5-10. Visto's proposed addition should be rejected because it adds a new term, "cellular telephone system," of uncertain scope, which was never used by the patent applicants to describe their invention in the intrinsic record.

Visto's attempt to import a structural limitation from the specification into the recognizing step is contrary to the claim language and the specification and is improper under Federal Circuit precedent.

### 2. Visto's Attempt to Limit the Method to Using a "Hardware Registration Identification Number"

The second limitation Visto imports from the specification is a requirement that the "recognizing" step must "**identify[] a cellular telephone** by its **hardware registration identification number**." This requirement is contrary to the language of claim 9, which "recognize[s] a cellular telephone . . . using a registration number . . . **identifying a user**."

Cellular telephones may contain several different registration numbers, including a number that identifies the telephone hardware (such as a serial number) and a different number that identifies the wireless service subscriber and his account (such as a telephone number). The specification only uses a "hardware registration identification number" in conjunction with a password for security purposes. '839 Patent at 4:26-28 ("[T]he cellular telephone's hardware registration identification number can be used as an added requirement for accessing a user's message(s).").

Claim 9 does not claim use of a "hardware registration identification number" for "identifying a cellular telephone."  Claim 9 requires a "registration number" for "identifying a user." Any registration number that identifies the user will suffice for claim 9, and Visto's attempt to limit the registration number to that used in a specific embodiment is improper.

### 3. Visto's Attempt to Add the Step "Checking to Confirm That a Valid User Account is Associated with the Telephone" to the Method

The third limitation Visto imports from the specification is an entirely new step that is not present in claim 9: "checking to confirm that a valid user account is associated with the telephone." This requirement is inconsistent with the claim language and the specification.

Claim 9 does not require a check to confirm that the user has a valid account and does not require that the user be a "registered user."  Rather, claim 9 merely requires that the cellular telephone be recognized using any registration number that can identify the telephone's user.

The specification discloses an embodiment that checks the registration identification number of the cellular telephone to determine if the user has a valid account:

> Either wireless base station 22 or wireless communication system 30 **performs a check** on the cellular telephone's registration identification number.  These checks are normally done **to confirm that cellular telephone 12 has a valid account** (e.g., owned by a legitimate, registered user).

'839 Patent at 2:25-30 (emphasis added).  This extra requirement cannot be imported from the specification into the claim.  Moreover, even the specification discloses that the check is an optional procedure.  Id. at 2:25-30 ("These checks are **normally** done . . . .") (emphasis added).

The three limitations that Visto seeks to import into this disputed term are inconsistent with the intrinsic record, and the Court should reject them.  The language of this claim step is straightforward, and thus, the term does not require construction.  If the Court decides to construe this term, it should adopt RIM's proposed construction, which reflects the ordinary meaning of the claim term consistent with the intrinsic record.

**B.     "Checking for Awaiting Messages in the Mailboxes"**

| Claim Term | RIM's Proposed Construction | Visto's Proposed Construction |
|---|---|---|
| checking for awaiting messages in the mailboxes (claim 9) | ordinary meaning; or, if construed:<br><br>sending a query to each message mailbox to determine if any awaiting messages are present | The <u>wireless carrier</u> <u>monitoring</u> for awaiting messages in <u>voice mailboxes</u> belonging to the identified <u>registered user</u> associated with the cellular telephone's <u>hardware registration identification number</u>. |

RIM does not believe this claim term requires construction.  If the Court decides to construe this term, RIM proposes the following construction: "sending a query to each message mailbox to determine if any awaiting messages are present."

This claim term is the third step in claim 9's method for "automatically notifying a user of an awaiting message."  The first step of the method is "recognizing a cellular telephone" using a "registration number identifying a user."  The second step is "checking for mailboxes associated with the user."  This third step is "checking" each of those mailboxes for "awaiting messages."  The fourth and final step is "contacting the user" if there are any "awaiting messages."

