MANATT, PHELPS & PHILLIPS, LLP
ROBERT D. BECKER (Bar No. CA 160648)
E-mail:  rbecker@manatt.com
SHAWN G. HANSEN (Bar No. CA 197033)
E-mail:  shansen@manatt.com
IMRAN A. KHALIQ (Bar No. CA 232607)
E-mail:  ikhaliq@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA  94304-1006
Telephone:  (650) 812-1300
Facsimile:  (650) 213-0260

Attorneys for Defendant and Counterclaimant
VISTO CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RESEARCH IN MOTION LIMITED,<br><br>Plaintiff,<br><br>vs.<br><br>VISTO CORPORATION,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Case No.: C-07-3177 (MMC)<br><br>**VISTO CORPORATION'S RESPONSIVE CLAIM CONSTRUCTION BRIEF (PATENT LOCAL RULE 4-5 (B))**<br><br><br><br>Date: June 16, 2008<br><br>Time: 9:00 a.m.<br><br>Before:  Hon. Maxine M Chesney |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................ 1

II.     LEGAL PRINCIPLES GOVERNING CLAIM CONSTRUCTION.................................. 3

III.    BACKGROUND OF TECHNOLOGY ........................................................ 5

    A.      The '839 Patent ......................................................... 5

    B.      The Claims At Issue are Directed to Methods Performed In and By A
        Cellular System ........................................................ 6

IV.     VISTO'S PROPOSED CONSTRUCTIONS OF THE DISPUTED TERMS ................... 9

    A.      "recognizing a cellular telephone, the recognizing using a registration
        number of a cellular telephone, the registration number identifying a user".......... 9

        1.      The "recognizing of the cellular telephone" occurs in a cellular
            telephone system ...................................................... 9

        2.      The "recognizing" step, recognizes the registration number of the
            cellular telephone, not a user identification number ............................. 11

        3.      "Identifying a user" involves "checking to confirm that a valid user
            account is associated with the telephone".................................... 14

    B.      "checking for awaiting messages in the mailboxes"............................. 15

        1.      The wireless carrier monitors awaiting messages ................................. 16

        2.      mailboxes are "voice mailboxes"................................... 16

        3.      The mailboxes belong to "the identified registered user associated
            with the cellular telephone's hardware registration identification
            number"........................................................... 18

    C.      mailbox(es)....................................................... 18

V.      CONCLUSION ........................................................................ 20

i

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4  *Alloc, Inc. v. ITC*,
    342 F.3d 1361 (Fed. Cir. 2003)...................................................................................4

5  *Amstar Corp v. Envirotech Corp.*,
6    730 F.2d 1476 (Fed. Cir. 1984)................................................................................11

7  *Andersen Corp. v. Fiber Composites, LLC*,
    474 F.3d 1361 (Fed. Cir. 2007)............................................................................2, 16

8  *Bell Atl. Network Servs. v. Covad Commc'ns Group, Inc.*,
    262 F.3d 1258 (Fed. Cir. 2001)...................................................................................4

9  *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*,
    183 F.3d 1334 (Fed. Cir. 1999)...................................................................................3

10 *Chimie v. PPG Indus.*,
11   402 F.3d 1371 (Fed. Cir. 2005)...................................................................................4

12 *Computer Docking Station Corp. v. Dell, Inc.*,
     519 F.3d 1366 (Fed. Cir. 2008)...................................................................................4

13 *Curtiss-Wright Flow Control Corp v. Valan Inc.*,
     438 F.3d 1374 (Fed. Cir. 2006)............................................................................17, 19

14 *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*,
     114 F.3d 1547 (Fed. Cir. 1997)............................................................................16,17

15 *Fantasy Sports Props. v. Sportsline.com, Inc.*,
16   287 F.3d 1108 (Fed. Cir. 2002)................................................................................17

17 *General American Transportation Corp. v. Cryo-Trans, Inc.*,
     93 F.3d 766 (Fed. Cir. 1996)....................................................................................17

18 *Interactive Gift Express, Inc. v. Compuserve Inc.*,
     256 F.3d 1323 (Fed. Cir. 2001)................................................................................11

19 *Markman v. Westview Instruments, Inc.*,
     52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996) .....................3

20 *Merck & Co v. Teva Pharms USA, Inc.*,
21   347 F.3d 1367 (Fed. Cir.  2003)...............................................................................19

22 *Microsoft Corp. v. Multi-Tech Sys., Inc.*,
     357 F.3d 1340 (Fed. Cir. 2004)...................................................................................4

23 *Moba, B.V. v. Diamond Automation, Inc.*,
     325 F.3d 1306 (Fed. Cir. 2003)................................................................................11

24 *Modine Mfg v.  U.S. Int'l Trade Comm'n*,
     75 F.3d 1545 (Fed. Cir. 1996)..................................................................................17

25 *N. Telecom Ltd. v. Samsung Elecs., Co.*,
26   No.C-95-449 MHP, 1996 WL 532122 at * 13 (N.D. Cal. Sept. 16, 1996)...........11

27 *Omega Eng'g, Inc. v. Raytek Corp.*,
     334 F.3d 1314 (Fed. Cir. 2003)...................................................................................4

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3   *Phillips v. AWH Corp.*,
       415 F.3d 1303 (Fed. Cir. 2005)..........................................................................passim

4   *Purdue Pharma L.P. v. Endo Pharms., Inc.*,
5      438 F.3d 1123 (Fed. Cir. 2006)...................................................................................4

6   *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
       242 F.3d 1337 (Fed. Cir. 2001)................................................................................10

7   *Versa Corp. v. Ag-Bag Int'l Ltd.*,
       392 F.3d 1325 (Fed. Cir. 2004)................................................................................17

8   *Vitronics Corp. v. Conceptronic, Inc.*,
9      90 F.3d at 1582.....................................................................................................12, 19

    *Wang Laboratories, Inc. v. America Online, Inc.*,
10     197 F.3d at 1383......................................................................................................15

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1  In accordance with Patent L.R. 4-5(b), Defendant and Counterclaimant Visto Corporation

2  ("Visto") respectfully submits this responsive claim construction brief and supporting evidence

3  concerning the asserted claims of U.S. Patent 5,889,839 ("'839 Patent").

