**Exhibit C**
**to the**
**Declaration of Shawn G. Hansen**
**in Support of Visto's Motion to Stay Proceedings**
**Relating to Research in Motion Limited's**
**Patent Pending Reexamination**

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,981 | 01/09/2008 | 7,225,231 | 320892US91RX | 4013 |

22850      7590      02/29/2008

OBLON, SPIVAK, MCCLELLAND MAIER & NEUSTADT, P.C.
1940 DUKE STREET
ALEXANDRIA, VA  22314

| EXAMINER |
|---|
|  |

| ART UNIT | PAPER NUMBER |
|---|---|
|  |  |

DATE MAILED: 02/29/2008

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C  (Rev. 10/03)



**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| REEXAM CONTROL NUMBER | FILING OR 371 (c) DATE | PATENT NUMBER |
|---|---|---|
| 90/008,981 | 01/09/2008 | 7225231 |

NOVAK DRUCE & QUIGG, LLP.
(NDQ REEXAMINATION GROUP)
1000 LOUISIANA STREET FIFTY-THIRD FLOOR
HOUSTON, TX 77002

**CONFIRMATION NO. 4013**
**REEXAMINATION REQUEST**
**NOTICE**



*OC000000027894663*

Date Mailed:

## NOTICE OF REEXAMINATION REQUEST FILING DATE

### *(Third Party Requester)*

Requester is hereby notified that the filing date of the request for reexamination is 01/09/2008, the date that the filing requirements of 37 CFR § 1.510 were received.

A decision on the request for reexamination will be mailed within three months from the filing date of the request for reexamination. (See 37 CFR 1.515(a)).

A copy of the Notice is being sent to the person identified by the requester as the patent owner. Further patent owner correspondence will be the latest attorney or agent of record in the patent file. (See 37 CFR 1.33). Any paper filed should include a reference to the present request for reexamination (by Reexamination Control Number).

cc: Patent Owner
22850
OBLON, SPIVAK, MCCLELLAND MAIER & NEUSTADT, P.C.
1940 DUKE STREET
ALEXANDRIA, VA 22314

/kpdozier/

Legal Instruments Examiner
Central Reexamination Unit 571-272-7705; FAX No. 571-273-9900

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. 90/008,981 | Patent Under Reexamination 7,225,231 | |
|---|---|---|---|
| | Examiner Ovidio Escalante | Art Unit 3992 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>09 January 2008</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:  a)☐ PTO-892,        b)☒ PTO/SB/08,        c)☒ Other: <u>Decision</u>

1. ☒    The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐    The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181  ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

a) ☐  by Treasury check or,

b) ☐  by credit to Deposit Account No. _____,  or

c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

Ovidio  Escalante
CRU Examiner
Art Unit: 3992

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)          Office Action in *Ex Parte* Reexamination          Part of Paper No. 20080215

Application/Control Number: 90/008,981                                           Page 2
Art Unit: 3992

## DECISION GRANTING *EXPARTE* REEXAMINATION

1.    A substantial new question of patentability affecting claims 1-6 of United States Patent

Number 7,225,231 (Mendez et al. patent) is raised by the request for *exparte* reexamination.

2.    The instant patent issued May 29, 2007 based on application 09/921,228 filed, August 1,

2001 as a continuation of application 09/666,877 filed September 20, 2000 now US Patent

6,708,221.

### *References Cited in the Request*

3.    The Request identifies the following printed publications as providing teachings relevant

to the claims of the '231 Mendez patent

|       |       |
|-------|-------|
| PA-A  | Brown, Kevin et al. Mastering Lotus Notes, 1995 Sybex Incorporated, (hereinafter Brown). |
| PA-B  | Lamb, John P and Lew, Peter W. Lotus Notes Network Design, 1996, (hereinafter Lamb). |
| PA-C  | Lotus Notes Release 4 Deployment Guide, 1995 (hereinafter Lotus Deployment Guide) |
| PA-D  | Lotus Notes Release 4 Administrator's Guide, 1995, (hereinafter Lotus Admin Guide). |
| PA-E  | Beckhardt US Patent 5,787,441 |
| PA-F  | Shaheen EP 0684558 |
| PA-G  | Wright et al. US Patent 5,857,201 |
| PA-H  | GloMop Group, GloMop: Global Mobile Computing By Proxy, (Sept. 1995), (hereinafter GloMop) |
| PA-I  | Lambert M., PCMAIL: A Distributed Mail System for Personal Computers, June 1988 (hereinafter Lambert) |
| PA-J  | Mahadev Satyanarayanan, Mobile Information Access, Feb. 1996, (hereinafter Satyanarayanan) |

Application/Control Number: 90/008,981                                    Page 3
Art Unit: 3992

PA-K              Kumar Puneet, Mitigating the Effects of Optimistic Replication in
                  a Distributed File System, (December 1994), (hereinafter Kumar).