This method step, like the "recognizing" step above, has an ordinary meaning that can be discerned by lay persons.  Thus, construction of this claim should again "involve[] little more than the application of the widely accepted meaning of commonly understood words."  <u>Phillips</u>, 415 F.3d at 1314.  RIM's construction reflects this ordinary meaning of the claim.  RIM's construction is supported by the specification, which teaches in an embodiment: "After associated message mailboxes 34, 42, 52 are found, wireless communication system 30 **sends a query to message mailboxes** 34, 42, 52 **to determine if any awaiting messages are present**."  '839 Patent at 2:51-54 (emphasis added).  RIM's construction is further supported by the prosecution history:  "Claims 1 and [9] state that multiple mailboxes are checked for awaiting messages."  (Christofferson Decl. Ex. C ("July 28, 1998 Amendment") at 5 (emphasis added)).

Visto's proposed construction reads four limitations from the specification into this step.  None of these limitations are reflected in the claim language, and none are properly part of this method step.  Accordingly, the Court should reject them all.

**1.      Visto's Attempt to Limit the Method to a "Wireless Carrier"**

The first limitation Visto imports from the specification is a requirement that a "wireless carrier" must "monitor for awaiting messages."  Visto's proposed limitation is inappropriate because (1) it is an improper structural restriction on a method claim; and (2) it is an improper attempt to read a feature of an embodiment into the claim.

First, Visto's proposed limitation has no support in the claim language.  Claim 9 is a method claim that sets forth steps for performing the claimed invention; it does not specify the apparatus for performing those steps.  As discussed above in Section IV.A.1, this Court has recognized that it is inappropriate to restrict method claims to a particular structure.  N. Telecom, 1996 WL 532122, at *13; see also Moba, 325 F.3d at 1314.  Second, the claim does not require that the "checking" step be performed by a "wireless carrier," or any specific apparatus.  Features of embodiments cannot be read into the claims.  Phillips, 415 F.3d at 1323.  The specification describes the general nature of the invention, it does not "expressly limit[] *all* embodiments of the claimed invention" to operate within any particular system.  Scimed, 242 F.3d at 1339 (emphasis added).

**2.      Visto's Attempt to Change the Step from "Checking" to "Monitoring"**

The second limitation that Visto imports from the specification is a requirement that the method must "monitor" the user's mailboxes.  To the extent that Visto is attempting to argue that "monitoring" requires periodic polling of the mailboxes, this is inconsistent with the intrinsic record.

Claim 9 covers a single check of the mailboxes and notification of awaiting messages.  Claim 12, which depends from claim 9, adds the requirement that the "checking" step and the subsequent "notification" step are performed periodically.  Requiring that the method in claim 9 "monitor" the mailboxes would render the additional requirement in claim 12 (i.e., "repeating steps c) [checking] and d) [notifying] periodically") redundant.

Under the doctrine of claim differentiation, "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."  Phillips, 415 F.3d at 1315; see Saunders Group, Inc. v. Comfortrac, Inc., 492 F.3d 1326, 1331 (Fed. Cir. 2007) (finding that claim 1 did not require a "pressure activated seal" because dependant claim 6 added that requirement).  "That presumption is especially strong when

the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim." SunRace, 336 F.3d at 1303.

The specification supports the understanding that "checking" is a singular act. The described embodiment teaches that once the mailboxes are identified, "wireless communications system 30 sends **a query** to message mailboxes 34, 42, 52 to determine if any awaiting messages are present." '839 Patent at 2:51-54 (emphasis added). The specification further explains that "[a]fter a user is 'in-range' of wireless base station 22, wireless communication system 30 **can continue to provide this service** [of notifying the user of new messages] **by** either **regularly polling** the messaging system(s), **or by having the messaging system(s) notify it** if any new messages for user 10 arrive." Id. at 2:62-66 (emphasis added). Thus, according to the specification the initial "checking" step is performed only once. After that, the invention can in one embodiment (but is not required to) continue "regularly polling" (as claimed in claim 12) to detect new messages. But the invention can also forego further checking and rely on notifications from the messaging systems in a second embodiment.