4  **I.   <u>INTRODUCTION</u>**

5  The claim constructions proposed by Plaintiff and Counter-defendant Research In Motion

6  Limited ("RIM") are contrary to law and should be rejected.  Through its constructions, RIM

7  improperly seeks to (1) read express limitations out of the claims, (2) recapture subject matter that

8  was expressly surrendered during prosecution, and (3) cover subject matter that is neither

9  described nor enabled by the patent.

10  For example, RIM's proposed construction of the "recognizing" method step of claim 9

11  improperly reads out the claim limitation requiring the "recognizing" step be performed "*<u>using a</u>*

12  *<u>registration number of a cellular telephone.</u>"  See* Declaration of Imran A. Khaliq in Support of

13  Visto Corporation's Responsive Claim Construction Brief  ("Khaliq Decl."), Ex. A, '839 Patent,

14  claim 9 (emphasis added).  Contrary to the express claim language, RIM's proposed construction

15  provides that the registration number merely "identifies a user" without requiring any relationship

16  between the registration number and the cellular telephone. *See* RIM's Opening Claim

17  Construction Brief at 8.[1]  Moreover, this construction ignores the fact that the applicant clearly

18  distinguished the registration number of the cellular telephone with information that identifies a

19  user, such as a password or user ID.  In the file history, for example, the applicant stressed that

20  unlike the prior art, the "present invention utilizes both a registration number and a password as

21  set forth in claims 7 and 8." *See* Khaliq Decl., Ex. C, Amendment dated July 28, 1998 at 5.

22  As another example, RIM's proposed constructions also seek to improperly to recapture

23  subject matter that was surrendered during prosecution of the '839 Patent.  More specifically,

24  during prosecution of the '839 Patent, the patentee distinguished the prior art Kasper reference

25  cited by the Examiner on the basis that the invention of the '839 patent used *<u>a wireless carrier to</u>*

26  *<u>monitor voice mailboxes</u>* from multiple external sources:

27

28

---

[1] RIM's proposed construction reads: "recognizing a cellular telephone using a registration number that
identifies a user"

In contrast, *the present invention _allows the wireless system_* to be the unifying systems [sic] among multiple messaging systems. The *_wireless carrier monitors_* a user's voice mailbox at work, a user's voice mailbox at home, and/or any other mailbox belonging to the user. Thus, the present invention connects the user to whichever system currently has a message for that user. The Kasper reference describes an invention which is useful if the wireless carrier is the only one providing messages. Presently, many users have multiple messaging systems in their home, work, or with their cellular telephone. The Kasper reference does not provide collecting messages from these multiple places and then connecting the user to the correct messaging system. Khaliq Decl., Ex. C, '839 Patent file history, Amendment mailed July 28, 1998 at 4-5 (emphasis added).

By asserting these arguments, the patentee manifestly disavowed any interpretation of the claims that does not require *_monitoring by the wireless carrier_* of *_multiple voice mailboxe_*s belonging to the user.[2] As such, the interpretation of the claims must make clear that the cellular wireless carrier is monitoring multiple voice mailboxes from external sources.

Moreover, as the *quid pro quo* for a patent monopoly grant, the patentee is not only required to fully describe her invention, but also to do so in detail sufficient to allow one of ordinary skill in the art to make and use her invention. The description of the invention set out in the specification of the '839 Patent, however, is unusually limited. It provides just over two pages of text and two drawings, the entirety of which is directed solely to systems and methods for providing notifications to cellular telephone which indicate the presence of voicemail messages in various mailboxes. The '839 Patent includes no written description of any other systems or methods, and certainly does not describe how the systems and methods that are described could be used for any type of message other than voicemail. Despite the clear lack of support in the specification (and the surrender of subject matter during prosecution, described above), RIM seeks to improperly construe the asserted claims of the '839 Patent to encompass methods for providing notification of messages other than voicemail, which the patentee neither invented nor described nor enabled in the '839 Patent.

For these reasons, as discussed more fully below, Visto respectfully submits that the Court

---

[2] *In Andersen Corp. v. Fiber Composites, LLC,* 474 F.3d 1361, 1368 (Fed. Cir. 2007), the Federal Circuit found that the patentee distinguished the claimed composition from the prior art by arguing that prior art did not teach a process of creating a pellet intermediate which the patentee argued was important to the final structural properties of the claimed composition. The court held that these statements, distinguishing the prior art, served to limit the scope of the claims. *Id.*

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

1    should adopt Visto's proposed constructions for the disputed claim language.

2    **II.    LEGAL PRINCIPLES GOVERNING CLAIM CONSTRUCTION**

3         "A claim in a patent provides the metes and bounds of the right which the patent confers

4    on the patentee to exclude others from making, using or selling the protected invention." *Burke,*

5    *Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999).  It has been well

6    settled for more than a decade that "the construction of a patent claim is a matter of law

7    exclusively for the court."  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir.

8    1995) (en banc), *aff'd*, 517 U.S. 370 (1996).  "The patent system is based on the proposition that

9    claims cover *only* the invented subject matter."  *Id.* at 979 (emphasis added).

10        A court should consider three primary sources to ascertain the meaning of patent claims:

11   the claims, the specification, and the prosecution history.  *Markman*, 52 F.3d at 979.  The words

12   of a claim are generally given their "ordinary and customary meaning," which is the meaning that

13   the terms would have to a person of ordinary skill in the art in question as of the effective filing

14   date of the patent application.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1313 (Fed. Cir. 2005)

15   (internal citations omitted).  The Federal Circuit explained in *Phillips* that when properly viewed,

16   "the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the

17   entire patent."  *Id.* at 1321.