PA-L              Kistler, James, Disconnected Operation in a Distributed File
                  System, May 1993, (hereinafter Kistler).

### Detailed Explanation of How the Cited Prior Art is Applied to Every Claim for Which Reexamination is Requested

### Proposed Anticipatory Rejections

1.      Brown is asserted as rendering claims 1-6 anticipated.

2.      Lamb is asserted as rendering claims 1-6 anticipated.

3.      Lotus Deployment Guide is asserted as rendering claims 1-6 anticipated.

4.      Lotus Admin Guide is asserted as rendering claims 1-6 anticipated.

5.      Beckhardt is asserted as rendering claims 1-6 anticipated.

6.      Shaheen is asserted as rendering claims 1-6 anticipated.

7.      Wright is asserted as rendering claims 1-6 anticipated.

8.      GloMop is asserted as rendering claims 1-6 anticipated.

9.      Lambert is asserted as rending claims 1-6 anticipated.

10.     Satyanarayanan is asserted as rending claims 1-6 anticipated.

11.     Kumar is asserted as rending claims 1-6 anticipated.

12.     Kistler is asserted as rending claims 1-6 anticipated.

### Proposed Obviousness Rejections

13.     Brown in view of Lamb and further in view of Lotus Deployment Guide and
        further in view of Lotus Admin Guide is asserted as rendering claims 1-6 obvious.

14.     Satyanarayanan in view of Kumar and further in view of Kistler is asserted as
        rendering claims 1-6 obvious.

Application/Control Number: 90/008,981                                    Page 4
Art Unit: 3992

### *Prosecution History*

4.      The '231 Mendez Patent was filed on August 1, 2001 as application 09/921,228. The

Examiner issued a first Non-Final Rejection on May 17, 2004. In response to applicants'

amendment and response filed on November 23, 2004, the Examiner issued a second non-Final

Rejection which did not maintain the prior art rejection to the claims and included only a double

patenting rejection. The amendment added "...electronically transmitting copies of the new

workspace elements via the electronic network from the first memory store to a global server;

and electronically transmitting copies of the new workspace elements via the electronic network

from the global server to the second memory store. The applicant argued that this amendment

read away from the prior art. After filing a terminal disclaimer by the applicant, the Examiner

issued a Notice of Allowance on December 23, 2005. No reasons for allowance were provided.

        The applicant filed an RCE on February 8, 2006 in order to apparently submit an IDS

document. The Examiner in response issued a Non-Final Rejection on May 4, 2006 which

rejected the claims under prior art references. On July 25, 2006, the Examiner held an Interview

with the applicant and held a discussion and the meaning of "working element" with respect to

"file" was discussed as well as the meaning of "copying" vs. "synchronization". The Applicant

amended their claims in the response filed on November 1, 2006 which added the use of folders,

to the first, second and third entries and well as the synchronization of the first, third and second

folders and the creation of record entries. The applicant specifically stated that the prior art does

not discloses *inter alia*, "a second memory store coupled to the first memory store the second

memory store including a second folder for storing second record entries in a file, the second

folder being synchronized with the first folder at a first moment in time such that the content of

Case 3:07-cv-03177-MMC    Document 48-6    Filed 05/21/2008    Page 8 of 29

Application/Control Number: 90/008,981                                    Page 5
Art Unit: 3992

the second folder is consistent with the content of the first folder at the first moment in time."

The Examiner subsequently issued a Notice of Allowance of December 21, 2006.

*Claim 1 is representative:*

> A method, comprising:
> providing a first memory store including a first folder for storing first record entries in a file;
> providing <u>a second memory store coupled to the first memory store, the second memory store including a second folder for storing second record entries in a file, the second folder being synchronized with the first folder at a first moment in time such that a content of the second folder is consistent with the content of the first folder at the first moment in time;</u>
> providing a global server including a third memory store having a third folder for storing third record entries in a file;
> receiving new first record entries in a file at the first memory store at a second moment in time later than the first moment in time;
> electronically synchronizing the first folder and the third folder, such that a new third record entry is created in the third folder based on the new first record entries; and
> electronically synchronizing the third folder and the second folder, such that a new second record entry is created in the second folder based on the new third record entry.

The underlined limitations were specifically argued by the applicant as not being disclosed by the prior art during the prosecution of the '231 Patent application.