### 3. Visto's Attempt to Limit the Method to Voice Mail

The third requirement that Visto imports from the specification limits the method to checking voice mailboxes. This attempt by Visto to limit the scope of the claims to the disclosed embodiments directly contradicts both the claims and the specification.

The language of the claims is general and not limited to voice messages. The specification is not limiting either. The specification discloses a specific embodiment of the invention that checks multiple voice mailboxes. Id. at 2:11-12 ("In the detailed description below, the present invention is applied to voice messages (or voice mail)."). But, the patent expressly states that "[t]his invention applies to **any type of multimedia message** (e.g., voice message, e-mail message, video message, facsimile message, etc.)." Id. at 2:8-10 (emphasis added). Visto's proposed construction is contrary to Federal Circuit precedent, which has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." Phillips, 415 F.3d at 1323.

Outside of the detailed description of the embodiments, the specification does not limit the invention to voice messages.  Instead, it consistently refers to "message notification" from "messaging systems":  The title of the patent is "System and Method for Providing Automated **Message Notification** in a Wireless Communication System."  The Abstract states that "[a] system and method are provided for automatically notifying a user of **an awaiting message**."  '839 Patent at Abstract (emphasis added).  The Field of the Invention states that the invention is concerned with "**messaging system[s]**."  Id. at 1:8-9 (emphasis added).  The Background of the Invention states that "voice mail messaging systems" is merely one example of general "messaging systems."  Id. at 14-15 ("**Messaging systems** are common in both public and private areas.  **For example, voice mail messaging systems** are located in almost every office environment and in many private homes.") (emphasis added).

Visto's position is not only inconsistent with the language of the claims and the specification, but it also violates the doctrine of claim differentiation.  Claim 16, which depends on claim 9, adds the additional requirement that "the messages [of claim 9] are voice mail messages."  Under the doctrine of claim differentiation, "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." Phillips, 415 F.3d at 1315.  Independent claim 9 uses the term "message" but does not expressly require a "voice message."  Claim 16 recites the method of claim 9 and then adds the requirement that "the messages are voice mail messages."  Under these circumstances, it is improper to include the "voice mailboxes" limitation into claim 9, thereby rendering claim 16 redundant.  See also Section IV.B.2.

    **4.**    **Visto's Attempt to Limit the Method to Checking for "Mailboxes Belonging to the Identified Registered User Associated Associated with the Cellular Telephone's Hardware Registration Identification Number"**

The fourth limitation that Visto imports from the specification is a requirement that the method must check for mailboxes "belonging to the identified **registered user** associated with the cellular telephone's **hardware registration identification number**."  As discussed above, it is inappropriate to limit the "registration number" in this claim to a "hardware registration

identification number." <u>See</u> Section IV.A.2.  It is also inappropriate to limit the user to a "registered user" in this step.  Claim 1 includes an "identification means for identifying a registered user."  In contrast, claim 9 recognizes a cellular telephone and a user in the first step, which does not require checking if the user has a valid account on a wireless communications system.  <u>See</u> Section IV.A.3.

Further, Visto's construction is inconsistent with the claim language because this third step is the incorrect place to identify the user's mailboxes.  The method of claim 9 determines the mailboxes to check for awaiting messages in the prior step: "checking for mailboxes associated with a user."  Thus, "mailboxes" in this step refer to the "mailboxes associated with a user" from the prior step.  Visto's proposed construction attempts to change the meaning of the term "checking mailboxes associated with a **<u>user</u>**" to "checking mailboxes associated with a **<u>cellular telephone</u>**."  The ordinary meaning of the claims and the entire purpose of the invention is to check a user's mailboxes—not mailboxes associated with the cellular telephone's serial number.

The four limitations Visto seeks to import into this method step are improper and the Court should reject them.  The words used in this claim step are straightforward, and thus, this term does not need construction.  If the Court decides to construe this term, it should adopt RIM's definition, which reflects the ordinary meaning of the term in light of the intrinsic record.