18        The Federal Circuit emphasized in *Phillips* that the written description in the specification

19   is usually "dispositive" of claim construction disputes and is "the single best guide to the meaning

20   of a disputed claim term":

21
22            The claims, of course, do not stand alone. Rather, they are part of a fully
              integrated written instrument, consisting principally of a specification that
22            concludes with the claims.  For that reason, claims must be read in view of the
23            specification, of which they are a part.. . . The specification is always highly
              relevant to the claim construction analysis. *Usually, it is dispositive; it is the*
24            *single best guide to the meaning of a disputed term*. . . . Ultimately, the
              interpretation to be given a term can only be determined and confirmed with a full
25            understanding of what the inventors actually invented and intended to envelop
              with the claim.  The construction that stays true to the claim language and most
26            naturally aligns with the patent's description of the invention will be, in the end,
              the correct construction.
27
28   *Id.* at 1315-16 (internal citations omitted) (emphasis added).

1    In addition to the specification, the *Phillips* court noted that "the prosecution history can

2    often inform the meaning of the claim language by demonstrating how the inventor understood

3    the invention and whether the inventor limited the invention in the course of prosecution, making

4    the claim scope narrower than it otherwise would be." *Id.* at 1317.  "The purpose of consulting

5    the prosecution history in construing a claim is to exclude any interpretation that was disclaimed

6    during prosecution."  *Id.* (citations omitted).

7    Consistent with the principles articulated in *Phillips*, the Federal Circuit has recently

8    reaffirmed that "a patentee may limit the meaning of a claim term by making a clear and

9    unmistakable disavowal of scope during prosecution . . . for example, by clearly characterizing

10   the invention in a way to try to overcome rejections based on prior art."  *Computer Docking*

11   *Station Corp. v. Dell, Inc*., 519 F.3d 1366 (Fed. Cir. 2008) *citing Purdue Pharma L.P. v. Endo*

12   *Pharms., Inc*., 438 F.3d 1123, 1136 (Fed. Cir. 2006); *Microsoft Corp. v. Multi-Tech Sys., Inc.*,

13   357 F.3d 1340, 1349 (Fed. Cir. 2004) (limiting the term "transmitting" to require direct

14   transmission over telephone line because the patentee stated during prosecution that the

15   invention transmits over a standard telephone line, thus disclaiming transmission over a packet-

16   switched network); *Alloc, Inc. v. ITC*, 342 F.3d 1361, 1372 (Fed. Cir. 2003) (finding the patentee

17   expressly disavowed floor paneling systems without "play" because the applicant cited the

18   feature during prosecution to overcome prior art); *Bell Atl. Network Servs. v. Covad Commc'ns*

19   *Group, Inc.,* 262 F.3d 1258, 1273 (Fed. Cir. 2001) (limiting operation of the "transceiver" to the

20   three stated modes because of clearly limiting statements made by the patentee to try to

21   overcome a prior art rejection).

22   As the Federal Circuit explained in *Computer Docking Station*, the doctrine of

23   prosecution disclaimer "protects the public's reliance on definitive statements made during

24   prosecution" by "precluding patentees from recapturing through claim interpretation specific

25   meanings [clearly and unmistakably] disclaimed during prosecution." *Id. citing Omega Eng'g,*

26   *Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323-24 (Fed. Cir. 2003).  "Claims should not be construed

27   'one way in order to obtain their allowance and in a different way against accused infringers.'"

28   *Id. citing Chimie v. PPG Indus.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) (citation omitted).

Although the Federal Circuit has emphasized the importance of intrinsic evidence in claim construction, it has also authorized district courts to rely on extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Id*. However, while extrinsic evidence "can shed useful light on the relevant art," the Federal Circuit has explained that it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Id*.

### III.   BACKGROUND OF TECHNOLOGY

#### A.   The '839 Patent

U.S. Patent 5,889,839 ("the '839 patent"), filed September 19, 1996, issued March 30, 1999, describes a system and method of notifying a user of voice messages from multiple voice messaging systems. Khaliq Declaration, Exhibit A, U.S. Patent No. 5,889,839. The problem the inventors were attempting to overcome in the prior art addressed the issue of cell phone users having to periodically check multiple messaging systems for voicemail. *Id*. Description of the Related Art, col. 1, ll. 18-27(emphasis added):

> When a cellular telephone user subscribes to a messaging system, such as voice mail, from their cellular carrier, the user must periodically check for messages in that user's message mailbox. This checking is done manually by placing telephone calls. Similarly, a user who is away from the office and/or home and awaiting some messages(s) must periodically check message in the office and/or home message mailbox(es). This is usually done by calling the office voice mail system or the home voice mail system.

In order to overcome the inconvenience and inefficiency resulting from having to periodically check for multiple messages in multiple systems, the '839 patent provides "a system and method for automatically notifying a user of an awaiting message" by using a "wireless communication system," "identification means" and a "mail notification system". *Id.*, col. 1, ll. 44-63. As shown in Figure 1, the voice messaging notification system is comprised of essentially three components, the user's multiple messaging systems (e.g., located at a user's office, central office or home), a wireless communications system connected to a cell phone tower, and the user's cell phone. FIG. 1.

According to the '839 Patent, the method of notifying a user of awaiting voice messages

1    begins when "a user 10 with an activated cellular telephone 12  moves into an 'in-range' area 20

2    of a remote wireless base station." *Id.*, col. 2, ll. 16-18.  When the cell phone is detected by the

3    wireless base station, the "wireless communication provider/carrier system 30 is then contacted

4    by wireless base station 22 ... which provides wireless communication system 30 with the

5    registration identification number assigned to cellular telephone 12..." using "standard registration

6    techniques for recognizing the cellular phone."  *Id.* col. 2, ll. 22-25; col. 3, ll. 15-16.  After the

7    wireless communication system 30 receives the cellular telephone registration number, the system

8    performs a check on the cellular telephone's registration number to confirm that the cellular

9    phone has valid user account.  *Id.* col. 2, ll. 25-30.  If a valid user account is found, the wireless

10   communication system 30 uses the cellular telephone registration number to check its mail

11   registration table to determine if a validated user has voice mailboxes associated with the account.

12   *Id.* col. 2, ll. 21-34; col. 3, ll. 16-18.