### *Discussion of References that Raise a SNQ*

#### *Brown*

Brown discloses a first memory store (e.g. computer workstation) including a first folder for storing first record entries in a file (e.g. folders, documents, replicas, database), (pages 8, 40 and 571). Brown also discloses <u>a second memory store (e.g. another computer on the network) including a second folder for storing record entries in a file (e.g. folders, documents, replicas, database), and the second folder being synchronized (e.g. replication) with the first folder at a first moment in time, such that the content of the second folder is consistent with the content of the first folder, (pages 8, 40 and 571).</u>

Brown also discloses a global server (e.g. Lotus notes server) including a third memory store, (page 8) as well as new first record entries in a file are received (e.g. changes to a document) at the first memory store at a moment in time later than the first moment in time, (pages 94, 582-583). Brown discloses electronically synchronizing the first folder and the third folder (e.g. replication, "update the shared database"), such that a new third record entry is created in the third folder based on the new first record entries, (pages 571-572). Brown additionally discloses electronically synchronizing the third folder and the second folder (e.g. replication to User workstation computers), such that a new second record entry is created in the second folder based on the new third record entry, (pages 571-572).

The teaching of a second memory store coupled to the first memory store the second memory store including a second folder for storing second record entries in a file, the second folder being synchronized with the first folder at a first moment in time such that the content of the second folder is consistent with the content of the first folder at the first moment in time was not present in the prosecution of the application which became the '231 Mendez patent and thus it is agreed that Brown raises a SNQ over at least claims 1-6 of the instant '231 Patent.

Thus, given the above teachings, there is a substantially likelihood that a reasonable examiner would consider these teachings important in deciding whether or not the instant claims under reexamination are patentable. Accordingly, the Brown reference raises a SNQ as to at least claims 1-6 of the instant '231 Patent.

### *Lamb*

The above substantial new question of patentability is based solely on patents and/or printed publications already cited in an earlier concluded examination of the patent being

Application/Control Number: 90/008,981                                    Page 7
Art Unit: 3992

reexamined.  On November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A,

Section 13105, part (a) of the Act revised the reexamination statute by adding the following new

last sentence to 35 U.S.C. 303(a) and 312(a):

> "The existence of a substantial new question of patentability is not precluded by the fact that
> a patent or printed publication was previously cited by or to the Office or considered by the
> Office."

For any reexamination ordered on or after November 2, 2002, the effective date of the

statutory revision, reliance on previously cited art, i.e., "old art," does not necessarily preclude

the existence of a substantial new question of patentability (SNQ) that is based exclusively on

that old art.  Rather, determinations on whether a SNQ exists in such an instance shall be based

upon a fact-specific inquiry done on a case-by-case basis.

In the present instance, there exists a SNQ based solely on Lamb.

A discussion of the specifics now follows:

Lamb discloses a first memory store (e.g. Lotus notes client computer, laptops or

notebooks, personal digital assistants (PDAs)) including a first folder for storing first record

entries in a file (e.g. Lotus notes database, documents, updateable fields in documents), (pages

7,28,178 and Fig. 2.1). Lamb also discloses a second memory store (e.g. another client computer

on the network) including a second folder for storing record entries in a file (e.g. Lotus notes

database, documents, updateable fields in documents), and the second folder being synchronized

(e.g. replication) with the first folder at a first moment in time, such that the content of the

second folder is consistent with the content of the first folder, (pages 7, 28, 178 and Fig. 2.1).

Lamb also discloses a global server (e.g. "hub server") including a third memory store,

(pages 27 and 128) as well as new first record entries in a file are received (e.g. changes to a

Application/Control Number: 90/008,981                                        Page 8
Art Unit: 3992

document, fields, mail, databases) at the first memory store at a moment in time later than the

first moment in time, (pages 5-6 and 28). Lamb discloses electronically synchronizing the first

folder and the third folder (e.g. replication to hub server), such that a new third record entry is

created in the third folder based on the new first record entries, (pages 9 and 28) and

electronically synchronizing the third folder and the second folder (e.g. replication to spoke),

such that a new second record entry is created in the second folder based on the new third record

entry, (pages 9 and 28).

The teaching of a second memory store coupled to the first memory store the second

memory store including a second folder for storing second record entries in a file, the second

folder being synchronized with the first folder at a first moment in time such that the content of

the second folder is consistent with the content of the first folder at the first moment in time was

not present in the prosecution of the application which became the '231 Mendez patent and thus

it is agreed that Lamb raises a SNQ over at least claims 1-6 of the instant '231 Patent.

Thus, given the above teachings, there is a substantially likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not the instant claims

under reexamination are patentable. Accordingly, the Lamb reference raises a SNQ as to at least

claims 1-6 of the instant '231 Patent.

### *Lotus Deployment Guide*

The above substantial new question of patentability is based solely on patents and/or

printed publications already cited in an earlier concluded examination of the patent being

reexamined. On November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A,

Section 13105, part (a) of the Act revised the reexamination statute by adding the following new

last sentence to 35 U.S.C. 303(a) and 312(a):

> "The existence of a substantial new question of patentability is not precluded by the fact that
> a patent or printed publication was previously cited by or to the Office or considered by the
> Office."