### C.    Mailbox(es)

| Claim Term | RIM's Proposed Construction | Visto's Proposed Construction |
| --- | --- | --- |
| mailbox(es)<br><br>(claims 9, 13, 14) | ordinary meaning; or, if construed:<br><br>message storage location(s) | An electronic data storage location, <u>provided by the cellular telephone system</u>, for <u>voice</u> messages associated with a <u>valid</u> user account. |

RIM does not believe this claim term requires construction.  If the Court decides to construe this term, RIM proposes the following construction: "message storage locations."

Consistent with ordinary understanding, a mailbox is a location where messages are stored.  A mailbox may store any type of message including voice and email messages.  This construction is supported by the intrinsic record.  The specification states that "[t]his invention applies to any type of multimedia message (<u>e.g.</u>, voice message, e-mail message, video message, facsimile message, etc.)."  '839 Patent at 2:8-10.

Extrinsic evidence also supports RIM's construction.  The Federal Circuit has "especially noted the help that technical dictionaries may provide to a court 'to better understand the underlying technology' and the way in which one of skill in the art might use the claim terms."  Phillips, 415 F.3d at 1318 (quoting Vitronics, 90 F.3d at 1584 n.6).  This is "[b]ecause dictionaries, and especially technical dictionaries, endeavor to collect the accepted meanings of terms used in various fields of science and technology, those resources have been properly recognized as among the many tools that can assist the court in determining the meaning of particular terminology to those of skill in the art of the invention."  Id.  The McGraw-Hill Dictionary of Scientific and Technical Terms defines "mail box" as "**1.** A portion of a computer's main storage that can be used to hold information about other devices.  **2.** Computer storage facilities designed to hold electronic mail."  (Christofferson Decl. Ex. D.)  Both definitions are consistent with the ordinary and customary meaning of mailbox.

Visto, as it has done with the two preceding terms, proposes a construction that improperly adds limitations to the term "mailbox."  The first limitation is a structural limitation that is at odds with the specification and the purpose of the invention.  The other two limitations represent efforts by Visto to read features from embodiments described in the specification as claim limitations.  All three limitations are inappropriate and should be rejected.

### 1. Visto's Attempt to Require "Mailbox(es)" to be Provided by a "Cellular Telephone System"

The first limitation Visto attempts to add is that any "mailbox" must be a storage location "provided by the cellular telephone system."  This proposed restriction should be rejected because it is inconsistent with the claim itself.  The claim requires the mailboxes to be "located in multiple messaging systems."  '839 Patent at claim 9.  Under Visto's construction, if all the user's mailboxes are provided by a cellular telephone system, then the method of checking for awaiting messages in multiple messaging systems would be rendered nonsensical.

Visto's proposal is also directly contrary to the specification and every embodiment described in it.  See, e.g., '839 Patent at Figure 1.  The specification teaches that a user may have mailboxes in both public and private messaging systems.  Id. at 1:14-17.  A user might have mailboxes at home, mailboxes at work, and mailboxes with the wireless carrier.  Id. at 2:43–50 ("For

example, message mailbox 34 is attached to the cellular network and provided by wireless communication system 30. Additionally, user 10 may have land-based message mailbox 42 through a PBX message system 44 located at the user's office 40 and another land-based message mailbox 52 through a central office 50 which provides messaging services to user's home system 60."). Two of these three mailboxes are not located in the cellular telephone system. Indeed, the entire purpose of the invention is to check mailboxes in "multiple messaging systems" not simply at the wireless provider. (July 28, 1998 Amendment at 5 ("In the present invention, multiple mailboxes are polled for the user. The wireless carrier is no longer the sole messaging provider.").)

Visto's proposed limitation has no basis in the clam language itself and is directly contrary to the claims, the specification, and the prosecution history.