13          When associated mailboxes are found, the wireless carrier component of the wireless

14   communication system 30 sends a query to the mailboxes to determine if there are any awaiting

15   messages. *Id.* col. 2, ll. 51-54; *also* Ex. C, '839 patent file history, Amendment mailed July 28,

16   1998 at 4.[3]  If a message is located, a notification is sent to the cellular phone informing the user

17   of an awaiting message. *Id.* col. 3, ll. 33-57.  If the user wants to hear the voice mail, the user can

18   have the message played back or be connected to the appropriate voice message system. *Id.* col.

19   2, ll. 40-50; col. 3, ll. 43-51.  If no messages are found for the user, the checking step is repeated

20   after a predetermined period of time.  If no mailboxes are registered for the user, or the user is out

21   of cellular telephone range the process ends. *See* col. 3, ll. 21-29.

22   **B.       The Claims At Issue are Directed to Methods Performed In and By A
              Cellular System**

23

24          The '839 patent has two independent claims: claims 1 and 9.  These claims, together with

25

---

26   [3] The patentee distinguished over the Kasper reference (U.S. Patent No. 5,177,780) where a notification is
     provided to the mobile phone when one or more calls are redirected to the subscriber's mailbox.  In
27   distinguishing over Kasper, the patentee emphasized the "wireless system" component as the "unifying
     systems" (*sic*) among multiple messaging systems, arguing, specifically that it is the "wireless carrier"
28   which "monitors a user's voice mailbox". *Id.*

some noteworthy dependent claims, are set forth here for reference with emphasis added.

1. (Not asserted)  A <u>system</u> for automatically notifying a user of an awaiting message, comprising:

identification means for identifying a registered user of a wireless communication system, the identification means being located in the wireless communication system;

mail notification means for notifying the registered user of an awaiting message; and

communication means for checking for awaiting messages in multiple mailboxes associated with the registered user, and for triggering the mail notification means if an awaiting message is present, wherein the multiple mailboxes being located in multiple messaging systems.

17. (Not asserted)  The system for automatically notifying a user of an awaiting message of claim 1, wherein the multiple messaging systems include at least one of a PBX, a central office and the wireless communication system.

***

9. (Asserted)   A <u>method</u> for <u>automatically</u> notifying a user of an awaiting message, comprising the steps of:

a) recognizing a <u>cellular telephone</u>, the <u>recognizing using a registration number of the cellular telephone</u>, the registration number identifying a user;

b) checking for mailboxes associated with the user;

c) checking for awaiting messages in the mailboxes if the mailboxes exist, wherein the mailboxes are located in multiple messaging systems; and

d) contacting the user with information related to the awaiting message if the awaiting message is present.

10. (Asserted) The method for automatically notifying a user of an awaiting message of claim 9, further comprising the step of collecting the awaiting message if the awaiting message is present.

11. (Asserted) The method for automatically notifying a user of an awaiting message of claim 10, further comprising the step of playing the collected messages

for the user.

12. (Asserted) The method for automatically notifying a user of an awaiting message of claim 9, further comprising the step of repeating steps c) and d) periodically until the user is out-of-range.

13. (Asserted) The method for automatically notifying a user of an awaiting message of claim 9, wherein a mailbox registration table is used when checking for the mailboxes

The claims differ in several important respects.

First, for example, Claim 1 is directed to a <u>system</u> for automatically notifying a user of an awaiting message, whereas asserted Claims 9-13 are directed to <u>methods</u> for automatically notifying a user of an awaiting message.

Second, the methods are for "<u>automatically</u>" notifying a user of an awaiting message. Thus, contrary to RIM's suggestions (see RIM's Brief at 9), the methods must be performed by the system apparatus as "automatically" means that the notification happens with the aid of some device.[4]

Third, in contrast to the system claims, where the system may be, (if not limited by prosecution history disclaimers), to an in-building wireless system (see col. 4, ll. 4-15), the system used in performing asserted Claims 9-13 is a *cellular telephone system*.  Indeed, the method claims specifically require "recognizing a *cellular telephone*, the recognizing using a registration number of the *cellular telephone*."  And cellular telephones, by definition, include radios for connecting only to designated cellular systems. Khaliq Decl., Ex. D, Seybold reference, at 96.

As will be more fully discussed below, these general claim construction points are supported and compelled by statements made by the patentee to distinguish "the invention" of the '839 patent from the prior art.  In those statements, the patentee clearly limited ***all*** embodiments of "the claimed invention" and manifestly disavowed any interpretation of the claims that does not require *the wireless carrier* which in the case of claims 9-13 is a cellular carrier which communicates wirelessly with the cellular telephone.

---

[4] *See http://dictionary.reference.com/browse/automatically*, "on automatic, being operated or controlled by or as if by an automatic device."

## IV.   VISTO'S PROPOSED CONSTRUCTIONS OF THE DISPUTED TERMS

### A.   "recognizing a cellular telephone, the recognizing using a registration number of a cellular telephone, the registration number identifying a user"

| Claim Term & Claims | Visto's Proposed Construction | RIM's Proposed Construction |
|---|---|---|
| recognizing a cellular telephone, the recognizing using a registration number of a cellular telephone, the registration number identifying a user (claim 9) | In a cellular telephone system, identifying a cellular telephone by obtaining its hardware registration identification number and checking to confirm that a valid user account is associated with the telephone. | ordinary meaning; or, if construed:

recognizing a cellular telephone using a registration number that identifies a user |

Visto's proposed construction for **"recognizing a cellular telephone..."** is the proper construction in view of the claim language, specification and prosecution history. The claim term has three clauses and Visto's construction takes into account all three parts.

### 1.   The "recognizing of the cellular telephone" occurs in a cellular telephone system

The first part, *viz.*, "recognizing a cellular telephone," must be interpreted in view of the express claim language, the specification and the limiting file history arguments. *See generally, Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).

Claim 9 requires that the entire method be accomplished "automatically." As discussed above, "automatically" means that the methods must be performed by the system apparatus as "automatically" means that the notification happens with the aid of some device.[5]

In the specification, the step of recognition is done (automatically) in and by a wireless communication provider/carrier system. For example, the specification provides:

> Wireless provider/carrier base station 22 includes a transmitter and a receiver for wireless communication. Wireless communication provider/carrier system 30 is then contacted by wireless base station 22. Wireless base station 22 provides wireless communication system 30 with the registration identification number assigned to cellular telephone 12."). *See* Khaliq Decl., Ex. A, '839 patent, col. 2, ll. 18-22.