For any reexamination ordered on or after November 2, 2002, the effective date of the

statutory revision, reliance on previously cited art, i.e., "old art," does not necessarily preclude

the existence of a substantial new question of patentability (SNQ) that is based exclusively on

that old art.  Rather, determinations on whether a SNQ exists in such an instance shall be based

upon a fact-specific inquiry done on a case-by-case basis.

In the present instance, there exists a SNQ based solely on Lotus Deployment Guide.

A discussion of the specifics now follows:

Lotus Deployment Guide discloses a first memory store (e.g. a server storing a database)

including a first folder for storing first record entries in a file (e.g. fields within documents of the

database), (page 41). Lotus Deployment Guide also discloses <u>a second memory store (e.g.</u>

<u>second server storing a replica of the database) including a second folder for storing record</u>

<u>entries in a file (e.g. fields within documents of the database), and the second folder being</u>

<u>synchronized (e.g. replication) with the first folder at a first moment in time, such that the</u>

<u>content of the second folder is consistent with the content of the first folder, (pages 41, 51).</u>

Lotus Deployment Guide also discloses a global server (e.g. hub server) including a third

memory store, (page 48) as well as that a new first record entries in a file are received (e.g.

record entries on a server may be added to, updated, or deleted) at the first memory store at a

moment in time later than the first moment in time, (page 41). Lotus Deployment Guide

Application/Control Number: 90/008,981                                    Page 10
Art Unit: 3992

discloses electronically synchronizing the first folder and the third folder (e.g. Hub server

replicates only the modified fields within a document with the other servers in sequential order,

starting with the first store), such that a new third record entry is created in the third folder based

on the new first record entries, (pages 41 and 51) and electronically synchronizing the third

folder and the second folder (e.g. replication of the second store occurring after the hub server

replicated with the first store), such that a new second record entry is created in the second folder

based on the new third record entry, (pages 41 and 51).

The teaching of a second memory store coupled to the first memory store the second

memory store including a second folder for storing second record entries in a file, the second

folder being synchronized with the first folder at a first moment in time such that the content of

the second folder is consistent with the content of the first folder at the first moment in time was

not present in the prosecution of the application which became the '231 Mendez patent and thus

it is agreed that Lotus Deployment Guide raises a SNQ over at least claims 1-6 of the instant

'231 Patent.

Thus, given the above teachings, there is a substantially likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not the instant claims

under reexamination are patentable. Accordingly, the Lotus Deployment Guide reference raises a

SNQ as to at least claims 1-6 of the instant '231 Patent.

### *Lotus Admin Guide*

The above substantial new question of patentability is based solely on patents and/or

printed publications already cited in an earlier concluded examination of the patent being

reexamined. On November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A,

Application/Control Number: 90/008,981                                    Page 11
Art Unit: 3992

Section 13105, part (a) of the Act revised the reexamination statute by adding the following new

last sentence to 35 U.S.C. 303(a) and 312(a):

> "The existence of a substantial new question of patentability is not precluded by the fact that
> a patent or printed publication was previously cited by or to the Office or considered by the
> Office."

For any reexamination ordered on or after November 2, 2002, the effective date of the

statutory revision, reliance on previously cited art, i.e., "old art," does not necessarily preclude

the existence of a substantial new question of patentability (SNQ) that is based exclusively on

that old art. Rather, determinations on whether a SNQ exists in such an instance shall be based

upon a fact-specific inquiry done on a case-by-case basis.

In the present instance, there exists a SNQ based solely on Lotus Admin Guide.

A discussion of the specifics now follows:

Lotus Admin Guide patent discloses a first memory store (e.g. server) including a first

folder for storing first record entries in a file (e.g. modifiable fields within a document), (page

78). Lotus Admin Guide also discloses <u>a second memory store (e.g. second server) including a</u>

<u>second folder for storing record entries in a file (e.g. modifiable fields within a document), and</u>

<u>the second folder being synchronized (e.g. replication) with the first folder at a first moment in</u>

<u>time, such that the content of the second folder is consistent with the content of the first folder,</u>

<u>(page 71).</u>

Lotus Deployment Guide also discloses a global server (e.g. hub server) including a third

memory store, (pages 77-78) as well a that a new first record entries in a file are received (e.g.

users are able to later add, edit, or delete documents in a database) at the first memory store at a

moment in time later than the first moment in time, (page 72). Lotus Admin Guide discloses

electronically synchronizing the first folder and the third folder (e.g. hub server replicates with

spoke servers sequentially starting with the first store), such that a new third record entry is

created in the third folder based on the new first record entries, (page 77) and electronically

synchronizing the third folder and the second folder (e.g. hub server replicates with spoke servers

sequentially), such that a new second record entry is created in the second folder based on the

new third record entry, (page 77).

The teaching of a second memory store coupled to the first memory store the second

memory store including a second folder for storing second record entries in a file, the second

folder being synchronized with the first folder at a first moment in time such that the content of

the second folder is consistent with the content of the first folder at the first moment in time was

not present in the prosecution of the application which became the '231 Mendez patent and thus

it is agreed that Lotus Admin Guide raises a SNQ over at least claims 1-6 of the instant '231

Patent.