### 2. Visto's Attempt to Limit the Claimed Invention to Voice Mailboxes

The second limitation Visto attempts to import from the specification is a requirement that all mailboxes must be "voice" mailboxes. As discussed above, the invention is not limited to voice mail. See Section IV.B.3. The claims cannot be limited to specific embodiments from the specification. Phillips, 415 F.3d at 1323. The intrinsic record does not support Visto's proposed limitation. In fact, the specification expressly states that the invention relates to any type of multimedia message, including email messages. '839 Patent at 2:8–10 ("This invention applies to any type of multimedia message (e.g., voice message, e-mail message, video message, facsimile message, etc.)."). Further, if claim 9 is limited to voice messages, claim 12 (which adds a voice message limitation to claim 9) would be rendered redundant, contrary to the doctrine of claim differentiation. See Section IV.B.3.

### 3. Visto's Attempt to Require "Mailbox(es)" to be Associated with a Valid Account

The third limitation Visto imports from the specification is a requirement that a mailbox must be associated with a "valid user account." This is similar to the "checking to confirm that a valid user account is associated with the telephone" step that Visto tries to add to the "recognizing a cellular telephone" term. As discussed above, this additional check is not required by the claim. See

1  Section IV.A.3.  The claim contains no language that requires a user to have a "valid" account before

2  the mailboxes are checked.  Visto's attempt to add such a limitation is improper and this Court

3  should reject it.  Phillips, 415 F.3d at 1323.

4      The Court should reject Visto three proposed limitations on the term "mailbox" because they

5  are inconsistent with the claims, the specification, and the prosecution history.  The term "mailbox"

6  is straightforward, and it does not require construction.  If the Court finds that the jury would benefit

7  from a construction, it should adopt RIM's definition which reflects the ordinary meaning of the

8  term consistent with the intrinsic record.

9  **V.    CONCLUSION**

10     Because the language used in the claims is clear, and its ordinary meaning is apparent, the

11  Court should decline to construe these terms.  Or, if the Court does construe them, the Court should

12  adopt RIM's proposed constructions, which reflect the ordinary and customary meaning of these

13  terms.  The Federal Circuit has clearly stated that limitations found in the disclosed embodiments

14  cannot be incorporated into the claims absent clear intent by the applicant to limit the scope of the

15  claims.  No such intent was expressed in the intrinsic record, and the Court should reject Visto's

16  repeated attempts to add limitations from the specification into the claim terms.

17

18  DATED:  April 17, 2008                    KIRKLAND & ELLIS LLP

19

20

21                                        By:  _/s/ Philip T. Chen_____
                                               Robert G. Krupka, P.C.
22                                             Marc H. Cohen
                                               Philip T. Chen
23
                                          Attorneys for
24                                        RESEARCH IN MOTION LIMITED

25

26

27

28

## CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, in the State of California.  I am over the age of 18 and not a party to the within action.  My business address is 777 South Figueroa Street, 37th Floor, Los Angeles, California 90017.

On April 17, 2008, I caused a copy of the following document(s) described as:

**RESEARCH IN MOTION LIMITED'S OPENING CLAIM CONSTRUCTION BRIEF**

to be served on the interested parties in this action as follows:

**[X]**      **[VIA ELECTRONIC MAIL]**  I caused said document[s] to be sent by electronic mail to the email address(es) indicated for the party(ies) listed below:

Robert D. Becker
E-mail:  rbecker@manatt.com
Eugene L. Hahm
E-mail:  ehahm@manatt.com
Shawn G. Hansen
E-mail:  shansen@manatt.com
RimVistoLit-NDCA@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
1001 Page Mill Road, Building 2
Palo Alto, CA 94304
Telephone:  (650) 812-1300
Facsimile:  (650) 213-0260

**[X]**      **[FEDERAL]**  I declare that I am employed in the office of a member of the bar of this court at whose direction this service was made.

Executed April 17, 2008, at Los Angeles, California.


　　　　　　　　　　　　　 /s/ Philip T. Chen
　　　　　　　　　　　　　　 Philip T. Chen