---

[5] *See* footnote 4.

In the case of a cellular telephone, as in the asserted claims at issue here, the wireless provider/carrier is a cellular provider/carrier.  Although the patent mentions that the invention could be useful in several alternative embodiments, including private PBX systems[6], claim 9 is expressly limited to the preferred "cellular telephone" embodiment.  Therefore, it is clear from the specification that the step of recognizing the cellular telephone is done in and by the cellular telephone system.  *See Id.* '839 patent, col. 2, ll. 13-30 (describing cell phone moving into an "in range area", connecting to a wireless base station and carrier base station).  As such, Visto's definition is compelled by the specification and claims.  Moreover, Visto's definition is compelled by limiting arguments made by the patentee during prosecution of the patent.  In order to overcome the prior art, the patentee argued that the wireless carrier was an integral part of the invention:

> The Kasper reference provides a method for voice mail notification for cellular telephone systems ....    In contrast, *the present invention <u>allows the wireless system</u>* to be the unifying systems [sic] among multiple messaging systems.  The *<u>wireless carrier monitors</u>* a user's voice mailbox at work, a user's voice mailbox at home, and/or any other mailbox belonging to the user.  Thus, the present invention connects the user to whichever system currently has a message for that user.  The Kasper reference describes an invention which is useful if the wireless carrier is the only one providing messages.  Presently, many users have multiple messaging systems in their home, work, or with their cellular telephone.  The Kasper reference does not provide collecting messages from these multiple places and then connecting the user to the correct messaging system.  *See* Khaliq Decl., Ex. C, '839 Patent file history, Amendment mailed July 28, 1998 at 4-5 (emphasis added).

Essentially, by distinguishing Kasper from the "invention" the applicant clearly limited all embodiments of the claimed invention to the situation where the wireless carrier, a component of the cellular telephone system, performs necessary steps of the invention.  *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001).  In *SciMed*, the claims of the patent-in-suit were directed to a catheter that required two "lumens."  *SciMed* at 1339.  The parties agreed that two arrangements of the two lumens were known and practiced in

---

[6] "The present invention can be applied in an in-building wireless system. For example, some offices have wireless systems which allow their employees to move inside buildings or around campuses (i.e., clusters of buildings in close proximity) while remaining connected to their PBX or central office with a wireless connector. With the present invention, users within a building or campus area would be treated as thought they were in-range of a wireless base station. Furthermore, these in-building wireless systems are often limited in channel capacity such that application of the present invention would dramatically reduce congestion." *See* Khaliq Decl., Ex. A, '839 patent, col. 4, ll. 4-14.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

the art.  In the dual (or adjacent) lumen configuration, the two lumens are positioned side-by-side within the catheter.  In the coaxial lumen configuration, the guide wire lumen runs inside the inflation lumen.  The Federal Circuit found that the common specification of the three patents-suit indicated that "the invention" uses coaxial, rather than side-by-side lumens.  Similarly, in this case, the patentee's characterization of "the invention" requiring a unifying "wireless system" and "wireless carrier" component, compels a finding that the invention requires a cellular system.

RIM argues that Visto has improperly imported _structural_ restrictions on a method claim, citing to *N. Telecom Ltd. v. Samsung Elecs., Co.,* No.C-95-449 MHP, 1996 WL 532122 at * 13 (N.D. Cal. Sept. 16, 1996) and *Moba, B.V. v. Diamond Automation, Inc.,* 325 F.3d 1306, 1314 (Fed. Cir. 2003).  RIM's reliance on these cases is misplaced.  The Federal Circuit case, *Moba*, actually speaks to an improper infringement analysis, not claim construction.  *See Moba, B.V.,* 325. F.3d at 1314 ("This court has discredited an infringement analysis for method claims that examines distinctions between implementing apparatuses.").  Notably, both of these cases cite to *Amstar Corp v. Envirotech Corp.,* 730 F.2d 1476, 1482 (Fed. Cir. 1984), which states that the "law recognizes the irrelevance of apparatus distinctions in determining infringement of process claims."  In other words, the principle articulated from these cases addresses the fact that an apparatus distinction in the accused product is not relevant to the scope of the method claims, since what is important is whether the accused apparatus performs the steps, not whether the accused apparatus is different from any claimed apparatus.  Clearly, a method claim may recite structural components, as does claim 9 of the '839 patent (use of "cellular telephone", "mailboxes", "messaging systems") which will necessarily limit the method claims to use of the structures as properly construed.  *See Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1332 (Fed. Cir. 2001) ("The words used in the claims must be considered in context and are examined through the viewing glass of a person skilled in the art.").

> ## 2.   **The "recognizing" step, recognizes the registration number of the cellular telephone, not a user identification number**

The second part, *viz.*, "the recognizing using a registration number of a cellular telephone," by its very terms requires recognition based on a registration number that identifies

11

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

1  the cellular telephone.  Khaliq Decl., Ex. A,  '839 patent, claim 9.  The claim further requires that

2  the registration number identify a user, but these two requirements cannot be collapsed into a

3  single requirement that the cellular telephone be recognized by a number that identifies a user (for

4  example, a driver's license number, a phone number, a social security number, an address, an

5  account number, etc.) as RIM suggests.

6      The first step in any claim construction analysis is to look at the "words of the claims

7  themselves... to define the scope of the patented invention."  *Phillips v. AWH*, 415 F.3d at 1312,

8  *citing Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d at 1582.

9      The claim language recites "recognizing a cellular telephone, the recognizing using a

10  registration number of a cellular telephone..." *See* Khaliq Decl., Ex. A, '839 patent, claim 9

11  (emphasis added).  RIM's construction is erroneous because it provides for recognizing the

12  cellular telephone based on a *registration number that identifies a user.*  The claim language is

13  clear that the registration number is "of a cellular telephone" and not a user based identification

14  number.  The specification also denotes that the registration number is a "*cellular telephone's*

15  *registration identification number*," not a user's registration identification number. *See* Khaliq

16  Decl., Ex. A, '839 patent, col. 2, ll. 26; *see also* col. 2, ll. 33-36 ("wireless communication system

17  30 uses the <u>cellular telephone identification number</u>"; *see also* col. 3, ll. 13-16 ("At step 102, the

18  <u>system recognizes the user's cellular telephone. Standard registration techniques are used for</u>

19  <u>recognizing the cellular telephone</u>.")(emphasis added).