Thus, given the above teachings, there is a substantially likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not the instant claims

under reexamination are patentable. Accordingly, the Lotus Admin Guide reference raises a SNQ

as to at least claims 1-6 of the instant '231 Patent.

### *Beckhardt*

Beckhardt discloses a first memory store (e.g. at least one of the multiple computer

systems on the network) including a first folder for storing first record entries in a file (e.g.

document, record, file, text or other data), (col. 1, lines 5-17; col. 2, lines 3-19). Beckhardt also

discloses a second memory store (e.g. another client computer on the network) including a

Application/Control Number: 90/008,981                                    Page 13
Art Unit: 3992

second folder for storing record entries in a file (e.g. document, record, file, text or other data),
and the second folder being synchronized (e.g. replication) with the first folder at a first moment
in time, such that the content of the second folder is consistent with the content of the first folder,
(col. 1, lines 5-17; col. 2, lines 3-19).

Beckhardt also discloses a global server (e.g. server holding central or master copy)
including a third memory store, (col. 1, lines 24-32) as well as that a new first record entries in a
file are received (e.g. changes made by User to document, record, file, text or other data) at the
first memory store at a moment in time later than the first moment in time, (col. 1, lines 24-32).
Still further, Beckhardt discloses electronically synchronizing the first folder and the third folder
(e.g. "Users then replicate changes they make in their document replicas to the master
document"), such that a new third record entry is created in the third folder based on the new first
record entries, (col. 1, lines 24-32) and electronically synchronizing the third folder and the
second folder (e.g. "the master is used to pass along these changes to the other working replicas
of the document"), such that a new second record entry is created in the second folder based on
the new third record entry, (col. 1, lines 24-32).

The teaching of a second memory store coupled to the first memory store the second
memory store including a second folder for storing second record entries in a file, the second
folder being synchronized with the first folder at a first moment in time such that the content of
the second folder is consistent with the content of the first folder at the first moment in time was
not present in the prosecution of the application which became the '231 Mendez patent and thus
it is agreed that Beckhardt raises a SNQ over at least claims 1-6 of the instant '231 Patent.

Application/Control Number: 90/008,981                                    Page 14
Art Unit: 3992

Thus, given the above teachings, there is a substantially likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not the instant claims

under reexamination are patentable. Accordingly, the Beckhardt reference raises a SNQ as to at

least claims 1-6 of the instant '231 Patent.

### *Shaheen*

Shaheen discloses a first memory store (e.g. one of the servers in the fileset storage group

(FSG)); also magnetic hard disks, optical disks or similar technology) including a first folder for

storing first record entries in a file (e.g. fileset replica, modification log), (col. 5, lines 13-19; col.

6, lines 38-47; fig. 1). Shaheen also discloses a second memory store (e.g. another server in the

FSG; also magnetic hard disks, optical disks or similar technology) including a second folder for

storing record entries in a file (e.g. fileset replica, modification log), and the second folder being

synchronized (e.g. replication; transmission of updates) with the first folder at a first moment in

time, such that the content of the second folder is consistent with the content of the first folder,

(col. 5, lines 13-19; col. 6, lines 37-45; col. 7, lines 22-26).

Shaheen also discloses a global server (e.g. "coordinator") including a third memory

store, (col. 5, lines 13-19; col. 8, lines 11-20, 51-58) as well as that a new first record entries in a

file are received (e.g. changes to a fileset or replica; changes to a modification log) at the first

memory store at a moment in time later than the first moment in time, (col. 7, lines 22-26). Still

further, Shaheen discloses electronically synchronizing the first folder and the third folder (e.g.

Coordinator requests, receives and merges logs from subordinates), such that a new third record

entry is created in the third folder based on the new first record entries, (col. 10, lines 1-18) and

electronically synchronizing the third folder and the second folder (e.g. Coordinator sends the

Application/Control Number: 90/008,981                                          Page 15
Art Unit: 3992

merged log to all the subordinates), such that a new second record entry is created in the second

folder based on the new third record entry, (col. 1, lines 24-32).

The teaching of a second memory store coupled to the first memory store the second

memory store including a second folder for storing second record entries in a file, the second

folder being synchronized with the first folder at a first moment in time such that the content of

the second folder is consistent with the content of the first folder at the first moment in time was

not present in the prosecution of the application which became the '231 Mendez patent and thus

it is agreed that Shaheen raises a SNQ over at least claims 1-6 of the instant '231 Patent.

Thus, given the above teachings, there is a substantially likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not the instant claims

under reexamination are patentable. Accordingly, the Shaheen reference raises a SNQ as to at

least claims 1-6 of the instant '231 Patent.