20      Of course, the claim element finally specifies that the  "... the registration number

21  identifying a user", but the specification makes clear (as does the claim) that this is a further

22  requirement that is done after the system checks the telephone's registration identification number

23  to see if the cell phone has a valid account with a legitimate registered user.  *See* Khaliq Decl.,

24  Ex. A, '839 patent, col. 2, ll. 25-30 ("...checks are normally done to confirm that a cellular

25  telephone 12 has a valid account (e.g., owned by a legitimate, registered user).")

26          a.      **The registration number of the cellular telephone is its**
                    **"hardware registration identification number"**

27

28      The proper construction of "recognizing using a registration number of a cellular

1   telephone" involves "identifying a cellular telephone by obtaining its hardware registration

2   identification number".

3          One of ordinary skill in the art would recognize the "registration number of the cellular

4   telephone" as the "hardware registration number" as opposed to any other number, such as a cell

5   phone number or user-ID/password.[7]

6          The specification, which provides the support for the registration number of the cellular

7   telephone refers to the cellular phone's hardware registration number. *See* Khaliq Decl., Ex. A,

8   '839 patent col. 4, ll. 24-28 (emphasis added):

9          Additionally, enhanced security is provided by the present invention. This occurs
           because the **cellular telephone's hardware registration identification** can be
10         used as an added requirement for accessing a user's messages. The user's
           password could be eliminated, but in the preferred embodiment, both **the**
11         **registration identification number** and the user's password are required for
           access to awaiting message(s).
12

13         The prosecution history confirms that the patentee intended for the registration number to

14   be the hardware registration number.  In distinguishing over the prior art, patentee argued that

15   claim 7 (issued claim 6) required the use of both a hardware registration number and password.

16   *See* Khaliq Decl., Ex. C, Amendment dated July 28, 1998 at 5 ("In contrast to the Blair reference,

17   the present invention utilizes both a registration number and a password...because of the special

18   circumstances of the present invention, a dual security means (i.e., registration number and

19   password) is necessary to enhance protection of the system....Applicants are unaware of any such

20   combination of password and registration number."). The "registration number" used to provide

21   _____

22   [7] The cellular telephone industry maintains two unique and different numbers - one associated with the
     physical cellular telephone hardware device and the other associated with the user of a cellular telephone
23   (the telephone number). Each cellular telephone has a unique hardware serial number. *See e.g.*, Khaliq
     Decl., Ex. D, Seybold at 123 ("The problem, briefly stated, is that each cellular phone is assigned both a
24   phone number and an electronic serial number (ESN). This dual identification concept serves two very
     specific purposes."). These ESN or hardware registration number uniquely identifies each mobile device.
25   *Id.* The cellular telephone number (the phone number which one would dial to "phone" someone) is a
     different number that is generally changeable.  These two types of numbers are used throughout the
26   specification of the '839 patent in distinct ways.  A telephone number is referenced at col. 1, ll. 34-45 and
     col. 3, ll. 58-62.  Elsewhere in the specification and claims the cellular telephone identification number is
27   used, e.g. at col. 2, ll. 24-9: "Either wireless base station 22 or wireless communication system 30
     performs a check on the cellular telephone's registration identification number," and also, *e.g.*, in Claim 9:
28   "a) recognizing a cellular telephone, the recognizing using a registration number of the cellular telephone,
     the registration number identifying a user."

1    enhanced security is in fact the *hardware registration number* described in the above quoted

2    portion of the specification. *See* Khaliq Decl., Ex. A, '839 patent, col. 4, ll. 24-28.

3         Since the patent only discusses one type of registration number, and uses the "registration

4    identification number" and the "hardware registration identification number" interchangeably, the

5    registration number of claim 9 must be the hardware registration identification number. *See also*

6    *Id.*, col. 2, ll. 26 ("cellular telephone's registration identification number"); and col. 2, ll. 33-36

7    ("cellular telephone identification number").

8              b.    **The patentee clearly distinguished the registration number of**
                     **the cellular telephone from consumer based information**
9                    **including password, phone numbers, etc.**

10        RIM's construction ignores the fact that the applicant clearly distinguished the registration

11   number of the cellular telephone with information that identifies a user, such as a password or

12   user ID.  In the file history, for example, the applicant stressed that unlike the prior art, the

13   "present invention utilizes both a registration number and a password as set forth in claims 7 and

14   8." *See* Khaliq Decl., Ex. C, Amendment dated July 28, 1998 at 5.

15             3.    <u>**"Identifying a user" involves "checking to confirm that a valid user**</u>
                     <u>**account is associated with the telephone"**</u>
16

17        The third part, *viz.*, "the registration number identifying a user," requires "checking to

18   confirm that a valid user account is associated with the telephone."  This construction is fully

19   supported by the specification and properly explains how a registration number can be used in a

20   secondary role to identify a user as recited in the claim.

21        The specification of the '839 patent states:

22        Wireless base station 22 provides wireless communication system 30 with the
          registration identification number assigned to cellular telephone 12. Either wireless
23        base station 22 or wireless communication system 30 performs a check on the
          cellular telephone's registration identification number. *These checks are normally*
24        *done to confirm that cellular telephone 12 has a valid account (e.g., owned by a*
          *legitimate, registered user)*.
25

26   *See* Khaliq Decl., Ex. A, col. 2, ll. 22-30 (emphasis added).