### *Wright*

Wright patent discloses a first memory store (e.g. FL client; handheld devices, personal

digital assistants (PDA), as well as other portable devices such as laptops) including a first folder

for storing first record entries in a file (e.g. database, email, a data, or work orders), (col. 5, lines

16-24, 46-52; fig. 2). Wright also discloses a second memory store (e.g. another client computer

in the network; handheld devices, personal digital assistants (PDA), as well as other portable

devices such as laptops) including a second folder for storing record entries in a file (e.g.

database, email, a data, or work orders), and the second folder being synchronized (e.g.

"synchronizing") with the first folder at a first moment in time, such that the content of the

second folder is consistent with the content of the first folder, (col. 5, lines 16-24, 46-52; col. 6,

lines 10-21).

Wright also discloses a global server (e.g. "FL server", "gateway") including a third

memory store, (col. 5, lines 16-24, 46-52; col. 6, lines 10-21; Fig. 2). Furthermore, Wright

discloses that new first record entries in a file are received (e.g. "full local database

implementation that allows data to be manipulated and collected by the FL client") at the first

memory store at a moment in time later than the first moment in time, (col. 5, lines 46-52) and

electronically synchronizing the first folder and the third folder (e.g. "FL server 132 is

responsible for manipulation of the FL client database 172, including retrieving data that

has been collected by the client"), such that a new third record entry is created in the

third folder based on the new first record entries, (col. 5, lines 63-66) and electronically

synchronizing the third folder and the second folder (e.g. synchronization of the two databases is

performed), such that a new second record entry is created in the second folder based on the new

third record entry, (col. 5, lines 52-59).

The teaching of a second memory store coupled to the first memory store the second

memory store including a second folder for storing second record entries in a file, the second

folder being synchronized with the first folder at a first moment in time such that the content of

the second folder is consistent with the content of the first folder at the first moment in time was

not present in the prosecution of the application which became the '231 Mendez patent and thus

it is agreed that Wright raises a SNQ over at least claims 1-6 of the instant '231 Patent.

Thus, given the above teachings, there is a substantially likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not the instant claims

Application/Control Number: 90/008,981                                    Page 17

Art Unit: 3992

under reexamination are patentable. Accordingly, the Wright reference raises a SNQ as to at least

claims 1-6 of the instant '231 Patent.

*GloMop*

GloMop discloses a first memory store (e.g. client computer, such as for example Intel

x86, Macintosh PowerBook) including a first folder for storing first record entries in a file (e.g.

folders, documents), (page 5, § 1.6). GloMop also discloses a second memory store (e.g. another

client computer, such as for example, Intel x86 or Macintosh PowerBook in the network)

including a second folder for storing record entries in a file (e.g. fileset replica, modification

log), and the second folder being synchronized (e.g. "The user synchronizes the file cache...")

with the first folder at a first moment in time, such that the content of the second folder is

consistent with the content of the first folder, (page 7, §, 2.1).

GloMop also discloses a global server (e.g. proxy server) including a third memory store,

(page 2, § 1.2). Furthermore, GloMop discloses that new first record entries in a file are received

(e.g. new mail) at the first memory store at a moment in time later than the first moment in time,

(page 10, § 3.5). Still further, GloMop discloses electronically synchronizing the first folder and

the third folder (e.g. sending a log file to resynchronize the user's inbox on the proxy with the

one on the client), such that a new third record entry is created in the third folder based on the

new first record entries, (page 10, § 3.5) and electronically synchronizing the third folder and

second folder (e.g. second client would download from the proxy server the new email uploaded

by the first client to the proxy server), such that a new second record entry is created in the

second folder based on the new third record entry, (page 7, § 2.1).

The teaching of a second memory store coupled to the first memory store the second

memory store including a second folder for storing second record entries in a file, the second

folder being synchronized with the first folder at a first moment in time such that the content of

the second folder is consistent with the content of the first folder at the first moment in time was

not present in the prosecution of the application which became the '231 Mendez patent and thus

it is agreed that GloMop raises a SNQ over at least claims 1-6 of the instant '231 Patent.

Thus, given the above teachings, there is a substantially likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not the instant claims

under reexamination are patentable. Accordingly, the GloMop reference raises a SNQ as to at

least claims 1-6 of the instant '231 Patent.

### *Lambert (PCMAIL)*

Lambert discloses a first memory store (e.g. resource limited client) including a first

folder for storing first record entries in a file (e.g. mail), (pages 1-2). Lambert also discloses a

second memory store (e.g. another resource limited client) including a second folder for storing

record entries in a file (e.g. mail), and the second folder being synchronized (e.g. first and second

clients are synchronized) with the first folder at a first moment in time, such that the content of

the second folder is consistent with the content of the first folder, (pages 1-2, 18).