27        Contrary to RIM's argument, the specification does not describe this as an optional step,

28   because each user must have a valid account registered with the wireless communication system

1 in order to recognize that user's registered mailboxes.  This requirement is illustrated in the

2 following portion of the specification:

3      Wireless communication system 30 then uses the registration identification
       number to check its message mail registration table 32 and to determine if user 10
4      has an associated mailbox(es) 34. Hence, wireless communication system 30 uses
       the cellular telephone identification number to associate cellular telephone 12 with
5      a particular message mailbox 34, or with multiple message mailboxes 34, 42, 52.
       (emphasis added)

6

7 Visto's claim construction for this phrase should be adopted in its entirety since it is fully

8 supported by the intrinsic record and clearly explains how the method element is carried out in a

9 way that will be clear to the jury.

10      **B.**      **"checking for awaiting messages in the mailboxes"**

| Claim Term & Claims | Visto's Proposed  Construction | RIM's Proposed Construction |
|---|---|---|
| checking for awaiting messages in the mailboxes (9) | The wireless carrier monitoring for awaiting messages in voice mailboxes belonging to the identified registered user associated with the cellular telephone's hardware registration identification number. | ordinary meaning; or, if construed:<br><br>sending a query to each message mailbox to determine if any awaiting messages are present |

16 Visto's construction for "checking for awaiting messages in the mailboxes" clearly aligns

17 with the intrinsic evidence.  Contrary to RIM's argument, Visto is not importing limitations from

18 the specification.  When only one embodiment is described as the invention itself, "the claims are

19 not entitled to broader scope than that embodiment."  *See Wang Laboratories, Inc. v. America*

20 *Online, Inc.,* 197 F.3d at 1383.

21      1.      **The wireless carrier monitors awaiting messages**

22 First, RIM takes exception with Visto's proposed construction that the "checking" step

23 involves the "wireless carrier monitoring for awaiting messages."  As discussed above, however,

24 this limitation was argued by patentee in distinguishing over the Kasper reference during

25 prosecution  of the '839 patent.  During prosecution, the patentee argued that the wireless carrier

26 was an integral component for checking multiple messaging systems:

27      In contrast, the present invention allows the wireless system to be the unifying
       systems among multiple messaging systems. *The wireless carrier monitors a*

28

user's voice mailbox at work, a user's voice mailbox at home, and/or any other mailbox belonging to the user." *See* Khaliq Decl., Ex. C, Amendment dated July 28, 1998 at 4 (emphasis added).

The prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention, and whether the inventor disavowed claim scope by making arguments to distinguish their invention over the prior art. *See Phillips v. AWH,* 415 F.3d 1303, 1317 (Fed. Cir. 2005); *see also Andersen Corp. v. Fiber Composites, LLC,* 474 F.3d 1361, 1368 (Fed. Cir. 2007). The patentee, in this case, distinguished the prior art by arguing that the "wireless carrier" component of the wireless system monitors multiple voice messaging systems. In making this argument, RIM disavowed any claim interpretation that does not include this limitation. Therefore, Visto's construction including "wireless carrier monitoring for awaiting messages," is proper in view of the file history disclaimer.

RIM argues that "checking" cannot be "monitoring" because the doctrine of claim differentiation mitigates otherwise. RIM contends that claim 12, a dependent claim, includes the additional step of "repeating steps c) and d) of claim 9 periodically until the user is out-of-range", and therefore this claim somehow includes the "monitoring" limitation that Visto is positing for claim 9. However, the doctrine of claim differentiation does not apply here. Visto is not arguing for the limitation in claim 12 to be read into claim 9. Also, Visto is not conflating "monitoring" with "periodically polling" as RIM assumes, but rather is asking the Court to clarify the meaning of the term "checking" in view of the clear arguments made in the prosecution history.

2.      **mailboxes are "voice mailboxes"**

The second issue for this claim phrase is whether the "mailboxes" are "voice mailboxes" as Visto proposes. The '839 patent does not describe or provide an enabling disclosure that would support claims for anything other than voicemail. "Claims are not properly construed to have a meaning or scope that would lead to their invalidity for failure to satisfy the requirements for patentability....in order to be covered by the claims that subject matter must be sufficiently described as the applicant's invention to meet the requirements of section 112." *See Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547 (Fed. Cir. 1997).

RIM's argument that the specification's *single* mention of an "e-mail message, video

VISTO CORPORATION'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

1   message, or facsimile message" supports a finding that the claims should be construed broadly to

2   include systems other than voicemail is contrary to prevailing Federal Circuit authority.

3   Although the scope of a patent is not limited to preferred embodiment, "the usage of 'preferred'

4   does not itself broaden the claims beyond their support in the specification." *See Modine Mfg v.*

5   *U.S. Int'l Trade Comm'n,* 75 F.3d 1545, 1551 (Fed. Cir. 1996); *see also General American*

6   *Transportation Corp. v. Cryo-Trans, Inc.,* 93 F.3d 766, 770 (Fed. Cir. 1996)(the teaching in the

7   specification was "not just the preferred embodiment of the invention; it is the only one

8   described").  Whenever possible, claims should be construed to preserve rather than defeat their

9   validity.  *See Modine,* 75 F.3d at 1557; *see also Eastman Kodak Co. v. Goodyear Tire & Rubber*

10  *Co.,* 114 F.3d 1547, 1556 (Fed. Cir. 1997).

11          RIM cites to the doctrine of claim differentiation to argue that dependent claim 16, which

12  recites "wherein the messages are voice mail messages" precludes the court from construing

13  claim 9 to include a voice mailbox limitation, when ostensibly, according to RIM, claim 9 is

14  entitled to a broader scope not limited to voice mail systems.  Claim differentiation is a guide that

15  assumes the claims with different limitations have different scope.  *See Versa Corp. v. Ag-Bag*

16  *Int'l Ltd.*, 392 F.3d 1325, 1330 (Fed. Cir. 2004). However, claim differentiation is a rebuttable

17  presumption that can be overcome by the written description and prosecution history.  *See*

18  *Fantasy Sports Props. v. Sportsline.com, Inc*., 287 F.3d 1108, 1115-16 (Fed. Cir. 2002).  The

19  court should not construe terms based solely on claim differentiation when it "contradicts the

20  correct meaning of the claim, and provides a construction that is "not consistent with the overall

21  context of the invention and this field of art as described in the specification."  *See Curtiss-Wright*

22  *Flow Control Corp v. Valan Inc.,* 438 F.3d 1374, 1381 (Fed. Cir. 2006).