Lambert also discloses a global server (e.g. resource rich global server) including a third

memory store, (pages 1-2). Furthermore, Lambert discloses that new first record entries in a file

are received (e.g. "update list" of messages that have been received at the first client since the

last synchronization) at the first memory store at a moment in time later than the first moment in

time. Lambert at p. 18. Still further, Lambert discloses electronically synchronizing the first

Application/Control Number: 90/008,981                                    Page 19
Art Unit: 3992

folder and the third folder (e.g. first client will synchronize the new changes with the repository),

such that a new third record entry is created in the third folder based on the new first record

entries, (page 18) and electronically synchronizing the third folder and the second folder (e.g.

repository synchronizes the changes with the second client), such that a new second record entry

is created in the second folder based on the new third record entry, (page 18).

The teaching of a second memory store coupled to the first memory store the second

memory store including a second folder for storing second record entries in a file, the second

folder being synchronized with the first folder at a first moment in time such that the content of

the second folder is consistent with the content of the first folder at the first moment in time was

not present in the prosecution of the application which became the '231 Mendez patent and thus

it is agreed that Lambert raises a SNQ over at least claims 1-6 of the instant '231 Patent.

Thus, given the above teachings, there is a substantially likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not the instant claims

under reexamination are patentable. Accordingly, the Lambert reference raises a SNQ as to at

least claims 1-6 of the instant '231 Patent.

### *Satyanarayanan*

The above substantial new question of patentability is based solely on patents and/or

printed publications already cited in an earlier concluded examination of the patent being

reexamined. On November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A,

Section 13105, part (a) of the Act revised the reexamination statute by adding the following new

last sentence to 35 U.S.C. 303(a) and 312(a):

"The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office."

For any reexamination ordered on or after November 2, 2002, the effective date of the statutory revision, reliance on previously cited art, i.e., "old art," does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art. Rather, determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis.

In the present instance, there exists a SNQ based solely on Satyanarayanan.

A discussion of the specifics now follows:

Satyanarayanan discloses all of the limitations in the claims of the '231 patent including the limitations the Patent Owner added for allowance. Specifically, the Satyanarayanan patent discloses a first memory store (e.g. client, such as an IBM ThinkPad, contains a cache manager, Venus,) including a first folder for storing first record entries in a file (e.g. volumes are files and the volume objects), (pages 28 and 30). Satyanarayanan also discloses a second memory store (e.g. second client with a cache manager, Venus, to store data) including a second folder for storing record entries in a file (e.g. volumes are files and the volume objects), and the second folder being synchronized (e.g. first and second clients synchronize with each other through the server) with the first folder at a first moment in time, such that the content of the second folder is consistent with the content of the first folder, (pages 28 and 30).

Satyanarayanan also discloses a global server (e.g. file servers mapped to a single namespace) including a third memory store, (pages 27-28). Furthermore, Satyanarayanan

discloses that new first record entries in a file are received (e.g. first client logs changes to the

data stored on it with volume stamps) at the first memory store at a moment in time later than the

first moment in time, (page 29). Still further, Satyanarayanan discloses electronically

synchronizing the first folder and the third folder (e.g. first client reconnects to the Coda

system, it resynchronizes), such that a new third record entry is created in the third folder based

on the new first record entries, (page 28) and electronically synchronizing the third folder and the

second folder (e.g. second client synchronizes with the file server and integrates any new

changes on the file server), such that a new second record entry is created in the second folder

based on the new third record entry, (page 28).

The teaching of a second memory store coupled to the first memory store the second

memory store including a second folder for storing second record entries in a file, the second

folder being synchronized with the first folder at a first moment in time such that the content of

the second folder is consistent with the content of the first folder at the first moment in time was

not present in the prosecution of the application which became the '231 Mendez patent and thus

it is agreed that Satyanarayanan raises a SNQ over at least claims 1-6 of the instant '231 Patent.

Thus, given the above teachings, there is a substantially likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not the instant claims

under reexamination are patentable. Accordingly, the Satyanarayanan reference raises a SNQ as

to at least claims 1-6 of the instant '231 Patent.

### *Kumar*

Kumar discloses a first memory store (e.g. client) including a first folder for storing first

record entries in a file (e.g. directories and files), (page 7-8). Kumar also discloses a second

Application/Control Number: 90/008,981                                    Page 22
Art Unit: 3992

memory store (e.g. second client with a cache manager, Venus, to store data) including a second

folder for storing record entries in a file (e.g. directories and files), and the second folder being

synchronized (e.g. first and second clients synchronize with each other through servers) with the

first folder at a first moment in time, such that the content of the second folder is consistent with

the content of the first folder, (page 7 and 8 and Fig. 2.2(a)).