23          In this case, the doctrine of claim differentiation is clearly rebutted by the patentee's

24  choice to limit the written description to voice mailboxes and voicemail messaging systems and

25  methods.  As discussed above, any other construction would render the claims invalid for lack of

26  an enabling disclosure.

27

28

3.   **The mailboxes belong to "the identified registered user associated with the cellular telephone's hardware registration identification number"**

Finally, RIM disputes Visto's proposal that the method must check for messages in mailboxes "belonging to the identified registered user associated with the cellular telephone's hardware registration identification number." Visto's proposal does not add unnecessary limitations as RIM contends. The specification clearly illustrates that the messages are from mailboxes for registered users. *See e.g.,* Khaliq Decl., Ex. A, '839 patent, col. 3, ll. 16-20 ("...the system checks for message mailbox registration. If no <u>mailboxes are registered for that user</u>, the process ends. If a mailbox (or mailboxes) is registered, the system moves on to step 106. At step 106, the system queries the registered message mailbox(es)"; *see also* col. 2, ll. 31-37 ("Wireless communication system 30 then <u>uses the registration identification number to check its message mail registration table 32 to determine if user 10 has an associated mailbox(es)</u>" (emphasis added). Also, as discussed in Section IV. A., Visto's definition makes it clear that it is the "telephone's hardware registration identification number" that is used to identify a user and thus access and check messages in the user's associated voice messaging systems.

**C.**   **"mailbox(es)**

| Claim Term & Claims | Visto's Proposed  Construction | RIM's Proposed Construction |
|---|---|---|
| mailbox(es)<br><br>(9, 13) | An electronic data storage location, provided by a ~~cellular~~ telephone system, for voice messages associated with a valid user account. | ordinary meaning; or if construed:<br><br>message storage location(s) |

Visto proposes a slightly modified definition for "mailbox(es)" that substitutes the clause "provided by the cellular telephone system" to "provided by a telephone system" as noted in the table above. In any event, Visto's proposed construction is correct because one of ordinary skill in the art reading the specification would understand that "mailbox(es)" are "an electronic data storage location provided by a telephone system, for voice messages associated with a valid user account." RIM does not take exception with Visto's proposal of "electronic data storage location", so Visto will assume that there is no dispute on this issue.[8]

---

[8] One of ordinary skill in the art, reading the specification, would understand that a mailbox is an

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

1    RIM's first objection is to Visto's earlier use of the term "cellular telephone system".

2    Visto has amended this language and acknowledges that mailboxes can be provided by any

3    "telephone system".  The specification does make clear, however, that the mailboxes are provided

4    by telephone systems, and not just any type system (*i.e.,* no other mailboxes other than telephone

5    voice mail systems are described).  *See* Khaliq Decl., Ex. A, ll. 42-50.

6    The central dispute on this term, again, revolves around Visto's proposal of "storage

7    location...for voice messages".  Visto has correctly proposed that the mailboxes are voice

8    mailboxes and thus "mailboxes" as recited in claim 9 must be a storage location for voice

9    messages.  As discussed above, the only enabling disclosure in the patent is for voicemail

10   systems.  *See* Section IV. B..  The specification also explicitly states that "messages" are played

11   back for the user, which implies that the mailboxes store and provide *voice messages* for retrieval

12   and play-back, as opposed to any other type of message.  *See* Khaliq Decl., Ex. A, ll. 43-47

13   (emphasis added):

14       At step 116, <u>the system determines if the user wants to play the awaiting

15       message(s)</u>. This can be done by the user, for example, by entering a code into the
         user's cellular telephone or by answering prompts provided by the telephone call

16       which notifies the user of the awaiting messages. <u>If the user wants to play the
         awaiting message(s), the system plays the messages at step 118.</u>

17

18   RIM also argues that the doctrine of claim differentiation prevents the court from

19   construing "mailbox(es)" as mailboxes for voice messages.  As explained earlier, however, the

20   doctrine of claim differentiation is a guide and does not prevent the court from construing the

21   claim terms properly in view of the overall context of the invention as described in the

22   specification. *See Curtiss-Wright Flow Control Corp v. Valan Inc.,* 438 F.3d 1374, 1381 (Fed.

23   Cir. 2006).

24   The final issue on this claim term is whether the "mailbox(es)" must be "associated with a

25   valid user account" as proposed by Visto.  It is important to look at the "words of the claims

26   themselves... to define the scope of the patented invention."  *Phillips v. AWH*, 415 F.3d at 1312,

27   *citing Vitronics,* 90 F.3d at 1582.  The claims must also be read in light of the specification. *See*

28   "electronic data storage location" for voice mails which are electronically encoded audio files.

1  *Merck & Co v. Teva Pharms USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003).

2        This limitation is proper in view of the overall context of the method described in claim 9,

3  which goes through steps of checking a registration number of a cellular phone, which identifies a

4  registered user, and then checking for mailboxes associated with the user. The only embodiment

5  described in the specification and Fig. 1 uses a mailbox registration table at "wireless

6  communication system 30" to associate mailboxes with a valid user account. *See* Khaliq Decl.,

7  Ex. A, '839 patent, col. 2, ll. 28-34. Therefore, it follows that mailboxes checked by the system

8  cannot simply be any mailbox of the user, but those that are identified in the "mailbox registration

9  table 32" associated with a valid user account.

10  **V.     CONCLUSION**

11        Respectfully, Visto requests the Court to adopt Visto's proposed constructions for the

12  claim terms as set forth herein. Visto's constructions are consistent with the intrinsic and extrinsic

13  evidence and are enabled by the written description of the '839 patent, thus providing the true

14  scope and context of the invention.

15

16  Dated:    May 8, 2008                    MANATT, PHELPS & PHILLIPS, LLP
                                             Robert D. Becker
17                                           Eugene L. Hahm
                                             Shawn G. Hansen
18                                           Imran A. Khaliq

19

20                                     By:  /s/ Robert D. Becker
                                             Robert D. Becker
21                                           *Attorneys for Defendant and Counterclaimant*
                                             VISTO CORPORATION

22

23

24

25

26

27

28