Kumar also discloses a global server (e.g. one server of the set of servers that make up

Vice) including a third memory store, (page 7-8 and Fig. 2.2(a)) and that a new first record

entries in a file are received (e.g. file systems at the clients can be later updated) at the first

memory store at a moment in time later than the first moment in time, (page 8). Still further,

Kumar discloses electronically synchronizing the first folder and the third folder (e.g. when data

is updated at the first client, it is sent to and synchronized with the servers), such that a new third

record entry is created in the third folder based on the new first record entries, (page 8) and

electronically synchronizing the third folder and the second folder (e.g. clients with the old data

synchronize with the servers to obtain the new updated data), such that a new second record

entry is created in the second folder based on the new third record entry, (page 8).

The teaching of a second memory store coupled to the first memory store the second

memory store including a second folder for storing second record entries in a file, the second

folder being synchronized with the first folder at a first moment in time such that the content of

the second folder is consistent with the content of the first folder at the first moment in time was

not present in the prosecution of the application which became the '231 Mendez patent and thus

it is agreed that Kumar raises a SNQ over at least claims 1-6 of the instant '231 Patent.

Thus, given the above teachings, there is a substantially likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not the instant claims

under reexamination are patentable. Accordingly, the Kumar reference raises a SNQ as to at least

claims 1-6 of the instant '231 Patent.

### *Kistler*

Kistler discloses a first memory store (e.g. caches on user workstations called Virtue that

maintain folders in the file system) including a first folder for storing first record entries in a file

(e.g. object descriptors), (pages 14-18; fig. 2.1). Kistler also discloses a second memory store

(e.g. second Virtue workstation) including a second folder for storing record entries in a file (e.g.

object descriptors), and the second folder being synchronized (e.g. synchronize by updating

caches) with the first folder at a first moment in time, such that the content of the second folder is

consistent with the content of the first folder, (pages 17-19; fig. 2.1).

Kistler also discloses a global server (e.g. Vice) including a third memory store, (page 14;

fig. 2.1) as well as that a new first record entries in a file are received (e.g. client may update

cached objects) at the first memory store at a moment in time later than the first moment in time,

(page 19). Still further, Kistler discloses electronically synchronizing the first folder and the third

folder (e.g. when an object is updated on a client, the updated object is synchronized the global

server, Vice), such that a new third record entry is created in the third folder based on the new

first record entries, (page 18) and electronically synchronizing the third folder and the second

folder (e.g. the global server and the outdated client synchronizes so the client gets the updated

objects), such that a new second record entry is created in the second folder based on the new

third record entry, (pages 18-19).

Application/Control Number: 90/008,981                                    Page 24
Art Unit: 3992

The teaching of a second memory store coupled to the first memory store the second

memory store including a second folder for storing second record entries in a file, the second

folder being synchronized with the first folder at a first moment in time such that the content of

the second folder is consistent with the content of the first folder at the first moment in time was

not present in the prosecution of the application which became the '231 Mendez patent and thus

it is agreed that Kistler raises a SNQ over at least claims 1-6 of the instant '231 Patent.

Thus, given the above teachings, there is a substantially likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not the instant claims

under reexamination are patentable. Accordingly, the Kistler reference raises a SNQ as to at least

claims 1-6 of the instant '231 Patent.

### *Scope of Reexamination*

5.     Claims 1-6 will be reexamined as requested in the request.

### *Additional Comments*

**6.**     On page 287 of the Request, the Requester provided in the "EXPECTED ARGUMENTS

AND AMENDMENTS" section arguments which are directed to four related patents which are

currently under reexamination. This should not be included in the request since it does not

pertain to this instant Patent and cannot be used to establish a SNQ and thus those comments will

not be considered by the examiner.

### *Conclusion*

### NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination
or an *inter partes* reexamination is designated as the correspondence address of the patent.

Application/Control Number: 90/008,981                                    Page 25
Art Unit: 3992

*Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

| | |
|---|---|
| Reexamination and Amendment Practice | (571) 272-7703 |
| Central Reexam Unit (CRU) | (571) 272-7705 |
| Reexamination Facsimile Transmission No. | (571) 273-9900 |

7.      Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

8.      The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 7,225,231 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or

Application/Control Number:                                    Page 26
90/008,981
Art Unit: 3992

proceeding throughout the course of this reexamination proceeding.  See MPEP §§ 2207, 2282

and 2286.

**8.     All correspondence related to this *ex parte* reexamination proceeding should be**

**directed as follows:**

Please MAIL any communications to:

Attn: Mail Stop *Ex Parte* Reexam
Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

Please FAX any communication to:

(571) 273-9900
Central Reexamination Unit

Please HAND-DELIVER any communications to:

Customer Service Window
Attn: Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA 22314

9.     Any inquiry by the patent owner concerning this communication or earlier

communications from the Legal Advisor or Examiner, or as to the status of this proceeding,

should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Ovidio Escalante
Primary Examiner
Central Reexamination Unit - Art Unit 3992
(571) 272-7537

Conferee:                                              Conferee: